1    Jeffery L. Caufield (SBN 166524)
     jeff@caufieldjames.com
2    Matthew D. McMillan (SBN 262394)
     mattm@caufieldjames.com
3    CAUFIELD & JAMES, LLP
     2851 Camino Del Rio South, Suite 410
4    San Diego, California 92108
     Telephone: 619-325-0441
5    Facsimile: 619-325-0231

6    Attorneys for Plaintiff and Counter-Defendant
     Citizens Development Corporation, Inc.

7

8                    **UNITED STATES DISTRICT COURT**

9             **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10   CITIZENS DEVELOPMENT                )   Case No.: 12CV00334 GPC KSC
                                         )
11   CORPORATION, INC., a California     )
     corporation,                        )
12                                       )   **MEMORANDUM OF POINTS AND**
                                         )   **AUTHORITIES IN SUPPORT OF**
                Plaintiff,               )   **PLAINTIFF/COUNTER-DEFENDANT**
13                                       )   **CITIZENS DEVELOPMENT**
                                         )   **CORPORATION'S MOTION TO**
14        vs.                            )   **DISQUALIFY COUNSEL**
                                         )
15   COUNTY OF SAN DIEGO, a California   )
     municipal corporation, CITY OF SAN  )   Date:      October 30, 2015
16   MARCOS, a California municipal corporation, )   Time:      1:30 p.m.
     CITY OF ESCONDIDO, a California     )   Judge:     Hon. Gonzalo P. Curiel
17   municipal corporation, VALLECITOS   )   Courtroom: 2D
     WATER DISTRICT, a California municipal )
18   corporation, HOLLANDIA DAIRY, INC., a )   Action Filed: February 8, 2012
     California corporation, and DOES 1 through )   Trial Date:   Not Set
19   100, inclusive,                     )
                                         )            **UNDER SEAL**
20              Defendants.              )
                                         )
21   ─────────────────────────          )
                                         )
22                                       )
     AND RELATED COUNTER-ACTIONS AND     )
23   CROSS-ACTIONS.                      )

24

25

26

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION …………………………………………………...………...…..2

II.    FACTUAL BACKGROUND ……………………………………………………..2

   A. CDC FILED THIS PRIVATE COST RECOVERY ACTION UNDER CERCLA …..2

   B. FIREMAN'S FUND AGREED TO DEFEND CDC AGAINST THE
     COUNTERCLAIMS IN THIS LAWSUIT, SUBJECT TO A RESERVATION OF
     RIGHTS ………………………………………………………………………….3

   C. THE WOOD FIRM HAS MATERIALLY BREACHED ITS ETHICAL DUTIES TO
     CDC …………………………………………………………………………...3

     1. THE WOOD FIRM ILLICITLY OBTAINED A COPY OF CDC'S
       CONFIDENTIAL MEDIATION BRIEF AND FORWARDED IT TO
       FIREMAN'S FUND AGAINST THE EXPRESS WRITTEN INSTRUCTIONS
       OF CDC, CDC'S LEAD COUNSEL, AND THE MEDIATOR ………………....4

     2. THE WOOD FIRM DISCLOSED CDC'S CONFIDENTIAL
       COMMUNICATIONS TO FIREMAN'S FUND AGAINST CDC'S EXPRESS
       INSTRUCTIONS …………………………………………………………….5

     3. THE WOOD FIRM HAS FAILED AND REFUSED TO PRODUCE A COPY OF
       ITS LITIGATION FILE TO ITS OWN CLIENT, CDC ………...……………..7

     4. THE WOOD FIRM'S LITIGATION MEMORANDUM TO FIREMAN'S FUND
       DELIBERATELY SLANTS THE FACTS IN THE ENVIRONMENTAL
       LITIGATION IN ORDER TO BOLSTER FIREMAN'S FUND'S COVERAGE
       POSITION AGAINST CDC …………………………………………………8

     5. THE WOOD FIRM ARGUED FOR A STRIKINGLY HIGH PERCENTAGE OF
       LIABILITY AGAINST CDC IN BRIEFING SUBMITTED TO THE
       MEDIATOR …………………………………………………………….9

i

6.  THE WOOD FIRM REFUSES TO WITHDRAW FROM THE

REPRESENTATION …………………………………………………………..9

III.   LEGAL ANALYSIS …………………………………………………………..10

A. LEGAL STANDARD FOR DISQUALIFYING COUNSEL ………………………10

1.  THE COURT HAS THE AUTHORITY TO DISQUALIFY COUNSEL ……...10

2.  DUAL REPRESENTATION AND THE TRIPARTITE RELATIONSHIP ….....11

3.  AUTOMATIC DISQUALIFICATION APPLIES HERE ………………………12

B. THE WOOD FIRM MUST BE AUTOMATICALLY DISQUALIFIED BASED ON

MULTIPLE ETHICAL VIOLATIONS …………………………………………...12

1.  THE WOOD FIRM BREACHED THE DUTY OF CONFIDENTIALITY ….....12

2.  THE WOOD FIRM BREACHED THE DUTY OF LOYALTY …………….....14

IV.   CONCLUSION …………………………………………………………………..15

1   **TABLE OF AUTHORITIES**

2   CASES                                                                    PAGE

3   American Mutual Liability Ins. v. Superior Court

4          38 Cal. App. 3d 579 (1974) ……………………………………………..……..13

5   Bank of America, N.A. v. Superior Court

6          212 Cal. 4th 1076 (2013) …………………………………………..…………11

7   Barney v. Aetna Casualty & Surety Co.

8          185 Cal. App. 3d 966 (1986) …………………………………………...………11

9   Betts v. Allstate Ins. Co.

10         154 Cal. App. 3d 688 (1984) ……………………………………………………..11

11  California Earthquake Authority v. Metropolitan West Securities, LLC

12         712 F. Supp. 2d 1124 (E.D. Cal. 2010) …………………………..………………10

13  Cox v. Delmas

14         99 Cal. 104 (1893) ……………………………………………...…………………1

15  Dietz v. Meisenheimer & Herron

16         177 Cal. App. 4th 771 (2009) ……………………………………………………12

17  Dynamic Concepts v. Truck Exchange

18         61 Cal. App. 4th 999 (1998) …………………………………….…………………11

19  Flatt v. Superior Court

20         9 Cal. 4th 275 (1994) …………………………………………………………...12, 14

21  Gafcon, Inc. v. Ponsor & Assocs.

22         98 Cal. App. 4th 1388 (2002) …………………………………...………………11

23  Gruenberg v. Aetna Ins. Co.

24         9 Cal. 3d 566 (1973) ……………………………………………………………..11

25  In re County of Los Angeles

26         223 F.3d 990 (9th Cir. 2000) …………………………………………………..11

27  In re Ramirez

28         183 B.R. 583 (1995) …………………………………….…..………………………7

CASES                                                                                    PAGE

Klemm v. Superior Court

    75 Cal. App. 3d 893 (1977) ……………………………………...………………11

Lasky, Haas, Cohler & Munter v. Superior Court

    172 Cal. App. 3d 264 (1985) ……………………………………..………………7, 14

Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.

    212 F.R.D. 567 (E.D. Cal. 2002) …………………………………………...………13

Lysick v. Walcom

    258 Cal. App .2d 136 (1968) …………………………………………………………11

Outboard Marine Corp. v. Liberty Mut. Ins. Co.

    536 F.2d 730 (7th Cir. 1976) …………………………………………..……………11

Purdy v. Pacific Auto. Ins. Co.

    157 Cal.App.3d 59 (1984) ………………………………………..…………………11

Rose v. State Bar

    49 Cal. 3d 646 (1989) …………………………………………..………………7

Spindle v. Chubb/Pacific Indemnity Group

    89 Cal. App. 3d 706 (1979) …………………………………………………..12, 14

State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.

    72 Cal. App. 4th 1422 (1999) ………………………………….………...12, 14, 15

Visa U.S.A., Inc. v. First Data Corp.

    241 F. Supp. 2d 1100 (N.D. Cal. 2003) ……………………………………………14


STATUTES & CODES

Cal. Bus. & Prof. Code

    § 6068 ……………………………………………………………………5, 13

Cal. Evid. Code

    § 954 ……………………………………………………………………...12

Cal. State Bar Ethics Opinion

     1995-139 …………………………………………………………………1, 5, 9, 10, 13, 15

Cal. State Bar Comm. Prof. Resp.

     No. 96-0012 ……………………………………………………………......7, 14

**I.    INTRODUCTION**

Plaintiff and Counter-Defendant Citizens Development Corporation, Inc. (hereinafter, "CDC" or "Plaintiff") respectfully requests that this Court disqualify Mr. David Wood and the law firm of Wood, Smith, Henning & Berman LLP (collectively, the "Wood firm"), hired by Fireman's Fund Insurance Company as purported "panel counsel" to supposedly represent the dual interests of CDC and Fireman's Fund in this case.  Disqualification is mandatory because the Wood firm violated its ethical duties to CDC in multiple respects.

The relation between counsel and client is a fiduciary relation of the very highest character. *See Cox v. Delmas*, 99 Cal. 104 (1893).  As between counsel hired by an insurance carrier to represent an insured, California State Bar Ethics Opinion 1995-139 provides that the ethical duties and obligations owed to the insured-client are "paramount" to any secondary obligation that the attorney owes to the insurance carrier-client, despite the financial incentive the attorney has to favor the insurance company.  Ignoring these essential obligations altogether, the Wood firm has engaged in a chronic pattern of disobeying client directives and advocating **against** CDC's interests to benefit those of Fireman's Fund, among other misconduct.

The Wood firm has materially breached the duty of confidentiality.  The undisputed facts show that the Wood firm deliberately disclosed CDC's confidences to Fireman's Fund **after** CDC and CDC's lead counsel explicitly directed the Wood firm, in writing, multiple times, not to disclose such confidences. [1]  Perhaps most disturbing is that the Wood firm deliberately forwarded a copy of CDC's confidential mediation brief to Fireman's Fund against the express written instructions of CDC, CDC's lead counsel, and even the mediator.

The Wood firm has also materially breached the duty of loyalty.  First, the Wood firm has failed and refused to produce to CDC a complete copy of the litigation file concerning CDC's defense, despite CDC's numerous requests and despite CDC's rights under California law to

---

[1] By this motion, CDC is not contesting Fireman's Fund's contractual right under its insurance policies to appoint panel counsel of its choice.  Rather, CDC seeks to disqualify panel counsel based on its multiple material breaches of the ethical duties owed to CDC, including the duties of loyalty and confidentiality.  CDC reserves all rights to address the right to independent counsel and any alleged contractual rights and obligations that may exist under the Fireman's Fund policies.

1  examine such documents.  Second, the Wood firm has deliberately misrepresented the facts in the

2  underlying litigation for the direct purpose of developing litigation strategies that benefit only

3  Fireman's Fund and harm CDC by shifting greater liability to CDC during policy years which are

4  outside of Fireman's Fund's coverage.  Third, the Wood firm has argued for an unreasonably high

5  percentage of liability **against** CDC in briefing submitted to the mediator for settlement purposes,

6  meaning that the Wood firm's purported "defense" strategy is directly adverse to CDC's interests.

7  Fourth, the Wood firm continues to refuse to withdraw from the representation in a manner that

8  will not prejudice CDC, contrary to the demands and interests of CDC.

9       The Wood firm has materially breached its ethical duties to CDC, thereby creating an

10  actual conflict of interest requiring mandatory disqualification.  Each instance of the Wood firm's

11  ethical malfeasance forms an independent basis for disqualification.  These ethical violations are

12  real and substantial, and warrant immediate redress by the Court.  Accordingly, CDC respectfully

13  requests that this Court disqualify the Wood firm once and for all.

14  **II.  FACTUAL BACKGROUND**

15      **A.  CDC Filed this Private Cost Recovery Action Under CERCLA**

16       On February 8, 2012, CDC filed this action for response costs under the Comprehensive

17  Environmental Response, Compensation, and Liability Act (CERCLA), among other relief and

18  claims, arising from the alleged release and discharge of hazardous substances which have

19  allegedly caused Lake San Marcos ("Lake") to become contaminated. (*See* Request for Judicial

20  Notice ("RJN") at ¶ 1, Ex. A; ¶ 2, Ex. B).  Prior to filing the lawsuit, the California Regional

21  Water Quality Control Board, San Diego Region ("Regional Board") issued Investigative Order

22  No. R9-2011-0033 to CDC alleging the release of pollutants into the Lake and commanding CDC

23  to investigate the causes and extent of nutrient impairment there. (RJN at Ex. B, FAC at ¶ 4).

24  CDC has incurred and will continue to incur substantial costs to investigate, monitor, and

25  remediate this contamination. (RJN at Ex. B, FAC at ¶¶ 12, 15).  In the Investigative Order, the

26  Regional Board identified numerous entities as potentially responsible for some of the past and

27  ongoing nutrient discharges to the Lake and its principal tributary, the San Marcos Creek

28  ("Creek"). (RJN at Ex. B, FAC at ¶¶ 6, 10).  By this action, CDC seeks to recover response costs

1  from the named defendants, each of whom seeks similar relief by way of separately-filed

2  counterclaims and/or cross-claims.

3  **B.    Fireman's Fund Agreed to Defend CDC Against the Counterclaims in this**

4  **Lawsuit, Subject to a Reservation of Rights**

5  Between January 1, 1975 and March 2, 1978, Fireman's Fund Insurance Company issued

6  commercial general liability insurance policies to CDC.  As the claims against CDC involve

7  events that occurred between the 1950s and the present, Fireman's Fund's policies cover only

8  three of the fifty or more years at issue.  To the extent Fireman's Fund can point to liability

9  outside of its coverage period (and to times when CDC had no coverage), Fireman's Fund has a

10 strong financial interest in doing so, which of course is contrary to CDC's interest.  Based on the

11 allegations in the counterclaims brought against CDC and the coverage provided under Fireman's

12 Fund's insurance policies, Fireman's Fund accepted the defense of CDC, subject to a reservation

13 of rights.  In doing so, however, Fireman's Fund denied CDC the right to hire independent

14 counsel and, instead, hired the Wood firm to jointly represent CDC and Fireman's Fund.  The

15 Wood firm associated in as defense counsel for CDC on January 7, 2014. (RJN at ¶ 3, Ex. C).

16 **C.    The Wood Firm Has Materially Breached Its Ethical Duties to CDC**

17 Throughout the Wood firm's representation of CDC, the Wood firm has engaged in an

18 ongoing pattern and practice of advancing the legal and financial interests of one client,

19 Fireman's Fund, over its other client, CDC.  Such conduct includes, for example: (1) deliberately

20 forwarding a copy of CDC's confidential mediation brief to Fireman's Fund against the explicit

21 written instructions of CDC, CDC's lead counsel, and the mediator; (2) disregarding express

22 written directives from CDC and its lead counsel not to disclose privileged and confidential

23 communications to Fireman's Fund; (3) failing and refusing to produce to CDC a complete copy

24 of the Wood firm's litigation file concerning CDC's defense, despite numerous requests; (4)

25 developing litigation strategies that benefit only Fireman's Fund by shifting greater liability to

26 CDC during policy years which are outside of Fireman's Fund's coverage; (5) arguing for an

27 unreasonably high percentage of liability against CDC in briefing submitted to the mediator for

28 settlement purposes; and (6) refusing to withdraw from the representation in a manner that will

1   not prejudice CDC, despite numerous requests.

2          The Wood firm's chronic pattern of disobeying client directives and advocating against

3   CDC's interests to benefit those of Fireman's Fund, among other misconduct, constitute multiple

4   breaches of the Wood firm's duties of loyalty and confidentiality owed to CDC, as explained

5   below.

6          ***1.    The Wood Firm Illicitly Obtained a Copy of CDC's Confidential Mediation***

7          ***Brief and Forwarded It to Fireman's Fund Against the Express Written***

8          ***Instructions of CDC, CDC's Lead Counsel, and the Mediator***

9          In December 2014, the parties submitted confidential briefing to the mediator addressing

10   factual and legal arguments on allocation and liability. (Declaration of Jeffery L. Caufield

11   ("Caufield Decl.") at ¶ 2).  Prior to the parties submitting the briefs, the mediator instructed all

12   counsel that the mediation briefs were to be confidential, for the mediator's eyes only, and not to

13   be provided to the insurance carriers. *Id.* The reason for not sharing the briefs with the insurance

14   carriers was to allow for frank discussions on potential liability and insurance coverage between

15   the parties and the mediator as to promote fruitful settlement negotiations, without fear of any

16   insurance carrier attempting to use the information against the insureds.  In accordance with the

17   mediator's instructions, CDC's lead counsel also instructed the Wood firm to keep CDC's

18   mediation brief confidential and not to provide a copy of it to Fireman's Fund because it directly

19   discussed coverage issues. *Id.*  Much to CDC's surprise, the Wood firm actually sought and

20   obtained a copy of CDC's confidential mediation brief (prepared by CDC's lead counsel),

21   without CDC's knowledge or consent, and then transmitted its contents directly to Fireman's

22   Fund. (Caufield Decl. at ¶ 3, Ex. 1).  The Wood firm's surreptitiousness is in direct contravention

23   of the explicit instructions from its client CDC, CDC's lead counsel, and even the mediator.  This

24   unauthorized transmission of CDC's privileged and confidential information from the Wood firm

25   to Fireman's Fund, against CDC's express demands, marks distinct breaches of the Wood firm's

26   duties of confidentiality and loyalty owed to CDC.

27          The Wood firm's breaches of its ethical duties and obligations warrant automatic

28   disqualification on this independent basis.

**2.  *The Wood Firm Disclosed CDC's Confidential Communications to***

***Fireman's Fund Against CDC's Express Instructions***

Early on in the Wood firm's involvement, counsel participated in one or more conference calls with CDC's lead counsel, opposing counsel, and the parties' respective environmental consultants and experts. (Caufield Decl. at ¶ 4).  During those calls, counsel for the Defendants alleged that CDC's actions ████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Id.*  Opposing counsel also alleged that CDC's releases and discharges occurred over the course of many years, including those which are **outside of Fireman's Fund's policy coverage**. *Id.*  At that point, the Wood firm was aware that the Defendants' theories of liability created a risk of an actual conflict of interest in representing both CDC and Fireman's Fund, since the Defendants' theories directly implicated Fireman's Fund's reservation of rights.  Upon learning of the Defendants' theories and that certain of CDC's alleged releases occurred **outside of Fireman's Fund's policy periods**, the Wood firm had an affirmative duty not to reveal any information to Fireman's Fund that would negatively impact CDC's coverage.

In California State Bar Ethics Opinion 1995-139, the State Bar addressed the issue of to whom an attorney who is hired by an insurance carrier to defend an insured owes ethical duties. This opinion is informative here, as it reads, in relevant part:

> It is also the duty of any attorney to maintain inviolate the confidences of a client and to preserve at every peril to himself or herself the client's secrets. (Bus. & Prof. Code, § 6068, subd. (e).) Thus, if an insured reveals matters to the attorney in confidence, and these matters are not intended to be heard by the insurer, the attorney may not reveal them to the insurer, regardless of the relationship between them. [citation omitted] The same analysis applies to any secrets of the insured/client learned by the attorney during the course of the representation. This means that, even where the attorney has a close ongoing relationship with an insurer, and from a business perspective considers insurer an important "client," in any particular representation **it is the obligation to protect the insured's confidences and secrets which is paramount**.

/ / /

/ / /

1   Cal. Eth. Op. 1995-139 (Cal. State Bar Comm. Prof. Resp.), 1995 WL 255397 (emphasis added)

2   (Caufield Decl. at ¶ 5, Ex. 2).  In an email to the Wood firm dated August 22, 2014, CDC's lead

3   counsel, Mr. Jeffery Caufield of Caufield & James, LLP, sought to memorialize the discussions

4   that took place during the above-mentioned conference call and to discuss litigation strategy with

5   respect to allocation of liability and how that potentially impacts CDC's insurance coverage.

6   (Caufield Decl. at ¶ 6, Ex. 3).  After laying out the importance of the coverage-sensitive

7   information to the Wood firm, and to ensure that the Wood firm fully understood its ethical duties

8   to CDC, CDC's lead counsel, on behalf of CDC, admonished the Wood firm of the need to

9   protect such information from unauthorized disclosure, stating:

10
11   > As counsel of record for CDC you [the Wood firm] have a duty of loyalty
   > and substantial ethical obligations to CDC. As this letter and inquiry
   > represents issues that may impact coverage and coverage defenses being
12   > asserted by Fireman's Fund and Great American, this letter should not be
   > provided to nor discussed with either Fireman's Fund, Great American, or
13   > any other insurer, and is considered a privileged and confidential
   > communication.
14

15   (Caufield Decl., Ex. 3 at 8/22/14 email, pp. 7-8).  In a follow-up email to the Wood firm on

16   September 4, 2014, CDC's lead counsel **again** admonished the Wood firm of the sensitive nature

17   of the communication, making clear that neither the information in the email nor the underlying

18   facts should be disclosed to Fireman's Fund because they implicate coverage issues.  (Caufield

19   Decl., Ex. 3 at 9/4/14 email, p. 2, ¶ 1).

20          Despite these explicit directives from CDC's lead counsel on behalf of CDC, the Wood

21   firm revealed the **very same coverage-related communications to Fireman's Fund** in utter

22   disregard of CDC's instructions, the sensitive nature of the communications, and the Wood firm's

23   ethical obligations to CDC.  On September 15, 2014, Mr. Wood copied Fireman's Fund's claims

24   adjuster, Scott Osmus, on the **same email chain** with CDC's lead counsel such that Fireman's

25   Fund received copies of **all** prior emails, which included privileged and confidential discussions

26   of coverage issues. (Caufield Decl., Ex. 3 at p. 1).  It is undisputed that the Wood firm sent this

27   confidential information to Fireman's Fund.  In fact, Mr. Wood admitted to the unauthorized

28

disclosure in a subsequent email. (Caufield Decl. at ¶ 7, Ex. 4).  Consequently, there is no question the Wood firm deliberately transmitted CDC's confidential information to Fireman's Fund.

### 3. The Wood Firm Has Failed and Refused to Produce a Copy of Its Litigation File to Its Own Client, CDC

As a separate violation of its ethical obligations, the Wood firm has failed and refused to produce a copy of its litigation file to CDC, despite numerous requests.

"It is well settled under California law that an attorney has a duty to **promptly surrender any communicated work product contained in an attorney's litigation file upon request of the client**." *In re Ramirez*, 183 B.R. 583, 587 (1995) (citing *Rose v. State Bar*, 49 Cal. 3d 646, 655 (1989)) (emphasis added).  Absent special circumstances, retained counsel should honor the insured's request to examine the **entire litigation file**, subject to retained counsel's right to assert the work product doctrine. *See* Cal. State Bar Formal Opinion Interim No. 96-0012 (Cal. State Bar Comm. Prof. Resp.); *Lasky, Haas, Cohler & Munter v. Superior Court*, 172 Cal. App. 3d 264 (1985) (Caufield Decl. at ¶ 8, Ex. 5).  Attorneys may not keep secrets from joint clients about matters on which the lawyer represents them jointly. *See* Cal. Eth. Op. 96-0012 (Cal. State Bar Comm. Prof. Resp.) ("[a]ny communication between the insurer and the retained attorney concerning the defense of insured's claim is a matter of common interest to both insured and insurer . . . **Consequently, the retained attorney must allow the insured to inspect and copy the file**.") (emphasis added) (Caufield Decl. at Ex. 5).

As a purported client of the Wood firm, CDC has a right to examine and copy the Wood firm's litigation file upon request.  To that end, CDC has requested no less than a dozen times that the Wood firm produce the complete litigation file.  Despite CDC's clear right of access and multiple requests, and the corresponding duty of the Wood firm to promptly surrender such materials upon request, the Wood firm has failed and refused to turn over the complete litigation file to CDC. (Caufield Decl. at ¶ 9).  Without this information, CDC is unable to determine the full extent of the Wood firm's malfeasance as to mark additional violations of its ethical duties.

1    ***4.    The Wood Firm's Litigation Memorandum to Fireman's Fund Deliberately***

2    ***Slants the Facts in the Environmental Litigation In Order to Bolster***

3    ***Fireman's Fund's Coverage Position Against CDC***

4          Throughout its representation of CDC, the Wood firm has made material

5    misrepresentations in writing to CDC and Fireman's Fund which directly impact CDC's potential

6    liability and coverage position.  Each misrepresentation, on its own, creates an actual conflict of

7    interest warranting the automatic disqualification of the Wood firm.

8          In a litigation report to Fireman's Fund dated September 5, 2014, the Wood firm

9    misrepresented the █████████████████████████████████████████████

10   ████████████████████████████████ (Caufield Decl. at ¶ 10, Ex. 6).

11   According to the Wood firm, █████████████████████████████████████████

12   ████████████████████████████ (Caufield Decl., Ex. 6 at p. 1, ¶ 4).  ████████

13   ████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████

16   ███   The Wood firm also misrepresented the scope of reported releases at the Lake to create the

17   perception that the ██████████████████████████████████████████████

18   ███████████████ (Caufield Decl., Ex. 6 at p. 1, ¶ 5).  The Wood firm's position is again

19   wrong as it runs contrary ███████████████████████████████████████

20   ████████████████████████████████████ In other words, the Wood

21   firm plainly misrepresented those facts which are beneficial to CDC and instead sought to create

22   coverage defenses for Fireman's Fund.

23          Based on these material misrepresentations, the Wood firm appears intent on presenting a

24   "defense" that would not reduce liability for CDC, but rather, would increase it by shifting

25   liability to time periods other than those in which Fireman's Fund provided coverage.  In other

26   words, the Wood firm's defense strategy is to shift liability away from Fireman's Fund and dump

27   that liability on CDC during uncovered periods of time.  Although the "facts" on which the Wood

28   firm relied were actually false and incorrect, the Wood firm's conscious and deliberate decision to

assist Fireman's Fund in creating coverage defenses **against** CDC further showcases the extent of its ethical violations.

### 5. The Wood Firm Argued for a Strikingly High Percentage of Liability Against CDC in Briefing Submitted to the Mediator

In December 2014, the parties submitted confidential briefing to the mediator addressing factual and legal arguments on allocation and liability. (Caufield Decl. at Ex. 2).  CDC's lead counsel submitted a brief on behalf of CDC.  The Wood firm submitted a separate brief on CDC's behalf, but did so without CDC's knowledge or consent.  CDC never would have approved the brief, however, considering the Wood firm argued ████████████████████████████ ████████████████████████████████████████████████.  To make matters worse, the Wood firm omitted important factual arguments in support of CDC's defense which justify a lower percentage of liability.  The Wood firm's allocation strategy was consistent with Fireman's Fund's potential coverage arguments, while the true evidence would point to substantial indemnity obligations of Fireman's Fund.  For example, the evidence demonstrates ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████  However, the Wood firm omitted this key liability analysis because it hurt Fireman's Fund's coverage position.  Neither CDC nor its lead counsel agree with or support the Wood firm's purported "defense" strategy.

### 6. The Wood Firm Refuses to Withdraw from the Representation

After learning of each of the Wood firm's transgressions discussed above, CDC demanded in writing that the Wood firm immediately withdraw from the representation.  Consistent with California State Bar Ethics Opinion 1995-139, CDC also demanded that the Wood firm withdraw "in a manner which does not prejudice the rights of the insured, while protecting confidential communications" with respect to coverage issues with Fireman's Fund. (*See* Caufield Decl. at Ex. 2).  California State Bar Ethics Opinion 1995-139 is informative on this issue as it discusses an

attorney's obligation to protect an insured-client's confidences whenever a conflict of interest requiring mandatory withdrawal arises.  The opinion states in relevant part:

> Where such withdrawal is necessary, however, it may be done . . . **only where it is accomplished in a manner which does not prejudice the rights of the insured, while protecting confidential communications**. (Rule 3-700(A)(2).) It is imperative that, although withdrawal may be required, **assiduous effort be made to accomplish it in such a way as does not disclose the very information which caused the attorney to seek withdrawal in the first place**. Moreover, given the ongoing relationship between the attorney and the insurer, **special care must be taken by the attorney during the withdrawal process to protect the reasons for withdrawal**.

Cal. Eth. Op. 1995-139 (Cal. State Bar Comm. Prof. Resp.), 1995 WL 255397 (emphasis added); (Caufield Decl. at Ex. 2).  The Wood firm plainly refuses to withdraw in a manner consistent with its ethical obligations to CDC, as expressed in the State Bar opinion.  On the contrary, the Wood firm has explained that it will withdraw, but only if it is not required to admit any conflict of interest or breach of ethical duties.  Stated differently, the Wood firm will only withdraw in a manner that would allow Fireman's Fund to buttress its coverage position against CDC by claiming, for example, that CDC breached the insurance agreement by not cooperating.  The State Bar opinion imposes the exact opposite standard, however, by requiring that the Wood firm withdraw only in a manner that protects CDC's rights, not those of Fireman's Fund.  Thus, the Wood firm's tactics plainly contravene State Bar Ethics Opinion 1995-193 and its ethical obligations to CDC.

CDC requires immediate redress for these blatant ethical violations.  It is imperative to CDC's ability to protect itself from further harm by the Wood firm that the Court disqualify the Wood firm once and for all.

## III.  LEGAL ANALYSIS

### A.  Legal Standard for Disqualifying Counsel

#### 1.  The Court Has the Authority to Disqualify Counsel

A federal court applies state law in deciding motions to disqualify. *California Earthquake Authority v. Metropolitan West Securities, LLC*, 712 F. Supp. 2d 1124, 1132 (E.D. Cal. 2010); *see*

1   *also In re County of Los Angeles*, 223 F.3d 990, 994 (9th Cir. 2000) (adopting California's

2   standards of professional conduct and using the American Bar Association's Model Rules of

3   Professional Conduct as guidance).

### 2. *Dual Representation and the Tripartite Relationship*

5         Where an attorney is hired to represent the insurer and the insured, a tripartite attorney-

6   client relationship exists between the insurer, the insured, and the attorney. *Purdy v. Pacific Auto.*

7   *Ins. Co.*, 157 Cal.App.3d 59, 76 (1984); *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388,

8   1406 (2002). The "triangular aspect" of the representation gives rise to fiduciary duties which are

9   owed to both clients. *Purdy*, 157 Cal. App. 3d at 76; *see Klemm v. Superior Court*, 75 Cal. App.

10   3d 893, 898 (1977) ("[C]ommon sense dictates that it would be unthinkable to permit an attorney

11   to assume a position at a trial or hearing where he could not advocate the interests of one client

12   without adversely injuring those of the other."); *see also Bank of America, N.A. v. Superior Court*,

13   212 Cal. 4th 1076, 1091-1092 (2013) (tripartite relationship exists even when insurer defends

14   under reservation). In the tripartite relationship, "[t]he attorney's primary duty has been said to

15   be to further the best interests of the insured." *Purdy*, 157 Cal. App. 3d at 76, *citing Gruenberg v.*

16   *Aetna Ins. Co.*, 9 Cal. 3d 566, 582 (1973); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 536

17   F.2d 730, 737 (7th Cir. 1976).

18         An insurer-appointed defense counsel owes primary obligations to the insured to provide

19   "the same level of competent and ethical representation 'as if [it] had retained [them] personally."

20   *Dynamic Concepts v. Truck Exchange*, 61 Cal. App. 4th 999, 1008 (1998), *citing Barney v. Aetna*

21   *Casualty & Surety Co*., 185 Cal. App. 3d 966, 982 (1986); *Lysick v. Walcom*, 258 Cal. App .2d

22   136, 146 (1968). If panel counsel puts the interests of the insurance company ahead of the

23   insured, panel counsel should at a minimum be disqualified, but also may face "malpractice

24   liability, disciplinary actions and possible loss of coverage defenses." *Dynamic Concepts*, 61 Cal.

25   App. 4th at 1009; *Betts v. Allstate Ins. Co*., 154 Cal. App. 3d 688, 716 (1984) (finding liability

26   against insurance defense attorney and insurer for wrongly favoring carrier's interests over

27   insured's).

28   / / /

### 3.  *Automatic Disqualification Applies Here*

In determining whether to grant a party's motion to disqualify, paramount concern must be given to preserving public trust in the scrupulous administration of justice and in the integrity of the bar. *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1428 (1999) (right to choose counsel yields to ethical considerations).  When a potential conflict of interest arises, the court must determine whether the attorney can preserve his duty of loyalty. *Flatt v. Superior Court*, 9 Cal. 4th 275, 284 (1994).  However, when an actual conflict of interest arises, *per se* or automatic disqualification applies. *Id.*  An actual conflict occurs when representation of one client is rendered less effective by reason of the representation of the other. *Spindle v. Chubb/Pacific Indemnity Group*, 89 Cal. App. 3d 706, 713 (1979). Or, more simply, when an attorney simultaneously represents clients with adverse interests. *See, e.g., State Farm Mut. Auto. Ins.*, 72 Cal. App. 4th at 1428 (citing Cal. Rules of Professional Conduct, rule 3-310). Where mandatory disqualification applies, it is inappropriate to balance the competing interests to the disqualification, or to apply the "substantial relationship" test for former client conflicts. *State Farm Mut. Auto. Ins.*, 72 Cal. App. 4th at 1432-1433.

## B.  The Wood Firm Must be Automatically Disqualified Based on Multiple Ethical Violations

The Wood firm has materially breached its ethical duties to CDC, thereby creating an actual conflict of interest requiring mandatory disqualification.

### 1.  *The Wood Firm Breached the Duty of Confidentiality*

The Wood firm must be disqualified for materially breaching the duty of confidentiality. The facts are clear: the Wood firm deliberately disclosed CDC's confidences to Fireman's Fund after CDC and CDC's lead counsel explicitly directed the Wood firm, in writing, multiple times, not to disclose such confidences.

The client may refuse to disclose, and prevent others from disclosing, a confidential communication between the client and lawyer. Cal. Evid. Code § 954; *Dietz v. Meisenheimer & Herron*, 177 Cal. App. 4th 771, 786 (2009) (the attorney must not reveal information protected from disclosure without the informed consent of the client).  The attorney's duty to protect each

1  client's confidential communications means the attorney must not disclose confidences from the

2  insured to the insurer where their interests diverge. *See* Cal. Bus. & Prof. Code § 6068(e); Cal.

3  Rules of Professional Conduct, rule 3-100; *see also Lectrolarm Custom Sys., Inc. v. Pelco Sales,*

4  *Inc.*, 212 F.R.D. 567, 571 (E.D. Cal. 2002) (attorney-client privilege is shared only when insurer

5  defends without reservation).  Additionally, where counsel gains information during the course of

6  representation indicating that the insured is actually not entitled to coverage, **counsel owes a duty**

7  **not to reveal that information to the insurer**. *American Mutual Liability Ins. v. Superior*

8  *Court*, 38 Cal. App. 3d 579, 592 (1974) (emphasis added); *see* Cal. State Bar Ethics Opinion

9  1995-139 ("where matters adverse to the insurer are discovered, even where the insured has failed

10  to be candid with the insurer or the attorney, the attorney may not reveal these matters to insurer,

11  and may be required to withdraw").  Each relationship is endowed with a duty of confidentiality

12  which is separate from and protected against the other.  *American Mutual*, 38 Cal. App. 3d at 592.

13      In this case, the Wood firm has been shown to have violated the duty of confidentiality in

14  at least two ways, each one forming an independent basis for disqualification.

15      First, the Wood firm deliberately forwarded a copy of CDC's confidential mediation brief

16  to Fireman's Fund against the explicit written instructions of CDC, CDC's lead counsel, and the

17  mediator, as explained above. (*See* Caufield Decl. at ¶¶ 2-3, Ex. 1).

18      Second, the Wood firm has disregarded express written directives from CDC and its lead

19  counsel not to disclose privileged and confidential communications to Fireman's Fund by actually

20  disclosing those very same communications to Fireman's Fund.  Pursuant to State Bar Opinion

21  1995-193, upon learning of the opposing parties' theories of liability which potentially related to

22  non-covered claims and/or gave rise to coverage defenses for Fireman's Fund (*see* Caufield Decl.

23  at ¶ 4), the Wood firm's ethical obligations prohibited it from providing those facts and

24  allegations to Fireman's Fund. *See* Cal. State Bar Ethics Opinion 1995-139; *see also American*

25  *Mutual*, 38 Cal. App. 3d at 592 (Caufield Decl., Ex. 2).  In addition, CDC's lead counsel had

26  instructed the Wood firm in writing to keep the communications confidential and not to share

27  them with Fireman's Fund. *See* Cal. State Bar Ethics Opinion 1995-139 (*See* Caufield Decl. at

28  Ex. 3).  Despite the specific and repeated instructions from CDC to keep the communications

1   confidential, the Wood firm breached its ethical duties to CDC by forwarding the exact

2   communications to Fireman's Fund. (*See* Caufield Decl. at Ex. 3).

3          These unauthorized disclosures created an actual conflict of interest in the Wood firm's

4   joint representation of CDC and Fireman's Fund.  This actual conflict requires *per se*

5   disqualification. *See Flatt*, 9 Cal. 4th at 284 (where jointly represented clients become adverse to

6   each other over a particular issue, *per se* disqualification is automatic); *see also Visa U.S.A., Inc.*

7   *v. First Data Corp.,* 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (in evaluating whether counsel

8   may continue to jointly represent adverse clients, a court must presume the duty of loyalty has

9   been breached and that counsel is *automatically disqualified*).

10          Therefore, the Court should automatically disqualify the Wood firm based on each of

11   these violations of the duty of confidentiality.

12                    *2.  The Wood Firm Breached the Duty of Loyalty*

13          Disqualification is also warranted by the Wood firm's multiple breaches of its duty of

14   loyalty to CDC, each of which forms an independent basis for disqualification.

15          First, the Wood firm has failed and refused to produce to CDC a complete copy of the

16   Wood firm's litigation file concerning CDC's defense, despite CDC's numerous requests and

17   despite CDC's rights under California law to examine such documents. *See* Cal. State Bar Formal

18   Opinion Interim No. 96-0012 ("…retained counsel should honor the insured's request to examine

19   the entire litigation file, subject to retained counsel's right to assert the work product doctrine.");

20   *Lasky, Haas, Cohler & Munter v. Superior Court*, 172 Cal. App. 3d 264 (1985) (Caufield Decl.,

21   Ex. 5).  To this day, the Wood firm continues to refuse to turn over the litigation file to CDC.

22   (Caufield Decl. at ¶ 9).

23          Second, the Wood firm has deliberately misrepresented the facts in the underlying

24   litigation for the direct purpose of developing litigation strategies that benefit only Fireman's

25   Fund and harm CDC by shifting greater liability to CDC during policy years which are outside of

26   Fireman's Fund's coverage.  The positions taken by the Wood firm are directly adverse to CDC's

27   interests, thereby requiring automatic disqualification. *See Spindle*, 89 Cal. App. 3d at 713; *State*

28

1   *Farm Mut. Auto. Ins.*, 72 Cal. App. 4th at 1428 (citing California Rules of Professional Conduct,

2   rule 3-310).

3           Third, the Wood firm has argued for an ████████████████████████████

4   ████ briefing submitted to the mediator for settlement purposes.  Again, the Wood firm's

5   purported "defense" strategy is directly adverse to CDC's legal and financial interests.

6           Fourth, despite the numerous instances of ethical malfeasance discussed above, the Wood

7   firm continues to refuse to withdraw from the representation in a manner that will not prejudice

8   CDC.  This utter refusal to abide by CDC's repeated requests to withdraw directly contravenes

9   State Bar Ethics Opinion 1995-193 and the Wood firm's duty of loyalty to CDC.

10          Therefore, the Court should automatically disqualify the Wood firm based on each of

11  these violations of the duty of loyalty.

12  **IV.   CONCLUSION**

13          For the foregoing reasons, CDC respectfully requests that this Court disqualify the Wood

14  firm from any further representation of CDC.  CDC requires immediate redress for these blatant

15  ethical violations.  It is critical to CDC's ability to protect itself from further harm by the Wood

16  firm that the Court disqualify the Wood firm once and for all.

17

18  DATED:  September 16, 2015                CAUFIELD & JAMES, LLP

19

20                                           */s/ Jeffery L. Caufield*
                                             Jeffery L. Caufield, Esq.
21                                           Attorneys for Citizens Development
                                             Corporation, Inc.

22

23

24

25

26

27

28