1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                         **SOUTHERN DISTRICT OF CALIFORNIA**

10   CITIZENS DEVELOPMENT                    CASE NO. 3:12-cv-0334-GPC-KSC
     CORPORATION, INC., a California
11   corporation,                            **ORDER:**

12                            Plaintiff,     **(1) GRANTING MOTION TO
                                             WITHDRAW**
13
                                             **(2) DENYING EX PARTE MOTION
14        v.                                 TO SHORTEN TIME ON MOTION
                                             TO WITHDRAW**
15
                                             **(3) DENYING MOTION TO
16                                           DISQUALIFY COUNSEL**

17                                           **(4) GRANTING MOTIONS TO
     COUNTY OF SAN DIEGO, a                  FILE UNDER SEAL**
18   California municipal corporation,
     CITY OF SAN MARCOS, a                   **(5) VACATING HEARING DATE**
19   California municipal corporation,
     CITY OF ESCONDIDO, a California
20   municipal corporation, VALLECITOS       [ECF Nos. 144, 149, 154, 156]
     WATER DISTRICT, a California
21   municipal corporation, HOLLANDIA
     DAIRY, INC., a California
22   corporation, and DOES 1 through 100,
     inclusive,
23
                            Defendants.
24

25        Before the Court is Plaintiff Citizens Development Corporation, Inc.'s

26   ("Plaintiff") motion to disqualify counsel, ECF No. 144, and related motions to seal,

27   ECF No. 149, 154; and  non-parties Wood, Smith, Henning & Berman LLP ("Wood

28   Smith" or "WS") and David F. Wood's ("Wood") motion to withdraw as counsel, and

related ex parte motion to shorten time on motion to withdraw as counsel, ECF No. 156. The motion to disqualify has been fully briefed. WS Opp., ECF No. 148; Pl. Reply, ECF No. 152. The motion to withdraw has been opposed. Pl. Opp., ECF No. 159. Upon review of the moving papers and the applicable law, the Court hereby **GRANTS** WS's motion to withdraw, **DENIES** WS's ex parte motion to shorten time on their motion to withdraw, **DENIES** Plaintiff's motion to disqualify counsel, **GRANTS** the motions to seal, and **VACATES** the December 17, 2015 hearing on the motion to disqualify.

## BACKGROUND

This motion arises out of a Comprehensive Environmental Response, Compensation, and Liability ("CERCLA") cost recovery action filed by Plaintiff CDC against Defendants the County of San Diego, the City of San Marcos, the City of Escondido, Vallecitos Water District, and Hollandia Dairy. Compl., ECF No. 1. The case has been stayed pending mediation between the parties since January 8, 2014. Order Granting Joint Mot. to Stay Action Pending Mediation, ECF No. 94.

On September 2, 2015, the Court granted CDC's motion to lift the stay, ECF No. 122, for the limited purpose of filing a motion to disqualify WS, which had been appointed to represent CDC in this action by Fireman's Fund Insurance Company ("FFIC"), which is one of CDC's insurance carriers in this case. Order Granting Motion to Lift Stay, ECF No. 133.

On September 16, 2015, CDC attempted to file their entire motion to disqualify, as well as related documents, as attachments to a motion to file documents under seal. ECF No. 137. On October 2, 2015, FFIC motioned for leave to file a limited objection to CDC's Motion to File Documents Under Seal as well as for related ancillary relief, including permission to participate in litigation concerning the disqualification motion. FFIC Mot. 7, ECF No. 139-1.[1] On October

---

[1] All pagination refers to that created by the CM/ECF system, not the parties' own page numbers.

28, 2015, the Court issued an Order denying CDC's motion to file documents under seal, directing CDC to file a redacted version of their motion to disqualify, denying FFIC's motion for leave to file a limited objection to CDC's motion to disqualify, and indicating that WS, not FFIC, would be in the best position to respond to the allegations against it lodged by CDC. Sealing Order, ECF No. 143. The Court also reviewed the allegations CDC lodged against WS and found that if CDC's allegations were found to be true, WS would have violated its ethical duties to its client. *See id.* at 9–10.

On October 30, 2015, CDC filed a redacted version of their motion to disqualify. Pl. Mot, ECF No. 144.  On November 13, 2015, WS filed a response. WS Opp., ECF No. 148. On November 20, 2015, CDC filed a reply. On December 9, 2015, WS filed a motion to withdraw as counsel, as well as an ex parte motion to shorten time on the motion to withdraw as counsel. WS Mot., ECF No. 156. On December 14, 2015, CDC filed a response. Pl. Opp., ECF No. 159.

## LEGAL STANDARD

The disqualification of counsel because of an ethical violation is a discretionary exercise of the trial court's inherent powers. See *United States v. Wunsch*, 84 F. 3d 1110, 1114 (9th Cir.1996); *see also Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103–04 (N.D. Cal. 2003). However, disqualification is a drastic measure that is disfavored. *Visa U.S.A., Inc. v. First Data Corp.*, 241 F.Supp.2d at 1104. Because they are often tactically motivated, motions to disqualify "should be subjected to particular judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal citations omitted). However, "the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Federal Ins.*, 72 Cal. App. 4th 1422, 1428 (1999). Motions to disqualify counsel are governed by state law. *See W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1080 (C.D. Cal. 2015)

(citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)); *see also* Civil Local Rule 83.4(b).

State law also governs motions for permissive withdrawal. *See Estate of Przysiecki v. Eifert*, No. 07CV39 WQH RBB, 2010 WL 99075, at *1 (S.D. Cal. Jan. 6, 2010); *see also* Civil Local Rule 84.3(b) (requiring counsel to "comply with the standards of professional conduct required of members of the State Bar of California"). In turn, California Rule of Professional Conduct 3–700 provides:

> (C) Permissive Withdrawal.
> If rule 3-700(B) is not applicable, a member may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because
>     (1) The client . . .
>         (d) by other conduct renders it unreasonably difficult for the member to carry out the employment effectively, or . . .
>     (3) The inability to work with co-counsel indicates that the best interests of the client likely will be served by withdrawal.

Before withdrawing, the attorney must have "taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, complying with rule 3-700(D), and complying with applicable laws and rules." *Id.* at 3-700(A)(2). Counsel must seek permission from the Court in order to withdraw. Civil Local Rule 83.3.f.3.

## DISCUSSION

### I.    CDC's Motion to Disqualify

CDC moves to disqualify WS, alleging that WS has acted unethically in: (1) illicitly obtaining a copy of CDC's confidential mediation brief and forwarding it to FFIC against the express written instructions of CDC, CDC's lead counsel, and the mediator; (2) disclosing CDC's confidential communications to FFIC against CDC's express instructions; (3) refusing to produce a copy of its litigation file to CDC; (4) slanting facts in the ongoing litigation in memoranda to FFIC in order to bolster FFIC's coverage position against CDC; (5) submitting briefing to the

mediator that argued for an allocation of liability advantaging FFIC at CDC's

expense in their ongoing coverage dispute; and (6) only agreeing to withdraw from

the representation if they are not required to admit to ethical violations. Pl. Mot.

4–10.

WS denies that they have breached their ethical duties to CDC, arguing that:

(1) WS did not send CDC's confidential mediation brief to FFIC; (2) WS made no

improper disclosures to FFIC; (3) CDC is already in possession of all relevant

litigation documents; (4) WS did not misrepresent facts in its communications with

FFIC in order to bolster FFIC's coverage positions against CDC; (5) WS did not

submit a mediation brief to the mediator; and (6) WS will not admit to ethical

violations WS has not committed in order to be permitted to withdraw by CDC. WS

Opp. 3–7.

In the Court's October 28, 2015 sealing order, this Court found that:

> In the tripartite relationship between insurer, insured, and counsel, counsel has rights and obligations founded not only upon contract, but upon the Rules of Professional Conduct. *Am. Mut. Liab. Ins. Co. v. Superior Court*, 38 Cal. App. 579, 592 (1974). As alluded to above, pursuant to rule 3-310 of the California Rules of Professional Conduct, the California State Bar's Standing Committee on Professional Responsibility and Conduct has provided guidance on the rights and obligations of counsel in the tripartite relationship. [*See Issue: To Whom Does an Attorney Owe Duties When He or She Acts As Ins. Def. Counsel* [hereinafter "CA Bar Guidance"], CA Eth. Op. 1995-139 (Cal. St. Bar. Comm. Prof. Resp.), 1995 WL 255397.] Under this guidance, counsel owes duties of loyalty and confidentiality to the insured/client. *See id.* at *3 (noting that "the attorney is obligated at all times to protect the insured/client and may not act in any way which prevents devoting his entire energies to his client's interest," and that "[i]t is also the duty of any attorney to maintain inviolate the confidences of a client and to preserve at every peril to himself or herself the client's secrets" (internal quotation marks omitted)). The guidance continues,

> This means that, even where the attorney has a close ongoing relationship with an insurer, and from a business perspective considers insurer an important "client," in any particular representation it is the obligation to protect the insured's confidences and secrets which is paramount. Thus, if, for example, the attorney gains information during the course of representation which the attorney believes demonstrates that the insured is actually not entitled to coverage, the attorney nevertheless owes a duty to the insured/client not to reveal this information to the insurer. This is true even where the attorney comes to believe that the insured has fraudulently created a

1
2
3
4

> situation in which coverage appears to exist where it actually does not. For example, an insured might claim to be driving a vehicle when the actual driving was done by a friend or family member who was not insured. Even in these relatively extreme situations, the requirements of Business and Professions Code section 6068, subdivision (e) prevent disclosure to anyone, including the insurer, of material harmful to the insured.

5 Sealing Order 9–10. Based on this standard, this Court found that if CDC's

6 allegations were found to be true, WS would have violated its ethical duties to

7 CDC. *Id.* at 10. The Court will examine each of CDC's allegations in turn.

8          **A.     WS sending CDC's confidential mediation brief to FFIC**

9       CDC alleges that WS "[i]llicitly [o]btained a [c]opy of CDC's [c]onfidential

10 [m]ediation [b]rief and [f]orwarded [i]t to [FFIC] [a]gainst the [e]xpress [w]ritten

11 [i]nstructions of CDC, CDC's [l]ead [c]ounsel, and the [m]ediator." Pl. Mot. 4. For

12 evidence, CDC submitted a declaration from its lead counsel, Jeffrey L. Caufield,

13 that "the mediator instructed all counsel that the mediation briefs were to be

14 confidential, for the mediator's eyes only, and not to be provided to the insurance

15 carriers." Caufield Decl. 1, ECF No. 144. CDC also submitted an e-mail sent from

16 David F. Wood to Scott Osmus, a claim adjuster at FFIC, in which Wood stated that

17 WS "have now obtained a copy of the preliminary mediation brief submitted by

18 Caufield & James, and this report will summarize that brief." Pl. Mot. Ex. 1. The e-

19 mail was cc'd to Mathew McMillan, an attorney at lead counsel's firm Caufield &

20 James, LLP ("C&J"), as well as Jade Tran, attorney at WS. *Id.* The e-mail

21 summarized the liability percentages that the mediation brief argued for and the

22 reasoning for those percentages. *Id.* The discussion of CDC's liability in the e-mail

23 consisted of one paragraph stating the following:

24
25
26
27
28

█████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

██████████████████████████████████████
███████████████████████

Pl. Mot. Ex. 1, at 2.

WS responds that it never sent a copy of the mediation brief to FFIC, and that the e-mail, which was sent seven months after the mediation brief was submitted to the mediator, only disclosed information that FFIC was entitled to as CDC's insurer in order to assess potential exposure, not information that FFIC could use against CDC. WS Opp. 3–4.

Upon review of the record, the Court is inclined to agree with WS. The only evidence CDC provides is the e-mail from Wood to Osmus, which is not evidence that WS sent a copy of the mediation brief to FFIC. Instead, the portion of the e-mail pertaining to CDC appears to summarize why CDC believed that CDC was responsible for a relatively small portion of the liability for the cleanup costs. *See* Pl. Mot. Ex. 1, at 2–3. Some of this information is already publicly available. For example, the statement that CDC owns approximately 252 acres of the watershed is also available in CDC's publicly lodged Complaint. *See* Compl. 1, ECF No. 1.

But more importantly, CDC has not concretely explained how the rest of the information in this paragraph would actually disadvantage CDC in any subsequent coverage dispute with FFIC. Moreover, it is difficult to see how the sending of this e-mail from Wood to Osmus could be described as "illicit" or "surreptitious," given that Wood cc'ed the e-mail to McMillan, an attorney at C&J. Instead, WS's summarizing of the mediation brief, sent seven months after the brief was initially submitted to the mediator, would appear to fulfill their "obligation of any attorney to keep clients 'reasonably informed about significant developments' relating to the case." *See* CA Bar Guidance, 1995 WL 255397.

**B.    WS disclosing CDC's confidential communications to FFIC**

CDC alleges that on September 15, 2014, Mr. Wood copied FFIC's claims adjuster, Scott Osmus, on an e-mail chain with CDC's lead counsel, Caufield, such that FFIC received copies of prior emails between Caufield and Wood, "which

1  included privileged and confidential discussions of coverage issues." As evidence,

2  CDC attaches the purported e-mail chain between Wood and Caufield, stretching

3  from August 22, 2014 to September 15, 2014, *see* Pl. Mot. Ex. 3, as well as an e-

4  mail chain between Wood and Caufield on September 18, 2014, in which Wood

5  stated:

6      "I . . . realize that I may have inadvertently forwarded one or more
       emails from you that I did not intend to send to Scott Osmus. I didn't
7      realize that you had in fact copied every past email you sent to me
       whenever you sent me a new one. I apologize for that and will make
8      sure it doesn't happen in the future."

9  Pl. Mot. Ex. 4.

10     WS concedes that it forwarded the e-mail chain to FFIC, but contends that the

11 disclosure was both accidental and harmless, since it did not alter FFIC's limited

12 reservation of rights. WS Opp. 4–5.

13     Upon review of the e-mail chain, the Court agrees with WS that its contents

14 do not appear to prejudice CDC. The e-mail chain consists of a number of e-mails

15 between Wood and Caufield where the latter demanded that WS provide its legal

16 opinion as to a number of coverage disputes between CDC and FFIC and advanced

17 numerous speculations as to considerations that could affect those coverage

18 disputes, to which Wood repeatedly responded that WS was retained to defend CDC

19 with regards to liability, not either CDC or FFIC with regards to coverage. *See* Pl.

20 Mot. Ex. 3. Although it may be the case that Wood ought not have sent these e-

21 mails on to Osmus, CDC has not identified, and the e-mails do not appear to

22 contain, any of the type of secrets specified by the CA Bar Guidance that would

23 have an adverse impact on CDC in any subsequent coverage dispute with FFIC.

24     Indeed, the Court observes that Caufield placed Wood in a difficult position

25 by sending what as far as the Court can discern were lengthy and irrelevant, if not

26 inappropriate, messages to the latter—as well as by adopting an adversarial,

27 confrontational tone in his communications which the Court would find uncivil if

28 used when addressing *opposing* counsel, much less co-counsel. It is surprising that

1   CDC's lead counsel relies on this e-mail chain to indict WS's professionalism, since
2   the contents of the e-mails reveal a lack of the type of courtesy and civility that the
3   Court expects the parties to show each other.

4                **C.**       **WS refusing to produce a copy of its litigation file to CDC**

5         CDC claims that WS "has failed and refused to produce a copy of its
6   litigation file to CDC, despite numerous requests." Pl. Mot. 7. Under California law,
7   "an attorney has a duty to promptly surrender any communicated work product
8   contained in an attorney's litigation file upon request of the client." *In re Ramirez*,
9   183 B.R. 583, 587 (B.A.P. 9th Cir. 1995), *dismissed on other grounds*, 201 F.3d
10  444 (9th Cir. 1999) (citing *Rose v. State Bar*, 49 Cal. 3d 646, 655 (1989)).
11  Moreover, the California State Bar's Standing Committee on Professional
12  Responsibility and Conduct recommends that "when a lawyer represents multiple
13  clients in the same matter, each client usually is entitled to review information in the
14  client file that any one of the clients is entitled to receive . . . absent a special
15  circumstance, retained counsel should honor Insured's request to examine the entire
16  file, subject to retained counsel's right to assert the work product doctrine." CA Eth.
17  Op. Interim No. 96-0012, at 3 [hereinafter "CA Bar Guidance 2"] (Cal. St. Bar.
18  Comm. Prof. Resp.) (citing *Lasky, Haas, Cohler & Munter v. Superior Court*, 172
19  Cal. App. 3d 264 (1985)). However, "[i]f retained counsel is unsure whether
20  permitting Insured to review the file will violate retained counsel's duty of
21  confidentiality to the Insurer, then retained counsel should decline to permit Insured
22  to review the portions of the file over which retained counsel believes Insurer might
23  be able to assert confidentiality." *Id.*

24        CDC and WS dispute whether WS has produced the complete litigation file.
25  WS contends that CDC's request is "misleading" because CDC already has "the
26  case documents" and "[a]ll of [WS]'s reports to [FFIC] regarding the defense of this
27  case," and all "pleadings and discovery." WS Opp. 5. CDC replies that WS cannot
28  have turned over the whole file, because "[a]fter four (4) years of litigation in the

1   case, Wood turned over a paltry three (3) memos including one or two e-mails from
2   the Wood firm to the insurance carrier as the purported entirety of the file.
3   Regarding four (4) years of litigation, we are to believe that he had no written
4   communications with the carrier (or anybody), except for the three memos and one
5   or two e-mails?" Pl. Reply 8. CDC also argues that WS's refusal to allow CDC to
6   participate in oral communications between WS and the insurer, as well as any
7   consultant retained in the case, amounts to a refusal to produce the complete
8   litigation file. *Id.*

9       At issue appears to be what is meant by the "complete litigation file." CDC's
10  lead counsel appears to take the position that the "complete litigation file" includes
11  "a full and complete copy of ALL communications between your respective firms
12  and the insured's carriers,"as well as the participation of C&J in "ALL future oral
13  and/or written communications between your law firms and the insurance carriers."
14  *See* Pl. Reply, Ex. 12, at 2. The Court finds that CDC overstates the meaning of
15  "complete litigation file." First, CA Bar Guidance 2 contemplates that the litigation
16  "file" refers to physical or written records, including records of oral
17  communications, but not the oral communications themselves. *See generally* CA
18  Bar Guidance 2. It does not appear to contemplate that the insured should have the
19  right to participate in all oral communications between the counsel and the insurer.
20  Second, CA Bar Guidance 2 states that "[a]ny communication between the insurer
21  and the retained attorney *concerning the defense of insured's claim* is a matter of
22  common interest to both insured and insurer [to which] insured has a right." *See id.*
23  at 1 (emphasis added). Thus, WS is not required to turn over communications
24  between itself and the insurer that are unrelated to the case.

25      The Court finds that it is unclear whether there is any information in WS's
26  client file for the case to which FFIC, but not CDC, has been privy. CDC questions
27  the likelihood that "[a]fter four (4) years of litigation," the litigation file could be so
28  thin. However, the Wood firm was only appointed as counsel on January 7, 2014.

ECF No. 93. Hence, CDC's suggestion that WS has been involved in the litigation for four years is misleading. Moreover, this case has been in mediation since January 8, 2014, the day after WS was appointed, during which time the Court has chided the parties for a number of delays. *See, e.g.*, Transcript of April 3, 2015 Status Hearing 5–6, ECF No. 121. Thus, the Court does not find it altogether improbable that WS would have only communicated with other parties regarding the case a limited number of times. However, to the extent that WS has withheld from CDC any communications relating to the case to which FFIC has been privy, WS is **ORDERED** to send copies of these communications to CDC.

         **D.**     **WS slanting facts in its litigation memoranda to FFIC in order to bolster FFIC's coverage position against CDC**

CDC alleges that WS "has made material misrepresentations in writing to CDC and FFIC which directly impact CDC's potential liability and coverage position." Pl. Mot. 8. Specifically, CDC alleges that in a litigation report to FFIC dated September 5, 2014, WS misrepresented the timeframe of CDC's ownership of the Lake and when the pollution occurred in order to support FFIC's position that the pollution occurred outside of FFIC's coverage period. *See id.* WS responds that the e-mail was simply a status report to FFIC about the case which does not impact coverage in any way. WS Opp. 6. While WS may have misstated some portions of the relevant history, these factual errors could easily have been remedied by CDC. *Id.*

Upon review of the e-mail in question, the Court finds that WS' factual errors do not amount to "material" misrepresentations. The e-mail appears to be a report to FFIC about the status of the case. In the section entitled "historic background," Wood states that ███████████████████████████████████████████████ ███████████████████████████████████████and that███████████████ ███████████████████████████████████████████████████████████████ ██████████████████████Pl. Mot., Ex. 6., at 1. While those factual assertions may be

incorrect, as WS points out, they are also easily remedied. CDC's lead counsel was copied on the e-mail and could have corrected Wood's misstatements. Moreover, information such as the ███████████████████████████and the█████████████ ███████is readily verifiable. Thus, the Court cannot see how WS's unsupported misstatements would materially disadvantage CDC were they to later contest those facts with FFIC.

### E.     WS submitting briefing to mediator disadvantaging CDC

Finally, CDC alleges that WS secretly submitted a separate brief to the mediator arguing for a "[s]trikingly [h]igh [p]ercentage of [l]iability [a]gainst CDC," as part of WS's ongoing effort to bolster FFIC's coverage position against CDC. Pl. Mot. 9. WS argues that this never happened—instead, CDC decided not to use the mediation brief that WS drafted, but it was never shared with the mediator or the other parties. WS Opp. 7.

The Court finds that CDC has presented no evidence that WS actually sent any briefing to the mediator.

### F.     WS refusing to withdraw

Finally, CDC argues that WS refused to withdraw from the representation "in a manner consistent with its ethical obligations to CDC." Pl. Mot. 9. By CDC's own admission, what CDC means by this is that "the Wood firm has explained that it will withdraw, but only if it is not required to admit any conflict of interest or breach of ethical duties." *Id.* at 10. As WS explains, WS asked FFIC to select new counsel and on December 1, 2015, FFIC's new counsel sent a substitution of attorney to CDC's lead counsel. WS Mot. 3. However, CDC's lead counsel refused to sign the substitution and stated that he would not stipulate to WS's withdrawal unless Wood admitted that he had engaged in unethical conduct. *Id.*

At the same time, CDC accuses WS of breaching their duty of loyalty to CDC by describing CDC's disqualification motion to a legal publication as "groundless and disingenuous." Pl. Reply 4. CDC argues that WS should be subject to sanctions

for "going into the details of the particular issues with the Court," admonishing WS that for the purposes of a motion to withdraw "it will be sufficient to state words to the effect that ethical considerations require withdrawal or that there has been an irreconcilable breakdown in the attorney-client relationship." Pl. Opp. 6 (citing CA Bar Guidance 10).

CDC's request for sanctions is inappropriate given that the Court explicitly directed WS to respond to CDC's allegations in the October 28, 2015 Sealing Order. But furthermore, the Court rejects the view that an insured can level largely meritless accusations of unethical conduct against appointed counsel and then place that counsel in a position where they are unable either to defend themselves or to gracefully exit the situation by withdrawing as counsel without admitting to unethical conduct that they did not engage in.

Thus, the Court finds that WS's actions in this case do not rise to the level that would satisfy the "strict judicial scrutiny" this Court is required to apply to motions to disqualify counsel. Accordingly, CDC's motion to disqualify is **DENIED**.

## II. Motion to Withdraw

For the reasons discussed in Part I, the Court finds that WS has easily met the standard for withdrawal whereby a client has rendered it "unreasonably difficult for [counsel] to carry out his employment effectively." Accordingly, WS's motion to withdraw is **GRANTED**.

## III. Motions to Seal

Pursuant to this Court's October 28, 2015 Sealing Order, parties publicly filed redacted versions of their motions and now seek to file sealed, unredacted versions of same. Accordingly, parties' motions to file under seal are **GRANTED**.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      CDC's motion to disqualify, ECF No. 144, is **DENIED**. However, WS

1        is **ORDERED** to send CDC the complete litigation file if they have not

2        already done so.

3      2.    WS's motion to withdraw, ECF No. 156, is **GRANTED**.

4      3.    Parties' motions to file under seal, ECF Nos. 149, 154, are

5        **GRANTED**.

6      4.    The hearing scheduled for December 17, 2015 is **VACATED**.

7      5.    WS's ex parte motion to shorten time on the motion to withdraw, ECF

8        No. 156, is **DENIED** as moot.

9      **IT IS SO ORDERED**.

10

11  DATED:  December 17, 2015

12

13                  HON. GONZALO P. CURIEL
                      United States District Judge