1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10
11

CITIZENS DEVELOPMENT
CORPORATION, INC., a California
corporation,

12
13

Plaintiff,

14

vs.

15
16
17
18
19
20
21
22

COUNTY OF SAN DIEGO, a
California municipal corporation, CITY
OF SAN MARCOS, a California
municipal corporation, CITY OF
ESCONDIDO, a California municipal
corporation, VALLECITOS WATER
DISTRICT, a California municipal
corporation, HOLLANDIA DAIRY,
INC., a California corporation, and
DOES 1 through 100, inclusive,

23

Defendants.

24
25
26

AND RELATED COUNTER-ACTIONS
AND CROSS-ACTIONS.

27

/ / /

28

Case No.: 12CV0334 GPC KSC

**ORDER DENYING
HOLLANDIA'S MOTION FOR
JUDGMENT ON THE
PLEADINGS**

**[Dkt. No. 190]**

1
2
3
4

Before the Court is Defendant Hollandia Dairy's Motion for Judgment on the Pleadings. Dkt. No. 190. The motion has been fully briefed. Based upon review of the moving papers, applicable law, and for the reasons that follow, the Court hereby DENIES Hollandia's motion in its entirety.

5

## BACKGROUND

6
7
8
9
10
11
12
13
14
15
16
17

This civil action arises out of the alleged contamination of the surface water and groundwater in and around Lake San Marcos ("the Lake") located in San Marcos, California. *See* First Amended Complaint ("FAC") ¶ 1, Dkt. No. 68. On September 20, 2011, the California Regional Water Quality Control Board, San Diego Region ("the RWQCB") issued an Investigative Order ("the IO") alleging that Plaintiff Citizens Development Corporation, Inc. ("CDC") had released pollutants into the Lake. *See id.* ¶ 4. In response, Plaintiff filed the present action against Defendants County of San Diego ("San Diego"), City of San Marcos ("San Marcos"), City of Escondido ("Escondido"), Vallecitos Water District ("Vallecitos"), and Hollandia Dairy ("Hollandia"), alleging that each of them was responsible for the discharges that contaminated the Lake and its surrounding waters. *See generally* Complaint, Dkt. No. 1; FAC, Dkt. No. 68.

18

**1. CDC's allegations**

19
20
21
22
23
24
25
26
27

The CDC alleges that the Lake has been contaminated by discharges stemming from a wide variety of sources, including but not limited to, improper waste disposal, poor or unmanaged landscaping practices, sanitary sewer overflows, septic system failures, groundwater infiltration, the presence and operation of "the dam," and other "non-point source discharges" caused by storm events and dry weather conditions. FAC ¶¶ 5-7. These discharges, CDC alleges, were generated by the real property that is located within the San Marcos Creek watershed and the upgradient of the Lake, which includes the farmland owned and operated by Hollandia Dairy. *Id.* ¶ 26.

28

1

Based on these and other allegations, the FAC asserts seven causes of action against Defendants.  They include: (1) private recovery under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA); (2) declaratory relief under CERCLA; (3) continuing nuisance; (4) continuing trespass; (5) equitable indemnity; (6) declaratory relief under California state law; and (7) injunctive relief under the Resource Conservation and Recovery Act (RCRA) as to Defendant Vallecitos only.  *See id.*  The FAC's CERCLA theory of liability is predicated on the assertion that Hollandia, along with the other Defendants, contaminated the Lake by releasing known "hazardous substances" into its watershed.  *Id.* ¶ 49.  CDC identifies those "hazardous substances," as "nitrogen, phosphorus, and nutrients found in fertilizers, pesticides and sewage." *Id.* ¶ 43.

**2**. **Escondido's, Vallecitos', and San Marcos' crossclaims**

Hollandia's answer to CDC's initial complaint contained crossclaims against Defendants Escondido, San Marcos, San Diego, and Vallecitos for (1) contribution under CERCLA and (2) indemnity, offset, and contribution under state law.  Dkt. No. 21 at 11-16.  All of Hollandia's crossclaims were "premised upon the same events, subject matter, and claims made by CDC in its complaint against Hollandia." *Id.* at 14.

Defendants Escondido, San Marcos, and Vallecitos responded to Hollandia's crossclaims by asserting claims of their own.  Vallecitos asserted crossclaims against Hollandia for (1) contribution under CERLCA; (2) indemnity offset; and (3) contribution under California law.  Dkt. No. 35 at 14-20.  Escondido asserted crossclaims against Hollandia for (1) response costs under CERCLA; (2) declaratory relief under CERCLA; (3) response costs under the California Superfund Act (CSA); (4) declaratory relief under the CSA; (5) contribution under California law; (6) negligence; (7) equitable indemnity; and (8) unjust enrichment.  Dkt. No. 38 at 10-19.  San Marcos asserted crossclaims against Hollandia for (1)

responses costs and contribution under CERCLA; (2) declaratory relief under CERCLA; (3) negligence; (4) declaratory relief under California law; and (5) equitable indemnity.  Dkt. No. 44 at 8-13.

### 3. Motion for Judgment on the Pleadings

On January 8, 2014, the Court granted the parties' joint motion to stay the action pending mediation.  Dkt. No. 94.  On October 11, 2016, the Court lifted the stay in order to permit Hollandia to file a motion for judgment on the pleadings.  Dkt. No. 180.  Hollandia's motion challenges all of the claims asserted against it, including those lodged by CDC, Vallecitos, Escondido, and San Marcos (collectively "the Opposing Parties").  Dkt. No. 190 at 9.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing — a motion for judgment on the pleadings is typically brought after an answer has been filed whereas a motion to dismiss is typically brought before an answer has been filed.  *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.  *Id.*; *see also Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6), because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.") (internal quotations and citation omitted).

When deciding a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been

denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  Courts, therefore, construe all material allegations in the light most favorable to the non-moving party. *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios*, 896 F.2d at 1550.  "[F]actual challenges to a plaintiff's complaint," however, have no bearing on the legal sufficiency of the allegations." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  As such, judgment on the pleadings in favor of a defendant is not appropriate if the complaint raises issues of fact that, if proved, would support the plaintiff's legal theory. *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).  In sum, a motion for judgment on the pleadings is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004).

The mere fact that a motion is couched in terms of Rule 12(c) does not prevent the district court from disposing of the motion by dismissal rather than judgment. *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 903 (S.D. Cal. 2004) (citing *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1038 (6th Cir. 1979)).  Courts have discretion to grant Rule 12(c) motions with leave to amend. *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007).  Courts also have discretion to grant dismissal on a 12(c) motion, in lieu of judgment, on any given claim. *Id.*; *see also Amersbach,* 598 F.2d at 1038.

/ / / /

/ / / /

4

1

## DISCUSSION

2         The gravamen of Hollandia's motion for the judgment on the pleadings is

3   that the Opposing Parties have failed to state valid claims under CERCLA because

4   they have not plead the release of any actionable "hazardous substances."[1]  This

5   argument is without merit.  CDC's pleadings, upon which all of the crossclaims are

6   based, identifies phosphorus, ammonia as nitrogen,[2] and nutrients found in

7   fertilizers, pesticides, and sewage as CERCLA-qualifying "hazardous substances."

8   FAC ¶ 44, Dkt. No. 68 at 11.  "Phosphorus" and "ammonia," in turn, are listed as

9   "hazardous substances" in EPA regulations.  *See* 42 U.S.C. §§ 9601(14); 40 C.F.R.

10  § 302.4.  The FAC, therefore, has adequately named "hazardous substances" for

11  purposes of pleading a CERCLA violation and surviving a motion for judgment on

12  the pleadings.

13        Notwithstanding the straightforward nature of this argument, Hollandia

14  argues that the pleadings fall short because they cannot be true.  Hollandia, the

15  motion explains, is only responsible for releasing "nutrients" from "cow manure,"

16  into the Lake and, thus, it contends that it is not liable under CERCLA because

17  "nutrients" from "manure" are not "hazardous substances" as a matter of law.

18  The Court emphatically rejects this conclusion.  As this order explains in further

19  detail below, Hollandia's line of argument is both procedurally and substantively

20

---

21  [1] This order's discussion of the sufficiency of the Opposing Parties' CERCLA pleadings will
    focus exclusively on the CDC's FAC, as all of the crossclaims are rooted in the CDC's
    underlying allegations against Hollandia. The Court will limit its analysis to this central claim

22  because Hollandia's additional arguments challenging the sufficiency of Escondido's, Vallecitos',
    and San Marcos' CERCLA pleadings are too cursory to enable any meaningful review. *See, e.g.*,

23  Dkt. No. 190 at 10-12.  Accordingly, the Court notes that any argument made by Hollandia in
    reference to the Opposing Parties' CERCLA claims that is omitted, here, has been considered and

24  rejected.
    [2] The "ammonia as nitrogen" language does not appear in the text of the FAC, but appears in

25  Exhibit 1 of the FAC, the Investigative Order.  *Compare* FAC ¶ 43, Dkt. No. 68 at 11 (hazardous
    substances "included, but are not limited to, nitrogen, phosphorus, and nutrients found in

26  fertilizers, pesticides, and sewage.") *with* FAC, Ex. 1, Dkt. No. 68-1 (hazardous substances are
    "ammonia as nitrogen, phosphorus, and nutrients.").  The Court concludes, however, that this

27  inconsistency is inconsequential as Hollandia's moving papers do not contest that "ammonia as
    nitrogen" has been plead.

28

defective.  Hollandia's contentions are substantively defective because the pleadings have identified actionable "hazardous substances" under CERCLA. Hollandia's argument is also procedurally defective because it improperly challenges the facts in the complaint and relies upon factual allegations absent in the pleadings.  Accordingly, and for the reasons set forth below, the Court **DENIES** Hollandia's Motion for Judgment on the Pleadings.

### A. Defendant Hollandia's Request for Judicial Notice

The Court will first address Defendant's numerous requests for judicial notice, as those requests inform the scope of the Court's review on a motion to dismiss.

As a general rule, "a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion." *U.S. v. 14.01 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008).  When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6).  Two exceptions to this rule exist.  *Lee*, 250 F.3d at 688.  The first provides that "a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Id.* (quotations omitted).  And "[i]f the documents are not physically attached to the complaint, [then] they may be considered if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them." *Id.* (quotations omitted).  The second provides that a court may take judicial notice of matters of public record. *Id.* (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

While the *Lee* standard lays out the circumstances under which judicial notice may be taken in a Rule 12 proceeding, the Federal Rules of Evidence dictate

what facts are properly subject to judicial notice.  Courts may judicially notice facts that are "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact is not subject to reasonable dispute if "it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Id.*  "[A] high degree of indisputability is the essential prerequisite to taking judicial notice of adjudicative facts."  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (citing Fed. R. Evid. 201(a) & (b) advisory committee's notes) (internal quotations omitted).  Accordingly, a court must proceed cautiously before granting judicial notice and do so only when a matter is "beyond reasonable controversy."  *Id.* (citing Fed. R. Evid. 201(a) & (b)).

### 1. Hollandia's Request for Judicial Notice Generally

Hollandia has requested that the Court take judicial notice of over sixty-two exhibits, totaling almost 300 pages in length.  *See generally* Dkt. Nos. 191-192.  Hollandia, however, has failed to carry its burden of persuading the Court that the facts and exhibits identified are the proper subjects of judicial notice.  *See Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (N.D. Cal. 2011) ("a party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice").  Hollandia's moving papers summarily seek to judicially notice facts and exhibits.  *See, e.g.*, Dkt. No. 192.  They do not, for instance, explain how the various requests conform to controlling law (i.e., the *Lee* exceptions and Fed. R. Evid. Rule 201) and they do not substantiate their requests with legal authority.  *See id.*  Absent specific arguments demonstrating why each of the sixty-two exhibits should be judicially noticed, the Court cannot possibly rule in favor of Hollandia.  It is Hollandia's responsibility, and not the Court's, to demonstrate that the judicial notice requirements have been satisfied.  *See Newman*, 272 F.R.D. at 516 (faulting the proponent for failing to

provide any legal or factual basis for its assertion of judicial notice). It is also Hollandia's responsibility, and not the Court's, to explain why a judicially noticeable fact or document is relevant to the underlying issues presented by the motion. *See Wham-O, Inc. v. Manley Toys Ltd.*, 2009 WL 6361387, at *5 (C.D. Cal. Aug. 13, 2009) (judicially noticeable documents must be relevant to the issues in the case). As Hollandia has failed to do either, here, the Court will not grant its requests.

The Court further notes that Hollandia's requests are also defective because of the content they seek to notice. Hollandia does not seek judicial notice of the fact that these sixty-two exhibits exist, but for the truth of the matters asserted therein. *See generally* John H. Reaves Decl., Dkt. No. 191 (making arguments premised on the contents of the exhibits sought to be noticed). Courts do not generally accept judicially noticed facts for their truth at this stage of the proceeding. *See Gerritsen v. Warner Bros. Entm't Inc.*, 12 F. Supp. 3d 1101, 1029 (C.D. Cal. 2015) (observing that it could take judicial notice on a motion to dismiss only to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."); *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d. 1052, 1061 (C.D. Cal. 2012) (refusing to take judicial notice of SEC filings for the truth of the matter asserted on a motion to dismiss); *In re Tyrone F. Conner Corp., Inc.*, 140 B.R. 771, 782 (E.D. Cal. 1992) (declining to take judicial notice of documents offered for the truth of the matter because doing so would violate procedural due process owed to plaintiff). If the Court were to take judicial notice of the truth of the facts that Hollandia has proffered, it would deprive the Opposing Parties of "the opportunity to use rebuttal evidence, cross-examination, and argument to attack [Hollandia's] contrary evidence." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005). Such a result, however, is impermissible as it directly contravenes the Court's Rule 12 responsibility to take the plaintiffs'

pleadings as true.  *See Gerritsen*, 112 F. Supp. 3d at 1022.   The Court, therefore, declines Hollandia's improper invitation to conduct a mini-trial at this juncture of the litigation.

## 2.  Request as to the Investigative Order and the RI/FS

At oral argument, Hollandia asserted that the Investigative Order and the Remedial Investigation/Feasibility Study Report (RI/FS) should nonetheless be judicially noticed as a matter of law under the doctrine of incorporation by reference.[3]  Incorporation by reference applies to situations "in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

CDC has incorporated the Investigative Order by reference into its complaint.  CDC specifically discusses the Investigative Order in the FAC and attaches it as an Exhibit.   *See* Dkt. No. 68-1.  There can, therefore, be little doubt that CDC's claim depends upon the IO or that the authenticity of the document has been established.  The Court, accordingly, finds it proper to rely upon the Investigative Order in reaching its decision on the merits.  As for the RI/FS and its appendices (*see* Exs. 1-11, Dkt. No. 191-1), the Court finds that they are not incorporated by reference under *Knievel*.  The FAC could not possibly have relied upon the RI/FS, or its contents, in making its claims because the RI/FS did not exist at the time the complaint was filed.  *See* Ex.1, Dkt. No. 191-2.  Plaintiff filed its complaint on October 11, 2012 and four years later, on September 20, 2016, the RI/FS was published.  Given this timeline, Hollandia has no legal basis for arguing that *Knievel* permits the Court to incorporate the RI/FS into the FAC by reference.

---

[3] The Court notes that Hollandia did not include the Investigative Order in its "Request for Judicial Notice."  *See* Dkt. No. 192.

### 3. Conclusion

In sum, Hollandia has failed to persuade the Court that it is either appropriate or relevant to take judicial notice of any of the sixty-two exhibits, including the RI/FS and its appendices, that it lists in its Request for Judicial Notice. Accordingly, the Court **DENIES** Hollandia's Request for Judicial Notice, Dkt. No. 192.  In addition, the Court finds that the RI/FS does not qualify for consideration under the "incorporation by reference" doctrine either.  The only document outside of the complaint that the Court will consider is the Investigative Order, as it has been attached to the complaint and, therefore, been incorporated by reference

### B. CERCLA Liability

"Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA[]) in response to the serious environmental and health risks posed by industrial pollution . . . The Act was designed to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. v. United States*, 556 U.S. 599, 602 (2009).  "Courts," therefore, "must construe the statute liberally in order to effect these congressional concerns." *Asarco LLC v. Atl. Richfield Co.*, 73 F. Supp. 3d 1285, 1293 (D. Mont. 2014) (internal citations omitted)

To establish a prima facie case under CERCLA, a plaintiff must plead facts establishing four elements: (1) that "the property at issue is a 'facility' as defined" in the Act; (2) that "a 'release' or 'threatened release' of a 'hazardous substance' has occurred; (3) that the 'release' or 'threatened release' has caused the plaintiff to incur response costs that were 'necessary' and 'consistent with the national contingency plan'; and (4) that the defendants are in one of four classes of persons subject to liability under CERCLA. *Carson Harbor Vill., Ltd. v. Cty. of L.A.*, 433

1    F.3d 1260, 1265 (9th Cir. 2006).[4]

2         **1.  Hazardous substances**

3         Section 102 of CERCLA defines "hazardous substances," in part, as "*any*

4    element, compound, mixture, solution or substance designated pursuant to section

5    9602 of this title."  42 U.S.C. §§ 9601(14) (emphasis added).  Section 9602, in turn,

6    delegates the determination of "hazardous substances" to the EPA.  *Id.* § 9602.  The

7    EPA has designated "[t]he elements and compounds and hazardous wastes

8    appearing in table 302.4 as hazardous substances under section 102(a) of the Act

9    [CERCLA]."  40 C.F.R. § 302.4.

10        The FAC identifies phosphorus, ammonia as nitrogen, and nutrients found in

11   fertilizers, pesticides, and sewage as qualifying "hazardous substances."  FAC ¶ 44,

12   Dkt. No. 68 at 11.  Both "phosphorus" and "ammonia" are listed as "hazardous

13   substances" in Table 302.4.  CDC, therefore, has adequately pled "hazardous

14   substances" for purposes of CERCLA liability.

15        **a.  Hollandia's Factual Challenges**

16        Notwithstanding the simplicity of this application of law to facts, Hollandia

17   vehemently argues that the Opposing Parties have nonetheless failed to plead

18   actionable "hazardous substances" because the IO addresses "[n]utrients, not

19   CERCLA 'hazardous substances,'" and because the RWQCB issued the IO for

20   "'*nutrient impairment*' by nitrates and phosphates in [the] Creek and Lake" not for

21   "phosphorus" and "ammonia."  Dkt. No. 190 at 15 (emphasis in original).  Stated

22   differently, Hollandia is arguing that the Court should disregard the CDC's

23   allegations because Hollandia was not responsible for the release of "phosphorus"

24   and "ammonia," but for other non-hazardous materials.

25        There are, however, two obvious defects with this argument that prevent the

26   Court's consideration of it.  The first is that Hollandia has misread the Investigative

27

28   [4] The Court will only address the second and third factors of this test as they are the only factors
     challenged in Hollandia's motion.

Case No.: 12-CV-0334 GPC KSC

Order.  Hollandia argues that the Court should disregard the FAC's "hazardous substances" allegations because they are contradicted by the Investigative Order attached to the complaint.  *See* Dkt. No. 190 at 14 (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) for the proposition that courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").  Yet contrary to what Hollandia represents to the Court, there is no contradiction between the "hazardous substances" allegations in the complaint and the Investigative Order.  The Investigative Order reads as follows:

> . . . The Lake is listed as impaired in that the water quality does not attain beneficial uses of the Lake designated in the San Diego Water Board's Water Quality Control Plan due to *ammonia as nitrogen*, *phosphorus* and *nutrients*.  These excessive nutrients contribute to eutrophication problems such as periodic algal blooms, confirmed presence of cyanobacteria toxins, and occasional fish kills at the Lake.

FAC, Ex.1, Dkt. No. 68-1 at 30 (emphasis supplied).  That the Investigative Order specifically singles out "ammonia as nitrogen" and "phosphorus" as pollutants undermines Hollandia's argument that "nutrients" formed the exclusive basis for the Investigative Order.  The Court, therefore, declines Hollandia's invitation to disregard the FAC's pleadings as contradictory and, therefore, deficient.

The second obvious issue with Hollandia's line of argument is that it amounts to an improper factual challenge of the pleadings.  Hollandia avers that it could not have caused the release of "phosphorus" or "ammonia as nitrogen" into the Lake, because cows produce nitrates, phosphates, and "naturally occurring ammonia" and none of those substances are listed as "hazardous substances" under CERCLA.  Dkt. No. 190 at 17.  The pleadings, however, do not identify "phosphates" and "nitrates" and "naturally occurring ammonia" as the "hazardous substances" at issue.  *See generally* FAC.  The pleadings also do not identify cow manure as the source of Hollandia's contamination.  Instead, the pleadings simply

claim that Hollandia, through the use of its land, released "phosphorus" and "ammonia as nitrogen" into the Lake.

It is this assertion, and not Hollandia's, that governs the Court's analysis at this stage of the proceedings. "[T]he allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios*, 896 F.2d at 1550; *see also Lee*, 250 F.3d at 690. While Hollandia may ultimately be correct that it only released "phosphates" and "nitrates" into the Lake through its "cow manure," those facts are procedurally irrelevant. It is simply not proper to use a Rule 12 motion to challenge factual matter in the complaint or to proffer competing factual allegations. The Court's sole focus is on the sufficiency of the pleadings, not whether the pleadings will ultimately prove to be true. Accordingly, because the FAC has correctly named "phosphorus" and "ammonia as nitrogen" as "hazardous substances," the Court rejects Hollandia's attempts to evade liability by attacking facts not stated in the complaint.[5]

### b. Hollandia's Legal Challenges

The Court is likewise unpersuaded by Hollandia's legal arguments challenging the sufficiency of the "hazardous substances" pled in the FAC.

Hollandia argues that it is "absurd" to conclude that "nitrogen, phosphorus, and nutrients" are "hazardous substances" because doing so "would expose everyone in the watershed [of the Lake] for fertilizer runoff, wild and domestic animal droppings and plant materials." Dkt. No. 190 at 16. "Under this logic," Defendant goes on to state, "the entire planet is a Superfund site since all life forms excrete waste." Whatever wisdom there is to this argument, however, it is no longer tenable after the Ninth Circuit's decision in *A & W Smelter & Refiners, Inc. v. Clinton*. *A & W Smelter* squarely addressed — and rejected — the "absurdity" of

---

[5] Indeed, much of Hollandia's brief is dedicated to arguing that phosphates, nitrates, and cow manure are not "hazardous substances" as a matter of law. *See, e.g.*, Dkt. No. 190 at 17-20.

reading CERCLA liability too broadly.  *See* 146 F.3d 1107, 1110 (9th Cir. 1998).

> Read as the EPA suggests, CERCLA seems to give the agency carte blanche to hold liable anyone who disposes of just about anything. Drop an old nickel that actually contains a nickel? A CERCLA violation. Throw out an old lemon? It's full of citric acid, another hazardous substance.  It's not surprising that an agency would urge an interpretation which gives it such broad discretion.  Perhaps more surprising is that CERCLA leaves us little choice but to agree . . .

*Id.*  The court went on to conclude, albeit reluctantly, that Section 9601's list of "hazardous substances" did not contain any "minimum level requirement" because the plain language of the statute left no room for a limiting interpretation.  *Id.* Section 9601, it noted, states in no uncertain terms that "any substance" designated as a "hazardous substance" under one of the EPA's various regulations is actionable.  *Id.*  As such and to the extent that a substance appears in Table 302.4, that fact is dispositive of whether there is a "hazardous substance" in issue. Accordingly, Hollandia's argument fails.

The Court further notes that the *A&W Smelter* holding is also fatal to Hollandia's argument that there must be some minimum concentration level of ammonia before liability can be found.  Dkt. No. 190 at 22.  Hollandia contends that ammonia must be present in certain quantities before liability can attach because Table 302.4 lists "reportable quantities" for different types of ammonia. *Id.*  This argument, however, belies the plain import of the statute.  As the *A&W Smelter* court observed:

> The table in 40 C.F.R. § 302.4 does list reportable quantities, but this refers to notification requirements under 42 U.S.C. §§ 9602 & 9603. Under these sections, anyone who owns a facility which stores hazardous substances and releases a quantity of a substance above the reportable level must notify the EPA.  *Nothing in the law suggests that quantities of a hazardous substance below its reportable level render it no longer hazardous.*

*A&W Smelter*, 146 F.3d at 1110 (emphasis added).  Accordingly, Hollandia cannot

14

escape liability by pointing to the minimum reportable quantities present in Table 302.4, as those quantities have no effect on whether a substance is or is not "hazardous" under the regulations.  Hollandia's argument, therefore, fails.

Yet another erroneous legal argument that Hollandia flings at the Court concerns Section 9604 of CERCLA.  The relevant section reads as follows:

> *The President shall not* provide for a removal or remedial action under this section in response to a release or threat of release – (A) of a naturally occurring substance in its unaltered form, or altered solely through naturally occurring processes or phenomena, from a location where it is naturally found.

42 U.S.C. § 9604(a)(3)(A) (emphasis added).  Hollandia contends that this statutory provision curbs CERLCA liability for "naturally occurring substance[s]," such as cattle waste excretions, as a matter of law.  Dkt. No. 190 at 16.  This conclusion, however, patently does not follow from the statutory language cited.  Section 9604 gives the President the authority to act to remove and provide remedial action for hazardous substances at any time.  42 U.S.C. § 9604(a).  Subsection (a)(3)(A) limits that authority by prohibiting the President from providing for a remedial action in response to a release of a "naturally occurring substance in its unaltered form . . . ."  That the President does not have the authority to institute a removal or remedial action against an entity that is responsible for the release of naturally occurring substances in no way demonstrates that naturally occurring substances cannot be hazardous substances as a matter of law.  Hollandia's argument, therefore, fails.

### 2.  Causation

Defendant Hollandia also seems to challenge the third prong of CERCLA liability, that is, whether a defendant *caused* response costs to the plaintiff.  Dkt. No. 190 at 16.  Hollandia argues that "CDC claims nutrients settled in the lake, but that is something *it* caused."  *Id.* (citing *Lake Madrone Wtr. Dist. V. State Wtr. Res. Control Bd.*, 209 Cal. App. 3d 163, 168-170 (Cal. Ct. App. 1989)).

True or not, this assertion has no legal significance at this stage of the proceedings. *See Hal Roach Studios*, 896 F.2d at 1550 ("the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."). CDC's FAC states that "Defendants' Sites released and/or disposed of . . . hazardous substances or wastes which caused contamination and pollution . . . in the vicinity of the Lake . . . . These discharges have caused and threaten to continue causing a condition of pollution and nuisance in the Lake." FAC ¶¶ 11-12, Dkt. No. 68 at 3. Taking this assertion as true, as the Court must on a Rule 12 motion, CDC has adequately pled that Hollandia caused the contamination of the Lake. To the extent that Defendant disagrees with this allegation, it must wait until a later stage of litigation in order to properly challenge this fact.

### C. Response Costs & Recovery

The motion for judgment on the pleadings also makes a handful of arguments concerning limitations on liability, limitations on recovery, appropriate allocation of response costs, and availability of remediation costs. *See* Dkt. No. 190 at 27-28. The Court rejects each of these arguments as they are patently inappropriate to raise on a motion for judgment on the pleadings. To state a CERCLA cause of action, the Opposing Parties need only plead the four prongs identified above. Legal arguments concerning remedies, therefore, are not ripe for discussion or review.

### D. State Law Claims

Hollandia's arguments against the Opposing Parties' state law claims contain many of the same procedural defects identified above. *See, e.g.*, Dkt. No. 190 at 28-29 (relying on CDC's use of the Lake and surrounding waters, CDC's alleged mismanagement of the Lake, and conclusions of the RWQCB concerning whether nutrients from Hollandia could have reached the Lake as reasons for dismissing the state law claims). Accordingly, and to the extent that Hollandia's state-law

contentions rely upon factual challenges and assertions absent in the pleadings, the Court rejects those arguments as procedurally improper.

That fact notwithstanding, the Court will briefly address Hollandia's contentions concerning the sufficiency of CDC's continuing nuisance and continuing trespass allegations, as those arguments find some support in the law.

### 1. Continuing trespass and continuing nuisance

Hollandia argues that CDC's continuing nuisance and trespass claims must fail because they are barred by the statute of limitations and because they are not "reasonably abatable." For the following reasons, the Court disagrees with both assertions.

"California law recognizes that there are two types of trespass and nuisance: those that are permanent and those that are continuing." *See F.D.I.C. v. Jackson-Shaw Partners No. 46, Ltd.*, 850 F. Supp. 839, 842 (N.D. Cal. 1994). Whether a nuisance or trespass is "continuing" or "permanent" turns on whether it can "be discontinued or abated." *Mangini v. Aerojet-General Corp.*, 281 Cal. Rptr. 827, 841 (Cal. Ct. App. 1991). A "continuing" nuisance or trespass is abatable, whereas a "permanent" one is not. *Id.*

The nature of the nuisance or trespass alleged is critical because it determines how the statute of limitations is applied. *Wilshire Westwood Assocs. v. Atl. Richfield Co.*, 24 Cal. Rptr. 2d 562, 569 (Cal. Ct. App. 1993). The statutory period for a continuing nuisance does not begin to run when the defendant's harmful conduct ends, but when the damages resulting from that conduct cease. *See Mangini*, 281 Cal. Rptr. at 841. This is so because a "continuing" nuisance or trespass is present whenever the *offensive condition* causes continuing damage to the plaintiff, irrespective of when the "acts causing the offensive conditions [ ] occur[red]." *Id.* (emphasis supplied). As such, pleading a continuing nuisance or trespass allows a plaintiff to effectively bypass the tort's three-year statute of

limitations and to bring suit for offensive conduct that ended years ago. *Id.*

Here, CDC has pled a continuing nuisance and continuing trespass cause of action against Hollandia. The three-year statute of limitations does not, therefore, bar Plaintiff's claims. Accordingly, Hollandia's first argument fails.

As for Hollandia's second argument — that is, that CDC has nonetheless failed to plead a continuing tort — that contention also fails. Hollandia argues that CDC's "continuing" claims are not sufficiently stated because they fail to plead that the offensive conditions are "reasonably abatable" as required by the California Supreme Court's decision in *Mangini v. Aerojet-General Corp.* (*Mangini II*), 51 Cal. Rptr. 2d 272 (Cal. 1996). The Court, however, disagrees that the *Mangini II* court's holding is fatal to CDC's pleadings. In *Mangini II*, the California Supreme Court concluded that "abatable," for purposes of the "continuing" theory of liability, means that the nuisance can be "remedied at a reasonable cost by reasonable means." *Id.* at 281. Contrary to what Hollandia suggests, however, this holding addresses the standard for *proving* abatability, not the standard for *pleading* abatability. Accordingly and absent some indication that California courts have converted *Mangini II*'s holding into a pleading requirement, the Court will not find CDC's allegations faulty for that reason. As such, the Court finds CDC's alleged failure to plead "reasonable abatability" inapposite to the sufficiency of its stated claim.

## CONCLUSION

Having considered, and rejected, all of Hollandia's arguments offered in support of its Motion for Judgment on the Pleadings, the Court hereby **DENIES** Defendant Hollandia's motion in its entirety.

Dated: March 23, 2017

Hon. Gonzalo P. Curiel
United States District Judge