1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| CITIZENS DEVELOPMENT CORPORATION, INC., a California corporation,<br><br>                Plaintiff,<br>v.<br><br>COUNTY OF SAN DIEGO, a California municipal corporation; CITY OF SAN MARCOS, a California municipal corporation; CITY OF ESCONDIDO, a California municipal corporation; VALLECITOS WATER DISTRICT, a California municipal corporation; HOLLANDIA DAIRY, INC., a California corporation; and DOES 1 through 100, inclusive,<br><br>                Defendants.<br><br>AND RELATED COUNTER-ACTIONS AND CROSS-ACTIONS. | Case No. 3:12-CV-00334-GPC-KSC<br><br>**HOLLANDIA DAIRY, INC.'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES RE ALL ISSUES AGAINST ALL FIVE PARTIES IN RESPONSE TO HOLLANDIA DAIRY, INC.'S DISCOVERY, SET ONE; REQUEST FOR SANCTIONS AGAINST EACH PARTY AND/OR COUNSEL OF RECORD; POINTS AND AUTHORITIES; DECLARATION OF JOHN REAVES; EXHIBITS 1-23**<br><br>Complaint Filed:    February 8, 2012<br>Trial:             None Set |

# TABLE OF CONTENTS

**Page**

HOLLANDIA'S POSITION ...............................................................................................1

THE PARTIES MET AND CONFERRED AND NARROWED ISSUES ...........................1

POINTS AND AUTHORITIES .........................................................................................2

I.      THE RI/FS PARTIES ARE WITHHOLDING DOCUMENTS THAT ARE NOT
        PROTECTED BY ANY APPLICABLE PRIVILEGE, CONFIDENTIALITY
        AGREEMENT, AND/OR JOINT DEFENSE AGREEMENT ....................................2

II.     THE NINTH CIRCUIT HAS NOT RECOGNIZE A MEDIATION PRIVILEGE,
        AND MEDIATION CONFIDENTIALITY, AND FRE 408 DOES NOT SHIELD
        COMMUNICATIONS OUTSIDE FORMAL MEDIATION, FACTUAL INFORMATION
        INTRODUCED IN MEDIATION, OR INFORMATION AVAILABLE UNDER THE
        CALIFORNIA PUBLIC RECORDS ACT .................................................................3

        A.      No Court Has Held That The Mediation Privilege Or Confidentiality Applies To
                Communications Made By The Parties To Mediation Outside Of The Mediation ........4

        B.      Rule 408 Is The Proper Rule To Analyze The Scope Of Mediation
                Confidentiality And Allows A Mediation To Be Pierced For Certain Purposes.............5

        C.      Hollandia's Discovery Requests Properly Seek Evidence Of Bias, Prejudice,
                And Collusion Admissible Under Rule 408 .....................................................7

        D.      Examples Showing Bias, Prejudice, And/Or Collusion....................................9

        E.      Mediation Confidentiality Does Not Shield Information Otherwise Available
                Outside Mediation Under "Sunshine" Laws Applicable To The PADs.......................13

III.    THE DOCUMENTS HOLLANDIA SEEKS ARE NOT
        PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE ..................................15

        A.      Compliance With The IO/PA Has Virtually Nothing To Do With Legal Advice..........15

        B.      Communications Among Consultants Are Not Privileged.............................16

IV.     THE DOCUMENTS HOLLANDA SEEKS ARE NOT
        PROTECTED BY THE WORK PRODUCT DOCTRINE......................................16

V.      THE PADS' COMMON INTEREST IS COORDINATING
        COMPLIANCE WITH STORMWATER PERMITS IN ONE WATERSHED ...................19

VI.     THE PADS' COMMON INTEREST AGREEMENT IS NOT
        VALID DEFENSE AGAINST DISCOVERY INTO COMPLIANCE.................................20

VII.    PARAMETERS OF A JOINT DEFENSE AGREEMENT HAVE NOT BEEN MET
        DUE TO ADVERSE INTERESTS, NONLEGAL INTERESTS, AND/OR WAIVER ...........20

        A.      All Parties Have Substantial Adverse Interests .............................................20

i

     B.     The Parties Do Not Share Alignment In Litigation ........................21

     C.     There Have Been Waivers ........................................22

VIII.  ANY CLAIM OF DISPROPORTIONALITY
      IS OF THE FI/FS PARTIES' OWN MAKING ........................23

IX.   THE RI/FS PARTIES' PRIVILEGE LOGS DO NOT DEPICT WITH
     PARTICULARITY THE CATEGORY OR DOCUMENTS NEEDED TO ASSESS
     WHETHER OR WHAT DOCUMENTS HAVE BEEN WRONGLY WITHHELD ...............23

X.    SANCTIONS AGAINST THE RI/FS PARTIES ARE NOT APPROPRIATE.....................24

XI.   CONCLUSION.....................................25

XII.  DISPUTES PER PARTY FOLLOW:
            CDC…………………………………………………………26

            CSD…………………………………………………………61

            CSM…………………………………………………………91

            COE…………………………………………………………109

            VWD…………………………………………………………122

ii

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

# TABLE OF AUTHORITIES

**STATE CASES (California)**                                          **Page(s)**

*Cook v. Craig*
55 Cal. App. 3d 773 (1976) ....................................................................13

*Fairley v. Superior Court*
66 Cal. App. 4th 1414 (1998) ...............................................................13

*Rojas v. Superior Court*
33 Cal. 4th 407 (2004) ...................................................................13, 14

*Rogers v. Superior Court*
19 Cal. App. 4th 469 (1993) ...............................................................13


**FEDERAL CASES**                                                    **Page(s)**

*Babasa v. LensCrafters, Inc.*
498 F.3d 972 (9th Cir. 2007) ...................................................................4

*California Pub. Utils Comm'n,*
892 F.2d 778 (9th Cir. 1989) .................................................................17

*Clarke v. American Commerce Nat'l Bank*
974 F.2d 127 (9th Cir. 1992) .................................................................13

*Computer Associates Intern., Inc. v. American Fundware, Inc.*
831 F. Supp. 1516, 1531 (D. Colo. 1993) ..................................................7

*Dole v. Milonas*
889 F.2d 885 (9th Cir. 1989) .................................................................24

*Downey v. Bob's Discount Furniture Holdings, Inc.*
633 F.3d 1 (1st Cir. 2011) ......................................................................19

*Facebook, Inc. v. Pac. Northwest Software, Inc.*
640 F.3d 1034 (9th Cir. 2011) .................................................................4

*Folb v. Motion Picture Industry Pension and Health Plans*
16 F. Supp. 2d 1164 (C.D. Cal 1998) .............................................4, 5, 6

*Hudspeth v. Comm'r*
914 F.2d 1207, 1213–14 (9th Cir. 1990) ..................................................6

*Hunydee v. United States*
355 F.2d 183, 185 (9th Cir. 1965) ........................................................22

*In re Grand Jury Investigation*
974 F.2d 1068, 1071 fn.2 (9th Cir. 1992) ..............................................15

*In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*
274 F.3d 563, 573 (1st Cir. 2001) .....................................................4, 22

iii

*In Re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*
357 F.3d 900, 910 (9th Cir. 2004) ....................................................................17

*In re Grand Jury Subpoenas*
902 F.2d 244, 249 (4th Cir. 1990) ....................................................................21

*In re McKesson HBOC, Inc. Secs. Litig.*
2005 U.S.Dist. LEXIS 7098 at *17 (N.D. Cal. 2005).......................................22

*Manufacturing Sys., Inc. v. Computer Technology, Inc.*
99 F.R.D. 335 (E.D.Wis.1983) ..........................................................................7

*Molina v. Lexmark International, Inc.*
2008 U.S. Dist. LEXIS 83014 (C.D. Cal. 2008)..............................................5, 6

*NAACP Legal Defense Fund v. United States Dept. of Justice*
612 F.Supp. 1143, 1146 (D.D.C.1985) ...............................................................7

*Pac. Pictures Corp. v. United States Dist. Court*
679 F.3d 1121 (9th Cir. 2012) ..............................................................15, 20, 23

*Ramada Dev. Co. v. Rauch*
(5th Cir. 1981) 644 F.2d 1097 ...........................................................................14

*Sanchez v. City of Santa Ana*
936 F.2d 1027 (9th Cir. 1991) ...........................................................................15

*Sony Computer Entm't Am., LLC v. HannStar Display Corp.*
*(In re TFT-LCD (Flat Panel) Antitrust Litig.)*
835 F.3d 1155, 1158-9 (9th Cir. 2016) ...............................................................4

*Times Mirror Co. v. Superior Court*
53 Cal. 3d 1325 (1991) ......................................................................................13

*United States v. Bergonzi*
216 F.R.D. 487 (N.D. Cal. 2003)...........................................................20, 22, 23

*United States v. Gonzalez*
669 F.3d 974 (9th Cir. 2012) .................................................................20, 21, 22

*United States v. Graf*
610 F.3d 1148 (9th Cir. 2010) ...........................................................................24

*United States v. M.I.T.*
129 F.3d 681 (1st Cir. 1997) .............................................................................23

*United States v. Nobles*
422 US 225, 239 (1975)......................................................................................16

*Weil v. Investment/Indicator, Research & Management*
647 F.2d 18, 25 (9th Cir. 1981) .........................................................................15

1

**STATUTES**                                                                                        **Page(s)**

2   Fed.R.Civ.P. 26(b)(1)............................................................................23

3   Fed.R.Civ.P. 26(b)(3)..........................................................................16, 17

4   Fed.R.Civ.P. 26(b)(4)(C) ......................................................................18

5   Fed.R.Civ.P. 37(a)(5)(B).......................................................................24

6   Fed.R.Evid. 408 ...........................................................................3-7, 14, 16

7   Fed.R.Evid. 408(b).................................................................................6

8   Fed.R.Evid. 501 .....................................................................................4

9   Cal. Evid. Code § 1119..........................................................................14

10  Cal. Evid. Code § 1120..........................................................................14

11  Cal. Gov't Code 6250............................................................................13

12  Cal. Gov't Code § 6254(b)......................................................................13

13

14  **OTHER AUTHORITIES**                                                               **Page(s)**

15  Cal. Law Revision Com. com., 29B pt. 3. ..............................................14

16  8 Federal Practice & Procedure § 2024 (2d ed. 1994) ("Wright & Miller") .......................17

17

18

19

20

21

22

23

24

25

26

27

28

Defendant HOLLANDIA DAIRY, INC. (Hollandia) submits this Motion for Determination of Discovery Disputes Re All Issues Against All Five Parties - Plaintiff CITIZENS DEVELOPMENT CORP. (CDC), Defendants CITY OF SAN MARCOS (CSM), COUNTY OF SAN DIEGO (CSD), VALLECITOS WATER DISTRICT (VWD), CITY OF ESCONDIDO (COE) (collectively, the "parties"). CSM, CSD, VWD, and COE are referred to as the Public Agency Defendants (PADs). Points and authorities regarding privilege, common to all parties, are addressed first, followed by discovery requests, responses, and why further responses are required, with points and authorities on other issues there. Disputes per party start at: CDC: 26; CSD: 61; CSM: 91; COE: 109; VWD: 122.

## HOLLANDIA'S POSITION

### THE PARTIES MET AND CONFERRED AND NARROWED ISSUES

On November 2, 2017, Hollandia served its First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission on all parties. All parties requested extensions to respond. Hollandia met and conferred with each party and discussed claims of mediation confidentiality/privilege, attorney work product, common interest/joint defense privilege, and consultant assisting counsel in preparation for trial in detail. Each party agreed to amend its responses in varying degrees, but no common ground was found on the various privilege disputes. Hollandia also shared an early rough draft of this motion with all the parties during the week of February 26, 2018. CDC's counsel responded within a few hours, calling it "barely intelligible," "simply invented arguments," and that "Nothing I saw had merit such that we would consider modifying our response." Hollandia asked the parties to meet and confer and to share their legal positions and authorities in response to said draft. None did. Hollandia also proposed an early circulation of briefs and asked for an opportunity to include its reply, if needed, in the Joint Motion. CDC refused. Details of the meet and confer are in the Declaration of John Reaves (Dec JR) generally and at ¶2-9, Ex.1. Hollandia brings this motion under authority of Rule 37(a) of the Federal Rules of Civil Procedure (FRCP) (Interrogatories), 36(a)(6) (Requests for Admission), and 34 (Requests for Production) for discovery responses that are not code compliant, evasive, ambiguous, and/or are not fully responsive. Pursuant to this Court's Order, this motion is now filed as Hollandia's motion rather than a joint motion.

///

## POINTS AND AUTHORITIES RE PRIVILEGE

### I. THE RI/FS PARTIES ARE WITHHOLDING DOCUMENTS THAT ARE NOT PROTECTED BY ANY APPLICABLE PRIVILEGE, CONFIDENTIALITY AGREEMENT, AND/OR JOINT DEFENSE AGREEMENT

CDC and the PADs (hereafter, the "RI/FS Parties," referring to the Remedial Investigation/Feasibility Study that they jointly prepared) are asserting the attorney-client and work product privilege, common interest/joint defense privilege, and/or mediation privilege/confidentiality to wrongfully withhold the following categories of documents/information:

1. Communications and documents regarding a) how to comply with Investigative Order No. R9-2011-0033, dated September 20, 2011 (IO), in which the Regional Water Quality Control Board, Region 9 (Regional Board) ordered CDC "to investigate nutrient impairments in the Lake" and to recommend appropriate remediation; and b) how the PADs complied with their voluntary agreement to investigate nutrient sources in the watershed, creek and lake and to recommend appropriate remediation in lieu of being added to the IO, and to achieve nutrient reductions to comply with their stormwater permits, pursuant to a "Participation Agreement" (PA) signed with the Regional Board in 2011, that COE joined in a limited manner at the same time through a "Cooperation Agreement" (CA). The wrongfully withheld documents include communications between:

    a. Counsel and non-client parties;

    b. Counsel and his or her consultants regarding technical matters relating to compliance with the IO/PA where the dominant purpose was not legal advice;

    c. Consultants and non-client parties.

    d. Communications and documents prepared or compiled by consultants as part of their work to comply with the IO/PA.

2. Communications outside of formal mediation, including communications between:

    a. Counsel and non-client parties and/or the non-client consultants;

3. Communications with the Regional Board, including:

    a. Consultants' communications and meetings with the Regional Board; and

    b. Counsel's communications/notes with the Regional Board. (Some, but not all, of the RI/FS Parties have produced e-mails for 3.a and b.)

4. Technical work reflected in communications and documents prepared and compiled by consultants as part of their work to comply with the IO/PA.

2

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

5.      Communications between the RI/FS Parties' counsel or consultants with a separate group of consultants hired specifically to do lake and watershed modeling and to prepare the certified RI/FS for submission to the Regional Board.

As discussed in detail below, no privileges are applicable because:  (a) Hollandia is not seeking statements made in compromise negotiations relating to admissions of liability or opinions, but, rather, to factual assertions and evidence for other purposes, such as proving bias and collusion; (b) Hollandia is not seeking any documents prepared solely for, or nonfactual communications made within, formal mediation with the mediator, or in communications directed to (not just copied to) the mediator outside of mediation; (c) compliance with the IO/PA is inherently a technical, not legal, endeavor; (d) the PADs must produce information regarding compliance with the PA under California's "sunshine laws" regarding open government; (e) there is no common interest/joint defense agreement among the PADs for technical compliance with the PA or due to adverse legal interests; (f) there is no common interest/joint defense agreement amongst plaintiff and the defendants in the same litigation; (g) and, any attorney-client or work product protections have been waived by the RI/FS Parties to the extent they have voluntarily disclosed information to the other parties to this litigation, or Regional Board, and to the extent they reflect assumptions, facts, and direction provided by counsel to their consultants. Instead, Hollandia is seeking factual information as to how the RI/FS Parties chose to comply with the IO/PA, reconcile differences, and how the RI/FS Parties colluded to engineer a bias in the direction and nature of testing and modeling to Hollandia's detriment and to conceal exculpatory information.

## II.     THE NINTH CIRCUIT HAS NOT RECOGNIZED A MEDIATION PRIVILEGE, AND MEDIATION CONFIDENTIALITY, AND FRE 408 DOES NOT SHIELD COMMUNICATIONS OUTSIDE FORMAL MEDIATION, FACTUAL INFORMATION INTRODUCED IN MEDIATION, OR INFORMATION AVAILABLE UNDER THE CALIFORNIA PUBLIC RECORDS ACT

The RI/FS Parties withholding documents by claiming that mediation privilege or confidentiality applies. Even where courts have recognized a mediation privilege, it has never been held that the privilege shields communications between the mediating parties outside of mediation. As discussed below, the appropriate analytical framework here is Federal Rules of Evidence Rule (Rule) 408, whereby evidence of unqualified factual assertions is admissible. Moreover, the PADs created an

independent obligation to comply with the PA and stormwater permit requirements to address the watershed nutrient problems and must produce documents under the California Public Records Act.

### A. No Court Has Held That The Mediation Privilege Or Confidentiality Applies To Communications Made By The Parties To Mediation Outside Of The Mediation

Privileges are created by federal common law. Rule 501. When, as here, there are federal and state law claims, federal common law applies. *Sony Computer Entm't Am., LLC v. HannStar Display Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, 835 F.3d 1155, 1158-9 (9th Cir. 2016) (federal, rather than California privilege law applies, even when federal claims dismissed). A local rule cannot create a privilege. *Facebook, Inc. v. Pac. Northwest Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011) (confidentiality agreement precluded disclosure, not federal mediation privilege or district local rule purporting to create such a privilege).

The Ninth Circuit has not recognized a federal mediation privilege, nor is Hollandia aware of any recognition of such a privilege by the Southern District of California. *See, e.g., Facebook, supra,* 640 F.3d 1034; *Babasa v. LensCrafters, Inc.*, 498 F. 3d 972 (9th Cir. 2007) (declining to consider whether a federal mediation privilege exists). In a case preceding *Facebook* and *Babasa*, however, the Central District in *Folb v. Motion Picture Industry Pension and Health Plans*, 16 F. Supp. 2d 1164 (C.D. Cal 1998), held that a federal common law mediation privilege precluded discovery of mediation-related communications by a third party who did not participate in the formal mediation. *Id.* The court held *only* the following to be protected under the facts of that case: (i) communications to the mediator; (ii) communications between the parties during the mediation; (iii) communications in preparation for the mediation with a neutral; and (iv) communications during the course of mediation with a neutral. *Id.* at 1180.

Hollandia contends the RI/FS Parties are withholding documents based on an overreaching scope and application of mediation confidentiality and/or privilege in order to improperly shroud their broader set of communications with each other in secrecy. *See In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*, 274 F.3d 563, 573 (1st Cir. 2001) (declining to "create a judicially enforced code of silence" that cannot be justified on policy grounds). Hollandia is seeking documents *not* protected by *Folb*, Rule 408, and the California Public Records Act. The RI/FS Parties cannot

4

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

1  sustain their burden of proving that all withheld documents based on a claim of mediation

2  confidentiality or privilege are privileged. They have not identified narrowly enough which categories

3  or documents fall within *Folb* or Rule 408 in their privilege logs, and many of the broad categories

4  could embrace documents not protected by either. As illustrations, the RI/FS Parties have not

5  distinguished between consultants involved in mediation and in investigations in the watershed to

6  comply with the IO/PA who then had communications with other consultants who prepared the RI/FS.

7  VWD, CSM, and CDC produced some overlapping communications between consultants and Regional

8  Board but no notes; others produced nothing. Dec JR ¶4-10,17,18,26,29-31; Ex. 2,5,8-11,16-17.

9      **B.**   **Rule 408 Is The Proper Rule To Analyze The Scope Of Mediation Confidentiality**
10          **And Allows A Mediation To Be Pierced For Certain Purposes**

11      In *Molina v. Lexmark International, Inc.*, 2008 U.S. Dist. LEXIS 83014 (C.D. Cal. 2008), the

12  Central District noted that *Folb* was explicitly limited to the facts before the court and that the contours

13  of the privilege recognized in *Folb* are unclear and need to be "fleshed out over time." *Id.* at *27.

14  *Molina*'s reliance on Rule 408 of the Federal Rules of Evidence is instructive and allows discovery

15  beyond what was discussed in *Folb*. The *Molina* court distinguished between confidential information

16  and information subject to a mediation privilege, and noted that federal courts have concluded that,

17  although confidential, mediation is not privileged.  *Id.* at *33.

18          "Confidentiality" refers to a duty to keep information secret, while "privilege" refers to
19          protection of information from compelled disclosure… Communications are confidential
            when the freedom of the parties to disclose them voluntarily is limited: they are
20          privileged when the ability of third parties to compel disclosure of them, or testimony
            regarding them, is limited.

21  *Id.* at *35 (internal citations omitted).

22      Because of this distinction between confidentiality and privilege, the court held that Rule 408 is

23  a better reference point for analyzing the privilege due mediation communications.  *Id.* at *39. Rule

24  408 makes "conduct or statements made in compromise negotiations regarding the claim" inadmissible

25  to prove liability, and is primarily concerned with avoiding the chilling effect that potential disclosure

26  may have on a party to a communication. *Id.* Since the documents at issue in *Molina* were not being

27  offered as an admission, or the amount, of liability (but as proof of the amount in controversy), Rule

28  408's goals were not undermined by admitting statements made during settlement discussions.

The bar in Rule 408 is "inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim." Rule 408, Committee Notes on Rules—2006 Amendment.  Rule 408 only prohibits admission of evidence "either to prove or disprove the validity or amount of a disputed claim" relating to furnishing or accepting offers in compromise or "conduct or a statement made during compromise negotiations about the claim." Rule 408.

"[A]dmissions of liability or opinions given during compromise negotiations continue [to be] inadmissible, but evidence of unqualified factual assertions is admissible." Rule 408, Notes of Committee on the Judiciary, House Report No. 93–650 (underline added). The legislative intent is clear: "statements of fact made during settlement negotiations, however, are excepted from this ban and are admissible." Rule 408, Notes of Committee on the Judiciary, Senate Report No. 93–1277.

Any investigations or communications regarding investigations and compliance with the IO or PA during mediation are not compromise evidence offered to prove the validity, invalidity, or amount of a disputed claim, but rather "statements of fact made during settlement negotiations," which "are excepted from this ban and are admissible." *Id.* Therefore, under Rule 408 and *Molina*, discovery can insert itself into settlement discussions and mediation with regard to statements of fact, thereby extending the reach discussed in *Folb*. Hollandia seeks data, studies, modeling, and percipient witness information, including opinions reached by consultants during the course of their work on the IO/PA (like treating physicians). Hollandia does not seek new, yet-to-be formed opinions.

Rule 408 expressly sanctions the use of settlement-related evidence "for another purpose, such as proving a witness's bias or prejudice." Rule 408(b); *Hudspeth v. Comm'r*, 914 F.2d 1207, 1213–14 (9th Cir. 1990) (IRS settlement with a similarly situated taxpayer admissible evidence of the commissioner's potential bias). Thus, Rule 408 allows admission of evidence proving that the RI/FS Parties may have conspired with each other and their consultants to engineer a bias in the direction and nature of testing and modeling to Hollandia's detriment, to conceal information that exculpates Hollandia, to make misrepresentations to the Regional Board to try to get the Board to add Hollandia to the IO, and/or to hide or disguise the nature of damages allegedly caused by, and sought from, Hollandia. Much, if not all, of the collusion has transpired in what the RI/FS Parties claim to have been mediation or subject to a common interest or joint defense agreement, seemingly encompassing all

communications between the RI/FS Parties since before 2011, when the IO was on the horizon. Yet, there were communications amongst the RI/FS Parties and others as early as 2005, after massive sewage spills by VWD into the lake galvanized broad support for Regional Board and PAD action with CDC. The RI/FS Parties do not appear to have produced all these communications. Dec JR ¶11, Ex.2.

Finally, Rule 408 is a rule of evidence, not discovery.

> Rule 408 of the Federal Rules of Evidence … does not, however, "require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." Fed.R.Evid. 408. Rule 408 is a preclusionary rule, not a discovery rule. It is meant to limit the introduction of evidence of settlement negotiations at trial and is not a broad discovery privilege. *NAACP Legal Defense Fund v. United States Dept. of Justice*, 612 F.Supp. 1143, 1146 (D.D.C.1985). Information which may not be admissible at trial under the rule is still discoverable so long as that information may lead to the discovery of other admissible evidence. *See Manufacturing Sys., Inc. v. Computer Technology, Inc.,* 99 F.R.D. 335, 336 (E.D.Wis.1983).

*Computer Associates Intern., Inc. v. Amer. Fundware, Inc.*, 831 F.Supp. 1516, 1531 (D. Colo. 1993).

Hollandia's discovery requests are reasonably calculated to lead to the discovery of admissible evidence to support Hollandia's contention that (a) Hollandia's contributions to Lake impairment are infinitesimally small and nondetectable at best, and (b) the RI/FS Parties are skewing the data to Hollandia's detriment because Hollandia refused to share in the costs of the IO/PA work. Now, during discovery, is not the time to decide arguments about admissibility since there is no confidentiality agreement binding on Hollandia, except during one phase of mediation.[1] Dec JR ¶12.

## C.   Hollandia's Discovery Requests Properly Seek Evidence Of Bias, Prejudice, And Collusion Admissible Under Rule 408

The RI/FS Parties have made technical decisions about how to comply with the IO/PA, and the discussion of any disagreements among consultants behind those technical decisions, which may be exculpatory to Hollandia, are not disclosed in the publicly-available documents on the Regional Board website (i.e., the RI/FS and appendices). Instead, the RI/FS Parties are using mediation as a shield to

---

[1] Hollandia agreed to confidentiality during the limited time in which it participated in the mediation and is not asking to obtain information expressly shared with Hollandia during that time. The parties mediated both before and after Hollandia's limited participation. During the time Hollandia was in the mediation, the parties worked privately on the IO/PA without allowing Hollandia's participation in technical committees or decisions unless Hollandia paid 1/6 of all their costs, which Hollandia declined to do. Hollandia is seeking information and consultant observations and opinions with respect to what the parties learned and how the parties complied with the IO/PA, wherever compiled or discussed.

7

hide information learned and how they decided to perform work to investigate the sources of nutrients to the Creek and Lake, including any avenues that were not pursued because they would absolve Hollandia or harm the RI/FS Parties. The RI/FS Parties would have had to do such work whether or not they were in litigation, and the work involves consultants selecting areas of investigation, collecting data, agreeing on assumptions, reconciling differences of opinion, and recommending solutions. The results and output of the RI/FS are only as good as the data and assumptions used as input and the confidence level in the results. The RI/FS Parties controlled the data, giving them the ability to skew the investigation and modeling to their advantage. Hollandia seeks a full understanding of how the RI/FS Parties' consultants and RI/FS consultants arrived at their decisions to perform investigations, reach opinions, resolve differences, draft the RI/FS as they did, and whether those decisions were driven by a bias against Hollandia. Indeed, as discussed below, Hollandia has evidence that the RI/FS Parties have tried to mislead the Regional Board and kept exculpatory information concerning Hollandia away from the Regional Board and the public eye. Dec JR ¶13,25-26, Ex.8-9.

CDC only sued one private party/company – Hollandia - and, not surprisingly, the RI/FS only targeted one private party/company - Hollandia. Nonetheless, the RI/FS mentioned many other known historical and current substantial sources, but failed to do an equivalent investigation into them that would quantify relative contributions. The bias is particularly egregious since the RI/FS failed to quantify and rank the RI/FS Parties' own contributions, including: over 870,490 gallons of raw sewage admitted by VWD to have entered the creek or lake; golf courses and avocado groves around the lake owned at some time by CDC; a property now owned by CSM, formerly Wilgenburg Dairy, that pled guilty in 1988 to violating the Clean Water Act by dumping cow wastes by pipeline directly into the creek across from Hollandia; and a former egg farm (Prohoroff) that was the world's largest, and is now where California State University, San Marcos is located. Dec JR ¶14.

The PADs entered into the PA, which COE joined in 2011 in order to address nutrient impairment in the creek and lake. The PADS agreed to a "Covenant-Not-To-Sue and Reservation of Rights."[2] They also agreed to keep confidential all "information received from any other Member or its

---

[2] The "Members to this Agreement … covenant not to initiate, bring, or support any claim … against each other arising out of or related in any way to water quality conditions relating to the Nutrient

counsel, from common counsel, or from any technical consultant retained by the Work Group pursuant to this Agreement…." PA, section 10.2. Thus, the PADs agreed to keep technical information confidential, not to sue each other, and to resolve internal disputes by arbitration. Dec JR ¶15, Ex.14.

The PA amounts to an agreement to keep everything secret among the PADs and to work together against other parties they believe should share in responsibility. Through the PA, the PADs have been able to collude against Hollandia, and CDC has tried to join that effort through mediation. Together, they have the ability to trump up the "evidence" against Hollandia to the Regional Board, present misleading information and opinions, and bury exculpatory evidence, while minimizing focus on themselves. Now in discovery, the RI/FS Parties seek to continue their secrecy and to suppress evidence of any attempt to harm Hollandia. For example, the RI/FS Parties are not disclosing diverging opinions and disagreements their consultants have had in the course of responding to the IO/PA. Parties like VWD - that had over 176,050 gallons of raw sewage into the lake in 2005 alone - would be making similar arguments as Hollandia regarding lake flushing and sediment burial, discussed below, and that would be contrary to positions taken by CDC and the other PADs. The PA gives the PA signatories power to make any decision by a majority rule (with 40% quorum). PA, section 6.5. The RI/FS Parties have kept differences secret by suppressing dissenting minority opinions. *See* Section V herein for broader discussion about the CIA, PA, and CA. Dec JR ¶16-18, Ex.3-4.

On September 30, 2016, the RI/FS Parties presented the Regional Board the final RI/FS. There were areas of investigation that yielded results favorable to Hollandia, but the RI/FS Parties' consultants and/or RI/FS consultants deliberately failed to disclose how such results would help or exculpate Hollandia, but that had to be part of the underlying discussion. There was also inflammatory language in the Draft RI/FS, dated January 8, 2016, against Hollandia that the Regional Board found lacked evidence, yet the final RI/FS failed to acknowledge or adopt such findings. Dec JR ¶21, Ex.5.

**D.   Examples Showing Bias, Prejudice, And/Or Collusion**

1.   The RI/FS Parties hired SCS Engineers (SCS) specifically to develop evidence that

_____

impairment of the Creek or Lake or for any liability or responsibility therefore, and agree to resolve any such disputes among themselves in accordance with the Dispute Resolution procedures set out in Section 12 of this Agreement." PA, section 9.2. Dec JR ¶15.

Hollandia contributed nutrients to the creek (RI/FS, p.26) by runoff and groundwater. SCS reported that Hollandia and Prohoroff "most likely contributed potentially significant quantities of nutrients to the Watershed… ." SCS 2015 Soil and Shallow Groundwater Monitoring and Sampling Report (Ag Report). The Regional Board found this conclusion unsupported by the facts. Dec JR ¶20-21,Ex.5.

In a letter to CDC dated June 2, 2016, the Regional Board <u>disagreed</u> with SCS's conclusion that Hollandia most likely contributed potentially significant quantities of nutrients to the watershed. Referring to the Draft RI/FS, the Regional Board found, "We agree that historical episodic releases likely have added to the nutrient load, but <u>do not see evidence of these contributions from the historical dairy or poultry operations</u>." The Regional Board also disagreed with the Draft RI/FS statement that Hollandia, Wilgenburg Dairy, and Prohoroff contributed "significant quantities of nutrients" to the creek: "<u>This conclusion … is not supported by the data.</u> … Further, the Report states that groundwater contributes limited nutrients to the creek and lake; therefore, <u>there does not appear to be evidence of a pathway for the soil nutrients to the receiving water (the creek).</u>" The revised, final RI/FS, submitted on September 30, 2016, provided no new evidence. Despite that, the Final RI/FS persisted in reporting that SCS indicated Hollandia and Prohoroff "most likely contributed potentially significant quantities of nutrients to the Watershed over the course of their historical large agricultural production facility operations." RI/FS, p.27. The RI/FS Parties' consultants and/or RI/FS consultants failed to mention or discuss these two critical Regional Board's findings in the final RI/FS. The RI/FS Parties have produced no evidence of their consultants' discussions as to how to address these findings. There have to be memoranda, notes, research, tests, modeling, data, communications, and/or other documents that mention, support, challenge, and/or refute these and other critical issues described herein, yet the RI/FS Parties have not disclosed anything but the RI/FS and appendices in discovery. Dec JR ¶21, Ex.5.

2.  Hollandia only occupies ~1.3% of the drainage area investigated by SCS, and the Ag Report failed to disclose that SCS did not isolate nutrients coming from Hollandia or that any nutrients detected would have come from a large area upgradient of Hollandia. Dec JR ¶22.

3.  The RI/FS Parties have done extensive analysis of lake flushing, and how nutrients in the lake bottom sediment interact with the water column, yet have failed to present and discuss the full extent of their findings. A complete understanding of the data and interactions would have been

1   required before recommending remedial measures. In the PA, the PADs agreed to undertake 17

2   different studies designed to "Understand Internal Loading and Recycling of Lake Nutrients,"

3   including the study of "Contributions from Shallow Sediments" as well as "estimated frequency of

4   Lake turnover." The RI/FS simply acknowledged that sediments are "sequestered" at an undisclosed

5   depth. Further, the RI/FS states it considered dredging the lake bottom, something that CDC's

6   consultant recommended it do periodically since 1974 (Ball, 1974), but which CDC claims it did not

7   do. The RI/FS discarded that possible solution and recommended spreading alum over sediment to cap

8   it and prevent any sediment phosphorus compounds from entering into the lake water. The research

9   and analysis leading to that recommendation have not been made public or produced in discovery.

10  Moreover, the RI/FS also said, "Watershed runoff is capable under typical conditions of exchanging

11  the entire Lake volume 2.6 to 5.2 times each winter… Even under drought conditions, the Lake could

12  be effectively flushed each winter with the runoff inputs." The RI/FS parties and consultants must have

13  also reached a consensus on how these issues impact lake mechanics so as to develop a remedial plan

14  but have not made such discussions public or produced evidence of such discussions. The RI/FS

15  Parties have not disclosed anything but the RI/FS and appendices in discovery. Dec JR ¶23-26, Ex.9.

16      4.      The RI/FS Parties specifically required their consultants to *exclude* discussion and

17  interpretation of data in the RI/FS that would be exculpatory to Hollandia. The Regional Board told

18  SCS on March 30, 2016, that the Ag Report "required context to be of value in meeting the objectives

19  of the investigation. The Report does not include any discussion or interpretations." SCS responded

20  that, "The LSM Technical Team specifically requested SCS to exclude discussion and interpretations

21  of the data collected [sic] therefore it is not in our contracted scope to respond to" to the Regional

22  Board's ten questions. (Underline added.) In the Ag Report, SCS identified the Technical Advisory

23  Committee for the RI/FS Parties as directing its work. Ag Report, section 1.2. In a Tech Team and

24  Regional Board Agenda, dated April 29, 2016, Steve Figgins, a consultant for CSD, was the person

25  identified to discuss, "Status of Ag Investigation Report rewrite and re-submittal to the RWQCB." Yet

26  the RI/FS Parties have refused to disclose anything about those discussions or meetings or to hand over

27  consultant notes and memos. The RI/FS Parties' consultants and/or RI/FS consultants again failed to

28  discuss in the RI/FS that the SCS Ag Report did not show Hollandia was a significant source of

11

nutrients, past or present, or to discuss the Regional Board findings or concerns, and the RI/FS Parties have not disclosed anything but the RI/FS and appendices in discovery. Dec JR ¶25-26, Ex.7-9.

5.  The RI/FS Parties' consultants repeatedly singled out Hollandia as one of the allegedly big potential polluters in the RI/FS, something completely undermined by the data. In contrast, the RI/FS did not do any detailed review and ranking of any other particular source of nutrients, historically or present, such as the other dairies (Wilgenburg and others) and egg farm (Prohoroff), golf courses and avocado groves above the lake, a large sedimentation pond within the housing complex near the lake, with sludge that could enter the lake during a storm through a connecting concrete channel, and any of the many agricultural activities in the watershed. Dec JR ¶27.

The RI/FS found countless citrus groves, orchards, and vineyards that once were, or still are, located in the watershed as sources, but the RI/FS Parties' consultants did not try to assess those and their historic nutrient loading, or to rank such loads relative to Hollandia or the RI/FS Parties. For instance, the RI/FS reported that, "agricultural activities are a significant contributor to nutrient loads to the Lake." (RI/FS, p.202) The highest levels of nutrients came from "Twin Oaks tributary … where agricultural land use is more common" (RI/FS, p.ES-2). That tributary entered the creek downstream of Hollandia, yet no specific site or source was investigated. The RI/FS Parties' consultants failed to discuss the relative nutrient loading from these other sources, which would have shown Hollandia's relative contributions to be, under the worst of circumstances, nondetectable. There have to be communications and documents that reveal the RI/FS Parties' and/or RI/FS consultants decisions to selectively target Hollandia, avoid targeting specific sites in the highest nutrient source areas, and to avoid or minimize focus on the RI/FS Parties themselves. Dec JR ¶¶26,28.

6.  The RI/FS has proposed many remedial measures for the entire watershed, including tributaries that enter the creek upstream and downstream of Hollandia, which are designed to address the PADs' stormwater requirements. On September 3, 2015, the Regional Board said, "([T]he San Diego Water Board agrees with … (CDC's) assertion that there is some work being done (by the PADs) related to the RI/FS that is above and beyond what is required in the (IO) … ." The RI/FS Parties contend Hollandia should pay for all of the remedies, even though some of them could not have anything to do with Hollandia. An example is the proposed settling basin called La Cienega in Twin

Oaks Valley. CDC's consultant, Nick Buhbe, expressed his opinion to the Regional Board that La Cienega "is not influenced by Hollandia." Dec JR ¶29, Ex.10. The RI/FS Parties simply disclosed the RI/FS and appendices in discovery. Hollandia has a right to discover the biases that affected the consultants' decisions regarding the RI/FS, their decisions about what to test or not test, what opinions to express or not express, whether to be candid about exculpatory evidence or not, what facts or opinions to minimize or veto, and the decision-making behind their exaggerated and unsupportable statements about Hollandia. Dec JR ¶30.

### E.   Mediation Confidentiality Does Not Shield Information Otherwise Available Outside Mediation Under "Sunshine" Laws Applicable To The PADs

The PADs cannot claim any confidentiality or privilege with regard to their work that is subject to "sunshine" laws. The PADs can't hide from the public how they go about responding to the IO and stormwater requirements included in the PA, even if partly organized in mediation. As public agencies, the PADs are subject to the California Public Records Act, California Government Code § 6250 *et seq.* (CPRA). The purpose of CPRA is to provide access to information that enables the public to monitor the functioning of their government. *Times Mirror Co. v. Superior Court*, 53 Cal. 3d 1325 (1991). The legislature declared this right of access to information about the conduct of the people's business to be a fundamental and necessary right of every person in the state. Cal. Gov't Code § 6250. The general policy of CPRA favors disclosure, and a refusal to disclose information must be justified by the exemptions enumerated in the statute. *Cook v. Craig*, 55 Cal. App. 3d 773, 781 (1976). The courts have consistently held that exemptions must be narrowly construed. *Rogers v. Superior Court*, 19 Cal. App. 4th 469, 476 (1993). Thus, exemptions from CPRA for litigation and mediation are narrow, and the PADs cannot use mediation as a pretext to shield otherwise public documents from disclosure. *See Rojas v. Superior Court*, 33 Cal. 4th 407, 417 (2004), Nothing in CPRA provides an exemption for a public agency response to an investigative order or compliance with regulation, law, or permit.

CPRA's pending litigation exemption applies only to documents *specifically* prepared for use in litigation. *See* Cal. Gov't Code § 6254(b); *Fairley v. Superior Court*, 66 Cal. App. 4th 1414, 1420 (1998). California courts reject a broad construction of the exemption that "would cut off access to documents relevant to later-instituted litigation." *Id.* CPRA's exemption for mediation applies only to

13

documents or communications "prepared for the purpose of, in the course of, or pursuant to" mediation and shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in mediation. *Id.*, *citing* Cal. Evid. Code §§ 1119, 1120.

> In other words, under section 1120, a party cannot secure protection for a writing – including a photograph, a witness statement, or an analysis of a test sample – that was not "prepared for the purpose of, in the course of, or pursuant to, a mediation" (§ 1119, subd. (b)) simply by using or introducing it in a mediation or even including it as part of a writing—such as a brief or a declaration or a consultant's report—that was "prepared for the purpose of, in the course of, or pursuant to, a mediation."

*Rojas v. Superior Court*, 33 Cal. 4th at 417. Thus, consistent with the Legislature's intent, Section 1120 prevents the PADs from using mediation as a pretext to shield materials from disclosure. *Id.*, *citing* Cal. Law Revision Com.com., 29B pt. 3.

> The California Supreme Court found such rule consistent with Rule 408.

> (The above) conclusion is consistent with the construction of similar language in rule 408 of the Federal Rules of Evidence (28 U.S.C.), which provides in relevant part: "Evidence of conduct or statements made in compromise negotiations is ... not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." <u>As construed by the federal courts, the latter sentence "prevent[s] one from being able to 'immunize from admissibility documents otherwise discoverable merely by offering them in a compromise negotiation.' [Citation.] [It] does not [apply] where the document, or statement, would not have existed but for the negotiations, hence the negotiations are not being used as a device to thwart discovery by making existing documents unreachable."</u> (*Ramada Dev. Co. v. Rauch* (5th Cir. 1981) 644 F.2d 1097, 1107.)

*Rojas*, 33 Cal. 4th at 417 n.5 (underlining added).

Here, the RI/FS Parties developed data and documents to comply with the IO/PA that would exist independent of any mediation or litigation. The RI/FS Parties to the mediation have communicated extensively with one another and the Regional Board regarding the progress of their work related to the IO/PA. These communications regarding the IO/PA are not "communications during the course of mediation" just because the same parties also happen to be addressing compliance in mediation. To the extent the RI/FS Parties claim they enlisted the mediator due to a claimed expertise in compliance with regulatory orders, which was asserted during meet and confer, then that suggests the mediator wore more than one hat, including one as a consultant. The PADs' work is subject to the CPRA, and they cannot make it secret by organizing their efforts in mediation.

Ironically, CDC is now fighting Hollandia's position that CDC recently asserted against the

14

PADs. CDC produced an e-mail from its counsel, Jeff Caufield, to the Regional Board, dated September 4, 2013, in which he complained that the PADs had "refused to share data" that was obtained after the PADs secured public funding, and that CDC was not aware of any legal authority for the PADs to keep the data confidential. He went on to say, "[N]either CDC nor the public can participate when data is being kept 'secret'… [P]rocess (is) meaningless" Dec JR ¶31, Ex.11.

Moreover, to the extent the PADs claim a deliberative process privilege, such privilege is qualified and may be overcome by a strong showing of relevance and an inability to obtain the information from other sources. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1991). As discussed in section IV, below, Hollandia has a substantial need for the information, which is highly relevant and cannot be obtained elsewhere.

## III. THE DOCUMENTS HOLLANDIA SEEKS ARE NOT PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege applies: (i) where legal advice of any kind is sought; (ii) from a legal adviser in his capacity as such; (iii) the communications relating to that purpose; (iv) made in confidence; (v) by the client; (vi) are at his instance permanently protected; (vii) from disclosure by himself or by the legal adviser; (ix) unless the protection be waived." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 fn.2 (9th Cir. 1992). The burden is on the party asserting the privilege to establish all elements and that it has not been waived. Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is narrowly construed to serve its purposes of promoting effective legal advice by encouraging client candor in discussions with client's attorney. *See, e.g., Pac. Pictures Corp. v. United States Dist. Court*, 679 F.3d 1121, 1126 (9th Cir. 2012); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Weil v. Investment/Indicator, Research & Management*, 647 F.2d 18, 25 (9th Cir. 1981).

### A. Compliance With The IO/PA Has Virtually Nothing To Do With Legal Advice

Compliance with the IO/PA involves consultants collecting data, reaching opinions, and recommending solutions. The limited legal advice that could apply would be advice to the client about the legal necessity to comply and the ramifications for failing to comply, *not how to comply*. Attorney-client privilege is limited to true legal advice, not general IO/PA compliance.

### B.    Communications Among Consultants Are Not Privileged

The RI/FS Parties have withheld communications between their consultants and other parties and their consultants and/or the RI/FS consultants. No such communications are privileged unless they take place in a formal mediation setting and as subject to Rule 408 and CPRA. There have been ongoing communications between consultants, who formed a technical team to interface and meet with the Regional Board to comply with the IO/PA. Other consultants were retained to prepare the RI/FS, and all these consultants communicated with each other. These consultant communications do not meet the standards for attorney-client (or work-product) communications: the consultants did not render legal advice (or aid counsel in preparing for trial); and they could not be made confidentially.

The RI/FS Parties have not provided those materials that they and their consultants obtained and generated in such regard. The consultants represent various interests of the RI/FS Parties, which are adverse in many regards. An example is the VWD alignment with Hollandia with regard to lake flushing and sequestering of nutrients in deeper lake sediment, which would be opposed by CDC and possibly the other PADs. The RI/FS Parties have wrongfully withheld written communications, notes, memoranda, and/or other documents detailing these internal differences to prevent an outside party like Hollandia, or even the Regional Board, from getting a better understanding of the true facts and where there are differences of opinion and lower confidence levels. Dec JR ¶16-33.

## IV.    THE DOCUMENTS HOLLANDIA SEEKS ARE NOT PROTECTED BY THE WORK PRODUCT DOCTRINE

The work product rule protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party. FRCP 26(b)(3). Protection of work product other than an attorney's thoughts and opinions is conditional and can be discoverable upon a showing of need. *See, United States v. Nobles*, 422 US 225, 239 (1975). The RI/FS Parties claim work product privilege for all of their communications with their consultants and/or RI/FS consultants, including in their response to the IO/PA. That, again, is an overreach for reasons previously discussed. Hollandia has a substantial need for the documents and information showing bias and prejudice, including collusion. To the extent work product is withheld and reflects directions from counsel to manipulate the investigation, testing, modeling, etc., to the detriment of Hollandia, and advantage of any of the RI/FS Parties, such

16

documents would show bias, prejudice, and collusion. It would be more than an undue hardship to obtain substantially equivalent documents and materials concerning bias reflected in past work - it would be impossible because the RI/FS Parties would continue to assert privileges and forever block disclosure of these past damaging actions. See Fed.R.Civ.P. 26(b)(3). Dec JR ¶34.

Moreover, so-called "dual purpose" documents that assist business decisions *and* involve pending or prospective litigation can be work product where "their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." *In Re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 910 (9th Cir. 2004). This case is unlike *Torf*, where counsel hired an environmental consultant to assist in investigating whether the client had violated criminal statutes in the handling of hazardous wastes after the U.S. EPA requested information about the incident:

> We have previously held that "to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" (citation) "Here, there is no question that Ponderosa's attorney, McCreedy, hired Torf to help him assess the company's civil and criminal liability. The EPA had already notified Ponderosa that it was under investigation for violating federal waste management laws, and McCreedy was hired to defend Ponderosa in impending legal proceedings. The government told McCreedy that it "will not provide your client with a covenant not to sue for criminal liability and civil or administrative liability for any federal statute other than CERCLA." In order for McCreedy to provide informed legal advice to Ponderosa, and to prepare for anticipated litigation, he needed the help of an investigator such as Torf. Since most of the documents were prepared by Torf exclusively "in anticipation of litigation," these "single purpose" documents clearly pass the two-part test articulated in *California Public Utilities* and are afforded protection under Rule 26(b)(3). (California Pub. Utils Comm'n, 892 F.2d 778 at 780-781 (9th Cir. 1989).)

*Id.* at 907.

The Court applied the "because of" test regarding the true purpose for a document preparation:

> In addition to these single purpose documents, some of Torf's documents were also prepared in compliance with the Information Request and the Consent Order, or were otherwise related to the cleanup of the CERCLA sites. … [W]e join a growing number of our sister circuits in employing the formulation of the "because of" standard articulated in the Wright & Miller Federal Practice treatise. This formulation states that a document should be deemed prepared "in anticipation of litigation" and thus eligible for work product protection under Rule 26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024 (2d ed. 1994) ("Wright & Miller").

17

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

> The "because of" standard … considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]" …
>
> The circumstances surrounding the document's preparation must also be considered. In the "because of" Wright & Miller formulation, "the nature of the document and the factual situation of the particular case" are key to a determination of whether work product protection applies. Wright & Miller § 2024 (emphasis added). <u>When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated.</u>" (Underline added.)

*Id*. at 908.

Here, the RI/FS Parties were not the subject of a criminal investigation or under threat of litigation by the Regional Board so long as they worked toward their response to the IO/PA. The IO/PA calls for the assessment of nutrient sources in the watershed and solutions to cleaning up the creek and lake of excessive nutrients. They had to do this work irrespective of litigation, both to fulfill demands of the Regional Board with regard to the IO/PA, and for the PADs to comply with their respective MS4 stormwater permits. The RI/FS Parties did not need an attorney to decide how to respond to the technical mandates of the IO/PA or to direct their consultants. Dec JR ¶35.

Hollandia has a legitimate discovery need here because the communications sought are expected to reveal biases and prejudices among the RI/FS Parties' counsel and their consultants and/or RI/FS consultants in the selection of tests, selective targeting of investigations, location of tests, environmental conditions during testing, modeling to meet desired outcomes, assumptions made, suppression of exculpatory evidence for Hollandia, sweeping dissension under the rug, and avoidance of developing certain evidence against the RI/FS Parties, such as the continuous source of nutrients from golf courses, avocado groves, and a settling basin beside the lake, or the failure of the PADs to protect the watershed from too many nutrients and their agreement to do work outlined in the PA to avoid both the IO and a TMDL. Dec JR ¶¶36,49. There is no work product protection for communications identifying facts, data, and assumptions provided by the attorney and relied upon by an expert, much less a percipient fact consultant, in forming opinions. FRCP 26(b)(4)(C). Moreover, all consultants working on the RI/FS are like unretained experts with opinion testimony arising not

1  from enlistment as an expert but from "ground-level involvement in the events giving rise to the

2  litigation." *Downey v. Bob's Discount Furniture Holdings, Inc. (1st Cir. 2011) 633 F.3d 1, 6.*

3      It is highly likely there are communications among all the consultants revealing collusion to

4  single out Hollandia for a disproportionately high degree of blame and to conceal the absence of

5  evidence against Hollandia, or exculpatory evidence, and to avoid revealing information that is

6  damaging to the RI/FS Parties' own liability position. Dec JR ¶37.

7  **V.   THE PADS' COMMON INTEREST IS COORDINATING COMPLIANCE WITH
8     STORMWATER PERMITS IN ONE WATERSHED**

9      The PADs assert a common interest or joint defense agreement (JDA) privilege based on a

10 "Common Interest Agreement" (CIA) amongst them,[3] signed after the Regional Board issued the IO to

11 CDC on September 20, 2011, and just three months after the PADs entered the PA[4] with Addendum B

12 (which the Regional Board signed on June 17, 2011). The CIA sought to encompass the work the

13 PADs had agreed to do in the above agreements in lieu of being added to the IO and in exchange for

14 the Regional Board's "covenant not to sue." CIA, p.1-2; Add. B, section 2, 16. Dec JR ¶38.

15     The PA states CSD, CSM, and COE "are required by the San Diego Municipal Stormwater

16 Permit, Order No. R9-2007-0001, to regulate surface water discharges from their respective municipal

17 separate storm sewer systems (MS4s) … to the maximum extent practicable (MEP)." PA, p.1. The

18 PADs expressed concerns in the PA about their possible past and present discharges of "Nutrients" and

19 that the Regional Board could issue a Cleanup and Abatement Order or take other enforcement actions

20 against them. They expressed concern about enforcement under the Clean Water Act (federal law) and

21 the Porter-Cologne Water Quality Control Act (state Water Code) (not CERCLA). CIA, p.1. They

22 agreed to determine causal sources of nutrients to the creek and lake and implement remediation

23 pursuant to a plan that they would submit to the Regional Board for approval (what became the RI/FS).

24 PA, p.2. They agreed to achieve certain "water quality" objectives in the watershed, creek and lake as

25 necessary to comply with law and in anticipation of TMDLs for nutrients. Add. B, section 2. *They*

26

27
_____

28
[3] The PADs signed the agreement between October and November 2011.
[4] COE joined the PA through a "Cooperation Agreement" at roughly the same time.

1  agreed to keep everything confidential but allowed for the fact they might have to disclose some of the

2  shared information upon a Public Records Act request. CIA, section 6(d). Dec JR ¶38-40, Ex.13,14.

3  **VI.    THE PAD'S COMMON INTEREST AGREEMENT IS NOT A VALID DEFENSE AGAINST DISCOVERY INTO COMPLIANCE**

4

5          As previously stated, the PADs are barred by CPRA from entering an agreement to keep their

6  mode of complying with their permits confidential. Moreover, the June 2011 Addendum B made clear

7  that the Regional Board had already agreed it would not sue the PADs if they performed the work

8  outlined in the PA. Thus, by the time the PADs entered the CIA, the legal threat had passed, and time

9  for technical compliance had begun. Hypothetically, if there are documents relating to the PADs

10 addressing threatened legal action by the Regional Board or a citizen's group, then Hollandia would

11 acknowledge the potential for a JDA to be effective as to *litigation strategy for that purpose*, not

12 technical compliance, and would request the Court to review them in camera.

13 **VII.   PARAMETERS OF A JOINT DEFENSE AGREEMENT HAVE NOT BEEN MET DUE TO ADVERSE INTERESTS, NONLEGAL INTERESTS, AND/OR WAIVER**

14

15          **A.    All Parties Have Substantial Adverse Interests**

16          As to the PADs' (and possibly CDC's) claim of a JDA, the Ninth Circuit has roundly rejected

17 claims that: (i) a party seeking to impose liability on another can have the "common goal" or common

18 interest required by the joint defense privilege; (ii) any existing common interest agreement or joint

19 defense agreement (JDA) can survive beyond the point where one party to the JDA "blames" the

20 another party to the JDA; (iii) a party can selectively waive privileges against one adversary, while

21 asserting the privilege against another adversary; and (iv) a confidentiality agreement can shield

22 information when privileges have been waived. *See United States v. Gonzalez*, 669 F.3d 974 (9th Cir.

23 2012); *Pac. Pictures Corp. v. United States Dist. Court*, 679 F.3d 1121 (9th Cir. 2012).

24          The joint defense privilege applies where (1) the communication is made by separate parties in

25 the course of a matter of common interest; (2) the communication is designed to further that effort; and

26 (3) the privilege has not been waived. *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal.

27 2003). While the privilege does not require a complete unity of interests among the participants, and it

28

may apply where the RI/FS Parties' interests are adverse in substantial respects, the joint defense privilege has never been intended to apply between plaintiffs *and* select defendants in the same matter:

> Whether the jointly interested persons are defendants *or* plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a *common interest in litigation* should be able to communicate with their respective attorneys and with each other to more effectively prosecute *or* defend their claims.

*United* States *v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (italics added), *quoting In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990). If the RI/FS Parties claim a joint defense privilege in litigation where they are adversaries, that defies the logic of a joint *defense* or a *common* interest. While the parties to a JDA need not have identical interests, they "do, at a minimum, need to be engaged in maintaining substantially the same cause on behalf of the same parties *in the litigation*." *Gonzalez*, 669 F.3d at 980 (italics added, internal citations and quotations omitted).

### B.   The Parties Do Not Share Alignment In Litigation

The RI/FS Parties do not have the same cause in this litigation. CDC claims all the defendants, including the PADs, are "jointly and severally liable under CERCLA for general damages and all costs or expenses, including attorneys' fees, that it has incurred…." Dkt. No. 1: CDC Complaint 3:16-17. Further, as CDC reported in its Status Report filed December 13, 2013, "the present lawsuit is the only lawsuit currently pending in which CDC and the other named parties are litigating questions of liability under CERCLA, among other claims, in relation to the alleged releases and discharges of hazardous substances at and around the Lake." Dkt. No. 91; 4:2-5) In its Status Report filed March 27, 2015, the RI/FS Parties noted they would have adverse differences until they reached their own settlement: "[I]n the event CDC and the Public Entities successfully resolve their claims against each other through mediation without Hollandia's participation, CDC and the Public Entities then intend to pursue their claims against Hollandia. In that event, Hollandia would face the uphill battle of litigating the agreed-upon allocation of liability by CDC and the Public Entities who would then be aligned against Hollandia." Dkt. No. 116; 2:9-13. The RI/FS Parties have adverse interests, and even the PADs' interests are adverse but have been kept secret via the PA and CIA. Dec JR ¶42. Judicial notice sought.

The RI/FS Parties do "not have a true common goal, as it could not have been the [PADs'] goal to impose liability on [themselves]," which is CDC's goal in naming the PADs in this suit. *United*

21

1  *States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003); *see also, In re Grand Jury Subpoena*

2  *(Custodian of Records, Newparent, Inc.)*, 274 F.3d 563, 573 (1st Cir. 2001) (joint defense privilege

3  "does not apply in subsequent litigation between the joint clients"). The IO/PA raises technical and

4  scientific issues that CDC addressed (the lake) and the PADs addressed (the watershed). The premise

5  of a JDA for a technical response that is subject to the CPRA lacks foundation. Courts frown on the

6  creation of such a "code of silence" when there is no joint defense.

> 7  The rationale for recognizing joint defense agreements is that they permit parties to share
> information pertinent to each other's defenses. See *Hunydee v. United States*, 355 F.2d
> 8  183, 185 (9th Cir. 1965). In an adversarial proceeding, a party's entitlement to this
> enhanced veil of confidentiality can be justified on policy grounds. But <u>outside the</u>
> 9  <u>context of actual or prospective litigation, there is more vice than virtue in such</u>
> <u>agreements</u>. Indeed, were we to sanction the intervenors' view, we would create a
> 10  judicially enforced code of silence, preventing attorneys from disclosing information
> obtained from other attorneys and other attorneys' clients. Common sense suggests that
> 11  there can be no joint defense agreement when there is no joint defense to pursue. We so
> hold.
> 12

13  *In Re Grand Jury Subpoena (Newparent)* 274 F.3d 563, 574-5 (1st Cir. 2001) (underline added).

14      Even though the RI/FS Parties might try to claim an unwritten JDA with respect to the IO/PA

15  (as CDC is not a party to CIA), any such JDA would have ended when CDC sued the PADs in this

16  action. *Gonzalez*, 669 F.3d at 981 (any JDA that existed at the outset between the parties and their

17  counsel ended when one party decided to "pursue his own defense and blame" the other party to the

18  JDA). None of the RI/FS Parties described terms of any alleged *oral* JDA in their discovery responses.

19  The filing of suit by CDC has created an adversarial proceeding. Dec JR ¶42,43, Ex.22.

20      **C.**    <u>**There Have Been Waivers**</u>

21      Because there is no valid JDA, all disclosures resulted in a waiver of claimed privileges. "Once

22  a party had disclosed work product to one adversary, it waives work product protections as to all other

23  adversaries." *Bergonzi*, 216 F.R.D. at 498; *In re McKesson HBOC, Inc. Secs. Litig.*, 2005 U.S.Dist.

24  LEXIS 7098 at *17 (N.D. Cal. 2005). Thus, any communications after February 8, 2012, when CDC

25  commenced suit against the PADs, are not covered by any purported JDA, and there is ample evidence

26  of adversity going back to 2005.

27      Moreover, to the extent there was a JDA among the PADs in their common defense against

28  CDC and offense against Hollandia in this action, their work product protection was waived when they

22

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

disclosed their work product to CDC. The PADs cannot selectively waive privilege as to CDC. *See Pac. Pictures Corp. v. United States Dist. Court*, 679 F.3d 1121 (9th Cir. 2012) (rejecting a theory of selective waiver). "Courts construe privileges narrowly because the privilege hinders the courts in the search for truth." *United States v. M.I.T.*, 129 F.3d 681 at 684-685 (1st Cir. 1997). "It is inherently unfair to permit an entity to choose to disclose materials to one outsider while withholding them from another on the grounds of privilege." *United States v. Bergonzi*, 216 F.R.D. at 497.

## VIII. ANY CLAIM OF DISPROPORTIONALITY IS OF THE RI/FS PARTIES' OWN MAKING

Hollandia expects the RI/FS Parties to claim it would be burdensome to respond to a request for communications that go back several years, yet any burden would be due to the RI/FS Parties asserting improper privileges and failing to segregate true privileged material from discoverable material. Bias of the RI/FS Parties' consultants, manipulation of testing and results under the contrived veil of mediation or a PDA, so as to unfairly "target" Hollandia for litigation purposes and inflame the Regional Board, justify production of such documents. Also, CDC put all nutrient loading to the lake ever since it was created in about 1962 at issue. The RI/FS Parties seek untold millions from Hollandia and have misrepresented facts at every turn. Due process demands that Hollandia be entitled to full discovery into the inner workings of their scheme. Dec JR ¶33,48-49.

FRCP Rule 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors that must be considered in weighing proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* Here, the discovery sought goes to the heart of the RI/FS Parties attempt to stigmatize Hollandia. The full extent of the bias and collusion can only be unearthed by discovery into the entire RI/FS process that the parties have made secret. Dec JR ¶49.

## IX. THE RI/FS PARTIES' PRIVILEGE LOGS DO NOT DEPICT WITH PARTICULARITY THE CATEGORY OR DOCUMENTS NEEDED TO ASSESS WHETHER OR WHAT DOCUMENTS HAVE BEEN WRONGLY WITHHELD

The RI/FS Parties are withholding information based upon an overreaching assertion of mediation confidentiality/privilege, attorney-client and work product privileges. A party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). An adequate privilege log is one way in which a party can satisfy this burden. *Id.* A privilege log that includes the following information is "sufficient to establish the attorney-client privilege:" (1) the identity of the attorney and client involved; (2) the nature of the document (*e.g.*, letter, memorandum, *etc.*); (3) all persons or entities shown as recipients on the document; (4) all persons or entities known to have been informed of the substance of the document; and (5) the date the document was generated, prepared, or dated. *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989).

None of the RI/FS Parties provided a privilege log that satisfies their burden to justify any privilege. Moreover, in many instances, they lump different categories together, such as mediation and/or common interest regarding their IO/PA work, which apparently includes all consultants' notes. Also, CSD has <u>waived</u> any claim of privilege by failing to produce a privilege log. Dec JR ¶50.

## X.    SANCTIONS AGAINST THE RI/FS PARTIES ARE APPROPRIATE

FRCP 37(a)(5)(B) permits the Court to order payment of reasonable expenses that Hollandia incurred in making this motion if any of the other party's conduct necessitated the motion, unless Hollandia did not first attempt in good faith to obtain the discovery without court intervention, the opposing party's nondisclosure was substantially justified, or other circumstances would make an award unjust. Hollandia has complied with the meet and confer (M&C) requirements of the above rule and Chamber Rules as described in Dec JR ¶¶2-9, believes sanctions are warranted in this case, and seeks $25,000 for the privilege issues against all parties and their counsel of record, and $5,000 for all other issues against each party and its counsel of record, unless the Court believes more is warranted.

The RI/FS Parties were nonnegotiable on all of the privilege, mediation, and work product issues raised in this motion. All parties have withheld their consultants' notes, analyses, and discussions with each other to comply with the IO and PA. The parties range from substantial to no disclosure of written exchanges with the Regional Board. Also, CSD never produced its promised supplementation and has waived its right to assert or present a privilege log. Dec JR¶¶51-52,44-46.

## XI.    **CONCLUSION**

The RI/FS Parties have claimed privileges beyond what the law provides in an effort to create a shroud of secrecy over their communications with adverse parties and to thwart legitimate discovery. There is no JDA, and any claim to such in order to block discovery into how the RI/FS Parties decided to respond to the IO/PA, and other relevant inquiries, shows how the RI/FS Parties intended to use a JDA as a vice, not virtue, and mediation as a shield from non-legal matters. The RI/FS Parties' consultants and/or RI/FS consultants have, like treating physicians, already reached certain opinions with regard to some of the specific technical requests. Hollandia recognizes that these consultants, if designated as expert witnesses in this litigation, can be examined further as to those opinions during the expert discovery phase of this litigation, yet Hollandia would expect the RI/FS Parties to continue to wrongly assert privileges at that stage into all this foundational work. However, Hollandia is entitled to discover the underlying facts gathered or obtained during the course of their respective investigations in order to reach those opinions or conclusions.  For example, treating physicians will conduct tests, gather information and evidence as to a patient's health concerns or injuries, chart courses of action, and develop treatment plans, some times after and some times before forming opinions as to that patient's diagnosis and prognosis.  Similarly, the consultants hired by the RI/FS Parties have conducted tests, gathered information and evidence, obtained and analyzed data, and documented those findings in spreadsheets, communications, notes, memoranda, reports, and/or other documents which support the opinions they have or will ultimately develop, all of which is discoverable by Hollandia. Hollandia requests that the RI/FS Parties be ordered to respond to all following discovery in accord with the court ruling here on privileges, and to order sanctions against each of the RI/FS Parties and/or counsel as deemed appropriate.

**DISCOVERY DISPUTES WITH CDC**

At issue for privilege issues are RFP Nos. 1-17; privilege logs; ROG Nos. 7-9, 14, 16-21; RFA Nos. 19-21, 24.

**THE PARTIES MET AND CONFERRED AND NARROWED ISSUES**

See Dec JR for details of the meet and confer.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

Any and all DOCUMENTS referring or related to RECOMMENDATIONS for MAINTENANCE of the LAKE since it was created, including but not limited to NUTRIENT and sediment prevention and removal.

"DOCUMENTS" means writing and recordings, photographs, original and duplicates as defined in FRE 1001, including, but not limited to, writings, drawings, graphs, charts, photographs, phone records, e-mails, and other data compilations, electronic or otherwise, from which information can be obtained and translated, if required, by YOU into a readable or usable form.

"LAKE" means San Marcos Lake.

"MAINTENANCE" means activities undertaken to preserve, maintain, enhance, or improve, and to prevent the degradation of, something for ongoing use and enjoyment.

"NUTRIENTS" means a substance that provides nourishment essential for growth of plants or animals, whether organic or inorganic, liquid or solid, and specifically includes the nutrients listed and discussed in the IO, RI/FS, and any of the PARTIES' pleadings in this litigation however they may be characterized.

"RECOMMENDATIONS" means any advice, suggestions, consultations, or recommendations, written or otherwise.

**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

Responding Party's responses are made solely for the limited purpose of this action. They are made subject to all appropriate objections, including without limitation, objections concerning foundation, relevancy, and admissibility, and any and all other objections and grounds that would require the exclusion of any statement made herein, if such statement were made by, or if an

26

1  interrogatory were asked of, a witness present and testifying in court, all of which objections and

2  grounds are reserved and may be interposed at the time of trial.

3       No incidental or implied admissions are intended by the responses or objections made herein.

4  The fact that Responding Party has responded or objected to any particular request should not and may

5  not be taken as an admission that Responding Party accepts or admits the existence of any fact set forth

6  in or assumed by such request or that such response or objection constitutes admissible evidence.

7       The responses provided herein are based on Responding Party's present knowledge of facts

8  apparently relevant to this action. Responding Party has not completed its investigation of the facts,

9  discovery proceedings in this action or preparation for trial. While Responding Party's responses are

10  based on a reasonable and diligent investigation and search for information requested, further

11  discovery and analysis may reveal additional information, add meaning to known facts, and establish

12  additional conclusions. Responding Party accordingly reserves the right to make appropriate changes

13  in its responses or to supplement those responses should it appear at any time that an omission or error

14  has been made or that additional or more accurate information should be included. Responding Party

15  further reserves the right to rely upon any and all information at trial, whether or not disclosed at this

16  time in response to Propounding Party's Requests for Production.

17       To the extent any of the requests call for information that was prepared or obtained in

18  anticipation of litigation or for mediation, arbitration or trial, or is otherwise protected from disclosure

19  by the work-product doctrine, the attorney-client privilege, or any other privilege or right of privacy,

20  Responding Party objects to such requests on such grounds.  Responding Party will not disclose

21  information protected from discovery by virtue of said privileges or doctrines.

22       Responding Party objects to these requests to the extent they seek information prohibited

23  and/or restricted from disclosure by agreement, law, or regulation. Responding Party further objects to

24  these requests to the extent they seek information already in the possession of Propounding Party, or in

25  the public domain and are as readily available to Propounding Party as they are to Responding Party.

26       The preceding preliminary statement and general objections are incorporated into Responding

27  Party's responses set forth below, and the responses are made without waiving the foregoing

28  objections.

## **OBJECTIONS TO DEFINITIONS**

1.     Responding Party objects to the term "ARRANGEMENTS" as defined by Hollandia to mean "any agreement, understanding, practice, course of conduct, quid pro quo, settlement, payment, barter, exchange, partnering, avoidance of litigation, waiver, release between two or more PARTIES [defined to mean "any person, entity, company, party to this lawsuit, governmental agency, partner, agent, or consultant"], whether formal or informal, reduced to writing or not, set forth in a formal contract or otherwise, and regardless of characterization." This term is unintelligible as defined as it requires Responding Party to speculate as to Hollandia's intended scope and meaning. Responding Party objects to this defined term as vague and ambiguous, compound, overbroad, misleading, and unduly burdensome and oppressive. Responding Party further objects as this term calls for documents and information that are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence.

2.     Responding Party objects to the term "ENVIRONMENTAL CONDITIONS" as defined by Hollandia to mean "NUTRIENTS [defined to mean "a substance that provides nourishment essential for growth of plants or animals, whether organic or inorganic, liquid or solid, and specifically includes the nutrients listed and discussed in the IO, RI/FS, and any of the PARTIES' pleadings in this litigation however they may be characterized"], pollution, wastes, hazards, threats, and risks of any nature to the health and well-being of humans, animals, plants, ecosystems, and the natural environment." This term is unintelligible as defined as it requires Responding Party to speculate as to Hollandia's intended scope and meaning. Responding Party objects to this defined term as vague and ambiguous, compound, overbroad, misleading, and unduly burdensome and oppressive. Responding Party further objects as this term calls for documents and information that are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence.

3.     Responding Party objects to the terms "FERTILIZING" and "FERTILIZER" as defined by Hollandia to mean "any act of adding NUTRIENTS [defined to mean "a substance that provides nourishment essential for growth of plants or animals, whether organic or inorganic, liquid or solid, and specifically includes the nutrients listed and discussed in the IO, RI/FS, and any of the PARTIES' pleadings in this litigation however they may be characterized"], whether organic or inorganic, liquid

or solid, or any NUTRIENTS themselves." These terms are unintelligible as defined as they require Responding Party to speculate as to Hollandia's intended scope and meaning. Responding Party objects to these defined terms as vague and ambiguous, compound, overbroad, misleading, and unduly burdensome and oppressive.

4.      Responding Party objects to the term "LAKE SAN MARCOS COMMUNITY" as defined by Hollandia to mean "the subdivision surrounding the LAKE in San Marcos, California, also known as the Lake San Marcos Census Designated Place with a land mass of approximately 1.72 square miles and a water area of approximately 0.09 square miles." Responding Party objects to this term as vague and ambiguous, lack of foundation, misleading, and unduly burdensome and oppressive insofar as it requires Responding Party to speculate as to precise area and land mass to which the term refers.

5.      Responding Party objects to the term "NUTRIENTS" as defined by Hollandia to mean "a substance that provides nourishment essential for growth of plants or animals, whether organic or inorganic, liquid or solid, and specifically includes the nutrients listed and discussed in the IO, RI/FS, and any of the PARTIES' pleadings in this litigation however they may be characterized." Responding Party objects to this term as vague and ambiguous, overbroad, misleading, and unduly burdensome and oppressive insofar as it fails to identify specific nutrients, thereby requiring Responding Party to speculate as to the scope and meaning of the defined term.

Responding Party hereby incorporates these objections into each of the responses set forth below, and the responses are made without waiving the foregoing objections.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Responding Party objects to Hollandia's specified time and place for production as unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100 boxes of CDC documents available for review since 2015—CDC's business records organized as CDC kept them in the ordinary course of business—made available during mediation. Responding Party objects to this request as vague and ambiguous, overbroad, compound, and seeks documents and information that are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence. Responding Party further objects to the scope of the request as overbroad, unduly

29

burdensome and oppressive as it seeks any and all responsive documents over a period of approximately 60 years or more. Responding Party further objects as this request seeks documents and information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and confidentiality. Additionally, the request improperly seeks disclosure of expert information, currently barred by the Court's Scheduling Order Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

Subject to and without waiving any of the foregoing objections, Responding Party responds as follows: Responding Party will produce non-privileged, non-expert, responsive documents within its possession, custody, or control.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates it points and authorities from the Points and Authorities re Privilege, above. Further, the other objections are also improper and unmeritorious. The scope of the requested discovery is easy to ascertain and reasonable/proportional in light of the magnitude of the damages sought in the lawsuit, including the fact CDC claims Hollandia is liable for millions of dollars because of allegedly adding nutrients to the Lake since its inception in the early 1960s. It is essential to understand the relative contributions of nutrients from all sources, including CDC, along with its maintenance, over the same course of time. See generally, Dec JR. and ¶49. Each of the terms is reasonably defined in the original request. The boilerplate objections are improper in that they are generalized and unsupported for each of the discovery responses. The response is ambiguous and evasive in that there is a response subject to objections, making it impossible to know what, if anything has been produced or withheld, or if the response is accurate and complete. There is no description of efforts made to locate responsive documents from CDC or its agents, such as its consultants.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all DOCUMENTS referring or related to YOUR MAINTENANCE of the LAKE since it was created, including but not limited to NUTRIENT and sediment prevention and removal.

"YOU" and "YOUR" means Citizens Development Corp, and any of its predecessors under any name, including its owners, officers, employees, consultants, insurers, investigators, and agents, including counsel to the extent acting as agent to third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

CDC repeated the objections stated in response to RFP No. 1.

In addition, Responding Party directs Hollandia to public records available through the State Water Resources Control Board's GeoTracker database located at http://geotracker.waterboards.ca.gov.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all DOCUMENTS referring or related to water rights that CDC claims to have at the PROPERTY.

"PROPERTY" means the real property YOU own in, around, and including Lake San Marcos, including any golf course and orchards.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

CDC repeated the objections stated in response to RFP No. 2.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all DOCUMENTS that depict the location and boundaries of CDC's PROPERTY, including the time of any changes thereto, since the LAKE was created.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

CDC repeated the objections stated in response to RFP No. 2.

Responding Party has within its possession approximately 300 or more sets of site plans, blueprints, and/or drawings for properties located at and around Lake San Marcos that Responding Party will make available for inspection and photocopying at Responding Party's offices at Lake San Marcos at a time and date to be arranged by agreement of counsel.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1.

///

**REQUEST FOR PRODUCTION NO. 5:**

Any and all DOCUMENTS referring or related to YOUR FERTILIZING practices at YOUR PROPERTY, including YOUR golf course and orchards, from the time the LAKE was created.

"FERTILIZING" and "FERTILIZERS" means any act of adding NUTRIENTS, whether organic or inorganic, liquid or solid, or any NUTRIENTS themselves.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Responding Party objects to Hollandia's specified time and place for production as unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100 boxes of CDC documents available for review since 2015—CDC's business records organized as CDC kept them in the ordinary course of business—made available during mediation. Responding Party objects to this request as vague and ambiguous, overbroad and seeks documents and information that are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence. Responding Party further objects to the scope of the request as overbroad, unduly burdensome and oppressive as it seeks any and all documents over a period of approximately 60 years or more. Responding Party further objects to the term "FERTILIZING" as vague and ambiguous, compound, overbroad, misleading, and unduly burdensome and oppressive as it requires Responding Party to speculate as to its intended scope and meaning within the context of this request. Responding Party further objects to "FERTILIZING practices" as vague, ambiguous and overbroad because the request fails to describe with reasonable particularity the category of documents to be produced. Responding Party further objects as this request seeks documents and information that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and confidentiality. Additionally, the request improperly seeks disclosure of expert information, currently barred by the Court's Scheduling Order Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

Subject to and without waiving any of the foregoing objections, Responding Party responds as follows: Responding Party will produce non-privileged, non-expert, responsive documents within its possession, custody, or control.

///

1  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

2      Hollandia incorporates the reasons stated in response to Request for Production No. 1.

3  **REQUEST FOR PRODUCTION NO. 6:**

4      Any and all DOCUMENTS referring or related to efforts YOU have made to prevent

5  FERTILIZERS from entering the LAKE from any source since it was created.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

7      Responding Party objects to Hollandia's specified time and place for production as

8  unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100

9  boxes of CDC documents available for review since 2015—CDC's business records organized as CDC

10 kept them in the ordinary course of business—made available during mediation. Responding Party

11 objects to this request as vague and ambiguous, overbroad and seeks documents and information that

12 are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence.

13 Responding Party further objects to the scope of the request as overbroad, unduly burdensome and

14 oppressive as it seeks any and all documents over a period of approximately 60 years or more.

15 Responding Party further objects to the term "FERTILIZERS" as vague and ambiguous, compound,

16 overbroad, misleading, and unduly burdensome and oppressive as it requires Responding Party to

17 speculate as to its intended scope and meaning within the context of this request. Responding Party

18 further objects to this request as vague and ambiguous, overbroad, unduly burdensome and oppressive

19 because the request fails to describe with reasonable particularity the category of documents to be

20 produced. Responding Party further objects as this request seeks documents and information that are

21 protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and

22 mediation privilege and confidentiality. Additionally, the request improperly seeks disclosure of expert

23 information, currently barred by the Court's Scheduling Order Regulating Discovery of October 17,

24 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

25      Subject to and without waiving any of the foregoing objections, Responding Party responds as

26 follows: Responding Party will produce non-privileged, responsive documents within its possession,

27 custody, or control.

28 ///

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all DOCUMENTS referring or related to complaints made by any PARTY about ENVIRONMENTAL CONDITIONS at the LAKE since it was created.

"ENVIRONMENTAL CONDITIONS" means NUTRIENTS, pollution, wastes, hazards, threats, and risks of any nature to the health and well-being of humans, animals, plants, ecosystems, and the natural environment.

"PARTY" and "PARTIES" mean any person, entity, company, party to this lawsuit, governmental agency, partner, agent, or consultant.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Responding Party objects to Hollandia's specified time and place for production as unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100 boxes of CDC documents available for review since 2015—CDC's business records organized as CDC kept them in the ordinary course of business—made available during mediation. Responding Party objects to this request as vague and ambiguous, overbroad and seeks documents and information that are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence. Responding Party further objects to the scope of the request as overbroad, unduly burdensome and oppressive as it seeks any and all documents over a period of approximately 60 years or more. Responding Party further objects to the term "ENVIRONMENTAL CONDITIONS" as vague and ambiguous, compound, overbroad, misleading, and unduly burdensome and oppressive as it requires Responding Party to speculate as to its intended scope and meaning within the context of this request. Responding Party further objects to this request as vague and ambiguous, overbroad, unduly burdensome and oppressive because the request fails to describe with reasonable particularity the category of documents to be produced. Responding Party further objects as this request seeks documents and information that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and confidentiality. Additionally, the request improperly seeks disclosure of expert information, currently barred by the Court's Scheduling Order

34

1  Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

2  Subject to and without waiving any of the foregoing objections, Responding Party responds as

3  follows: Responding Party will produce non-privileged, responsive documents within its possession,

4  custody, or control.

5  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

6  Hollandia incorporates the reasons stated in response to Request for Production No. 1.

7  **REQUEST FOR PRODUCTION NO. 8:**

8  Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with the

9  RWQCB since the LAKE was created with regard to your PROPERTY, including the IO and RI/FS.

10  "IO" means Investigative Order R9-2011-0033 issued by the RWQCB to CDC.

11  "RI/FS" means the Remedial Investigation/Feasibility Study that YOU and other PARTIES

12  prepared in response to the IO.

13  "RWQCB" means the Regional Water Quality Control Board, Region 9.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

15  Responding Party objects to Hollandia's specified time and place for production as

16  unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100

17  boxes of CDC documents available for review since 2015—CDC's business records organized as CDC

18  kept them in the ordinary course of business—made available during mediation. Responding Party

19  objects to this request as vague and ambiguous, overbroad and seeks documents and information that

20  are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence.

21  Responding Party further objects to the scope of the request as overbroad, unduly burdensome and

22  oppressive as it seeks any and all documents over a period of approximately 60 years or more.

23  Responding Party objects to the extent the documents requested herein are public record, and thus

24  equally available to Hollandia. Responding Party further objects to this request as vague and

25  ambiguous, overbroad, unduly burdensome and oppressive because the request fails to describe with

26  reasonable particularity the category of documents to be produced with respect to "your PROPERTY,"

27  "the IO," and the "RI/FS." Responding Party further objects as this request seeks documents and

28  information that are protected from disclosure by the attorney-client privilege, attorney work-product

35

1  doctrine, and mediation privilege and confidentiality. Additionally, the request improperly seeks

2  disclosure of expert information, currently barred by the Court's Scheduling Order Regulating

3  Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

4      Subject to and without waiving any of the foregoing objections, Responding Party responds as

5  follows: Responding Party will produce non-privileged, responsive documents that are within its

6  possession, custody, or control. In addition, Responding Party directs Hollandia to public records

7  available through the State Water Resources Control Board's GeoTracker database located at

8  http://geotracker.waterboards.ca.gov.

9  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

10     Hollandia incorporates the reasons stated in response to Request for Production No. 1.

11 **REQUEST FOR PRODUCTION NO. 9:**

12     Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any

13 PARTY other than the RWQCB relating in any manner to the IO, including PARTY

14 ARRANGEMENTS.

15     "ARRANGEMENTS" means any agreement, understanding, practice, course of conduct, quid

16 pro quo, settlement, payment, barter, exchange, partnering, avoidance of liability, avoidance of

17 litigation, waiver, release, between two or more PARTIES, whether formal or informal, reduced to

18 writing or not, set forth in a formal contract or otherwise, and regardless of characterization.

19     "COMMUNICATE" or "COMMUNICATIONS" means any contact, discussion, or exchange

20 of ideas, whether written or oral, and by any means, whether in person, by letter, e-mail, phone, fax,

21 internet exchange, or other process, with another person or party about any subject, including but not

22 limited to requests, directions, orders, conveyance of information or data, clarifications, authorization,

23 and any other form and subject of communication.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

25     Responding Party objects to Hollandia's specified time and place for production as

26 unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100

27 boxes of CDC documents available for review since 2015—CDC's business records organized as CDC

28 kept them in the ordinary course of business—made available during mediation. Responding Party

36

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

objects to this request as vague and ambiguous, overbroad, seeks documents and information that are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence, not reasonably particularized, and unduly burdensome and oppressive. Responding Party further objects to the scope of the request as vague and ambiguous, overbroad, unduly burdensome and oppressive as it seeks any and all documents that refer to communications with unidentified parties ("any PARTY other than the RWQCB") over a period of approximately 6 years or more related to "the IO" and/or "PARTY ARRANGEMENTS." Responding Party further objects to this request as vague and ambiguous, overbroad, unduly burdensome and oppressive because the request fails to describe with reasonable particularity the category of documents to be produced with respect to "the IO" and "PARTY ARRANGEMENTS." Responding Party further objects to the term "PARTY ARRANGEMENTS" as vague and ambiguous, compound, overbroad, misleading, unintelligible, not reasonably particularized, and unduly burdensome and oppressive as it requires Responding Party to speculate as to its intended scope and meaning. Responding Party further objects as this request seeks documents and information that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and confidentiality. Additionally, the request improperly seeks disclosure of expert information, currently barred by the Court's Scheduling Order Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

Subject to and without waiving any of the foregoing objections, Responding Party responds as follows: Responding Party is unable to formulate a response as to documents related to "PARTY ARRANGEMENTS" because the term is unintelligible as drafted. As to the remaining part of the request, Responding Party will produce non-privileged, non-expert, responsive documents within its possession, custody, or control.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all DOCUMENTS reflecting YOUR INSURERS' payments or reimbursements of (or refusal to pay or reimburse) YOUR claimed damages against each PARTY to this lawsuit.

"INSURERS" means those insurance companies that are providing YOU a defense in the

1  instant litigation.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

3      CDC repeated the objections stated in response to RFP No. 1.

4  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

5      Hollandia incorporates the reasons stated in response to Request for Production No. 1.

6  **REQUEST FOR PRODUCTION NO. 11:**

7      Any and all DOCUMENTS that EVIDENCE YOUR claim that HOLLANDIA is responsible in

8  any manner for damages YOU claim in the instant litigation.

9      "EVIDENCE" means any information that refers to or could be relevant to a claim, regardless

10  of whether it supports or undermines it or would be admissible under the rules of evidence.

11      "HOLLANDIA" means Hollandia Dairy, Inc., and any of its predecessors under any name,

12  including its owners, officers, employees, consultants, and agents, including counsel.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

14      CDC repeated the objections stated in response to RFP No. 1.

15  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

16      Hollandia incorporates the reasons stated in response to Request for Production No. 1.

17  **REQUEST FOR PRODUCTION NO. 12:**

18      Any and all DOCUMENTS that EVIDENCE YOUR claim that the other PARTIES in the

19  instant litigation are responsible in any manner for damages YOU claim in the instant litigation.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

21      CDC repeated the objections stated in response to RFP No. 1.

22  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

23      Hollandia incorporates the reasons stated in response to Request for Production No. 1.

24  **REQUEST FOR PRODUCTION NO. 13:**

25      Any and all DOCUMENTS that EVIDENCE indemnification ARRANGEMENTS that YOU

26  have ever had with any other PARTY that relates in any way to the ENVIRONMENTAL

27  CONDITIONS at the LAKE since it was created.

28  ///

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Responding Party objects to Hollandia's specified time and place for production as unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100 boxes of CDC documents available for review since 2015—CDC's business records organized as CDC kept them in the ordinary course of business—made available during mediation. Responding Party objects to this request as vague and ambiguous, overbroad, seeks documents and information that are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence, not reasonably particularized, and unduly burdensome and oppressive. Responding Party further objects to the scope of the request as vague and ambiguous, overbroad, unduly burdensome and oppressive as it seeks any and all documents over a period of approximately 60 years or more. Responding Party further objects to this request as vague and ambiguous, overbroad, unduly burdensome and oppressive because the request fails to describe with reasonable particularity the category of documents to be produced with respect to "indemnification ARRANGEMENTS" that relate in any way to "ENVIRONMENTAL CONDITIONS at the Lake." Responding Party further objects to the terms "ARRANGEMENTS" and "ENVIRONMENTAL CONDITIONS" as vague and ambiguous, compound, overbroad, misleading, unintelligible, not reasonably particularized, and unduly burdensome and oppressive as they each require Responding Party to speculate as to their intended scope and meaning. Responding Party further objects as this request seeks documents and information that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and confidentiality.

Subject to and without waiving any of the foregoing objections, Responding Party responds as follows: After making a diligent search and reasonable inquiry in an effort to locate the documents requested, Responding Party is unable to comply as the requested documents are not in the possession, custody, or control of the Responding Party or never existed.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all DOCUMENTS that EVIDENCE INVESTIGATIONS of HOLLANDIA YOU

39

1 have conducted or obtained, including but not limited to its property, practices, and people.

2     "INVESTIGATION(S)" means any surveillance, research, testing, sampling, assessment,

3 analysis, or gathering of EVIDENCE.

4 **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

5     CDC repeated the objections stated in response to RFP No. 1.

6 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

7     Hollandia incorporates the reasons stated in response to Request for Production No. 1.

8 **REQUEST FOR PRODUCTION NO. 15:**

9     Any and all DOCUMENTS that EVIDENCE ownership interests in AGRICULTURAL

10 activities within the LAKE SAN MARCOS COMMUNITY area that have drained toward or into the

11 LAKE since the LAKE was created.

12     "AGRICULTURAL" means the cultivation or farming of food or ornamental products such as

13 avocado, citrus, and flowers, whether or not for sale.

14     "LAKE SAN MARCOS COMMUNITY" means the subdivision surrounding the LAKE in San

15 Marcos, California, also known as the Lake San Marcos Census Designated Place with a land mass of

16 approximately 1.72 square miles and a water area of approximately 0.09 square miles.

17 **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

18     Responding Party objects to Hollandia's specified time and place for production as

19 unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100

20 boxes of CDC documents available for review since 2015—CDC's business records organized as CDC

21 kept them in the ordinary course of business—made available during mediation. Responding Party

22 objects to this request as vague and ambiguous, overbroad, not reasonably particularized, and seeks

23 documents and information that are not relevant to a party's claims or defenses nor likely to lead to

24 discovery of admissible evidence. Responding Party further objects to the scope of the request as

25 overbroad, unduly burdensome and oppressive as it seeks any and all documents over a period of

26 approximately 60 years or more. Responding Party further objects as the documents requested herein

27 are public record, and thus equally available to Hollandia. This request improperly seeks information

28 that requires expert testimony or opinion as to the determination of whether any "AGRICULTURAL

activities within the LAKE SAN MARCOS COMMUNITY" have drained toward or into the Lake over the past 60 years or more. Thus, the request calls for the premature disclosure of expert witnesses and expert opinion, in violation of the Court's Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D). Responding Party objects to the term "AGRICULTURAL activities" as vague and ambiguous, overbroad, and not reasonably particularized. Responding Party further objects as this request seeks documents and information that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, mediation privilege and confidentiality, and right of privacy.

Subject to and without waiving any of the foregoing objections, and without accepting or admitting in any way that any property located at or around the Lake drained toward or into the Lake at any time or in any manner, Responding Party responds as follows: Responding Party will produce non-privileged documents within its possession, custody, or control reflecting ownership interests in avocado groves located within the Lake San Marcos Community. Responding Party also directs Hollandia to public records available at the San Diego County Recorder's Office. Responding Party has within its possession approximately 300 or more sets of site plans, blueprints, and/or drawings for properties located at and around Lake San Marcos that Responding Party will make available for inspection and photocopying at Responding Party's offices at Lake San Marcos at a time and date to be arranged by agreement of counsel.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any PARTY, including but limited to CalTrans and San Marcos Unified School District, relating in any manner to the IO, including the RI/FS and PARTY ARRANGEMENTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Responding Party objects to Hollandia's specified time and place for production as unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100 boxes of CDC documents available for review since 2015—CDC's business records organized as CDC

41

kept them in the ordinary course of business—made available during mediation. Responding Party objects to this request as vague and ambiguous, overbroad, seeks documents and information that are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence, not reasonably particularized, and unduly burdensome and oppressive. Responding Party further objects to the scope of the request as vague and ambiguous, overbroad, unduly burdensome and oppressive as it seeks any and all documents that refer to communications with multiple parties, including unidentified parties ("any PARTY, including but limited to CalTrans and San Marcos Unified School District"), over a period of approximately 6 years or more related to multiple categories or matters ("the IO," "the RI/FS," and/or "PARTY ARRANGEMENTS"). Responding Party further objects to this request as vague and ambiguous, overbroad, unduly burdensome and oppressive because the request fails to describe with reasonable particularity the category of documents to be produced with respect to "the IO," "RI/FS," and "PARTY ARRANGEMENTS." Responding Party further objects to the term "PARTY ARRANGEMENTS" as vague and ambiguous, compound, overbroad, misleading, unintelligible, not reasonably particularized, and unduly burdensome and oppressive as it requires Responding Party to speculate as to its intended scope and meaning. Responding Party further objects as this request seeks documents and information that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and confidentiality. Additionally, the request improperly seeks disclosure of expert information, currently barred by the Court's Scheduling Order Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

Subject to and without waiving any of the foregoing objections, Responding Party responds as follows: Responding Party is unable to formulate a response as to documents related to "PARTY ARRANGEMENTS" because the term is unintelligible as drafted. As to the remaining part of the request, Responding Party will produce non-privileged, non-expert, responsive documents within its possession, custody, or control.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1.

*///*

42

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

**REQUEST FOR PRODUCTION NO. 17:**

If YOU contend that the LAKE condition has ever presented an IMMINENT AND SUBSTANTIAL ENDANGERMENT, then please produce any and all DOCUMENTS that EVIDENCE YOUR claim of ENDANGERMENT.

"IMMINENT AND SUBSTANTIAL ENDANGERMENT" or "ENDANGERMENT" is defined to mean those same terms as used in the Resource Conservation and Recovery Act, 42 U.S.C. 6973, aka Section 7003.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Responding Party objects to Hollandia's specified time and place for production as unreasonable within the meaning of FRCP 34(b)(1)(B) because Hollandia has had approximately 1100 boxes of CDC documents available for review since 2015—CDC's business records organized as CDC kept them in the ordinary course of business—made available during mediation. Responding Party objects to this request as vague and ambiguous, overbroad, seeks documents and information that are not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence, not reasonably particularized, and unduly burdensome and oppressive. Responding Party further objects as this request seeks documents and information that are protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and confidentiality. Additionally, the request improperly seeks disclosure of expert information, currently barred by the Court's Scheduling Order Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

Subject to and without waiving any of the foregoing objections, Responding Party responds as follows: Responding Party is unable to formulate a response as to documents related to "PARTY ARRANGEMENTS" because the term is unintelligible as drafted. As to the remaining part of the request, Responding Party will produce non-privileged, non-expert, responsive documents within its possession, custody, or control.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1.

### ISSUES WITH CDC'S PRIVILEGE LOG

CDC'S Privilege Log fails to support the withholding of documents. CDC has failed to provide

43

1  sufficient description of categories or documents to meet its burden with regard to its amended

2  privilege log rows/boxes 3 and 4 set forth below. If anything, the log combines various categories,

3  some of which may be privileged, and some which may not be. The following is the amended privilege

4  log prepared by CDC.

5      Please see Exhibit 18, or, CDC, please add the amended log for the Court's convenience here.

6  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

7      Hollandia incorporates the reasons stated in response to Request for Production 2.

8      "[P]rivilege logs must be sufficiently detailed and informative to justify the claimed

9  privilege(s)." *Waymo LLC v. Uber Techs., Inc.* 319 F.R.D. 284, 287 (N.D.Cal. 2017). As a preliminary

10 matter the description fails to identify documents with enough specificity to determine whether the

11 documents are privileged. "The party claiming the privilege has the burden of demonstrating that the

12 communication was made in the course of an attorney-client relationship." *Cont'l Cas. Co. v. St. Paul*

13 *Surplus Lines Ins. Co.* 265 F.R.D. 510, 519 (E.D.Cal. 2010). CDC has not sustained its burden with

14 regard to log rows/boxes 3 and 4. Also, these documents can be produced with redaction of the

15 privileged information.

16      **WHY FURTHER RESPONSES ARE REQUIRED TO INTERROGATORIES**

17 **INTERROGATORY NO. 7:**

18      Please IDENTIFY and set forth all facts describing COMMUNICATIONS to and from YOU

19 and all PARTIES, including but not limited to the RWQCB, since the LAKE was created with regard

20 to ENVIRONMENTAL CONDITIONS at the LAKE, including but not limited to all aspects of the IO

21 and RI/FS.

22      "IDENTIFY" means to describe with particularity the subject information sought, identify all

23 relevant DOCUMENTS and witnesses, including their current or last known residential address and

24 telephone number and employer address and phone number.

25 **RESPONSE TO INTERROGATORY NO. 7:**

26      Responding Party objects to this request and its use of the term "IDENTIFY" as compound,

27 unduly burdensome and oppressive because they contain several discreet subparts (*i.e.,* (1) describe the

28 subject information and "set forth all facts", (2) identify documents, and (3) identify witnesses), which

44

1  subparts cause the total number of interrogatories to exceed the 25-interrogatory limit in violation of

2  the Court's Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214) and FRCP

3  33(a). Responding Party objects to the term "ENVIRONMENTAL CONDITIONS" as vague and

4  ambiguous, compound, overbroad, misleading, and unduly burdensome and oppressive because it

5  requires Responding Party to speculate as to Hollandia's intended scope and meaning. Responding

6  Party objects to this request as vague and ambiguous, overbroad, compound, unintelligible, seeks

7  documents and information that are not relevant to a party's claims or defenses nor likely to lead to

8  discovery of admissible evidence, unduly burdensome and oppressive. Responding Party further

9  objects to the scope of the request as vague and ambiguous, overbroad, unduly burdensome and

10  oppressive as it seeks information concerning broadly-stated subject matter covering a period of

11  approximately 60 years or more, such that Responding Party's compliance with this request would be

12  unreasonably difficult, time-consuming, and expensive. Thus, the request seeks information beyond

13  the scope of FRCP 33(a)(2) and 26(b)(1). Responding Party further objects as this request seeks

14  documents and information protected from disclosure by the attorney-client privilege, attorney work-

15  product doctrine, and mediation privilege and confidentiality. The request seeks confidential

16  communications between CDC and other parties that occurred within the context of mediation, as part

17  of settlement discussions, and/or as part of the Early Neutral Evaluation process. Parties including

18  Hollandia agreed to keep discussions confidential as part of the mediation process that has been

19  ongoing for years. Additionally, the request improperly seeks disclosure of expert information,

20  including communications with experts, currently barred by the Court's Scheduling Order Regulating

21  Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D). Moreover, this interrogatory

22  violates the attorney work-product doctrine that encourages attorneys to do their own work—the

23  interrogatory seeks information that is equally available to Hollandia because Hollandia has had

24  approximately 1100 boxes of CDC documents available for review since 2015. CDC has produced

25  records from which the answers can be derived via word searches, and the cost of preparing such a

26  summary or abstract is substantially the same for Hollandia as for CDC, within the meaning of FRCP

27  33(d).

28  　　　　Subject to and without waiving any of the foregoing objections, Responding Party responds as

follows: CDC has consulted with its personnel, and does not have a corporate memory of all communications with all persons over all the decades of CDC's existence concerning all environmental activities. CDC has produced tens of thousands of pages of records that can be word searched. Relying on the records noted, in 2008–2009, there was a year of monthly meetings between CDC, RWQCB and others. CDC0004277. David Gibson, Executive Officer, San Diego Regional Water Quality Control Board, met with members of the Lake Remediation Group and the LSM Task Force, and had a meeting and a boat ride on December 31, 2009. CDC0004301, CDC0004302 and CDC0004330. David Gibson spoke about lake conditions on March 25, 2010. CDC 0004301, CDC0004329, and CDC0004356. A meeting was planned with RWQCB on or about March 7, 2012 to discuss Nautilus Environmental Lake Study Plan, and make changes thereto. CDC0003931 and CDC0003970. The Lake Study Workplan was submitted for approval in or about December 2011. CDC0004232. Pete Peuron of the RWQCB met at the site with golf course superintendent, Randy Hopton, on August 30, 2007 and discussed pumping of lake water to the golf course. CDC0013906–908. Other public workshops, public presentations, and public meetings with the RWQCB were held on or about December 4, 2012 (CDC0055804); January 31, 2013 (CDC0056129); August 20, 2013 (CDC0056146); December 3, 2014; December 14, 2016 (CDC0056135). CDC met with RWQCB staff on or about June 18, 2013 and August 6, 2013. Further communications are matters of public record, including within the RI/FS, available at the RWQCB offices, and available online through the State Water Resources Control Board's GeoTracker database located at http://geotracker.waterboards.ca.gov.

Potential witnesses include current and former staff at the RWQCB, including but not limited to, Sarah Mearon, Laurie Walsh, John Anderson, and David Gibson, who may be contacted at San Diego Regional Water Quality Control Board, 2375 Northside Drive, Suite 100, San Diego, CA 92108-2700, tel: (619) 516-1990; current and former staff at the State Water Resources Control Board, including but not limited to, Mitchell Moody, State Water Resources Control Board, 1001 I St., 14th Floor, P.O. Box 2000, Sacramento, CA 95814, (916) 341-5383; Kyle Wooldridge, SWRCB (same address as above), tel: (916) 323-9405; Laura LaValle, SWRCB (same address as above), tel: (916) 341-5422; personnel employed (or previously employed) by the California Department of Water

Resources, Division of Safety of Dams, 2200 X Street, Suite 200, Sacramento, CA 95818, phone (916) 227-4644; Pino Vitti, CDC, 1105 La Bonita Drive, San Marcos, CA 92078, phone (858) 755-0216, who may be contacted through counsel of record; former CDC owners and employees, such as Ronald N. Frazar, Erik Richard, Fred Schmidt, and others, whose addresses and telephone numbers are unknown; Alan Miller, 2383 Lochridge Place, Escondido, CA, phone (760) 871-5318; current and former residents of the Lake San Marcos Community area, whose contact information is public record; and personnel, employees, agents, and other representatives of Defendants, Counter-Claimants, and Cross-Claimants City of San Marcos, City of Escondido, County of San Diego, and Vallecitos Water District, who may be contacted through their respective counsel of record.

Please see Exhibit 21, or, CDC, please add the amended response for the Court's convenience here.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1. CDC is required to answer based upon personal knowledge and that information which is available to it, including its consultants, here. *Mehl v. Blanas,* 241 F.R.D. 653, 661 (E.D. Cal. 2007) (emphasis added).

> Defendants correctly point out that the Federal Rules of Civil Procedure provide that a party subject to such a request is not required to perform compilation of data or statistics where the answers are within documents provided and the propounding party is equally able to make such a compilation. FRCP 33(d). However, **Defendants are required to answer based upon personal knowledge and that information which is available to them.** FRCP 33(a). Moreover, Plaintiffs point out that several parts of Interrogatory Eight request information that is not contained in any documents that have been produced to Plaintiffs, such as unreported campaign loans that were subsequently forgiven and names of persons who formerly held the position of Honorary Deputy Sheriff.
>
> For the sake of clarity and to avoid further needless waste of the Court's time, Defendants' response to Interrogatory Eight shall comply with the following mandates of Federal Rule of Civil Procedure 33: (1) Defendant Blanas is to answer all of the subparts of Interrogatory Eight to the best of his personal knowledge; (2) where the information sought by Interrogatory Eight is known to employees of the Sheriff's Department, contained within files maintained by the Sheriff's Department, or is otherwise available to Defendants, they shall locate and disclose the information; (3) where the information sought by Interrogatory Eight is contained in records produced to the Plaintiffs and the answer requires compilation that would be equally burdensome to either party, Defendants shall so state and

47

shall specify which documents contain the information.

*Id.* (emphasis added).

> "Generally, if the information sought is contained in the responding party's files and records, he or she is under a duty to search the records to provide the answers ... **A party who seeks to rely upon the Rule must not only certify that the answer may be found in the records referenced by it, but also 'must specify where in the records the answers [can] be found.'"** [*8] <u>Mullins</u>, 267 F.R.D. at 514.

> Applying this standard, Plaintiffs' responses are clearly deficient. Their reliance on FRCP 33(d) is improper because simply providing the answers would not require them to engage in burdensome or expensive research. **It is Plaintiffs' duty, as the responding party, to conduct and complete a reasonable search of records to provide answers when the information sought is contained in their files and records**….

CDC is a corporation, and an interrogatory must be answered "by any officer or agent, who must furnish the information available to the party." FRCP 33(b)(1)(b). Further, "A party cannot refuse to answer interrogatories on the ground that the (nonprivileged) information sought is solely within the knowledge of his attorney" *Hickman v. Taylor* (1947) 329 U.S. 495, 504.

CDC is required to provide a reasonable substantive response to a request for "all facts" that are material regarding communications about the lake condition, which is the gravamen of the lawsuit, including its work to respond to the Regional Board's Investigative Order (IO). The response fails to do that but, rather, itemizes some events with the tersest possible heading. The discovery request is relevant and proportional to the needs of the case, including the timing, nature, degree, and cause of problems observed at the lake. Millions are being sought from Hollandia. CDC should also make reasonable inquiry to its agents, including its consultants, if they have acted in a manner analogous to a treating physician, such as preparing information and analysis in response to the IO, and to its counsel for dealings with the Regional Board and third parties. This is not a question only an expert can answer because facts, information, and opinions were stated in the RI/FS presented to the RWQCB. CDC hired consultants who responded to the IO, helped prepare the RI/FS, and met with the Regional Board to hash out issues. Those consultants are like treating physicians. An interrogatory may also seek "an opinion or contention that related to fact or the application of law to fact." FRCP 33(a)(2). The response does not describe efforts to obtain all relevant information.

Here, CDC has referred to some documents and identified some people and meetings, but it has

1  not attempted to describe the contents of responsive communications, some of which are expected to

2  reveal CDC's lack of maintenance of the lake. Aside from mentioning a few specific documents

3  associated with certain meetings, CDC has otherwise referred nonspecifically to tens of thousands of

4  documents in 1100 boxes to look at without further direction. CDC has suggested Hollandia use "word

5  searches," but Hollandia has found that often does not work, even when a known word is in a known

6  document. CDC's officers, consultants, and counsel have had extensive communications to and from

7  third parties and the Regional Board about the lake problems. The information sought is important to

8  issues raised in the case, including Hollandia's defense, and is readily accessible by CDC.        It    is

9  unclear if the response is complete onto itself, but it does not appear to be so. Further, **Hollandia is not**

10  **aware of CDC** producing documents or information showing notes, analyses, and communications

11  with other parties to this suit or others involved in the lake and watershed nutrients investigation, aside

12  from e-mail exchanges involving the Regional Board. Moreover, it is unclear if CDC has described all

13  complaints by third parties about the lake. See generally, Dec JR.

14        Further, the other objections are also improper and unmeritorious. The scope of the requested

15  discovery is easy to ascertain, and the responsive is evasive and ambiguous. Each of the terms is

16  reasonably defined in the original request.

17        To the extent CDC claims any of the requested documents are publicly available, that is only

18  true for the RI/FS, appendices, and any other documents put on Geotracker. The Regional Board,

19  however, does not keep all of its records, such as e-mails, and it is not possible to determine what CDC

20  may have sent to or received from the Regional Board by e-mail unless CDC produces such

21  documents. Dec JR ¶44-46.

22  **INTERROGATORY NO. 8:**

23        Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of the LAKE and

24  watershed that YOU or other PARTIES have conducted to respond to the IO, including but not limited

25  to the search for PRPs, INVESTIGATION of HOLLANDIA, LAKE flushing, and level of

26  NUTRIENT interaction between the sediment and LAKE water column.

27        "PRPs" mean potentially responsible parties under any of the legal theories asserted by any of

28  the PARTIES in this lawsuit, including but not limited to CERCLA, RCRA, and any legal authority

1  asserted by the RWQCB in the IO.

2  **RESPONSE TO INTERROGATORY NO. 8:**

3       Responding Party objects to this request and its use of the term "IDENTIFY" as compound,

4  unduly burdensome and oppressive because they contain several discreet subparts (*i.e.,* (1) describe the

5  subject information and "set forth all facts", (2) identify documents, and (3) identify witnesses), which

6  subparts cause the total number of interrogatories to exceed the 25-interrogatory limit in violation of

7  the Court's Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214) and FRCP

8  33(a). Responding Party objects to this request as vague and ambiguous, overbroad, compound, seeks

9  documents and information that are not relevant to a party's claims or defenses nor likely to lead to

10 discovery of admissible evidence, unduly burdensome and oppressive, and beyond the scope of FRCP

11 33(a)(2) and 26(b)(1). Additionally, the request improperly seeks premature disclosure of expert

12 witnesses, expert opinions, and communications with experts in violation of the Court's Scheduling

13 Order Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D). The request

14 seeks a compilation, summary, or abstract of documents already in Hollandia's possession, the cost of

15 which is substantially the same to create by counsel for Hollandia and counsel for CDC. Information

16 detailing investigations is contained within the RI/FS, which CDC identifies pursuant to FRCP 33(d).

17 Responding Party further objects as this request seeks documents and information protected from

18 disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and

19 confidentiality. The interrogatory also violates the attorney work-product doctrine that encourages

20 attorneys to do their work by seeking CDC's summary of the investigations made that have been

21 reported in publicly-available information.

22       Subject to and without waiving any of the foregoing objections, Responding Party responds as

23 follows: Early investigations of PRPs included but were not limited to the County of San Diego, City

24 of San Marcos, City of Escondido, Vallecitos Water District, Hollandia Dairy, Inc., Holland Dairy,

25 Wilgenburg Dairy, Prohoroff Dairy, San Marcos High School c/o San Marcos Unified School District,

26 California Department of Transportation, Escondido Country Club, Twin Oaks Golf Course, The

27 Colony at Lake San Marcos Homeowners Association, and The Fairways at Lake San Marcos Owners'

28 Association, Inc. Further investigations are matters of public record, including investigations detailed

within the RI/FS, and in other documents available at the RWQCB offices, and available online through the State Water Resources Control Board's GeoTracker database located at http://geotracker.waterboards.ca.gov. With respect to investigations detailed within the RI/FS, see the following appendices to the RI/FS: Appendix E, Water Quality Management in Lake San Marcos: Analysis of Available Data, by Michael A. Anderson, dated February 3, 2010 (CSM000001-CSM003308); Appendix F, Historical Lake Data; Appendix G, Historical Aerial Photographs—Hollandia and Prohoroff Agricultural Properties; Appendix H, Lake Water Quality Sampling Data Tables; Appendix I, Vegetation Survey Data Tables; Appendix J, Storm Hydrographs, Creek and Outfall Stations, October 2013; Appendix K, Boring Logs MW Series; Appendix L, Chronological History of Lake San Marcos Dam; Appendix N, Dam Flow Rate Tables; Appendix O, Compiled Surface Water Sampling Database (Excel file); Appendix P, County Watershed Sampling Program Reports; Appendix Q, LimnoTech Memorandum, Sensitivity of Lake Model Simulations to Lake Inputs and Withdrawals; Appendix R, LimnoTech Modeling Results Presentation; Appendix T, LimnoTech FS Modeling Results Summary Presentation; Appendix U, LimnoTech Modeling Technical Memoranda; Appendix V, LimnoTech Memorandum, Effect of El Nino Years on Simulated Flows and Loads to Lake San Marcos; Appendix W, SWRCB Files for former Wilgenburg Dairy Property; Appendix X, Summary of RWQCB Inspection Reports for Hollandia Property; Appendix Y, Supplemental Hollandia Property Date Citations; Appendix Z, Historical Sampling Data, Hollandia Dairy; Appendix AA, Sanitary System Overflow Information; Appendix AB, Field Storm Drain and Culvert Photographs and Index; Appendix AC, Bradley Landfill Monitoring Report; Appendix AD, Groundwater Flow Maps (Creek Area Wells); Appendix AE, Lake-to-Groundwater Gradient Calculation Figures; Appendix AF, Chronological Summary of Lake Investigation Reports; Appendix AG, Nautilus Toxicity Report Data (Excel file); Appendix AH, Lake Sediment Quality Data Tables; Appendix AI, Historical Cyanotoxin Data; Appendix AJ, Time Series Plots (MW-Series Wells) 2013-2015 Data; Appendix AK, ERM Draft Screening Level Risk Assessment Report; Figures 1-117; and Tables 1-73.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Interrogatory 7.

**INTERROGATORY NO. 14:**

Please fully IDENTIFY YOUR claimed damages against HOLLANDIA and which of those have been paid or reimbursed, or which YOU have asked or will ask to be paid for, by YOUR INSURERS.

**RESPONSE TO INTERROGATORY NO. 14:**

Responding Party objects to this request and its use of the term "IDENTIFY" as compound, unduly burdensome and oppressive because they contain several discreet subparts (*i.e.,* (1) describe the subject information and "set forth all facts", (2) identify documents, and (3) identify witnesses), which subparts cause the total number of interrogatories to exceed the 25-interrogatory limit in violation of the Court's Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214) and FRCP 33(a). Additionally, the request improperly seeks premature disclosure of expert witnesses and expert opinions in violation of the Court's Scheduling Order Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D). Responding Party also objects to this request as vague and ambiguous, compound, and calls for speculation as to claimed damages Responding Party "will ask to be paid for, by YOUR INSURERS." Responding Party further objects as this request seeks documents and information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and confidentiality.

Subject to and without waiving any of the foregoing objections, Responding Party responds as follows: As of October 2017, CDC has incurred response costs totaling approximately $1,960,000. This sum is comprised of: $1,487,297.83 invoiced by Great Ecology for investigation and remediation costs through July 31, 2017; $50,952.36 invoiced by Nautilus Environmental for investigation costs; $79,892.23 invoiced by SCS Engineers for investigation costs; $117,139 invoiced by LimnoTech for investigation and remediation costs; $159,478.37 invoiced by Daniel B. Stephens & Associates, Inc. for investigation costs and preparation of the RI/FS and related materials; and $68,577.93 invoiced by the State of California for agency oversight costs through June 30, 2017. See CDC0052997-CDC0053242; CDC0058880-CDC0060446. Other expert materials currently are not subject to discovery. CDC's response action at the lake and surrounding properties is ongoing, such that CDC expects its response costs and damages to continue to increase, the total amount of which is presently

1  unknown. Future remediation costs are currently estimated in the RI/FS at approximately $11.3 million

2  (2015 dollars). See RI/FS at Table 73. CDC is unable to respond to the remaining portions of the

3  request because the specific assertion of Hollandia's share of CDC's total damages is the subject of

4  expert discovery, not currently allowed under the Court's Scheduling Order Regulating Discovery of

5  October 17, 2017 (Doc. No. 214), and because CDC's total claimed damages are presently unknown.

6  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

7       Hollandia incorporates the reasons stated in in response to Interrogatory 7. CDC refuses to

8  respond to what costs were paid for by insurers. CDC is not able to recover funds paid for by its

9  insurers. "The court "found no case law in which the collateral source rule was extended to CERCLA

10  actions. Indeed, various CERCLA provisions expressly prohibit a claimant from double recovery. *See*

11  42 U.S.C. §§ 9612(f). In both cases, the funds did not come directly from United Alloys 'pockets.' The

12  plaintiffs cannot recover response costs paid directly by their insurers because CERCLA bars double

13  recovery). … . Plaintiff is not entitled to recover the $1,283,722.81 paid by United Alloys' liability

14  insurers to Geomatrix." *United Alloys, Inc. v. Baker*, 2011 WL 2749641 (C.D. Cal. 2011)

15       CDC's objection that this request is vague and ambiguous, compound, and calls for speculation

16  is without any merit.  All the other parties have identified what payments have been paid by their

17  insurers. CDC is the only party to refuse to respond to this question. An answer to this question is

18  particularly important for settlement purposes because case law dictates that CDC would only be able

19  to seek contribution from Hollandia for the amount of money it itself has paid that exceeds its pro-rata

20  share of the damages, which it cannot do.

21  **INTERROGATORY NO. 16:**

22       Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of HOLLANDIA

23  YOU have conducted or obtained, including but not limited to its property, practices, and people.

24  **RESPONSE TO INTERROGATORY NO. 16:**

25       Responding Party objects to this request and its use of the term "IDENTIFY" as compound,

26  unduly burdensome and oppressive because they contain several discreet subparts (*i.e.,* (1) describe the

27  subject information and "set forth all facts", (2) identify documents, and (3) identify witnesses), which

28  subparts cause the total number of interrogatories to exceed the 25-interrogatory limit in violation of

53

1  the Court's Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214) and FRCP

2  33(a). Responding Party objects to this request as overbroad, seeks documents and information that are

3  not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence,

4  unduly burdensome and oppressive, and seeks information beyond the scope of FRCP 33(a)(2) and

5  26(b)(1). Responding Party further objects as this request seeks documents and information protected

6  from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation

7  privilege and confidentiality. The interrogatory also violates the attorney work-product doctrine that

8  encourages attorneys to do their own work insofar as the interrogatory seeks Responding Party's

9  analysis of documents, many of which are public record and thus equally available to Hollandia,

10 concerning Hollandia's own property, practices, and employees. Additionally, the request improperly

11 seeks premature disclosure of expert witnesses and expert opinions in violation of the Court's

12 Scheduling Order Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

13        Subject to and without waiving any of the foregoing objections, Responding Party responds as

14 follows: Investigations of background facts, including those related to Hollandia, are set forth in the

15 RI/FS, which is in Hollandia's possession, and is equally available to Hollandia. See RI/FS at

16 Appendix E, Water Quality Management in Lake San Marcos: Analysis of Available Data, by Michael

17 A. Anderson, dated February 3, 2010 (CSM000001-CSM003308); Appendix G, Historical Aerial

18 Photographs—Hollandia and Prohoroff Agricultural Properties; Appendix X, Summary of RWQCB

19 Inspection Reports for Hollandia Property; Appendix Y, Supplemental Hollandia Property Date

20 Citations; Appendix Z, Historical Sampling Data, Hollandia Dairy. To the extent CDC's consultants

21 have performed investigations related to Hollandia, those investigations constitute expert opinion and

22 are not currently subject to discovery under the Court's Scheduling Order Regulating Discovery of

23 October 17, 2017 (Doc. No. 214).

24 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

25        Hollandia incorporates the reasons stated in response to Interrogatory 7.

26 **INTERROGATORY NO. 17:**

27        Please IDENTIFY and set forth all facts describing the proposed remedial actions, including

28 associated costs, identified in the RI/FS that do not remediate something YOU contend was caused by

54

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

HOLLANDIA.

**RESPONSE TO INTERROGATORY NO. 17:**

Responding Party objects to this request and its use of the term "IDENTIFY" as compound, unduly burdensome and oppressive because they contain several discreet subparts (*i.e.,* (1) describe the subject information and "set forth all facts", (2) identify documents, and (3) identify witnesses), which subparts cause the total number of interrogatories to exceed the 25-interrogatory limit in violation of the Court's Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214) and FRCP 33(a). Responding Party further objects as this request seeks documents and information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation privilege and confidentiality. Additionally, the request improperly seeks premature disclosure of expert witnesses and expert opinions in violation of the Court's Scheduling Order Regulating Discovery of October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

Subject to and without waiving any of the foregoing objections, Responding Party responds as follows: The RI/FS estimates the total 30-year costs (2015 dollars) for lake and watershed proposed remedial actions to be $11,315,998, broken down as follows: Watershed Preferred Alternatives – (1) Agricultural BMPs, $1,546,724; and (2) Stream Restoration with Phosphorus Inactivation, $7,017,274; Lake Preferred Alternatives – (1) Destratification/Mixing (Diffused Aeration), $674,000; (2) Flocculation/Settling/ Phosphorus Inactivation (Alum), $954,000; and (3) Selective Withdrawal, $1,124,000. See the RI/FS at Table 73. Responding Party is unable to respond to the remaining portion of the request because questions concerning apportionment of harm are the subject of expert discovery, not currently allowed under the Court's Scheduling Order Regulating Discovery of October 17, 2017 (Doc. No. 214).

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Interrogatory 7.  Also, nothing in this interrogatory asks about apportionment.  It asks about "proposed remedial actions, including associated costs, identified in the RI/FS…." (italics added).  CDC's refusal to answer this interrogatory on the grounds it calls for an expert opinion is particularly disingenuous as CDC and the other parties hired consultants who worked on the RI/FS, and CDC is able to provide or gather a response as to certain

1   remediation not attributable to HOLLANDIA. CDC's consultant, Nick Buhbe, told the Regional Board

2   that one of the remedial options (La Cienega settling basin) "is not influenced by Hollandia." VWD

3   produced the above e-mail, dated March 4, 2016, between CDC consultant, Nick Buhbe of Great

4   Ecology, and the Regional Board, but CDC did not produce it. Dec JR ¶29.

5   **INTERROGATORY NO. 18:**

6       Please IDENTIFY each and every "hazardous substance" under CERCLA that YOU contend

7   has caused YOU to incur "response costs."

8       "CERCLA" means the Comprehensive Environmental Response, Compensation and Liability

9   Act, 42 U.S.C. 9601 et seq., and references to "hazardous substances" or "response costs" are as

10  defined in CERCLA.

11  **RESPONSE TO INTERROGATORY NO. 18:**

12      Responding Party objects to this request and its use of the term "IDENTIFY" as compound,

13  unduly burdensome and oppressive because they contain several discreet subparts (*i.e.,* (1) describe the

14  subject information and "set forth all facts", (2) identify documents, and (3) identify witnesses), which

15  subparts cause the total number of interrogatories to exceed the 25-interrogatory limit in violation of

16  the Court's Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214) and FRCP

17  33(a). Responding Party further objects as this request seeks documents and information protected

18  from disclosure by the attorney-client privilege, attorney work-product doctrine, and mediation

19  privilege and confidentiality. Additionally, the request improperly seeks premature disclosure of expert

20  witnesses and expert opinions in violation of the Court's Scheduling Order Regulating Discovery of

21  October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D).

22      Subject to and without waiving any of the foregoing objections, Responding Party responds as

23  follows: CDC's response costs were incurred due to the suspected existence of phosphorus and

24  ammonia, each of which is listed on CERCLA Table 302.4. See 40 C.F.R. § 302.4, Table 302.4.

25  Additionally, CDC has investigated and as part of the RI/FS expects to be obliged to address

26  environmental conditions caused by animal manure and other dairy wastes that potentially are

27  characteristic hazardous wastes, as described by 40 C.F.R. § 302.4(b). Hollandia abandoned manure on

28  its property when it sold the property and, CDC believes, stockpiled it onsite for months before moving

1   it offsite. CDC believes that animal manure has characteristics that make it hazardous, specifically

2   ignitability, reactivity, corrosivity, and/or toxicity.

3   **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

4         Hollandia incorporates the reasons stated in response to Interrogatory 7.

5         Additionally, CDC's response fails to set forth all facts such as where or how manure is listed

6   as a hazardous substance under CERCLA. CDC needs to identify each alleged hazardous substance on

7   the EPA List of Lists of hazardous substances and exactly how manure is a RCRA characteristic waste.

8   These points go to the heart of CDC's claim against Hollandia and whether there is a basis for federal

9   jurisdiction. Hollandia contends there are no nutrients, manure, or chemicals in nutrients or manure

10  that are on the definitive EPA "List of Lists," which itemizes every CERCLA "hazardous substance"

11  by a chemical identification and often by percentage solutions. See example of the List of Lists entry

12  for ammonia, one of the substances that CDC refers to loosely in its response. Dec JR ¶47. This

13  interrogatory seeks to pin CDC down as to the exact substance that it contends gives it the basis to sue

14  Hollandia under CERCLA. Hollandia has seen CDC avoid this issue every time Hollandia has pressed

15  it during all six years of the litigation. Hollandia is not seeking an abstract application of "pure law"

16  here.

17        **"**An interrogatory is not objectionable merely because it asks for an opinion or contention that

18  relates to fact or the application of law to fact, but the court may order that the interrogatory need not

19  be answered until designated discovery is complete, or until a pretrial conference or some other time."

20  FRCP(a)(2) Therefore, Hollandia requests that the court order CDC to give a complete response now

21  or at a specific time in the near future.  If an expert opinion is subsequently obtained, CDC should

22  respond to this discovery request no later than the initial disclosure date, or 20 days **after** the

23  responding party's expert designations are due.  See, e.g., *Baugh v. Bayer Corp.* 2012 U.S. Dist.

24  LEXIS 131867, 2012 U.S. Dist. LEXIS 131867, at *9, n.3 (deferring the answer date for requests for

25  admission until after the responding party's expert designation date).

26        **WHY FURTHER RESPONSES ARE REQUIRED TO REQUESTS FOR ADMISSIONS**

27  **REQUEST FOR ADMISSION NO. 19:**

28        Please admit that any potential cattle wastes from HOLLANDIA that are in the LAKE would

1   be buried below the layer of sediment that is interactive with the LAKE water column.

2   **RESPONSE TO REQUEST FOR ADMISSION NO. 19**:

3       Objection: This request seeks information that requires expert testimony or opinion, and calls

4   for the premature disclosure of expert witnesses and expert opinion, in violation of the Court's

5   Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214), and FRCP

6   26(a)(2)(D). Responding Party further objects to this request as vague and ambiguous in that it fails to

7   identify the scope and meaning of "cattle wastes," as distinguished from other solid and liquid dairy

8   wastes and wastewater generated by Hollandia's dairy farming operations. This request is also vague

9   and ambiguous as to Hollandia's intended meaning of "the layer of sediment that is interactive with the

10   LAKE water column." Responding Party objects as this request seeks information protected from

11   disclosure by the attorney-client privilege, attorney work-product doctrine, and/or mediation privilege

12   and confidentiality.

13   **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

14       Hollandia incorporates the reasons stated in response to Interrogatory 7. The response does not

15   admit to the full extent possible or explain why the request may not be admitted. It is evasive and

16   incomplete.

17       The Scheduling Order states that no expert discovery shall occur at this time. However, this is

18   not necessarily a question only an expert can answer because facts, information, and opinions were

19   stated in the RI/FS that was presented to the RWQCB. CDC hired these consultants to respond to the

20   Regional Board order, and they acted like treating physicians. In a request for admission, a party may

21   seek an admission of "fact, the application of law to fact, or opinions about either." FRCP 36(a)(1)(A).

22   Consultants who communicate with other parties, including the RWQCB, people working on the

23   RI/FS, and other parties to this lawsuit are not protected by the attorney work product privilege.

24            If a matter is not admitted, the answer must specifically deny it or state in

25            detail why the answering party cannot truthfully admit or deny it. A denial
must fairly respond to the substance of the matter; and when good faith

26            requires that a party qualify an answer or deny only a part of a matter, the
answer must specify the part admitted and qualify or deny the rest. **The**

27            **answering party may assert lack of knowledge or information as a**
**reason for failing to admit or deny *only if* the party states that it has**

28            **made reasonable inquiry and that the information it knows or can**
**readily obtain is insufficient to enable it to admit or deny.**

1  FRCP 36(a)(4)(emphasis added).

2         In addition, if an expert opinion is subsequently obtained, CDC should respond to this

3  discovery request no later than the initial disclosure date, or 20 days after the responding party's expert

4  designations are due.

5  **REQUEST FOR ADMISSION NO. 20:**

6         If YOU contend cattle wastes from HOLLANDIA remain in the LAKE, please admit that such

7  wastes have not caused YOU to incur any additional CERCLA "response costs."

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

9         Objection: This request seeks information that requires expert testimony or opinion, and calls

10  for the premature disclosure of expert witnesses and expert opinion, in violation of the Court's

11  Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214), and FRCP

12  26(a)(2)(D). Responding Party further objects to this request as vague and ambiguous in that it fails to

13  identify the scope and meaning of "cattle wastes," as distinguished from other solid and liquid dairy

14  wastes and wastewater generated by Hollandia's dairy farming operations. Responding Party objects as

15  this request seeks information protected from disclosure by the attorney-client privilege, attorney

16  work- product doctrine, and/or mediation privilege and confidentiality.

17  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:***

18         Hollandia incorporates the reasons stated in response to RFA 19.  Additionally, CDC should be

19  able to identify damages it claims were caused by Hollandia during discovery. That is particularly the

20  case here where the IO and litigation began over six years ago. CDC has the benefit of all the

21  consultants' investigation and modeling as required by the IO in order to prepare the RI/FS and

22  proposed remediation. In the course of such work, consultants identified many of the causes and

23  expressed opinions and conclusions. CDC's consultants specifically sought to find a pathway for cattle

24  wastes from Hollandia to the lake. Additionally, the investigation and RI/FS identified that significant

25  flushing of the lake occurs every year, including drought years because of the size of the watershed and

26  the year-round irrigation. CDC's consultants were involved in various aspects of the overall process. If

27  the factual data and/or opinions or conclusions on the requested subject were developed or expressed

28  in the process of responding to the IO, they should be provided now. See generally, Dec JR.

59

**REQUEST FOR ADMISSION NO. 21:**

Please admit there are parts of the proposed remediation identified in the RI/FS that do not remediate something YOU contend was caused by HOLLANDIA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Objection: This request seeks information that requires expert testimony or opinion, and calls for the premature disclosure of expert witnesses and expert opinion, in violation of the Court's Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D). Responding Party objects as this request seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and/or mediation privilege and confidentiality.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to RFA 19.

**REQUEST FOR ADMISSION NO. 24:**

Please admit AGRICULTURAL activities within the LAKE SAN MARCOS COMMUNITY area that drains toward or into the LAKE since the LAKE was created have contributed to the ENVIRONMENTAL CONDITIONS of the LAKE of which YOU complain in this lawsuit.

"AGRICULTURAL" means the cultivation or farming of food or ornamental products such as avocado, citrus, and flowers, whether or not for sale.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Objection: This request seeks information that requires expert testimony or opinion, and calls for the premature disclosure of expert witnesses and expert opinion, in violation of the Court's Scheduling Order Regulating Discovery, filed October 17, 2017 (Doc. No. 214), and FRCP 26(a)(2)(D). This request improperly seeks information that requires expert testimony or opinion as to the determination of whether any "AGRICULTURAL activities within the LAKE SAN MARCOS COMMUNITY" have drained toward or into the Lake over the past 60 years or more, and also whether any such "AGRICULTURAL activities" have contributed to the "ENVIRONMENTAL CONDITIONS of the LAKE." Responding Party objects to the terms "AGRICULTURAL activities" and "ENVIRONMENTAL CONDITIONS" as vague and ambiguous, overbroad, misleading, and

60

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

1   unduly burdensome and oppressive in that they each require Responding Party to speculate as to

2   Hollandia's intended scope and meaning. Responding Party objects as this request seeks information

3   protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and/or

4   mediation privilege and confidentiality.

5   **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

6       Hollandia incorporates the reasons stated in response to RFA 19.

7   **SANCTIONS AGAINST CDC ARE APPROPRIATE**

8       FRCP 37(a)(5)(B) permits the Court to order payment of reasonable expenses that Hollandia

9   incurred in making this motion if any of the other party's conduct necessitated the motion, unless

10  Hollandia did not first attempt in good faith to obtain the discovery without court intervention, the

11  opposing party's nondisclosure was substantially justified, or other circumstances would make an

12  award unjust CDC was nonnegotiable on all of the privilege, mediation, and work product issues raised

13  in this motion. CDC produced additional communications between its consultant and the Regional

14  Board after M&C, but did not produce any or any of its consultant's notes related to meetings with the

15  Regional Board. Hollandia has complied with the meet and confer (M&C) requirements of the above

16  rule and Chamber Rules as described in Dec JR ¶2-9 and believes sanctions are warranted in this case

17  for at least $5,000 as further supported by Dec JR ¶52.

18  **DISCOVERY DISPUTES WITH CSD**

19  **THE PARTIES MET AND CONFERRED AND NARROWED ISSUES**

20      See Dec JR for details of the meet and confer.

21  **REQUEST FOR PRODUCTION NO. 1:**

22      Any and all DOCUMENTS referring or related to limiting the amount of NUTRIENTS in the

23  COUNTY from entering any BODY OF WATER in YOUR jurisdiction that leads to the LAKE.

24      **Definitions are the same for all parties except as noted.**

25      "BODY OF WATER" means any surface water located in your current or past jurisdiction,

26  including but not limited to San Marcos Creek and San Marcos Lake.

27      "COUNTY" means the governing entity of the County of San Diego and/or the territory within

28  YOUR jurisdiction that is or was in the watershed that leads to and includes the LAKE.

61

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

1    "COMPLY" or "COMPLIANCE" means attempts to meet local, state, or federal legal

2    REQUIREMENTS, whether successful or not.

3    "REQUIREMENTS" means federal, state, or local laws and regulations, including rules,

4    orders, or directives issued by a governmental agency.

5    "TMDL" means Total Maximum Daily Load as used in Section 303(d) of the Clean Water Act

6    and state implementing laws.

7    "YOU" and "YOUR" means the County of San Diego, including its officers, employees,

8    consultants, insurers, investigators, and agents, including counsel to the extent acting as agent to third

9    parties.

10    <u>**COUNTY'S RESPONSE TO REQUEST FOR PRODUCTION**</u>

11    **PRELIMINARY STATEMENT**

12    Responding Party has not concluded its investigation of the facts relating to this case, formal

13    discovery, or preparation for further mediation, let alone trial, if necessary.   For this reason,

14    Responding Party's responses may be incomplete.   Furthermore, there is a possibility that upon further

15    investigation, these responses may need to be amended and/or supplemented.   These responses

16    represent Responding Party's reasonable effort to provide the information requested based upon

17    Responding Party's current knowledge and information in its possession.   Responding Party reserves

18    its right to produce evidence of any subsequently discovered facts or documents, to alter or amend its

19    responses set forth herein, and to otherwise assert factual and legal contentions as additional facts are

20    obtained, analyses are made, and legal research is completed.

21    Responding Party objects to the extent that these requests seek trade secrets, proprietary

22    business information, confidential financial information, information protected by the attorney-client

23    privilege, the work product doctrine, the Constitutional right to privacy or any other applicable

24    privileges or protections.   Furthermore, Responding Party objects to these requests to the extent that

25    they are vague, ambiguous, or overbroad.   Responding Party's responses are based on a good faith

26    interpretation of the requests.

27    This preliminary statement and objections and assertions contained herein are hereby

28    incorporated into all of the requests below, without waiver or emphasis should a given objection be

repeated or omitted in each individual response below.

## OBJECTIONS TO DEFINED TERMS

1.      Responding Party objects to the term "ARRANGEMENTS" as defined as vague, ambiguous, overbroad, compound, unduly burdensome, and unintelligible.  The term also assumes facts, lacks foundation, calls for speculation, and calls for legal conclusions.  Responding Party objects that as defined, the term is subject to multiple, conflicting definitions, such that Responding Party must resort to speculation to construe it.  Further, the term seeks information potentially protected from disclosure by the attorney-client and/or work product privileges and attempts to elicit information that is not relevant to any claim or defense in this matter.

2.      Responding Party objects to the term "BODY OF WATER" as defined as vague, ambiguous, overbroad, and compound.  The term also assumes facts, lacks foundation, calls for speculation, and calls for legal conclusions.  Further, it calls for the premature disclosure of expert testimony, information, opinion, and/or materials.

3.      Responding Party objects to the term, "COUNTY" as defined as vague, ambiguous, and overbroad.  The term also assumes facts, lacks foundation, calls for speculation, and calls for legal conclusions.

4.      Responding    Party    objects    to    the    terms    "COMMUNICATE"    and "COMMUNICATIONS" as defined as vague, ambiguous, overbroad, compound, and unduly burdensome.  Further, the terms seek information potentially protected from disclosure by the attorney-client and/or work product privileges and/or other confidential business privileges and attempt to elicit information that is not relevant to any claim or defense in this matter.

5.      Responding Party objects to the terms "COMPLY" or "COMPLIANCE" as defined as vague, ambiguous, and overbroad.  The term also assumes facts, lacks foundation, calls for speculation, and calls for legal conclusions.

6.      Responding Party objects to the phrase, "ENVIRONMENTAL CONDITIONS" as defined as vague, ambiguous, and overbroad.  The term also assumes facts, lacks foundation, calls for speculation, and calls for legal conclusions.  Further, it calls for the premature disclosure of expert testimony, information, opinion, and/or materials.

7.      Responding Party objects to the term "EVIDENCE" as defined as vague, ambiguous, and overbroad.  The term also conflicts with the applicable discovery standards, which only allow the discovery of information relevant to a claim or defense.  Further, the term assumes facts, lacks foundation, calls for speculation, and calls for the premature disclosure of expert testimony, information, opinion, and/or materials.  It also attempts to infringe on the attorney-client and/or work product privileges.

8.      Responding Party objects to the terms "FERTILIZING" and "FERTILIZERS" as vague, ambiguous, and overbroad.  The terms also assume facts, lack foundation, call for speculation, and call for the premature disclosure of expert testimony, information, opinion, and/or materials.

9.      Responding Party objects to the term "HOLLANDIA" as defined as vague, ambiguous, and overbroad.  The term also assumes facts, lacks foundation, calls for speculation, and calls for legal conclusions.

10.      Responding Party objects to the term "INSURERS" as defined as vague, ambiguous, and overbroad.  The term also assumes facts, lacks foundation, calls for speculation, and calls for legal conclusions.  Further, the term attempts to infringe on the attorney-client, work product, and/or insurer-insuree privileges, as well as other confidential business privileges provided by state and/or federal law.

11.      Responding Party objects to the term "INVESTIGATIONS" as defined as vague, ambiguous, and overbroad.  The term also assumes facts, lacks foundation, calls for speculation, and calls for the premature disclosure of expert testimony, information, opinion, and/or materials.  Further, it attempts to infringe on the attorney-client and/or work product privileges.

12.      Responding Party objects to the term "NUTRIENTS" as defined as vague, ambiguous, and grossly overbroad and unduly burdensome.  The term also assumes facts, lacks foundation, calls for speculation, and calls for the premature disclosure of expert testimony, information, opinion, and/or materials.

13.      Responding Party objects to the terms "PARTY" and "PARTIES" as defined as vague, ambiguous, and overbroad.  The terms also attempt to infringe on the attorney-client and/or attorney work product privileges.  Further, they attempt to impose on Responding Party a duty to respond on

behalf of persons or entities not parties to this action and/or beyond its control.

14.    Responding Party objects to the term "REQUIREMENTS" as defined as vague, ambiguous, and overbroad.  The term also assumes facts, lacks foundation, calls for speculation, and calls for legal conclusions.

15.    Responding Party objects to the term "TMDL" as defined as vague, ambiguous, and overbroad.  The term also assumes facts, lacks foundation, calls for speculation, and calls for the premature disclosure of expert testimony, information, opinion, and/or materials.

16.    Responding Party objects to the terms "YOU" and "YOUR" as defined as grossly overbroad and insofar as it attempts to infringe on the attorney-client, work product, investigator, and/or insurer-insuree privileges.  The term also attempts to impose on Responding Party a duty to respond on behalf of persons or entities not parties to this action and/or beyond its control.  Further, it assumes facts, lacks foundation, calls for speculation, and calls for the premature disclosure of expert testimony, information, opinion, and/or materials.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Responding Party incorporates by reference as though fully set forth herein its Preliminary Statement and objections to applicable defined terms.  As to this request as a whole, Responding Party objects that it is vague, ambiguous, compound, and overbroad as to scope and time.  This request also seeks information potentially protected from disclosure by the attorney-client and/or work product privileges and is not relevant to any claim or defense in this matter.  It also assumes facts, lacks foundation, calls for speculation, calls for legal conclusions, and calls for the premature disclosure of expert testimony, materials, information, and/or opinions.  Finally, Responding Party objects to the extent that this request fails to describe with reasonable particularity the materials sought, seeks documents that are not reasonably accessible, and imposes undue burdens/costs on Responding Party.

Without waiving its objections and subject thereto, Responding Party responds:  Responding Party has conducted a reasonable search and diligent inquiry and submits that all non-privileged documents responsive to this request that are in its possession, custody, or control have been previously made available to Propounding Party in connection with the Rule 26 disclosure process.  By way of further response, Responding Party submits that it will identify, disclose, and make available

1  for deposition, its expert witnesses, whose materials, information, and/or opinions Responding Party

2  expressly refrains from revealing and/or producing at this stage of the litigation.  Discovery is still

3  open and Responding Party reserves its right to amend/supplement its responses at any time.

4  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

5  Hollandia incorporates the reasons stated in response to Request for Production No. 1 **to CDC**.

6  Moreover, CSD asserts privileges but fails to provide a privilege log as required under FRCP 26(b)(5):

7  "When a party withholds information otherwise discoverable by claiming that the information is

8  privileged or subject to protection as trial preparation material, the party must: "(i) expressly make the

9  claim; and (ii) describe the nature of the documents, communications, or tangible things not produced

10  or disclosed -- and do so in a manner that, without revealing information itself privileged or protected,

11  will enable other parties to assess the claim." *Id*.  Rule 26(b)(5) is "commonly satisfied by filing a

12  privilege log." *Wolk v. Green,* No. C06-5025 BZ, 2007 WL 3203050, at *1-2 (N.D. Cal. 2007).

13  "[P]rivilege logs must be sufficiently detailed and informative to justify the claimed privilege(s)."

14  *Waymo LLC v. Uber Techs., Inc.* 319 F.R.D. 284, 287 (N.D.Cal. 2017). CSD has waived its right to

15  assert privileges.

16  The other objections are also improper and unmeritorious as the request describes with

17  reasonable particularity and specifies the topic "the IO, including the RI/FS and PARTY

18  ARRANGEMENTS."  Each of the terms is reasonably defined in the original request. During meet

19  and confer, CSD indicated it would not produce documents it deemed privileged, but agreed to

20  produce many documents, such as the latest MS4 (stormwater) documents and track down TMDL

21  related documents. Hollandia has not yet received any new documents or amendments. Dec JR ¶¶5,

22  15, 41.

23  **REQUEST FOR PRODUCTION NO. 2:**

24  Any and all DOCUMENTS referring or related to the amount of NUTRIENTS in the

25  COUNTY that has entered any BODY OF WATER in the watershed that leads to the LAKE each year

26  since the LAKE was created.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

28  CSD repeated the objections stated in response to RFP No. 1.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Request No. 1. CSD's document production to date consists of providing access to documents early in mediation and offered again at the outset of this discovery period pursuant to Rule 26. During meet and confer, CSD agreed to produce recent documents showing yearly quantities of nutrients, but no documents have yet been produced. Dec JR ¶5.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all DOCUMENTS referring or related to YOUR FERTILIZING practices in the watershed that leads to the LAKE each year since the LAKE was created.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

CSD repeated the objections stated in response to RFP No. 1.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Request No. 1. During meet and confer, CSD agreed to see if it could update CSD's fertilizing practices, but no documents have yet been produced. Dec JR ¶5.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all DOCUMENTS referring or related to complaints made by any PARTY about ENVIRONMENTAL CONDITIONS at any BODY OF WATER in the watershed that leads to, and includes, the LAKE each year since the LAKE was created.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

CSD repeated the objections stated in response to RFP No. 1.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Request No. 1. During meet and confer, CSD agreed to produce some documents that were claimed to be privileged and reflected investigation regarding third party complaints, but no documents have yet been produced. Dec JR ¶5.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all DOCUMENTS referring or related to complaints made by any PARTY about YOUR COMPLIANCE with stormwater REQUIREMENTS that could or did impact the watershed

1  leading to the LAKE, including all Notices of Violation.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

3  CSD repeated the objections stated in response to RFP No. 1.

4  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

5  Hollandia incorporates its response to Request No. 1. During meet and confer, CSD agreed to

6  look further into whether there were responsive documents, but no documents have yet been produced.

7  Dec JR ¶5.

8  **REQUEST FOR PRODUCTION NO. 6:**

9  Any and all DOCUMENTS referring or related to COMMUNICATIONS over potential or

10  actual REQUIREMENTS to limit NUTRIENTS from entering any BODY OF WATER in the

11  watershed that leads to the LAKE to COMPLY with stormwater REQUIREMENTS, including but not

12  limited to TMDLs.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

14  CSD repeated the objections stated in response to RFP No. 1.

15  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

16  Hollandia incorporates its response to Request No. 1. CSD agreed to respond to potential

17  TMDLs and limit nutrients in lieu of being added to the IO pursuant to the Participation Agreement,

18  which also included CalTrans and San Marcos Unified School District as signatories. Dec JR ¶15, 36,

19  39-41, 49.

20  **REQUEST FOR PRODUCTION NO. 7:**

21  Any and all DOCUMENTS referring or related to concerns by any PARTY, including the

22  RWQCB, over ENVIRONMENTAL CONDITIONS originating on, or stemming from, Bradley Field,

23  including all Notices of Violation.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

25  Responding Party incorporates by reference as though fully set forth herein its Preliminary

26  Statement and objections to applicable defined terms.  As to this request as a whole, Responding Party

27  objects that it is vague, ambiguous, compound, and overbroad as to scope and time.  This request also

28  seeks information potentially protected from disclosure by the attorney-client and/or work product

68

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

1  privileges and is not relevant to any claim or defense in this matter.  It also assumes facts, lacks

2  foundation, calls for speculation, calls for legal conclusions, and calls for the premature disclosure of

3  expert testimony, materials, information, and/or opinions.  This request also seeks materials that are

4  equally available to Propounding Party.  Finally, Responding Party objects to the extent that this

5  request fails to describe with reasonable particularity the materials sought, seeks documents that are

6  not reasonably accessible, and imposes undue burdens/costs on Responding Party.

7      Without waiving its objections and subject thereto, Responding Party responds:  Responding

8  Party construes the phrase "Bradley Field" to mean "Bradley Park" and states that it has conducted a

9  reasonable search and diligent inquiry and submits that all non-privileged documents responsive to this

10 request that are in its possession, custody, or control have been previously made available to

11 Propounding Party in connection with the Rule 26 disclosure process.  By way of further response,

12 Responding Party submits that it will identify, disclose, and make available for deposition, its expert

13 witnesses, whose materials, information, and/or opinions Responding Party expressly refrains from

14 revealing and/or producing at this stage of the litigation.  Discovery is still open and Responding Party

15 reserves its right to amend/supplement its responses at any time.

16 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

17     Hollandia incorporates its response to Request No. 1. CSD once owned Bradley Field, (Bradley

18 Park) and the Regional Board issued orders to remediate problems arising from the former dump site.

19 Bradley Park is near and upgradient of the Lake. Runoff from Bradley Park can go to the Lake.

20 **REQUEST FOR PRODUCTION NO. 8:**

21     Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with the

22 RWQCB since the LAKE was created with regard to any BODY OF WATER in the watershed that

23 leads to and includes the LAKE, including the IO and RI/FS.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

25     CSD repeated the objections stated in response to RFP No. 1.

26 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

27     Hollandia incorporates its response to Request No. 1. CSD has had extensive communications

28 with the Regional Board since at least 2005 over the eutrophication of the Lake, the PADs'

1  contribution of nutrients to the Lake and Creek from the storm drains, and their required role in

2  limiting the ongoing nutrient load and remediating the Lake and Creek from excessive nutrients. CSD

3  agreed to undertake these actions in its Participation Agreement in 2011, which included compliance

4  with the Investigative Order and broader watershed remediation. During meet and confer, CSD and

5  Hollandia agreed this RFP would be limited to the substances identified in the IO. Dec JR ¶5, 11, 16,

6  23, 33, 39.

7  **REQUEST FOR PRODUCTION NO. 9:**

8      Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any

9  PARTY other than the RWQCB, relating in any manner to the I/O, including the RI/FS and PARTY

10  ARRANGEMENTS.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

12      CSD repeated the objections stated in response to RFP No. 1.

13  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

14      Hollandia incorporates its response to Request No. 8. CSD's compliance with the Participation

15  Agreement, including the Investigative Order, resulted in CSD communicating extensively with

16  various parties, not just the PADs, and conducting various investigations, tests, analyses, modeling,

17  etc.  See, e.g., Dec JR ¶11, 25-26, 32, 39.

18  **REQUEST FOR PRODUCTION NO. 10:**

19      Any and all DOCUMENTS that EVIDENCE YOUR claim that HOLLANDIA is responsible in

20  any manner for damages YOU claim in the instant litigation.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

22      CSD repeated the objections stated in response to RFP No. 1.

23  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

24      Hollandia incorporates its response to Request No. 9. During meet and confer, CSD agreed to

25  produce some documents from its investigation but has not yet produced anything. Dec JR ¶5.

26  **REQUEST FOR PRODUCTION NO. 11:**

27      Any and all DOCUMENTS that EVIDENCE INVESTIGATIONS of HOLLANDIA YOU

28  have conducted or obtained, including but not limited to its property, practices, and people.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

CSD repeated the objections stated in response to RFP No. 1.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Request No. 9. During meet and confer, CSD agreed to produce some documents from its investigation but has not yet produced anything. Dec JR ¶5.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all DOCUMENTS reflecting YOUR INSURERS' payments or reimbursements of (or refusal to pay or reimburse) YOUR claimed damages against each PARTY to this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Responding Party incorporates by reference as though fully set forth herein its Preliminary Statement and objections to applicable defined terms. As to this request as a whole, Responding Party objects that it is vague, ambiguous, compound, and overbroad as to scope and time. This request also seeks information potentially protected from disclosure by the attorney-client, work product, and/or insurer-insuree privileges and is not relevant to any claim or defense in this matter. It also assumes facts, lacks foundation, calls for speculation, calls for legal conclusions, and calls for the premature disclosure of expert testimony, materials, information, and/or opinions. Finally, Responding Party objects to the extent that this request fails to describe with reasonable particularity the materials sought, seeks documents that are not reasonably accessible, and imposes undue burdens/costs on Responding Party.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Request No. 1, above, and its reponse to Interrogatory No. 14 **to CDC**. CSD is not able to recover funds paid for by its insurers. During meet and confer, CSD agreed to produce some responsive documents, including invoices, but has not yet produced anything. Dec JR ¶5.

**REQUEST FOR PRODUCTION NO. 13:**

Any and all DOCUMENTS that EVIDENCE YOUR claim that the PARTIES in the instant litigation, other than HOLLANDIA, are responsible in any manner for damages YOU claim in the instant litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

CSD repeated the objections stated in response to RFP No. 1.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Request No. 9. During meet and confer, CSD agreed that communications by its consultants with other consultants working on the IO are not privileged, and that there may be more documents than the RI/FS and appendices, but has not yet produced anything. Dec JR ¶5.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all DOCUMENTS that EVIDENCE any other claim that YOU have ever made against any PARTY for damage caused by NUTRIENTS going into a BODY OF WATER in YOUR jurisdiction.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

CSD repeated the objections stated in response to RFP No. 1.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Request No. 9. During meet and confer, CSD indicated there are no responsive documents but has not provided an amended response to reflect that. Dec JR ¶5.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all DOCUMENTS that EVIDENCE any other claim under CERCLA that YOU have ever made against any PARTY for NUTRIENTS going into a BODY OF WATER located anywhere.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

CSD repeated the objections stated in response to RFP No. 12.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Request No. 9.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all DOCUMENTS that EVIDENCE any actions taken by YOU to stop NUTRIENTS on the former Wilgenburg Dairy property from entering San Marcos Creek.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

1  CSD repeated the objections stated in response to RFP No. 1.

2  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

3  Hollandia incorporates its response to Request No. 9. During meet and confer, CSD agreed to

4  produce its file on Wilgenberg but has not yet produced anything. Dec JR ¶5.

5  **REQUEST FOR PRODUCTION NO. 17:**

6  Any and all DOCUMENTS that EVIDENCE any actions taken by YOU to stop NUTRIENTS

7  on the former Prohoroff Egg Farm property from entering San Marcos Creek.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

9  CSD repeated the objections stated in response to RFP No. 1.

10  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

11  Hollandia incorporates its response to Request No. 9. During meet and confer, CSD agreed to

12  produce its file on Prohoroff but has not yet produced anything. Dec JR ¶5.

13  **REQUEST FOR PRODUCTION NO. 18:**

14  Any and all DOCUMENTS referring or related to any ARRANGEMENTS YOU have ever had

15  with any other PARTY relating in any manner to the instant litigation.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

17  CSD repeated the objections stated in response to RFP No. 12.

18  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

19  Hollandia incorporates its response to Request No. 9.

20  **REQUEST FOR PRODUCTION NO. 19:**

21  Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any

22  PARTY, including but limited to CalTrans and San Marcos Unified School District, relating in any

23  manner to the 10, including but not limited to the RI/FS and PARTY ARRANGEMENTS.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

25  CSD repeated the objections stated in response to RFP No. 12.

26  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

27  Hollandia incorporates its response to Request No. 9.

28  **WHY FURTHER RESPONSES ARE REQUIRED TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Please IDENTIFY and set forth all facts describing YOUR MAINTENANCE of any BODY OF WATER in the watershed leading to and including the LAKE with regard to NUTRIENT and sediment prevention and removal.

**RESPONSE TO INTERROGATORY NO. 1:**

Responding Party incorporates by reference as though fully set forth herein its Preliminary Statement and objections to applicable defined terms.  As to this interrogatory as a whole, Responding Party objects that it contains discrete subparts and is vague, ambiguous, compound, overbroad and unduly burdensome as to scope and time.  It also seeks information potentially protected from disclosure by the attorney-client and/or attorney work product privileges and is not relevant to any claim or defense in this matter.  This interrogatory also assumes facts, lacks foundation, calls for speculation, and calls for the premature disclosure of expert testimony, opinions, materials, and/or information.

Without waiving its objections and subject thereto, Responding Party responds:  There are numerous divisions of the County that are tasked with various aspects and responsibilities related to the maintenance of the area in question, the number which is difficult to ascertain due to the diffuse nature of the operations of some of the County's divisions.  Responding Party has previously made documents that may include, but may not be limited to those documents identified in Responding Party's "Rule 26(a)(1) Initial Disclosures," available to Hollandia.  The documents speak for themselves and identify the pertinent County divisions and the scope of their work related to the maintenance of the area of the body of water of the watershed in question.  The same documents may also include the names of individuals with knowledge of the information reflected therein.

By way of further response, Responding Party submits that due to the overbreadth of this interrogatory, no one employee or person has comprehensive knowledge of the facts responsive to this request.  Notwithstanding, in due course, it will produce 30(b)(6) witness(es) to speak to relevant topics, if properly noticed.  It will also identify, disclose, and make available for deposition its expert witnesses, whose materials, information, and/or opinions Responding Party expressly refrains from revealing at this stage of the litigation.  Discovery is still open and Responding Party reserves its right

74

to amend/supplement its responses at any time.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Please see response to Request for Admission, No. 1, above and response to Interrogatory No. 7 **to CDC**. CSD is required to answer based upon personal knowledge and that information which is available to it. During meet and confer, CSD agreed it would ask CSD personnel for a descriptive response instead of relying on documents but has not provided anything. Dec JR ¶5. Further, this request concerns maintenance practices, not expert opinions.

**INTERROGATORY NO. 2:**

Please IDENTIFY and set forth all facts describing the amount of NUTRIENTS in the COUNTY that has entered any BODY OF WATER in the watershed leading to and including the LAKE each year since the LAKE was created.

**RESPONSE TO INTERROGATORY NO. 2:**

Responding Party incorporates by reference as though fully set forth herein its Preliminary Statement and objections to applicable defined terms. As to this interrogatory as a whole, Responding Party objects that it contains discrete subparts and is vague, ambiguous, compound, overbroad and unduly burdensome as to scope and time. It also seeks information potentially protected from disclosure by the attorney-client and/or attorney work product privileges and is not relevant to any claim or defense in this matter. This interrogatory also assumes facts, lacks foundation, calls for speculation, and calls for the premature disclosure of expert testimony, opinions, materials, and/or information.

Without waiving its objections and subject thereto, Responding Party responds: See documents Responding Party has previously made available to Hollandia that may include, but may not be limited to those documents identified in Responding Party's "Rule 26(a)(1) Initial Disclosures." The documents speak for themselves and may identify pertinent facts, other documents, and individuals with knowledge of the information requested. By way of further response, Responding Party submits that due to the overbreadth of this interrogatory, no one employee or person has comprehensive knowledge of the facts responsive to this request. Notwithstanding, in due course, it

1  will produce 30(b)(6) witness(es) to speak to relevant topics, if properly noticed.  It will also identify,

2  disclose, and make available for deposition its expert witnesses, whose materials, information, and/or

3  opinions Responding Party expressly refrains from revealing at this stage of the litigation.  Discovery

4  is still open and Responding Party reserves its right to amend/supplement its responses at any time.

5  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

6      See response to Interrogatory No. 1. During meet and confer, CSD agreed it would ask CSD

7  personnel for a descriptive response instead of relying on documents but has not provided anything.

8  Dec JR ¶5. The question simply concerns nutrient quantities that CSD monitors as a stormwater

9  permitee and presumably is required to report to the RWQCB.

10  **INTERROGATORY NO. 3:**

11      Please IDENTIFY and set forth all facts describing YOUR FERTILIZING practices within that

12  portion of the COUNTY in the watershed leading to and including the LAKE from the time the LAKE

13  was created.

14  **RESPONSE TO INTERROGATORY NO. 3:**

15      CSD repeated the objections stated in response to Interrogatory No. 2.

16  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

17      See response to Interrogatory No. 1. During meet and confer, CSD agreed it would ask CSD

18  personnel for descriptive response instead of relying on documents but has not provided anything. Dec

19  JR ¶5. The question simply concerns CSD's fertilizing practices.

20  **INTERROGATORY NO. 4:**

21      Please IDENTIFY and set forth all facts describing complaints made by any PARTY about the

22  ENVIRONMENTAL CONDITIONS at any BODY OF WATER within the COUNTY in the

23  watershed leading to and including the LAKE.

24  **RESPONSE TO INTERROGATORY NO. 4:**

25      CSD repeated the objections stated in response to Interrogatory No. 2.

26  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

27      See Reason to Interrogatory No. 1. During meet and confer, CSD agreed it would ask CSD

28  personnel for a descriptive response instead of relying on documents but has not provided anything.

1 Dec JR ¶5. The question simply concerns complaints made by third parties to CSD about

2 environmental conditions of bodies of water relevant to this lawsuit.

3 **INTERROGATORY NO. 5:**

4      Please IDENTIFY and set forth all facts describing complaints made by any PARTY about

5 YOUR COMPLIANCE with stormwater REQUIREMENTS within the COUNTY in the watershed

6 leading to and including the LAKE from the time the LAKE was created, including all Notices of

7 Violation.

8 **RESPONSE TO INTERROGATORY NO. 5:**

9      CSD repeated the objections stated in response to Interrogatory No. 2.

10 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

11      See response to Interrogatories No. 1 and 2. During meet and confer, CSD agreed it would ask

12 CSD personnel for a descriptive response instead of relying on documents but has not provided

13 anything. Dec JR ¶5. The question simply concerns complaints made about CSD's stormwater permit

14 compliance.

15 **INTERROGATORY NO. 6:**

16      Please IDENTIFY and set forth all facts describing COMMUNICATIONS over potential or

17 actual REQUIREMENTS to limit NUTRIENTS from entering any BODY OF WATER within that

18 portion of the COUNTY in the watershed leading to and including the LAKE to COMPLY with

19 stormwater REQUIREMENTS, including but not limited to TMDLs.

20 **RESPONSE TO INTERROGATORY NO. 6:**

21      CSD repeated the objections stated in response to Interrogatory No. 2.

22 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

23      See response to Interrogatories No. 1, 2, and 5. During meet and confer, CSD agreed it would

24 ask CSD personnel for descriptive response instead of relying on documents but has not provided

25 anything. Dec JR ¶5.  The question concerns CSD's communications about well-documented potential

26 TMDLs, or other potential stormwater-related requirements, for nutrients, something it agreed to

27 comply with pursuant to the voluntary Participation Agreement. Dec JR ¶36, 39-41, 49.

28 **INTERROGATORY NO. 7:**

1   Please IDENTIFY and set forth all facts describing concerns by any PARTY, including the

2   RWQCB, over ENVIRONMENTAL CONDITIONS originating on, or stemming from, Bradley Field,

3   including all Notices of Violation.

4   **RESPONSE TO INTERROGATORY NO. 7:**

5   Responding Party incorporates by reference as though fully set forth herein its Preliminary

6   Statement and objections to applicable defined terms.  Responding Party also objects to the term

7   "concerns" and to this interrogatory as a whole as vague, ambiguous, compound, and overbroad and

8   unduly burdensome as to scope and time.  It further objects that this interrogatory contains discrete

9   subparts.  The interrogatory also seeks information potentially protected from disclosure by the

10  attorney-client and/or attorney work product privileges and is not relevant to any claim or defense in

11  this matter.  It also assumes facts, lacks foundation, calls for speculation, and calls for the premature

12  disclosure of expert testimony, opinions, materials, and/or information.

13  Without waiving its objections and subject thereto, Responding Party responds:   Responding

14  Party construes the phrase "Bradley Field" to mean "Bradley Park" and refers Propounding Party to

15  documents Responding Party has previously made available to Hollandia that may include, but may

16  not be limited to those documents identified in Responding Party's "Rule 26(a)(1) Initial Disclosures."

17  The documents speak for themselves and may identify pertinent facts, other documents, and

18  individuals with knowledge of the information requested.  By way of further response, Responding

19  Party submits that due to the overbreadth of this interrogatory, no one employee or person has

20  comprehensive knowledge of the facts responsive to this request.  Notwithstanding, in due course, it

21  will produce 30(b)(6) witness(es) to speak to relevant topics, if properly noticed.  It will also identify,

22  disclose, and make available for deposition its expert witnesses, whose materials, information, and/or

23  opinions Responding Party expressly refrains from revealing at this stage of the litigation.  Discovery

24  is still open and Responding Party reserves its right to amend/supplement its responses at any time.

25  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

26  See response to Interrogatory No. 1. During meet and confer, CSD agreed it would ask CSD

27  personnel for descriptive response instead of relying on documents but has not provided anything. Dec

28  JR ¶5.

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

**INTERROGATORY NO. 8:**

Please IDENTIFY and set forth all facts describing YOUR COMMUNICATIONS with the RWQCB since the LAKE was created with regard to the ENVIRONMENTAL CONDITIONS at any BODY OF WATER in the watershed leading to and including the LAKE, including but not limited to all aspects of the IO and RI/FS.

**RESPONSE TO INTERROGATORY NO. 8:**

CSD repeated the objections stated in response to Interrogatory No. 2.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

See response to Interrogatory No. 1. During meet and confer, CSD agreed it would ask CSD personnel for a descriptive response instead of relying on documents but has not provided anything. Dec JR ¶5.

**INTERROGATORY NO. 9:**

Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of any BODY OF WATER and watershed that YOU or other PARTIES have conducted to respond to the IO, including but not limited to search for PRPs, INVESTIGATION of HOLLANDIA, stream restoration, LAKE flushing, and level of nutrient interaction between the sediment and LAKE water column.

**RESPONSE TO INTERROGATORY NO. 9:**

CSD repeated the objections stated in response to Interrogatory No. 2.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

See response to Interrogatory No. 1. During meet and confer, CSD agreed it would ask CSD personnel for a descriptive response instead of relying on documents but has not provided anything. Dec JR ¶5.

**INTERROGATORY NO. 10:**

Please set forth all facts describing all ARRANGEMENTS which YOU have ever had with any other PARTY, including but limited to CalTrans and San Marcos Unified School District, relating in any manner to the IO, including COMPLIANCE with it, including any Cooperation Agreement.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party incorporates by reference as though fully set forth herein its Preliminary

1  Statement and objections to applicable defined terms.  Responding Party also objects to the phrase

2  "Cooperation Agreement" and to this interrogatory as a whole as vague, ambiguous, compound, and

3  overbroad and unduly burdensome as to scope and time.  It further objects that this interrogatory

4  contains discrete subparts.  The interrogatory also seeks information potentially protected from

5  disclosure by the attorney-client, attorney work product, and/or other confidential business privileges

6  afforded by state and/or federal law, which include, but may not be limited to the joint defense and/or

7  common interest privileges.  Also, this interrogatory is not relevant to any claim or defense in this

8  matter and it assumes facts, lacks foundation, calls for speculation, calls for legal conclusions, and

9  calls for the premature disclosure of expert testimony, opinions, materials, and/or information.

10  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

11  See response to Interrogatory No. 1. During meet and confer, CSD agreed it would ask CSD

12  personnel for a descriptive response instead of relying on documents but has not provided anything.

13  Dec JR ¶5.

14  **INTERROGATORY NO. 11:**

15  Please IDENTIFY and set forth all facts describing YOUR claim that the other PARTIES in the

16  instant litigation are responsible in any manner for damages YOU claim in the instant litigation.

17  **RESPONSE TO INTERROGATORY NO. 11:**

18  CSD repeated the objections stated in response to Interrogatory No. 2.

19  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

20  See response to Interrogatory No. 1. During meet and confer, CSD agreed it would ask CSD

21  personnel for a descriptive response instead of relying on documents but has not provided anything.

22  Dec JR ¶5.

23  **INTERROGATORY NO. 12:**

24  If YOU contend that HOLLANDIA violated any statute, ordinance, or regulation that

25  contributed to the damages that YOU claim from HOLLANDIA, then please IDENTIFY and set forth

26  all facts describing such items.

27  **RESPONSE TO INTERROGATORY NO. 12:**

28  CSD repeated the objections stated in response to Interrogatory No. 2.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

See response to Interrogatory No. 1. During meet and confer, CSD agreed it would provide a summary but has not provided anything. Dec JR ¶5.

**INTERROGATORY NO. 13:**

Please fully IDENTIFY YOUR claimed damages against HOLLANDIA and which of those have been paid or reimbursed, or which YOU have asked or will ask to be paid for, by YOUR INSURERS.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party incorporates by reference as though fully set forth herein its Preliminary Statement and objections to applicable defined terms. As to this interrogatory as a whole, Responding Party objects that it contains discrete subparts and is vague, ambiguous, compound, overbroad and unduly burdensome as to scope and time. It also seeks information potentially protected from disclosure by the attorney-client and/or attorney work product privileges and is not relevant to any claim or defense in this matter for reasons that include, but are not limited to the Collateral Source Rule. This interrogatory also assumes facts, lacks foundation, calls for speculation, calls for legal conclusions, and calls for the premature disclosure of expert testimony, opinions, materials, and/or information.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

See response to Interrogatory No. 1, above, and response to Interrogatory No. 14 **to CDC**. The collateral source rule does not apply to a CERCLA action, and CSD has put damages paid for by its insurers at issue in this suit. During meet and confer, CSD agreed it would provide a description but has not provided anything. Dec JR ¶5.

**INTERROGATORY NO. 14:**

Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of HOLLANDIA YOU have conducted or obtained, including but not limited to its property, practices, and people.

**RESPONSE TO INTERROGATORY NO. 14:**

CSD repeated the objections stated in response to Interrogatory No. 2.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

1  See response to Interrogatory No. 1. During meet and confer, CSD agreed it would provide a

2  description of Regional Board and CSD's early investigations but has not provided anything. Dec JR

3  ¶5.

4  **INTERROGATORY NO. 15:**

5  Please IDENTIFY and set forth all facts describing the proposed remedial actions, including

6  associated costs, identified in the RI/FS that do not remediate something YOU contend was caused by

7  HOLLANDIA.

8  **RESPONSE TO INTERROGATORY NO. 15:**

9  Responding Party incorporates by reference as though fully set forth herein its Preliminary

10  Statement and objections to applicable defined terms.  As to this interrogatory as a whole,  Responding

11  Party objects that it contains discrete subparts and is vague, ambiguous, compound, overbroad and

12  unduly burdensome as to scope and time.  It also seeks information potentially protected from

13  disclosure by the attorney-client and/or attorney work product privileges and is not relevant to any

14  claim or defense in this matter.  This interrogatory also assumes facts, lacks foundation, calls for

15  speculation, and calls for the premature disclosure of expert testimony, opinions, materials, and/or

16  information.  Further, Responding Party objects to the extent that this interrogatory seeks information

17  and/or documents equally available to Propounding Party.

18  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

19  See response to Interrogatory No. 1.

20  **INTERROGATORY NO. 17:**

21  Please IDENTIFY and set forth all facts describing all PRPs YOU have IDENTIFIED that

22  YOU  contend  has  contributed  in  some  manner  to  YOU  incurring  damages  due  to  the

23  ENVIRONMENTAL CONDITIONS at any BODY OF WATER in the watershed leading to and

24  including the LAKE.

25  **RESPONSE TO INTERROGATORY NO. 17:**

26  CSD repeated the objections stated in response to Interrogatory No. 2.

27  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

28  See response to Interrogatory No. 1. During meet and confer, CSD stated CalTrans and San

1   Marcos Unified School District are also PRPs and that it would amend but has not provided anything.

2   Dec JR ¶5.

3   **INTERROGATORY NO. 18:**

4       Please IDENTIFY and set forth all facts as to what YOU contend to be YOUR share of

5   responsibility for the ENVIRONMENTAL CONDITIONS at any BODY OF WATER leading to and

6   including the LAKE.

7   **RESPONSE TO INTERROGATORY NO. 18:**

8       CSD repeated the objections stated in response to Interrogatory No. 2.

9   **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

10      See response to Interrogatory No. 1. During meet and confer, CSD agreed it would amend to

11  reflect the underlying factual quantity of nutrients that would be used by an expert to express CSD's

12  pro-rata share but has not provided anything. Dec JR ¶5.

13  **INTERROGATORY NO. 19:**

14      Please IDENTIFY and set forth all facts describing any other claim that YOU have ever made

15  against any PARTY for damage caused by NUTRIENTS going into a BODY OF WATER, including

16  but not limited to whether such claim was made under CERCLA and whether or not the claim was

17  made in the watershed at issue.

18  **RESPONSE TO INTERROGATORY NO. 19:**

19      CSD repeated the objections stated in response to Interrogatory No. 15.

20  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

21      See response to Interrogatory No. 1. During meet and confer, CSD agreed it would ask CSD

22  personnel for a descriptive response instead of relying on documents but has not provided anything.

23  Dec JR ¶5.

24  **INTERROGATORY NO. 20:**

25      Please IDENTIFY and set forth all facts describing any ARRANGEMENTS YOU have ever

26  had with any other PARTY relating in any manner to the instant litigation.

27  **RESPONSE TO INTERROGATORY NO. 20:**

28      Responding Party incorporates by reference as though fully set forth herein its Preliminary

83

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

1  Statement and objections to applicable defined terms.  Responding Party also objects to the phrase "in

2  any manner" and to this interrogatory as a whole as vague, ambiguous, compound, and overbroad and

3  unduly burdensome as to scope and time.  It further objects that this interrogatory contains discrete

4  subparts.   The interrogatory also seeks information potentially protected from disclosure by the

5  attorney-client, attorney work product, and/or other confidential business privileges afforded by state

6  and/or federal law, which include, but may not be limited to the joint defense and/or common interest

7  privileges.  Also, this interrogatory is not relevant to any claim or defense in this matter and it assumes

8  facts, lacks foundation, calls for speculation, calls for legal conclusions, and calls for the premature

9  disclosure of expert testimony, opinions, materials, and/or information.

10  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

11        See response to Interrogatory Numbers 1. During meet and confer, CSD agreed it would ask

12  CSD personnel for a descriptive response instead of relying on documents but has not provided

13  anything. Dec JR ¶5.

14        **WHY FURTHER RESPONSES ARE REQUIRED TO REQUESTS FOR ADMISSIONS**

15  **REQUEST FOR ADMISSION NO. 1:**

16        Please admit the RWQCB authorized HOLLANDIA to grow Bermuda grass as a crop.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

18        Responding Party incorporates by reference as though fully set forth herein its Preliminary

19  Statement and objections to applicable defined terms.  As to this request as a whole, Responding Party

20  objects that it is vague, ambiguous, and overbroad as to scope and time.  This request also seeks

21  information potentially protected from disclosure by the attorney-client and/or work product privileges

22  and is not relevant to any claim or defense in this matter.  It also assumes facts, lacks foundation, calls

23  for speculation, calls for legal conclusions, and calls for the premature disclosure of expert testimony,

24  materials, information, and/or opinions.   Finally, Responding Party objects to the extent that this

25  request attempts to impose on it a duty to respond on behalf of persons or entities not parties to this

26  action and/or beyond its control.

27        Without waiving its objections and subject thereto, Responding Party responds:  Responding

28  Party does not currently have sufficient information to admit or deny this request and on that basis,

1   denies said request.  Discovery and investigation are continuing.

2   **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

3       Hollandia incorporates its response to Request for Production No. 9 and its response to RFA

4   No. 19 **to CDC**. During meet and confer, CSD agreed it would amend its response but has not

5   provided anything. Dec JR ¶5. Moreover, the objections lack merit.  This is not necessarily a question

6   only an expert can answer because facts, information, and opinions were stated in the RI/FS presented

7   to the RWQCB. CSD hired these consultants to respond to the RWQCB order and comply with the

8   voluntary Participation Agreement. If they already addressed the issue raised in this Request, there is

9   no reason CSD cannot respond now.  See, e.g., Dec JR ¶23-29.

10  **REQUEST FOR ADMISSION NO. 3:**

11      Please admit YOU cannot quantify the exact amount of cattle wastes that have ever exited

12  HOLLANDIA'S property to San Marcos Creek.

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

14      Responding Party incorporates by reference as though fully set forth herein its Preliminary

15  Statement and objections to applicable defined terms.  As to this request as a whole, Responding Party

16  objects that it is vague, ambiguous, compound, and overbroad as to scope and time.  This request also

17  seeks information potentially protected from disclosure by the attorney-client and/or work product

18  privileges and is not relevant to any claim or defense in this matter.  It also assumes facts, lacks

19  foundation, calls for speculation, and calls for the premature disclosure of expert testimony, materials,

20  information, and/or opinions.

21      Without waiving its objections and subject thereto, Responding Party responds:  Responding

22  Party does not currently have sufficient information to admit or deny this request, and on that basis,

23  denies said request.  Discovery and investigation are continuing.

24  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

25      Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

26  would amend its response but has not provided anything. Dec JR ¶5.

27  **REQUEST FOR ADMISSION NO. 5:**

28      Please admit cattle wastes were removed from HOLLANDIA'S property prior to the sale of a

1  portion of its property to the San Marcos Unified School District.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

3  Responding Party incorporates by reference as though fully set forth herein its Preliminary

4  Statement and objections to applicable defined terms.  Responding Party also objects to the phrase

5  "sale of a portion of its property" and to this request as a whole as vague, ambiguous, compound, and

6  overbroad as to scope and time.  This request also seeks information potentially protected from

7  disclosure by the attorney-client and/or work product privileges and is not relevant to any claim or

8  defense in this matter.  It also assumes facts, lacks foundation, calls for speculation, and calls for the

9  premature disclosure of expert testimony, materials, information, and/or opinions.

10  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

11  Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

12  would amend its response but has not provided anything. Dec JR ¶5. Moreover, the objections as to the

13  phrase being vague, ambiguous, compound, and overbroad as to scope and time are disingenuous.

14  Information about the sale is public record, and Hollandia has provided relevant information (the

15  purchase agreement and follow up) to CSD.

16  **REQUEST FOR ADMISSION NO. 6:**

17  Please admit YOU have no specific EVIDENCE that shows HOLLANDIA'S cattle wastes in

18  the LAKE.

19  **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

20  CSD repeated the objections stated in response to RFA No. 3.

21  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

22  Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

23  would amend its response but has not provided anything. Dec JR ¶5.

24  **REQUEST FOR ADMISSION NO. 8:**

25  Please admit YOU have no specific EVIDENCE that shows a current pathway for cattle wastes

26  to move from HOLLANDIA'S property to the LAKE.

27  **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

28  CSD repeated the objections stated in response to RFA No. 3.

1  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

2    Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

3  would amend its response but has not provided anything. Dec JR ¶5.

4  **REQUEST FOR ADMISSION NO. 11:**

5    Please admit that the LAKE water is flushed on average 3-9 times per year.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

7    Responding Party incorporates by reference as though fully set forth herein its Preliminary

8  Statement and objections to applicable defined terms.  Responding Party also objects to the term

9  "flushed" and to this request as a whole as vague, ambiguous, compound, and overbroad as to scope

10 and time.  This request also seeks information potentially protected from disclosure by the attorney-

11 client and/or work product privileges and is not relevant to any claim or defense in this matter.  This

12 request also seeks information potentially protected from disclosure by the attorney-client and/or work

13 product privileges and is not relevant to any claim or defense in this matter.  It also assumes facts,

14 lacks foundation, calls for speculation, and calls for the premature disclosure of expert materials,

15 information, and/or opinions.

16   Without waiving its objections and subject thereto, Responding Party responds:  Responding

17 Party does not currently have sufficient information to admit or deny this request, and on that basis,

18 denies said request.  Discovery and investigation are continuing.

19 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

20   Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

21 would amend its response but has not provided anything. Dec JR ¶5.  The RI/FS authors have already

22 opined in response to a public comment by Hollandia that average flushing could be 3-9 times per

23 year. Dec JR ¶24.

24 **REQUEST FOR ADMISSION NO. 12:**

25   Please admit that any potential cattle wastes from HOLLANDIA that are in the LAKE would

26 be buried below the layer of sediment that is interactive with the LAKE water column.

27 **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

28   Responding Party incorporates by reference as though fully set forth herein its Preliminary

1  Statement and objections to applicable defined terms.  Responding Party also objects to the terms

2  "buried" and "interactive" and to this request as a whole as vague, ambiguous, compound, and

3  overbroad as to scope and time.  This request also seeks information potentially protected from

4  disclosure by the attorney-client and/or work product privileges and is not relevant to any claim or

5  defense in this matter.  It also assumes facts, lacks foundation, calls for speculation, and calls for the

6  premature disclosure of expert testimony materials, information, and/or opinions.

7          Without waiving its objections and subject thereto, Responding Party responds:  Responding

8  Party does not currently have sufficient information to admit or deny this request, and on that basis,

9  denies said request.  Discovery and investigation are continuing.

10  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

11          Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

12  would amend its response but has not provided anything. Dec JR ¶5.  The RI/FS parties studied

13  sediment interaction with the water column extensively and have opined as to the current impact of

14  past sewage spills. Dec JR ¶23, 33.

15  **REQUEST FOR ADMISSION NO. 13:**

16          If YOU contend cattle wastes from HOLLANDIA remain in the LAKE, please admit that such

17  wastes have not caused YOU to incur any additional CERCLA "response costs."

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

19          Responding Party incorporates by reference as though fully set forth herein its Preliminary

20  Statement and objections to applicable defined terms.  Responding Party also objects to the phrase

21  "any additional" and to this request as a whole as vague, ambiguous, compound, and overbroad as to

22  scope and time.  This request also seeks information potentially protected from disclosure by the

23  attorney-client and/or work product privileges and is not relevant to any claim or defense in this

24  matter.  It also assumes facts, lacks foundation, calls for speculation, calls for legal conclusions, and

25  calls for the premature disclosure of expert testimony, materials, information, and/or opinions.

26          Without waiving its objections and subject thereto, Responding Party responds:  Responding

27  Party does not currently have sufficient information to admit or deny this request, and on that basis,

28  denies said request.  Discovery and investigation are continuing.

1  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

2      Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

3  would amend its response but has not provided anything. Dec JR ¶5.

4  **REQUEST FOR ADMISSION NO. 15:**

5      Please admit YOUR INSURERS have paid or reimbursed each of YOUR specific claimed

6  damages against HOLLANDIA.

7  **RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

8      Responding Party incorporates by reference as though fully set forth herein its Preliminary

9  Statement and objections to applicable defined terms.  Responding Party also objects to the phrase

10 "paid or reimbursed" and to this request as a whole as vague, ambiguous, compound, and overbroad as

11 to scope and time.  This request also seeks information potentially protected from disclosure by the

12 attorney-client work product, and/or insurer-insuree privileges and is not relevant to any claim or

13 defense in this matter.  It also assumes facts, lacks foundation, calls for speculation, calls for legal

14 conclusions, and calls for the premature disclosure of expert materials, information, and/or opinions.

15 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

16     Please see response to Request for Production, No. 12, regarding CERCLA's bar of the

17 collateral source rule. During meet and confer, CSD agreed it would amend its response but has not

18 provided anything. Dec JR ¶5. Moreover, the objections as to the phrase "paid or reimbursed" being

19 vague, ambiguous, compound, and overbroad as to scope and time are disingenuous.

20 **REQUEST FOR ADMISSION NO. 17:**

21     Please admit YOU have incurred costs to COMPLY with potential TMDL REQUIREMENTS

22 to limit NUTRIENTS from entering any BODY OF WATER, which YOU seek from HOLLANDIA.

23 **RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

24     CSD repeated the objections stated in response to RFA No. 3.

25 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

26     Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

27 would amend its response but has not provided anything. Dec JR ¶5, 39-41.

28 **REQUEST FOR ADMISSION NO. 18:**

1    Please admit AGRICULTURAL activities in YOUR jurisdiction within the watershed that

2  leads to the LAKE have contributed to the ENVIRONMENTAL CONDITIONS caused by

3  NUTRIENTS in any BODY OF WATER of which YOU complain in this lawsuit.

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

5    CSD repeated the objections stated in response to RFA No. 3.

6  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

7    Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

8  would amend its response but has not provided anything. Dec JR ¶5.

9  **REQUEST FOR ADMISSION NO. 19:**

10    Please admit there are PRPs in the watershed in YOUR jurisdiction that leads to the LAKE that

11  have contributed to YOU incurring damages due to ENVIRONMENTAL CONDITIONS caused by

12  NUTRIENTS in any BODY OF WATER.

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

14    CSD repeated the objections stated in response to RFA No. 3.

15  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

16    Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

17  would amend its response but has not provided anything. Dec JR ¶5.

18  **REQUEST FOR ADMISSION NO. 21:**

19    Please admit YOU have never made a claim against any PARTY that NUTRIENTS are

20  "hazardous substances" under CERCLA, except in the instant lawsuit.

21  **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

22    CSD repeated the objections stated in response to RFA No. 3.

23  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

24    Please see response to Request for Admission, No. 1. During meet and confer, CSD agreed it

25  would amend its response but has not provided anything. Dec JR ¶5.

26              **SANCTIONS AGAINST CSD ARE APPROPRIATE**

27    FRCP 37(a)(5)(B) permits the Court to order payment of reasonable expenses that Hollandia

28  incurred in making this motion if any of the other party's conduct necessitated the motion, unless

90

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

1   Hollandia did not first attempt in good faith to obtain the discovery without court intervention, the

2   opposing party's nondisclosure was substantially justified, or other circumstances would make an

3   award unjust CSD was nonnegotiable on all of the privilege, mediation, and work product issues raised

4   in this motion. CSD agreed to produce communications between its consultant and the Regional Board

5   after M&C, but CSD never did so before the deadline for Hollandia to serve this motion on the RI/FS

6   Parties. Hollandia has complied with the meet and confer (M&C) requirements of the above rule and

7   Chamber Rules as described in Dec JR ¶2-9 and believes sanctions are warranted in this case for at

8   least $5,000 as further supported by Dec JR ¶52 .

9

10                      **DISCOVERY DISPUTES WITH CSM**

11              **THE PARTIES MET AND CONFERRED AND NARROWED ISSUES**

12          See Dec JR for details of the meet and confer.

13   **REQUEST FOR PRODUCTION NO. 9:**

14          Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any

15   PARTY other than the RWQCB relating in any manner to the IO, including the RI/FS and PARTY

16   ARRANGEMENTS.

17          **Definitions are the same for all parties except as noted.**

18          "YOU" and "YOUR" means the City of San Marcos, including its officers, employees,

19   consultants, insurers, investigators, and agents, including counsel to the extent acting as agent to third

20   parties.

21                  **CSM'S RESPONSE TO REQUEST FOR PRODUCTION**

22                          **PRELIMINARY STATEMENT**

23          Discovery is ongoing at this time, and the City of San Marcos ("CSM") reserves the right to

24   amend its responses if additional facts, documents, or information are discovered. The following

25   responses are given solely for the purpose of this litigation, and without prejudice to CSM's right to

26   produce or introduce evidence of subsequently discovered documents and facts.

27          CSM has not yet completed its investigation of facts relating to this litigation, nor has it

28   completed discovery in this action or preparation for trial. Therefore, the following responses are given

1   without prejudice to CSM's right to amend, supplement or modify such responses, and are subject to

2   CSM's right to produce at the time of trial or otherwise, subsequently discovered evidence related to

3   the proof of any material facts and to produce all evidence whenever discovered relating to the proof of

4   facts subsequently discovered to be material. CSM's responses are made in a good faith effort to

5   supply as much factual information as presently known.

6          As general objections, CSM objects to any information which is protected by the attorney/client

7   privilege, work product doctrine or any other confidential information which may be protected as

8   proprietary information. This preliminary statement and the above objections are incorporated in each

9   and every response as set forth below.

10         The lengthy time period covered by the requests and the demand for electronically stored

11  information for numerous custodians will require a substantial amount of time to collect, process,

12  review and produce.  CSM is engaging in this process as fast as reasonably possible, and will meet and

13  confer with Hollandia Dairy, Inc. ("Hollandia") regarding the timing and manner of production.  It is

14  anticipated that the production will be made on a rolling basis as custodial files are reviewed, and that

15  it will take from thirty to ninety days to complete this process.

16                              **PRELIMINARY OBJECTIONS**

17         1.     CSM objects to the Hollandia's requests to the extent that they seek production of

18  documents that do not exist or that are not in CSM's possession, custody or control. CSM further

19  objects to the extent these request seek documents that are part of the public record, and therefore the

20  burden of obtaining them is the same for the Hollandia as it is for CSM.

21         2.     CSM objects to each and every Request to the extent that it seeks production of

22  documents or information containing communications or other matters protected from disclosure by

23  the attorney-client privilege, the work product doctrine, the joint defense privilege, the common

24  interest privilege, Rule 408 of the Federal Rules of Evidence, Rule 26(b)(4) of the Federal Rules of

25  Civil Procedure, or any other applicable privileges, doctrines or immunities. Any undertaking to

26  produce documents or provide information should be understood to exclude all such privileged and

27  work-product protected information.

28         3.     CSM objects to Hollandia's requests to the extent they seek premature disclosure of

expert information, opinions, or reports, including, but not limited to the information, opinions, or reports prepared by its consultants in anticipation of this litigation, which are not yet subject to discovery and remain privileged under Rule 26 of the Federal Rules of Civil Procedure.

4.    CSM objects to Hollandia's requests to the extent that they are duplicative and redundant of Hollandia's prior document requests and/or interrogatories. CSM further objects to Hollandia's requests to the extent they are unnecessarily duplicative and purport to require the production of more than one copy of a given document.  CSM will not undertake to produce more than one copy of any responsive document.

5.    CSM objects to each and every request that seeks documents or information already in the possession custody or control of Hollandia, or that are available to Hollandia from public sources, or that have been made available to the Hollandia through the course of informal or formal discovery in this litigation. Pursuant to the agreement of the Parties, CSM will not produce responsive documents that already have been produced, and/or made available for duplication, formally or informally, in the course of this litigation, and any Response by CSM should be understood to exclude all such information.

6.    CSM objects to each and every Request as overly broad and unduly burdensome to the extent it seeks production of documents that are not relevant to any party's claim or defense, and/or not reasonably calculated to lead to the discovery of admissible evidence.

7.    CSM objects to each and every Request to the extent that the documents sought herein have been previously produced on July 2015 in the form of 19 boxes of documents comprising 23,462 pages. These are bates numbered CSM012676 to CSM036138.

The following responses are made on information presently available to respondent, and, except for explicit facts admitted herein, no incidental or implied admissions are intended hereby.

The fact that CSM has responded to or objected to any request or a part thereof should not be taken as an admission that CSM admits or accepts the existence of any facts set forth or assumed by such request, or that such response or objection or document or thing produced constitutes relevant or admissible evidence. The fact that CSM has responded to part or all of any such request is not intended and shall not be construed to be a waiver by respondent of all or any part of any objections to any such

1  request made by Hollandia.

2  **OBJECTIONS TO DEFINED TERMS**

3  CSM objects to the defined term "ARRANGEMENTS" on the ground that it is overbroad,

4  vague, ambiguous, compound, and contrary to Rule 34(a)(1).   CSM further objects that applying this

5  term to these requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule

6  34(b)(1)(A) which requires that the request must describe with reasonable particularity each item or

7  category of items to be produced.

8  CSM objects to the defined term "BODY OF WATER" on the ground that it is overbroad,

9  vague, ambiguous, compound, and contrary to Rule 34(a)(1).   CSM further objects that applying this

10 term to these requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule

11 34(b)(1)(A) which requires that the request must describe with reasonable particularity each item or

12 category of items to be produced.

13 CSM objects to the defined term "CITY" on the ground that it is overbroad, vague, ambiguous,

14 compound, and contrary to Rule 34(a)(1).   CSM further objects that applying this term to these

15 requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule 34(b)(1)(A)

16 which requires that the request must describe with reasonable particularity each item or category of

17 items to be produced.

18 CSM objects to the defined terms "COMMUNICATE" or "COMMUNICATIONS" on the

19 ground that they are overbroad, vague, ambiguous, compound, and contrary to Rule 34(a)(1).   CSM

20 further objects that applying these terms to these requests would be unduly burdensome, oppressive,

21 and intrusive, and would violate Rule 34(b)(1)(A) which requires that the request must describe with

22 reasonable particularity each item or category of items to be produced.

23 CSM objects to the defined terms "COMPLY" or "COMPLIANCE" on the ground that they

24 are overbroad, vague, ambiguous, compound, and contrary to Rule 34(a)(1).   CSM further objects that

25 applying these terms to these requests would be unduly burdensome, oppressive, and intrusive, and

26 would violate Rule 34(b)(1)(A) which requires that the request must describe with reasonable

27 particularity each item or category of items to be produced.

28 CSM objects to the defined term "DOCUMENTS" on the ground that it is overbroad, vague,

94

1  ambiguous, compound, and contrary to Rule 34(a)(1).   CSM further objects that applying this term to

2  these requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule

3  34(b)(1)(A) which requires that the request must describe with reasonable particularity each item or

4  category of items to be produced.

5      CSM objects to the defined term "ENVIRONMENTAL CONDITIONS" on the ground that it

6  is overbroad, vague, ambiguous, compound, and contrary to Rule 34(a)(1).   CSM further objects that

7  applying this term to these requests would be unduly burdensome, oppressive, and intrusive, and

8  would violate Rule 34(b)(1)(A) which requires that the request must describe with reasonable

9  particularity each item or category of items to be produced.

10     CSM objects to the defined term "EVIDENCE" on the ground that it is overbroad, vague,

11 ambiguous, compound, and contrary to Rule 34(a)(1).  CSM further objects that applying this term to

12 these requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule

13 34(b)(1)(A) which requires that the request must describe with reasonable particularity each item or

14 category of items to be produced.

15     CSM objects to the defined terms "FERTILIZING" and "FERTILIZERS" on the ground that

16 they are overbroad, vague, ambiguous, compound, and contrary to Rule 34(a)(1).  CSM further objects

17 that applying these terms to these requests would be unduly burdensome, oppressive, and intrusive,

18 and would violate Rule 34(b)(1)(A) which requires that the request must describe with reasonable

19 particularity each item or category of items to be produced.

20     CSM objects to the defined term "HOLLANDIA" on the ground that it is overbroad, vague,

21 ambiguous, compound, and contrary to Rule 34(a)(1).  CSM further objects that applying this term to

22 these requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule

23 34(b)(1)(A) which requires that the request must describe with reasonable particularity each item or

24 category of items to be produced.

25     CSM objects to the defined term "INSURERS" on the ground that it is overbroad, vague,

26 ambiguous, compound, and contrary to Rule 34(a)(1).  CSM further objects that applying this term to

27 these requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule

28 34(b)(1)(A) which requires that the request must describe with reasonable particularity each item or

1   category of items to be produced.

2          CSM objects to the defined term "INVESTIGATION(S)" on the ground that it is overbroad,

3   vague, ambiguous, compound, and contrary to Rule 34(a)(1).  CSM further objects that applying this

4   term to these requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule

5   34(b)(1)(A) which requires that the request must describe with reasonable particularity each item or

6   category of items to be produced.

7          CSM objects to the defined term "NUTRIENTS" on the ground that it is overbroad, vague,

8   ambiguous, compound, and contrary to Rule 34(a)(1).  CSM further objects that applying this term to

9   these requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule

10  34(b)(1)(A) which requires that the request must describe with reasonable particularity each item or

11  category of items to be produced.

12         CSM objects to the defined terms "PARTY" and "PARTIES" on the ground that they are

13  overbroad, vague, ambiguous, compound, and contrary to Rule 34(a)(1).  CSM further objects that

14  applying these terms to these requests would be unduly burdensome, oppressive, and intrusive, and

15  would violate Rule 34(b)(1)(A) which requires that the request must describe with reasonable

16  particularity each item or category of items to be produced.

17         CSM objects to the defined term "REQUIREMENTS" on the ground that it is overbroad,

18  vague, ambiguous, compound, and contrary to Rule 34(a)(1).  CSM further objects that applying this

19  term to these requests would be unduly burdensome, oppressive, and intrusive, and would violate Rule

20  34(b)(1)(A) which requires that the request must describe with reasonable particularity each item or

21  category of items to be produced.

22         CSM objects to the defined terms "YOU" and "YOUR" on the ground that they are overbroad,

23  vague, ambiguous, compound, and contrary to Rule 34(a)(1).  CSM further objects that applying these

24  terms to these requests would be unduly burdensome, oppressive, and intrusive, and would violate

25  Rule 34(b)(1)(A) which requires that the request must describe with reasonable particularity each item

26  or category of items to be produced.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9**:

28         CSM objects to this request to the extent that the documents sought are protected by the

96

1   attorney-client privilege, work product doctrine, mediation privilege, and executive privilege.

2   Moreover, CSM objects to this request on the grounds that it is overbroad, vague, ambiguous, and

3   unintelligible as phrased, rendering it completely incoherent and incapable of response. This request

4   does not describe with reasonable particularity each item or category of items to be produced.

5   **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

6          Hollandia incorporates the reasons stated in response to Request for Production No. 1 **to CDC**.

7   During meet and confer, CSM agreed its communications with the RWQCB are not privileged and

8   asked Hollandia to rewrite RFP No. 9 along the lines of the following, which Hollandia then sent to

9   CSM on February 19, 2018:

10  **REWRITTEN REQUEST FOR PRODUCTION NO. 9:**

11         Any and all DOCUMENTS showing YOUR COMMUNICATIONS with other PARTIES,

12  including the public agency defendants, regarding the IO.

13  **RESPONSE TO REWRITTEN REQUEST FOR PRODUCTION NO. 9**:

14         **AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

15         Responding Party objects to this request to the extent it seeks documents that are

16  protected by the attorney-client privilege, work product doctrine, the joint defense privilege, the

17  common interest privilege, mediation privilege and confidentiality.  Additionally, the request

18  improperly seeks disclosure of expert information currently barred by the Court's Scheduling

19  Order Regulating Discovery of October 17, 2017 and FRCP 26(a)(2)(D).  Responding Party

20  further objects to this request to the extent that the communications are available on GeoTracker

21  (Lake San Marcos and San Marcos Creek (T10000003261) or are otherwise a public record.  To

22  the extent that the documents are not available on GeoTracker or a public record, Responding

23  Party will produce the non-privileged, non-expert responsive documents within its possession,

24  custody or control.

25

26  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

27         Hollandia incorporates the reasons stated in response to Request for Production No. 1 **to CDC**.

28  The other objections are also improper and unmeritorious. Each of the terms is reasonably defined in

the original request.  See, generally, Dec JR.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all DOCUMENTS that EVIDENCE YOUR claim that HOLLANDIA is responsible in any manner for damages YOU claim in the instant litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

CSM objects to this request to the extent it seeks premature disclosure of expert information, opinions, or reports, including, but not limited to the information, opinions, or reports prepared by its consultants in anticipation of this litigation, which are not yet subject to discovery and remain privileged under Rule 26 of the Federal Rules of Civil Procedure.

The nonprivileged documents responsive to this request are contained in the RI/FS and appendices to the RI/FS as well as the RWQCB file regarding Hollandia, which are being produced.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates it points in response to Request No. 9.

**REQUEST FOR PRODUCTION NO. 11**:

Any and all DOCUMENTS that EVIDENCE INVESTIGATIONS of HOLLANDIA YOU have conducted or obtained, including but not limited to its property, practices, and people.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

CSM objects to this request to the extent it seeks premature disclosure of expert information, opinions, or reports, including, but not limited to the information, opinions, or reports prepared by its consultants in anticipation of this litigation, which are not yet subject to discovery and remain privileged under Rule 26 of the Federal Rules of Civil Procedure. CSM further objects to this request on the grounds that it is overly broad and unduly burdensome.  CSM further objects to this request on the grounds that it is impermissibly compound.  CSM further objects to this request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege and the attorney-work product doctrine. Subject to and without waiving the foregoing objections, CSM responds as follows:  The nonprivileged documents responsive to this request are contained in the RI/FS and appendices to the RI/FS, which have already been made available to Hollandia.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates it points in response to Request No. 9.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all DOCUMENTS reflecting YOUR INSURERS' payments or reimbursements of (or refusal to pay or reimburse) YOUR claimed damages against each PARTY to this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

CSM objects to this request on the ground that it seeks information and documents that are protected from disclosure by the attorney-client, and work product privileges. Additionally, CSM objects to this request on the grounds that it seeks documents that are neither relevant to the asserted claims or defenses of any party in the litigation, nor proportional to the needs of the case. Moreover, payments were made directly from insurers to vendors. Therefore, the documents requested are not within CSM's possession, custody, or control.

**AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

CSM objects to this request on the ground that it seeks documents that are protected from disclosure by the attorney-client, and work product privileges. Additionally, CSM objects to this request on the grounds that it seeks documents that are neither relevant to the asserted claims or defenses of any party in the litigation, nor proportional to the needs of the case. CSM further objects to this request to the extent it seeks documents that are not in CSM's possession, custody or control.

Without waiving these objections, CSM will produce redacted invoices for work performed to identify other potentially responsible parties.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates it arguments from its response to Request No. 9. CSM agreed to provide responsive documents during meet and confer, which has not yet occurred.

**REQUEST FOR PRODUCTION NO. 13:**

Any and all DOCUMENTS that EVIDENCE YOUR claim that the PARTIES in the instant litigation, other than HOLLANDIA, are responsible in any manner for damages YOU claim in the instant litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

CSM objects to this request to the extent that it impermissibly seeks expert discovery prior to the designation of experts and privileged communications with consultants. CSM further objects to this request on the ground that it seeks information and documents that are protected from disclosure by the attorney-client and work product privileges. Subject to and without waiving the foregoing objections, CSM responds as follows:

The nonprivileged documents responsive to this request are contained in the RI/FS and appendices to the RI/FS, which have already been made available to Hollandia. They are also contained in the pleadings filed in connection with this matter, which are equally available to Hollandia.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates it points in response to Request No. 9.

**REQUEST FOR PRODUCTION NO. 19**:

Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any PARTY, including but limited to CalTrans and San Marcos Unified School District, relating in any manner to the IO, including but not limited to the RI/FS and PARTY ARRANGEMENTS

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19**:

CSM objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, mediation privilege, and executive privilege. Moreover, CSM objects to this request on the grounds that it is overbroad, vague, ambiguous, and unintelligible as phrased, rendering it completely incoherent and incapable of response. This request does not describe with reasonable particularity each item or category of items to be produced.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates it points in response to Request No. 9. Further, the request asks for communications with any PARTY (not with CSM's attorneys). The other objections are also improper and unmeritorious as the request describes with reasonable particularity and specifies the topic "the IO, including the RI/FS and PARTY ARRANGEMENTS." Each of the terms are defined in the original request.

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

## ISSUES WITH THE CSM'S AMENDED PRIVILEGE LOG

CSM'S Privilege fails to support the withholding of documents. CSM has failed to provide sufficient description of categories or documents to meet its burden with regard to its amended privilege log boxes set forth below. If anything, the log combines various categories, some of which may be privileged, and some which may not be.

**Amended Privilege Log for the City of San Marcos**
**March 23, 2018**

| Date Range | Category Description | Author(s) | Privilege |
|---|---|---|---|
| 1968 to present | Documents reflecting opinions, recommendations, advice and deliberations comprising part of a process by which the City of San Marcos' decisions and policies are formulated, including preliminary notes, drafts and memoranda | Counsel, the City of San Marcos, its councilmembers, officers, departments, boards, commissions, employees, agents, experts and consultants, insurers and others acting on its behalf | Deliberative process privilege |
| 2009 to present | Communications and records of communications among the parties to the Participation Agreement, Addendum B, Cooperation Agreement and Common Interest Agreement relating to the aforementioned agreements, the investigation and remediation of Lake San Marcos and San Marcos Creek, and this litigation | The parties and their respective councilmembers, officers, directors, departments, boards, commissions, employees, agents, experts and consultants, attorneys, insurers and others acting on their behalf | Attorney-client privilege; Attorney work product; Joint defense privilege; Common interest privilege |
| Approximately 2012 to present | Documents prepared by, for and in connection with work performed by the City of San Marcos' experts and consultants relating to this litigation and the investigation and remediation of Lake San Marcos and San Marcos Creek | Counsel, the City of San Marcos, its councilmembers, officers, departments, boards, commissions, employees, agents, experts and consultants, insurers and others acting on its behalf | Attorney-client privilege; Attorney work product |

| Date Range | Category Description | Author(s) | Privilege |
|---|---|---|---|
| Approximately 2012 to present | Communications and records of communications among the parties relating to the mediation or settlement of this case | The parties and their respective councilmembers, officers, directors, departments, boards, commissions, employees, agents, experts and consultants, attorneys, insurers and others acting on their behalf | Mediation/settlement privilege; Joint defense privilege; Common interest privilege; Attorney work product |

## HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:

Hollandia incorporates it points and authorities from the Points and Authorities re Privilege, above, and response to CDC's privilege log. Moreover, the "deliberative process privilege" may exempt disclosure of records revealing the deliberations of government officials or information relied upon by the officials in making decisions that they would not otherwise receive if the information were routinely disclosed. *Michaelis, Montanari & Johnson v. Sup. Ct.*, 38 Cal.4th 1065, 1071 (2006)("*Michaelis*"). This "privilege" did not exist until 1991. *Times Mirror Co. v. Sup. Ct.*, 53 Cal.3d 1325, 1342 (1991). "[T]he key question in every case is whether disclosure of the materials would expose [the government's] decision-making process in such a way as to discourage candid discussion with the [public officials] and thereby undermine the [government's] ability to perform its functions." *Michaelis,* 38 Cal.4th 1065, 1071. It is not an absolute bar to the disclosure of records that may reveal an official's deliberative process. The government must also apply the "balancing test" set forth in the Public Records Act. Records may also be withheld when the public interest served by nondisclosure clearly outweighs the public interest served by disclosure of the record. "[T]he burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality." *Times Mirror,* 53 Cal.3d 1325, 1342.

## WHY FURTHER RESPONSES ARE REQUIRED TO REQUESTS FOR ADMISSIONS

## REQUEST FOR ADMISSION NO. 17:

Please admit YOU have incurred costs to COMPLY with potential TMDL REQUIREMENTS to limit NUTRIENTS from entering any BODY OF WATER, which costs YOU seek from HOLLANDIA.

102

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

CSM objects to this request on the grounds that the word "potential" as used here is vague and ambiguous and unintelligible. This request calls for pure speculation on the part of CSM as "potential" TMDL requirements, by definition, do not exist. CSM cannot have incurred costs to comply with requirements that do not exist. The vagueness and contradiction inherent in this request render it unintelligible and incapable of response.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates it points in response to Request for Production No. 9, above, and its response to RFA No. 19 **to CDC**.  The Objections lack merit. The RI/FS and RWQCB documents disclose that CSM and the other public agencies have agreed to implement nutrient control measures in lieu of the EPA imposing TMDL for nutrients pursuant to the Participation Agreement.  Dec JR ¶39-41.

**WHY FURTHER RESPONSES ARE REQUIRED TO INTERROGATORIES**

**SPECIAL INTERROGATORY NO. 3:**

Please IDENTIFY and set forth all facts describing YOUR FERTILIZING practices in YOUR jurisdiction in the watershed leading to and including the LAKE from the time the LAKE was created.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

CSM objects to this interrogatory on the basis that it is impermissibly compound. CSM further objects on the ground that providing information prior to 2014 would be unduly burdensome and oppressive as it would require CSM to spend hundreds of hours searching through thousands of files saved in disparate locations and media potentially spanning a period of decades. This is due to the fact that information responsive to this interrogatory has only been consistently and uniformly recorded and saved since 2014.  CSM objects to this interrogatory to the extent that it seeks information that it is in the possession of Hollandia or third parties, or information that is equally available to Hollandia through public sources or records. Subject to and without waiving these objections, CSM responds as follows:

The facts describing CMS's fertilizing practices are set forth in maintenance records, which are

1   being produced in response to your Requests for Production, or have been previously produced.

2   Investigation and discovery are ongoing and CSM reserves the right to update or amend this response

3   as additional information becomes available.

4   **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

5       Hollandia incorporates the reasons stated in response to RFA No. 17, above, and its response to

6   Request for Production No. 1 **to CDC** and response to Interrogatory No. 7 **to CDC**. CSM is required to

7   answer based upon personal knowledge and that information which is available to it.

8   **SPECIAL INTERROGATORY NO. 6:**

9       Please IDENTIFY and set forth all facts describing COMMUNICATIONS over potential

10  or actual REQUIREMENTS to limit NUTRIENTS from entering any BODY OF WATER to

11  COMPLY with stormwater REQUIREMENTS since YOU became a CITY, including but not

12  limited to TMDLs.

13  **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

14      CSM objects to this interrogatory on the grounds that it is overbroad as to time and scope.

15  Providing information beyond what is set forth herein would be unduly burdensome and

16  oppressive as it would require CSM to spend hundreds of hours searching thousands of files

17  recorded in disparate locations and media regarding events that potentially occurred over a

18  period of more than 50 years. CSM objects to this interrogatory on the grounds that it is

19  impermissibly compound. CSM further objects to this interrogatory on the grounds that the

20  phrase "potential . . . requirements" is incomprehensibly vague. CSM further objects to this

21  interrogatory on the grounds that it seeks information that is protected from disclosure by the

22  attorney-client privilege, the attorney-work product doctrine, and the deliberative process

23  privilege. Subject to and without waiving the foregoing objections, CSM responds as follows:

24      The facts describing communications responsive to this interrogatory have been provided

25  in response to special interrogatories number one and five. As noted previously, all records

26  referenced therein will be produced in response to your Requests for Production. Investigation

27  and discovery are ongoing and CSM reserves the right to supplement or amend this response

28  with additional information as it becomes available.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates it points in response to Interrogatory No. 3.

**SPECIAL INTERROGATORY NO. 8:**

Please IDENTIFY and set forth all facts describing YOUR COMMUNICATIONS with the RWQCB since the LAKE was created with regard to the ENVIRONMENTAL CONDITIONS at the LAKE, including but not limited to all aspects of the IO and RI/FS.

**RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

CSM objects to this interrogatory on the grounds that it is overly broad and unduly burdensome in that it requires CSM to spend hundreds of hours searching through thousands of files recorded in disparate locations and media. CSM further objects to this interrogatory to the extent that it calls for information protected by the attorney-client, work product, and mediation privileges. CSM further objects that the term "ENVIRONMENTAL CONDITIONS" is vague, ambiguous, and overbroad as phrased. CSM further objects to this interrogatory to the extent that it seeks information that is in the possession of Hollandia or third parties or the information is equally available to Hollandia through public sources or records. Subject to and without waiving these objections, CSM responds as follows:

The communications with the RWQCB and any non-privileged communications describing communications with the RWQCB are set forth in the records that will be produced in response to your Requests for Production. Investigation and discovery are ongoing and CSM reserves the right to update or amend this response as additional information becomes available.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Interrogatory No. 3.

**SPECIAL INTERROGATORY NO. 9:**

Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of any BODY OF WATER and watershed that YOU or other PARTIES have conducted to respond to the IO, including but not limited to search for PRPs, INVESTIGATION of HOLLANDIA, stream restoration, LAKE flushing, and level of nutrient interaction between the sediment and LAKE water column.

**RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

CSM objects to this interrogatory on the grounds that it seeks information that is protected from disclosure by the attorney-client privilege and the attorney-work product doctrine. In addition, the interrogatory impermissibly seeks expert discovery prior to the designation of experts and privileged communications with consultants. CSM further objects to this interrogatory to the extent that it seeks information that is already in Hollandia's possession or information that is equally available to Hollandia through public sources or records. Subject to and without waiving the foregoing objections, CSM responds as follows:

The investigations of any body of water and watershed responsive to the IO are included in the appendices to the RI/FS. Investigation data that is not summarized within the RI/FS may be found in the RI/FS Appendices D through R, T through V, Z through AJ, and AP through AQ. Both the RI/FS and Appendices have already been made available to Hollandia.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Interrogatory No. 3.

**SPECIAL INTERROGATORY NO. 10:**

Please set forth all facts describing all ARRANGEMENTS which YOU have ever had with any other PARTY, including but limited to CalTrans and San Marcos Unified School District, relating in any manner to the IO, including COMPLIANCE with it, including any Cooperation Agreement.

**RESPONSE TO SPECIAL INTERROGATORY NO. 10**

CSM objects to this interrogatory on the grounds that it seeks information that is subject to the attorney-client privilege and the mediation privilege. Moreover, CSM objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Specifically, the term "ARRANGEMENTS" it is vague, ambiguous, and overbroad as phrased, as it calls for information that is irrelevant to this matter, covering a period of more than 50 years. Subject to and without waiving the foregoing objections, CSM responds as follows:

The Cooperation Agreement between the parties and the RWQCB and the attachments thereto are being produced in response to your Requests for Production. In addition, the

106

1  defendants in this lawsuit entered into a Common Interest Agreement in Anticipation of

2  Litigation. This document will also be produced.

3  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

4      Hollandia incorporates it arguments from its response to Interrogatory No. 3.

5  **SPECIAL INTERROGATORY NO. 15:**

6      Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of

7  HOLLANDIA YOU have conducted or obtained, including but not limited to its property,

8  practices, and people.

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

10      CSM objects to this interrogatory on the grounds that it seeks information that is protected

11  from disclosure by the attorney-client privilege and the attorney-work product doctrine. In

12  addition, the interrogatory impermissibly seeks expert discovery prior to the designation of

13  experts. Subject to and without waiving the foregoing objections, CSM responds as follows:

14      The information responsive to this interrogatory is included in the appendices to the

15  RI/FS. Investigation data that is not summarized within the RI/FS may be found in the RI/FS

16  Appendices D through R, T through V, Z through AJ, and AP through AQ. Both the RI/FS and

17  Appendices have already been made available to Hollandia.

18  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

19      Hollandia incorporates its response to Interrogatory No. 3.

20  **REQUEST FOR PRODUCTION NO. 18:**

21      Any and all DOCUMENTS referring or related to any ARRANGEMENTS YOU have ever had

22  with any other PARTY relating in any manner to the instant litigation.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

24      CSM objects to this request on the grounds that it seeks documents that are neither

25  relevant to the asserted claims or defenses of any party in the litigation, nor proportional to the

26  needs of the case. CSM further objects to this request to the extent that it calls for documents

27  protected by the attorney-client privilege and/or attorney work product doctrine, including

28  attorney-expert communications protected pursuant to Rule 26(b)(4) of the Federal Rules of

Civil Procedure. CSM further objects to this request to the extent that it calls for documents protected by the mediation and settlement privileges, including but not limited to Rule 408 of the Federal Rules of Evidence. CSM further objects to this request to the extent that it calls for documents that are protected by the joint defense privilege/common interest doctrine. Documents potentially responsive to this request include essentially every communication concerning Lake San Marcos and the instant litigation between CSM, its attorneys, consultants, or anyone else with no limit in time. This request is so broad and lacking in specificity that it does not allow CSM to determine where and what to search for. Subject to and without waiving these objections, CSM responds as follows:

CSM will produce the Cooperation Agreement between the parties as well as the Common Interest Agreement in Anticipation of Litigation in response to this request.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Interrogatory No. 3.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any PARTY, including but limited to CalTrans and San Marcos Unified School District, relating in any manner to the IO, including but not limited to the RI/FS and PARTY ARRANGEMENTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

CSM objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, mediation privilege, and executive privilege. Moreover, CSM objects to this request on the grounds that it is overbroad, vague, ambiguous, and unintelligible as phrased, rendering it completely incoherent and incapable of response. This request does not describe with reasonable particularity each item or category of items to be produced.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates its response to Interrogatory No. 3.

**SANCTIONS AGAINST CSM ARE APPROPRIATE**

FRCP 37(a)(5)(B) permits the Court to order payment of reasonable expenses that Hollandia incurred in making this motion if any of the other party's conduct necessitated the motion, unless

1 Hollandia did not first attempt in good faith to obtain the discovery without court intervention, the
2 opposing party's nondisclosure was substantially justified, or other circumstances would make an
3 award unjust CSM was nonnegotiable on all of the privilege, mediation, and work product issues
4 raised in this motion. CSM agreed to produce communications between its consultant and the Regional
5 Board after M&C, but only produced a small number of those that VWD had mostly already produced
6 and none of its consultant's notes related to meetings with the Regional Board. Hollandia has complied
7 with the meet and confer (M&C) requirements of the above rule and Chamber Rules as described in
8 Dec JR ¶2-9 and believes sanctions are warranted in this case for at least $5,000 as further supported
9 by Dec JR ¶52 .

## DISCOVERY DISPUTES WITH COE

## THE PARTIES MET AND CONFERRED AND NARROWED ISSUES

12 See Dec JR for details of the meet and confer.

## REQUEST FOR PRODUCTION NO. 6:

14 Any and all DOCUMENTS referring or related to COMMUNICATIONS over potential or
15 actual REQUIREMENTS to limit NUTRIENTS from entering any BODY OF WATER in the
16 watershed that leads to the LAKE to COMPLY with stormwater REQUIREMENTS, including but not
17 limited to TMDLs.

18 **Definitions are the same for all parties except as noted.**

19 "YOU" and "YOUR" means the City of Escondido, including its officers, employees,
20 consultants, insurers, investigators, and agents, including counsel to the extent acting as agent to third
21 parties.

## COE'S RESPONSE TO REQUEST FOR PRODUCTION

## GENERAL OBJECTIONS

24 Responding Party objects to the definition of "BODY OF WATER" as it is based on an
25 erroneous statement, ambiguous, and self-contradictory. The term is defined as referring to surface
26 water within Escondido's jurisdiction, but then states that this definition includes Lake San Marcos.
27 Lake San Marcos is not within Escondido's jurisdiction. Responding Party therefore will interpret this
28 term as referring only to "surface water located in the watershed in [the City of Escondido's]

1   jurisdiction that leads to Lake San Marcos."

2         Responding Party objects to the definition of "YOU" and "YOUR" as overbroad, vague and

3   ambiguous, and leading to overbroad and oppressive responses if literally applied.  Responding Party

4   therefore will interpret this term as referring to the City of Escondido and its agents while acting on its

5   behalf.

6         Responding Party further objects to the production of information that is protected as attorney-

7   client privilege, attorney work product, or by mediation and/or common interest confidentiality.

8   Responding Party will not produce such information.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

10        Responding Party objects to this request as vague, ambiguous, and overbroad.  Responding

11  Party further objects to the request to the extent that it seeks expert opinion, violates the attorney work

12  product/attorney client privilege, violates the joint defense/common interest privilege, and seeks

13  information protected by mediation confidentiality.

14  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

15        Hollandia incorporates the reasons stated in response to Request for Production No. 1 **to CDC**.

16  COE agreed to respond to potential TMDLs and limit nutrients in lieu of being added to the IO

17  pursuant to the Participation Agreement, which also included **CalTrans and San Marcos** Unified

18  School District as signatories. The other objections are also improper and unmeritorious. Each of the

19  terms are reasonably defined in the original request.  See, generally, Dec JR.

20  **REQUEST FOR PRODUCTION NO. 8:**

21        Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with the

22  RWQCB since the LAKE was created with regard to any BODY OF WATER in the watershed that

23  leads to and includes the LAKE, including the IO and RI/FS.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

25        Responding Party objects to this request as vague, ambiguous, overbroad, and burdensome.

26  Responding Party further objects to the request to the extent that it seeks expert opinion, violates the

27  attorney work product/attorney client privilege, violates the joint defense/common interest privilege,

28  and seeks information protected by mediation confidentiality.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 6.

**REQUEST FOR PRODUCTION NO. 9:**

Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any PARTY, including but limited to CalTrans and San Marcos Unified School District, relating in any manner to the IO, including but not limited to the RI/FS and PARTY ARRANGEMENTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Responding Party objects to this request as vague, ambiguous, overbroad, and burdensome. Responding Party objects that this request is vague and unintelligible due to the phrase "including but limited to CalTrans and San Marcos Unified School District." Responding Party further objects to the request to the extent that it seeks expert opinion, violates the attorney work product/attorney client privilege, violates the joint defense/common interest privilege, and seeks information protected by mediation confidentiality and common interest confidentiality.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 6. E-mails and agendas produced by VWD and CSM reflect each party's consultants had meetings and discussions with the Regional Board staff on a monthly basis to go over technical aspects of the investigation and remedial analysis, yet no related documents or records have been provided by this Responding Party. See, e.g., Dec JR ¶26.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all DOCUMENTS that EVIDENCE YOUR claim that HOLLANDIA is responsible in any manner for damages YOU claim in the instant litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Responding Party objects to this request as vague and ambiguous (including as to the term "responsible"), overbroad, and burdensome. Responding Party further objects to the request to the extent that it seeks expert and legal opinion, violates the attorney work product/attorney client privilege, violates the joint defense/common interest privilege, and seeks information protected by mediation confidentiality. Without waiving these objections, Responding Party responds as follows:

1  To the extent not already produced in this litigation, or available through the Geotracker website,

2  Responding Party will produce all additional non-privileged responsive documents, if any, in its

3  possession and/or control.  Discovery is continuing.

4  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

5       Hollandia incorporates the reasons stated in response to Request for Production No. 6.

6  **REQUEST FOR PRODUCTION NO. 11:**

7       Any and all DOCUMENTS that EVIDENCE INVESTIGATIONS of HOLLANDIA YOU

8  have conducted or obtained, including but not limited to its property, practices, and people.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

10       Responding Party objects to this request as vague, ambiguous, overbroad, and burdensome.

11  Responding Party further objects to the request to the extent that it seeks expert opinion, violates the

12  attorney work product/attorney client privilege, violates the joint defense/common interest privilege,

13  and seeks information protected by mediation confidentiality.   Without waiving this objection,

14  Responding Party responds as follows:  Responding Party has conducted no investigation of Hollandia

15  outside of whatever investigation may have been conducted under direction of counsel as part of the

16  defense of this litigation.  Responding Party objects to providing information on such investigations as

17  attorney work product.  Responding Party does not believe any non-privileged responsive documents

18  exist.

19  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

20       Hollandia incorporates the reasons stated in response to Request for Production No. 6.

21  **REQUEST FOR PRODUCTION NO. 13:**

22       Any and all DOCUMENTS that EVIDENCE YOUR claim that the PARTIES in the instant

23  litigation, other than HOLLANDIA, are responsible in any manner for damages YOU claim in the

24  instant litigation.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

26       Responding Party objects to this request as vague, ambiguous, overbroad, and burdensome.

27  Responding Party further objects to the request to the extent that it seeks expert opinion, violates the

28  attorney work product/attorney client privilege, violates the joint defense/common interest privilege,

and seeks information protected by mediation confidentiality.  Without waiving these objections, Responding Party responds as follows:  Documents posted on the Geotracker website support Responding Party's claims.  To the extent not already produced in this litigation, or found on the Geotracker website, Responding Party will produce all additional non-privileged responsive documents, if any, in its possession and/or control.  Discovery is ongoing.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 6.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all DOCUMENTS referring or related to any ARRANGEMENTS YOU have ever had with any other PARTY relating in any manner to the instant litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Responding Party objects that this request is overbroad, vague and ambiguous, violates work product privileges, seeks expert testimony, and violates mediation confidentiality.  Without waiving this objection, Responding Party will provide a copy of the Cooperation Agreement.  Responding Party objects to producing all documentation referencing the Cooperation Agreement as burdensome and violative of common defense/joint interest privileges.  Responding Party has also entered into a Common Interest agreement in October/November 2011 to facilitate the sharing of information on a confidential basis in anticipation of potential administrative proceedings and litigation.  This document is by its term confidential, and will not be produced.  Responding Party is also participating in a mediation with CDC, City of San Marcos, County of San Diego, and Vallecitos Water District, which includes mediation confidential interim agreements to fund investigative work at the creek and the lake.  Responding Party objects to production of material relating to the mediation as violative of mediation confidentiality and will not produce this material.  Responding Party also agreed with Vallecitos Water District, City of San Marcos, and the County of San Diego to jointly retain Phil Giacinti as bankruptcy counsel to represent their interests with respect to the CDC bankruptcy. Responding Party objects to providing documentation relating to that arrangement on the grounds of attorney-client, joint defense, and work product privileges.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

1  Hollandia incorporates the reasons stated in response to Request for Production No. 6. COE

2  entered into a Participation Agreement that also included CalTrans and San Marcos Unified School

3  District, yet no documents have been produced reflecting their involvement.

4  <u>**ISSUES WITH COE'S PRIVILEGE LOG**</u>

5  COE'S Privilege Log fails to support the withholding of documents. COE has failed to provide

6  sufficient description of categories or documents to meet its burden with regard to its amended

7  privilege log boxes 2, 3, and 5 set forth below. If anything, the log combines various categories, some

8  of which may be privileged, and some which may not be. The following is the amended privilege log

9  prepared by COE.

10  Please see Exhibit 19, or, COE, please add the amended log for the Court's convenience here.

11  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

12  Hollandia incorporates the reasons stated in response to Request for Production 6 and response

13  **to CDC** regarding privilege logs. COE has not sustained its burden with regard to rows/boxes 2, 3, and

14  5.

15  **WHY FURTHER RESPONSES ARE REQUIRED TO INTERROGATORIES**

16  **INTERROGATORY NO. 6:**

17  Please IDENTIFY and set forth all facts describing COMMUNICATIONS over potential or

18  actual REQUIREMENTS to limit NUTRIENTS from entering any BODY OF WATER in the

19  watershed leading to the LAKE to COMPLY with storm water REQUIREMENTS, including but not

20  limited to TMDLs.

21  **RESPONSE TO INTERROGATORY NO. 6:**

22  Responding Party objects that this interrogatory is overbroad, vague and ambiguous,

23  burdensome, violates work product privileges, and seeks expert testimony.

24  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

25  Hollandia incorporates the reasons stated in response to Request for Production No. 6 and its

26  response to Interrogatory No. 7 **to CDC**. COE is required to answer based upon personal knowledge

27  and that information which is available to it. The interrogatory does not seek work product. Further,

28  this request does not seek Responding Party's expert opinions as this is not a question only an expert

can answer because the interrogatory seeks facts, information, and claims made by *third* parties. The question simply concerns potential or actual stormwater requirements that are relevant to this lawsuit. Potential regulations would largely be disclosed through communications with regulators.

**INTERROGATORY NO. 7:**

Please IDENTIFY and set forth all facts describing YOUR COMMUNICATIONS with the RWQCB since the LAKE was created with regard to the ENVIRONMENTAL CONDITIONS at any BODY OF WATER in the watershed leading to the LAKE, including but not limited to all aspects of the IO and RI/FS.

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party objects that this interrogatory is overbroad, vague and ambiguous, burdensome, and violates attorney client/work product privilege.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

See response to Interrogatory No. 6.  This Interrogatory seeks communications not limited to those between Responding Party's consultants, experts and attorneys and the RWQCB.  There is no privilege for communications with a third party – here a regulator. During meet and confer, COE agreed communications by its consultants with the RWQCB are not privileged. None of the supplementation, however, reflects any such communications. E-mails and agendas produced by VWD and CSM reflect that all parties' consultants had meetings and discussions with the Regional Board staff on a monthly basis to go over technical aspects of the investigation and remedial analysis, yet no related documents or communications have been provided by this Responding Party. See, e.g., Dec JR ¶¶9, 11, 17-18, 26, 29, 40, 44, 46.

**INTERROGATORY NO. 8:**

Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of any BODY OF WATER and watershed that YOU or other PARTIES have conducted to respond to the IO, including but not limited to search for PRPs, INVESTIGATION of HOLLANDIA, stream restoration, LAKE flushing, and level of nutrient interaction between the sediment and LAKE water column.

**RESPONSE TO INTERROGATORY NO. 8:**

Responding Party objects that this interrogatory is overbroad, vague and ambiguous, violates

work product privileges, and seeks expert testimony.  Responding Party further objects to the extent that this interrogatory erroneously implies that Responding Party was party to the Investigative Order.  Without waiving these objections, Responding Party responds as follows:

Responding Party, along with the County of San Diego, the City of San Marcos, Vallecitos Water District and Citizens Development Corporation, participated in the funding of investigatory work in this matter, including the preparation and submission of an RI/FS in this matter.  This document, as well as other submissions regarding the ancillary investigations performed as part of this RI/FS are available on the Geotracker website maintained by the Regional Water Quality Control Board.  It would be burdensome to require Responding Party to summarize this information, which is equally available to Propounding Party, and Responding Party declines to do so.

All non-privileged/non-protected documents concerning Responding Party's investigations are available on the Geotracker website.  To the extent that request seeks information of investigations conducted by responding party other than the investigations described in the RI/FS and its ancillary documents, such investigations would have been performed at the behest of counsel in response to anticipated investigation and are privileged as work product.

To the extent that this request seeks information of investigations learned about as part of mediation, such information is protected by mediation confidentiality.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

See Reason to Interrogatory No. 7. Further, this is not a question only an expert can answer because facts, information, and opinions were stated in the RI/FS presented to the RWQCB. COE and the other defendants hired the consultants who responded to the IO and prepared the RI/FS. Consultants who communicate with other parties, including the RWQCB, people working on the RI/FS, and other parties to this lawsuit are not protected by the attorney work product privilege.

**INTERROGATORY NO. 9:**

Please set forth all facts describing all ARRANGEMENTS which YOU have ever had with any other PARTY, including but limited to CalTrans and San Marcos Unified School District, relating in any manner to the IO, including COMPLIANCE with it, including any Cooperation Agreement.

**RESPONSE TO INTERROGATORY NO. 9:**

Responding Party objects that this interrogatory is overbroad, vague and ambiguous, violates work product privileges, seeks expert testimony, and violates mediation confidentiality.  Without waiving these objections, Responding Party responds as follows:  Responding Party entered into a cooperation agreement with City of San Marcos, California Department of Transportation, San Marcos Unified District, Vallecitos Water District, and the County of San Diego.  Responding Party will produce a copy of this agreement.  Responding Party has also entered into a Common Interest agreement in October/November 2011 with the same parties to facilitate the sharing of information on a confidential basis in anticipation of potential administrative proceedings and litigation.  This document is by its term confidential, and will not be produced.  Responding Party is also participating in a mediation with CDC, City of San Marcos, County of San Diego, and Vallecitos Water District, which includes mediation confidential interim agreements to fund investigative work at the creek and the lake.  Responding Party also agreed with Vallecitos Water District, City of San Marcos, and the County of San Diego to jointly retain Phil Giacinti as bankruptcy counsel to represent their interests with respect to the CDC bankruptcy.  Responding Party will not provide any further detail as to that arrangement on the grounds of attorney-client, joint defense, and work product privileges.

Responding Party objects to providing information as to informal agreements reached among counsel as part of the normal process of litigation (granting extensions, setting up mediations, etc.) as burdensome and violative of mediation confidentiality.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Interrogatory No. 7. COE voluntarily joined the Participation Agreement through the Cooperation Agreement. Dec JR ¶15.Both CalTrans and San Marcos Unified School District participated in the Participation Agreement until terminating in 2016. At the very least, Hollandia is entitled to know what they did with respect to nutrient reduction in the watershed and why. Hollandia does not seek documents or communications that simply reflect logistical arrangements such as setting up mediations.

**INTERROGATORY NO. 10:**

Please IDENTIFY and set forth all facts describing YOUR claim that the other PARTIES in the instant litigation are responsible in any manner for damages YOU claim in the instant litigation.

117

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party objects that this interrogatory is overbroad, vague and ambiguous, compound and disjunctive, violates work product privileges, violates mediation confidentiality, and seeks expert testimony. Without waiving this objection, Responding Party responds as follows: Responding Party is a party to a CERCLA lawsuit brought by CDC against Hollandia and certain public agency defendants within the watershed, and has incurred and continues to incur costs to address contamination in Lake San Marcos (the "Lake") and in the watershed that drains into Lake San Marcos (the "Watershed").

The Lake is located within the City of San Marcos and the County of San Diego. Approximately 58 percent of the Watershed lies within the jurisdiction of San Marcos. Approximately, 32 percent of the Watershed lies within the jurisdiction of unincorporated portions of the County. Historically intensive uses have occurred within the jurisdiction of the City and/or the County, including the Bradley landfill, the Hollandia dairy, and one or more poultry farms.

Limnotech, an environmental consultant, submitted a model as part of the Remedial Investigation/Feasibility Study for the Lake and Watershed, which calculated nutrient loads for sub-basins with the Watershed. This model calculated contribution loads for the City of San Marcos and the County of San Diego. Additionally, testing data supports that the County and the City of San Marcos contributed nutrients to the Lake.

Vallecitos Water District provides water and sewage service for a large portion of the Watershed. Vallecitos has had sewage spills within the Watershed. Additionally, Escondido is informed and believes that Vallecitos' sewers leak within the Watershed.

Citizen Developments Corporation ("CDC") is the current owner of the Lake and the historical developer of the Lake and surrounding properties. CDC is responsible for damages claimed by Responding Party as a result of its misuse of its water rights including, without limitation, its creation, ownership, use, and mismanagement of the dam impounding San Marcos Creek, the Lake, and surrounding properties. CDC has not limited its use of the water rights it holds to the use authorized under the permit and license (namely irrigation on designated land), has not limited its impoundment of San Marcos Creek to the period of April to November, has not limited its withdrawal of waters to those lawfully impounded, and has not preserved water quality in the impoundment in a manner

1  meeting the requirements of the San Diego Basin Plan, among other items.

2      CDC's dam serves as a sediment trap, creating and exacerbating the contamination of the Lake.

3  CDC has mismanaged the Lake, including failing to regularly apply alum or take other steps designed

4  to mitigate lake water quality impairment.

5      With respect to Hollandia, Responding Party refers to its prior response to Hollandia's

6  interrogatory No. 10.

7      Further information may be developed through expert review. As this matter has not yet

8  entered expert discovery, Responding Party objects to providing expert information in response to this

9  interrogatory. Additionally, Responding Party notes that discovery is continuing and no depositions

10 have been taken. Further information may be developed through discovery in this matter. Responding

11 Party also points to the discovery responses of other parties in this litigation as sources of additional

12 information as to the basis for claims against parties in this matter.

13 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

14     Hollandia incorporates the reasons stated in response to Interrogatory No. 6

15 **REQUEST FOR INTERROGATORY NO. 13:**

16     Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of HOLLANDIA

17 YOU have conducted or obtained, including but not limited to its property, practices, and people.

18 **RESPONSE TO REQUEST FOR INTERROGATORY NO. 13:**

19     Responding Party objects to this vague as vague, overbroad and burdensome, and violative of

20 attorney work product.  Without waiving this objection, Responding Party Responds as follows:  The

21 RI/FS includes discussion of the investigations of background facts, including facts involving

22 Hollandia.  *See e.g.* RI/FS, Appendix E, G, X, Y, and Z.  Such information is equally available to

23 Propounding Party, and Responding Party therefore objects to being required to summarize this

24 information.

25     Other than what is contained in the RI/FS, Responding Party has conducted no investigation of

26 Hollandia outside of whatever investigation may have been conducted under direction of counsel as

27 part of the defense of this litigation.  Responding Party objects to providing information on such

28 investigations as attorney work product.

119

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

See Reasons to Interrogatory No. 6.

**REQUEST FOR INTERROGATORY NO. 15:**

Please IDENTIFY each and every "hazardous substance" under CERCLA that YOU contend has caused YOU to incur "response costs."

**RESPONSE TO REQUEST FOR INTERROGATORY NO. 15:**

Responding Party objects to this request as vague, ambiguous, overbroad, compound, and calling for expert opinion.  Without waiving these objections, Responding Party responds as follows: Per the Investigative Order, "the Lake is listed as impaired because levels of ammonia as nitrogen, phosphorous, and nutrients do not meet water quality standards.  The Creek is listed as impaired because the levels of phosphorus, DDE, toxicity, sediment toxicity, and selenium do not meet water quality standards."   Whether any of these substances qualifies as a CERCLA hazardous substance is a question of pure law, and thus inappropriate subject matter for an interrogatory.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

See Reasons to Interrogatory Numbers 6 and response to Interrogatory No. 18 **to CDC**. Additionally, COE's response fails to set forth all material facts as to what it contends is listed as a hazardous substance under CERCLA. It only lists what the RWQCB identified as a basis for calling the creek and lake "impaired." COE needs to identify each alleged hazardous substance on the EPA List of Lists of hazardous substances. These points go to the heart of COE's claim against Hollandia and whether there is a basis for federal jurisdiction. Hollandia contends there are no nutrients, manure, or chemicals in nutrients or manure that are on the definitive EPA "List of Lists," which itemizes every CERCLA "hazardous substance" by a chemical identification and often by percentage solutions. See example of the List of Lists entry for ammonia. Dec JR ¶47, Ex. 15. This interrogatory seeks to pin COE down as to the exact substance that it contends gives it the basis to sue Hollandia under CERCLA. Hollandia is not seeking an abstract application of "pure law" here.

**INTERROGATORY NO. 19:**

Please IDENTIFY and set forth all facts describing any ARRANGEMENTS YOU have ever had with any other PARTY relating in any manner to the instant litigation.

**RESPONSE TO INTERROGATORY NO. 19:**

Responding Party objects that this interrogatory is overbroad, vague and ambiguous, violates work product privileges, seeks expert testimony, and violates mediation confidentiality.   Without waiving these objections, Responding Party responds as follows:   Responding Party entered into a Cooperation Agreement with City of San Marcos, California Department of Transportation, San Marcos Unified District, Vallecitos Water District, and the County of San Diego.   Responding Party will produce a copy of this agreement.   Responding Party has also entered into a Common Interest Agreement in October/November 2011 with the same parties to facilitate the sharing of information on a confidential basis in anticipation of potential administrative proceedings and litigation.   This document is by its term confidential, and will not be produced.   Responding Party is also participating in a mediation with CDC, City of San Marcos, County of San Diego, and Vallecitos Water District, which includes mediation confidential interim agreements to fund investigative work at the creek and the lake.   Responding Party also agreed with Vallecitos Water District, City of San Marcos, and the County of San Diego to jointly retain Phil Giacinti as bankruptcy counsel to represent their interests with respect to the CDC bankruptcy.   Responding Party will not provide any further detail as to that arrangement on the grounds of attorney-client, joint defense, and work product privileges.

Responding Party objects to providing information as to informal agreements reached among counsel as part of the normal process of litigation (granting extensions, setting up mediations, etc.) as burdensome and violative of mediation confidentiality.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

See Reasons to Interrogatory Numbers 6.

## SANCTIONS AGAINST COE IS APPROPRIATE

FRCP 37(a)(5)(B) permits the Court to order payment of reasonable expenses that Hollandia incurred in making this motion if any of the other party's conduct necessitated the motion, unless Hollandia did not first attempt in good faith to obtain the discovery without court intervention, the opposing party's nondisclosure was substantially justified, or other circumstances would make an award unjust COE was nonnegotiable on all of the privilege, mediation, and work product issues raised in this motion. COE agreed to produce communications between its consultant and the Regional Board

1  after M&C, but claims its consultant was not aware of any, even though Hollandia has copies of e-

2  mails with the Regional Board and COE's consultant, Tim Simpson. Hollandia has complied with the

3  meet and confer (M&C) requirements of the above rule and Chamber Rules as described in Dec JR ¶2-

4  9 and believes sanctions are warranted in this case for at least $5,000 as further supported by Dec JR

5  ¶52 .

6  **DISCOVERY DISPUTES WITH VWD:**

7  **THE PARTIES MET AND CONFERRED AND NARROWED ISSUES**

8  See Dec JR for details of the meet and confer.

9  **REQUESTS FOR PRODUCTION**

10  **REQUEST FOR PRODUCTION NO. 2:**

11  Any and all DOCUMENTS referring or related to the amount of NUTRIENTS typically found

12  in the SEWAGE in YOUR SEWER SYSTEM since the LAKE was created.

13  "SEWAGE" or "SEWER SYSTEM" means waste material and excrement, organic and

14  inorganic, whether liquid or solid, as well as the process of receiving, handling, containing, conveying,

15  and treating sewage by piping, treatment, and any other means used by VWD.

16  "YOU" and "YOUR" means VWD, San Marcos County Water District, and any other

17  predecessors under any name, including its owners, officers, employees, consultants, insurers,

18  investigators, and agents, including counsel to the extent acting as agent to third parties.

19  "VWD" means the Vallecitos Water District, San Marcos County Water District, and any of its

20  predecessors under any name, including its owners, officers, employees, consultants, and agents,

21  including counsel to the extent acting as agent to third parties, and/or the territory within YOUR

22  jurisdiction that is in the watershed that leads to and includes the LAKE.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

24  Objection. This request is vague, ambiguous, and overbroad as to scope and time. This request

25  seeks documents which are neither relevant to the asserted claims or defenses of any party in the

26  litigation, nor which are reasonably calculated to lead to the discovery of admissible evidence. This

27  request calls for documents protected by the attorney client privilege and/or attorney work product

28  doctrine, including attorney-expert communications protected pursuant to FRCP 26(b)(4). This request

122

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

calls for documents protected by mediation and settlement privileges, including but not limited to FRE 408.  This request calls for documents which are protected by the joint defense privilege/common interest doctrine. This request calls for documents which are equally available to Requesting Party. This request calls for documents which are outside the scope of FRCP 26(b)(1) (including the "proportionality" factors listed therein). Subject to and without waiving these objections, Responding Party responds as follows:

To-date, Responding Party has only identified the following document in its possession, custody, or control which are responsive to this request:

• December 6, 2013 Technical Memorandum Meadowlark Reclamation Facility Nutrient Removal Evaluation for the Vallecitos Water District. (page 16 shows influent total nitrogen of 39 ppm average concentration)

This document will be produced. Documents Responding Party will not be producing in response to this request are identified by category on the privilege log provided herewith.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 1 **to CDC**. The other objections are also improper and unmeritorious. Each of the terms is reasonably defined in the original request. See, generally Dec JR.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all DOCUMENTS referring or related to complaints made by any PARTY about the release of SEWAGE from YOUR SEWER SYSTEM potentially or actually impacting the ENVIRONMENTAL CONDITIONS at any BODY OF WATER in the watershed that leads to, and includes, the LAKE each year since the LAKE was created.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Objection. This request is vague, ambiguous, and overbroad as to scope and time and as to the term "complaints". This request seeks documents which are neither relevant to the asserted claims or defenses of any party in the litigation, nor which are reasonably calculated to lead to the discovery of admissible evidence.  This request calls for documents protected by the attorney client privilege and/or attorney work product doctrine, including attorney-expert communications protected pursuant to FRCP

1   26(b)(4). This request calls for documents protected by mediation and settlement privileges, including

2   but not limited to FRE 408. This request calls for documents which are protected by the joint defense

3   privilege/common interest doctrine. This request calls for documents which are equally available to

4   Requesting Party. This request calls for documents which are outside the scope of FRCP 26(b)(1)

5   (including the "proportionality" factors listed therein).   Subject to and without waiving these

6   objections, Responding Party responds as follows:

7        Responding Party has or will produce all non-privileged/non-protected documents in its

8   possession, custody or control which are responsive to this request. Documents Responding Party will

9   not be producing in response to this request are identified by category on the privilege log provided

10  herewith.

11  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

12       Hollandia incorporates the reasons stated in response to Request for Production No. 2.

13  **REQUEST FOR PRODUCTION NO. 5.**

14       Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with the

15  RWQCB since the LAKE was created with regard to any BODY OF WATER in the watershed that

16  leads to the LAKE, including the IO and RI/FS.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

18       Objection. This request is vague, ambiguous, and overbroad as to scope and time. This request

19  seeks documents which are neither relevant to the asserted claims or defenses of any party in the

20  litigation, nor which are reasonably calculated to lead to the discovery of admissible evidence. This

21  request calls for documents protected by the attorney client privilege and/or attorney work product

22  doctrine, including attorney-expert communications protected pursuant to FRCP 26(b)(4).   This

23  request calls for documents protected by mediation and settlement privileges, including but not limited

24  to FRE 408.   This request calls for documents which are protected by the joint defense

25  privilege/common interest doctrine. This request calls for documents which are outside the scope of

26  FRCP 26(b)(1) (including the "proportionality" factors listed therein).   Subject to and without waiving

27  these objections, Responding Party responds as follows:

28       The majority of communications between the RWQCB and Responding Party regarding the

1  lake, the IO, and RI/FS are publically available on the Regional Board's geotracker website for the

2  lake                    and                    creek                    located                    at

3  http://geotracker.waterboards.ca.gov/profile_report.asp?global_id=T10000003261. Since those records

4  are equally available to Propounding Party, they will not be produced by Responding Party.

5  Responding Party will produce all non-privileged/protected business records in its possession, custody,

6  or control relating to communications with the Regional Board concerning the lake, the I/O, and the

7  RI/FS that have not already been publicly posted on the Regional Board's geotracker website.

8      Documents Responding Party will not be producing in response to this request are identified by

9  category on the privilege log provided herewith.

10 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

11      Hollandia incorporates the reasons stated in response to Request for Production No. 2.

12 **REQUEST FOR PRODUCTION NO. 6:**

13      Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any

14 PARTY other than the RWQCB relating in any manner to the IO, including the RI/FS and PARTY

15 ARRANGEMENTS.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

17      Objection. This request is so vague, ambiguous, and overbroad as to scope and time that it

18 amounts to harassment, intimidation, and oppression, and it is a blatant abuse of the discovery process.

19 This request seeks documents which are neither relevant to the asserted claims or defenses of any party

20 in the litigation, nor which are reasonably calculated to lead to the discovery of admissible evidence.

21 This request calls for documents protected by the attorney client  privilege and/or attorney work

22 product doctrine, including attorney-expert communications protected pursuant to FRCP 26(b)(4).

23 This request calls for documents protected by mediation and settlement privileges, including but not

24 limited to FRE 408. This request calls for documents which are protected by the joint defense

25 privilege/common interest doctrine. This request calls for documents which are equally available to

26 Requesting Party. This request calls for documents which are outside the scope of FRCP 26(b)(1)

27 (including the "proportionality" factors listed therein). Documents potentially responsible to this

28 request include essentially every communication concerning Lake San Marcos and the instant ligation

between responding party, its attorneys, its consultants, and anyone in the entire world ever. This request is so hopelessly broad and lacks sufficient specificity to allow Responding Party to begin know what to look for. This request is also disproportionate to the needs of Propounding Party.

Subject to and without waiving these objections, Responding Party responds as follows:

The majority of communications regarding the lake, the IO, and RI/FS are publically available on the Regional Board's geotracker website for the lake and creek located at http://geotracker.waterboards.ca.gov/profile_report.asp?global_id=T10000003261. Since those records are equally available to Propounding Party, they will not be produced by Responding Party.

Responding Party will produce the following documents responsive to this request:

• Participation Agreement Among the Lake San Marcos Work Group and related addendums, including Addendum B (SDRWQCB Provisions). Responding Party became a member of this agreement by executing Addendum F on or about March 9, 2011.

• Cooperation Agreement between the City of Escondido and the members of the Participation Agreement. Entered in or around June 2011.

Documents Responding Party will not be producing in response to this request are identified by category on the privilege log provided herewith.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 2.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all DOCUMENTS that EVIDENCE YOUR claim that HOLLANDIA is responsible in any manner for damages YOU claim in the instant litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Objection. This request is vague, ambiguous, and overbroad as to scope and time. This request seeks documents which are neither relevant to the asserted claims or defenses of any party in the litigation, nor which are reasonably calculated to lead to the discovery of admissible evidence. This request calls for documents protected by the attorney client privilege and/or attorney work product doctrine, including attorney-expert communications protected pursuant to FRCP 26(b)(4). This request calls for documents protected by mediation and settlement privileges, including but not limited

to FRE 408. This request calls for documents which are protected by the joint defense privilege/common interest doctrine. This request calls for documents which are equally available to Requesting Party. This request calls for documents which are outside the scope of FRCP 26(b)(1) (including the "proportionality" factors listed therein). Subject to and without waiving these objections, Responding Party responds as follows:

Responding Party has identified the following non-privileged/non-protected documents which are responsive to this request:

• Documents Responding Party has already produced as part of its initial disclosures, Responding Party's documents that evidence its claims against Hollandia includes the following:

• Records located on the RWQCB geotracker website for the lake and creek (see link provided above. Since those records are equally available to Propounding Party, they will not be produced by Responding Party.

• All documents produced by Hollandia and the other parties in the instant litigation, including, but not limited to Ball & Associates lake investigation reports. Since those records are equally available to Propounding Party, they will not be produced by Responding Party.

• Files relating to Hollandia Dairy initially requested by counsel for City of San Marcos. These documents are produced herewith.

• Files relating to Hollandia Diary obtained from the Encina Wastewater Authority. These documents are produced herewith.

Documents Responding Party will not be producing in response to this request are identified by category on the privilege log provided herewith.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Request for Production No. 2.

**REQUEST FOR PRODUCTION NO. 8.**

Any and all DOCUMENTS that EVIDENCE INVESTIGATIONS of HOLLANDIA YOU have conducted or obtained, including but not limited to its property, practices, and people.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Objection. This request is vague, ambiguous, and overbroad as to scope and time. This request

1   seeks documents which are neither relevant to the asserted claims or defenses of any party in the

2   litigation, nor which are reasonably calculated to lead to the discovery of admissible evidence. This

3   request calls for documents protected by the attorney client privilege and/or attorney work product

4   doctrine, including attorney-expert communications protected pursuant to FRCP 26(b)(4).   This

5   request calls for documents protected by mediation and settlement privileges, including but not limited

6   to FRE 408.   This request calls for documents which are protected by the joint defense

7   privilege/common interest doctrine. This request calls for documents which are equally available to

8   Requesting Party. This request calls for documents which are outside the scope of FRCP 26(b)(1)

9   (including the "proportionality" factors listed therein). Subject to and without waiving these objections,

10   Responding Party responds as follows:

11        Responding Party has identified the following non-privileged/non-protected documents which

12   are responsive to this request:

13        •   Documents Responding Party has already produced as part of its initial disclosures.

14        •   Records located on the RWQCB geotracker website for the lake and creek (see link

15   provided above. Since those records are equally available to Propounding Party, they will not be

16   produced by Responding Party.

17        •   All documents produced by Hollandia and the other parties in the instant litigation,

18   including, but not limited to, Ball & Associate lake investigation reports. Since those records are

19   equally available to Propounding Party, they will not be produced by Responding Party.

20        •   Files relating to Hollandia Dairy initially requested by counsel for City of San Marcos.

21   These documents are produced herewith.

22        •   Files relating to Hollandia Diary obtained from the Encina Wastewater Authority. These

23   documents are produced herewith.

24        Documents Responding Party will not be producing in response to this request are identified by

25   category on the privilege log provided herewith.

26   **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

27        Hollandia incorporates the reasons stated in response to Request for Production No. 2.

28   **REQUEST FOR PRODUCTION NO. 10:**

1    Any and all DOCUMENTS that EVIDENCE YOUR claim that the PARTIES in the instant

2  litigation, other than HOLLANDIA, are responsible in any manner for damages YOU claim in the

3  instant litigation.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

5    Objection. This request is vague, ambiguous, and overbroad as to scope and time. This request

6  seeks documents which are neither relevant to the asserted claims or defenses of any party in the

7  litigation, nor which are reasonably calculated to lead to the discovery of admissible evidence. This

8  request calls for documents protected by the attorney client privilege  and/or  attorney  work  product

9  doctrine, including attorney-expert communications protected pursuant to FRCP 26(b)(4).   This

10  request calls for documents protected by mediation and settlement privileges, including but not limited

11  to FRE 408. This request calls for documents which are protected by  the  joint  defense

12  privilege/common interest doctrine. This request calls for documents which are outside the scope of

13  FRCP 26(b)(1) (including the "proportionality" factors listed therein). Subject to and without waiving

14  these objections, Responding Party responds as follows:

15    Responding Party has identified the following non-privileged/non-protected documents which

16  are responsive to this request:

17    •    Documents Responding Party has already produced as part of its initial disclosures.

18    •    Records located on the RWQCB geotracker website for the lake and creek (see link

19  provided above. Since those records are equally available to Propounding Party, they will not be

20  produced by Responding Party.

21    •    All documents produced by the other parties in the instant litigation. Since those records

22  are equally available to Propounding Party, they will not be produced by Responding Party.

23    •    RWQCB and Encina Wastewater Authority documents relating to Hollandia discharges.

24    Documents Responding Party will not be producing in response to this request are identified by

25  category on the privilege log provided herewith.

26  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

27    Hollandia incorporates the reasons stated in response to Request for Production No. 2.

28  **REQUEST FOR PRODUCTION NO. 12.**

1  Any and all DOCUMENTS referring or related to any ARRANGEMENTS YOU have ever had

2  with any other PARTY relating in any manner to the instant litigation.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

4  Objection. This request is so vague, ambiguous, and overbroad as to scope and time that it

5  amounts to harassment, intimidation, and oppression, and it is a blatant abuse of the discovery process.

6  This request seeks documents which are neither relevant to the asserted claims or defenses of any party

7  in the litigation, nor which are reasonably calculated to lead to the discovery of admissible evidence.

8  This request calls for documents protected by the attorney client privilege and/or attorney work

9  product doctrine, including attorney-expert communications protected pursuant to FRCP 26(b)(4). This

10 request calls for documents protected by mediation and settlement privileges, including but not limited

11 to FRE 408. This request calls for documents which are protected by the joint defense

12 privilege/common interest doctrine. This request calls for documents which are outside the scope of

13 FRCP 26(b)(1) (including the "proportionality" factors listed therein). Documents potentially

14 responsible to this request include essentially every communication concerning Lake San Marcos and

15 the instant ligation between responding party, its attorneys, its consultants, and anyone in the entire

16 world ever. This request is so hopelessly broad and lacks sufficient specificity to allow Responding

17 Party to begin know what to look for. This request is also disproportionate to the needs of Propounding

18 Party. Subject to and without waiving these objections, Responding Party responds as follows:

19 Responding Party will produce the following documents in response to this request.

20 • Records located on the RWQCB geotracker website for the lake and creek (see link

21 provided above). Since those records are equally available to Propounding Party, they will not be

22 produced by Responding Party.

23 • Participation Agreement Among the Lake San Marcos Work Group and related

24 addendums, including Addendum B (SDRWQCB Provisions). Responding Party will produce this

25 document.

26 • Cooperation Agreement between the City of Escondido and the members of the

27 Participation Agreement. Entered in or around June 2011. Responding Party will produce this

28 document.

1 • SDRWQCB Resolution no. R9-2017-0038 a resolution supporting the path forward for

2 nutrient load reductions In Lake San Marcos and the San Marcos Creek Watershed, and related

3 documents. Responding Party will not produce these documents because they are public records which

4 equally available to Propounding Party, and which can be obtained on the SDRWQCB's website

5 located at https://www.waterboards.ca.gov/sandiego/board_decisions/adopted_orders/

6 • Communications by and between Responding Party with staff of the RWQCB regarding

7 sewer spills or the impairment at Lake San Marcos. Documents Responding Party will not be

8 producing in response to this request are identified by category on the privilege log provided herewith.

9 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

10 Hollandia incorporates the reasons stated in response to Request for Production No. 2.

11 **REQUEST FOR PRODUCTION NO. 13.**

12 Any and all DOCUMENTS referring or related to YOUR COMMUNICATIONS with any

13 PARTY, including but limited to CalTrans and San Marcos Unified School District, relating in any

14 manner to the IO, including but not limited to the RI/FS and PARTY ARRANGEMENTS.

15 **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

16 Objection. This request is so vague, ambiguous, and overbroad as to scope and time that it

17 amounts to harassment, intimidation, and oppression, and it is a blatant abuse of the discovery process.

18 This request seeks documents which are neither relevant to the asserted claims or defenses of any party

19 in the litigation, nor which are reasonably calculated to lead to the discovery of admissible evidence.

20 This request calls for documents protected by the attorney client privilege and/or attorney work

21 product doctrine, including attorney-expert communications protected pursuant to FRCP 26(b)(4). This

22 request calls for documents protected by mediation and settlement privileges, including but not limited

23 to FRE 408. This request calls for documents which are protected by the joint defense

24 privilege/common interest doctrine. This request calls for documents which are outside the scope of

25 FRCP 26(b)(1) (including the "proportionality" factors listed therein). Documents potentially

26 responsible to this request include essentially every communication concerning Lake San Marcos and

27 the instant ligation between responding party, its attorneys, its consultants, and anyone in the entire

28 world ever. This request is so hopelessly broad and lacks sufficient specificity to allow Responding

1   Party to begin know what to look for. This request is also disproportionate to the needs of Propounding

2   Party. Subject to and without waiving these objections, Responding Party responds as follows:

3       Since the IO, RI/FS and the instant litigation are clearly related to each other, this request is

4   entirely duplicative of Request for Production No. 12. See Responding Party's response to Request for

5   Production No. 12.

6       Documents Responding Party will not be producing in response to this request are identified by

7   category on the privilege log provided herewith.

8   **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

9       Hollandia incorporates the reasons stated in response to Request for Production No. 2.

10  **ISSUES WITH VWD'S PRIVILEGE LOG**

11      Hollandia incorporates the reasons stated in response to CDC's privilege log. VWD'S Privilege

12  Log fails to support the withholding of documents. VWD has failed to provide sufficient description of

13  categories or documents to meet its burden with regard to its amended privilege log boxes 2, 3, and 5

14  set forth below. If anything, the log combines various categories, some of which may be privileged,

15  and some which may not be. The following is the amended privilege log prepared by VWD.

16      Please see Exhibit 20, or, VWD, please add the amended log for the Court's convenience here.

17          **FURTHER RESPONSES ARE REQUIRED TO INTERROGATORIES**

18  **SPECIAL INTERROGATORY NO. 5:**

19      Please IDENTIFY and set forth all facts describing COMMUNICATIONS over potential or

20  actual REQUIREMENTS to limit NUTRIENTS from entering any BODY OF WATER in the

21  watershed leading to and including the LAKE to COMPLY with stormwater REQUIREMENTS,

22  including but not limited to TMDLs.

23  **RESPONSE TO INTERROGATORY NO. 5:**

24      Objection.  This request is so vague, ambiguous, and overbroad as to scope and time that it

25  amounts to harassment, intimidation, and oppression, and it is a blatant abuse of the discovery process.

26  This interrogatory is compound. This interrogatory is vague and ambiguous vas to the request to

27  provide "all facts" and as to the term "communications". This interrogatory seeks information which is

28  neither relevant to the asserted claims or defenses of any party in the litigation, nor is it reasonably

132

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

1  calculated to lead to the discovery of admissible evidence. This interrogatory calls for information

2  protected by the attorney client privilege and/or attorney work product doctrine. This interrogatory

3  calls for information which is protected by the joint defense privilege/common interest doctrine. This

4  interrogatory calls for premature disclosure of facts known or opinions held by nonwitness experts

5  and/or nontestifying consultants. This interrogatory calls for information protected by mediation and

6  settlement privileges, including but not limited to FRE 408. This interrogatory calls for information

7  that is equally available to Requesting Party. This interrogatory improperly assumes the fact that

8  Responding Party is subject to "stormwater requirements." Information potentially responsive to this

9  request potentially includes every single communication by Responding Party's management,

10  engineering department, and operations and management department relating to the management and

11  operations of its sewer system. This interrogatory is so hopelessly broad and lacks sufficient specificity

12  to allow Responding Party to know what information is actually being requested.  This request is also

13  disproportionate to the needs of Propounding Party.

14      Subject to and without waiving these objections, Responding Party responds as follows:

15  Responding Party refers Propounding Party to Responding Party's response to Interrogatory No. 4 and

16  incorporates the same as though fully set forth herein.   In addition, Responding Party is subject to

17  SWRCB Order No. 2006-003-DWQ, Statewide General Waste Discharge Requirements for Sanitary

18  Sewer Systems and RWQCB Order No. R9-2007-0005, Waste Discharge Requirements for Sewage

19  Collection Agencies in San Diego Region. Documents containing information responsive to this

20  request are provided in response to Propounding Party's Request for Production No.'s 1 and 4.

21  Compiling and/or summarizing the information contained within these documents would be unduly

22  burdensome and since the burden of compiling and summarizing this information is substantially the

23  same for either party, Responding Party elects its option under FRCP 33(d) to require Propounding

24  Party to search those records in order to obtain the information sought in this interrogatory.

25  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

26      Hollandia incorporates the reasons stated in response to Request for Production No. 2 and its

27  response to Interrogatory No. 7 **to CDC**. Further, the other objections are also improper and

28  unmeritorious. Each of the terms is reasonably defined in the original request. Whether or not VWD

1  was subject to potential TMDLs or stormwater regulations is not relevant because VWD helped

2  coordinate and was engaged in actions with the other PADs, as well as CalTrans and San Marcos

3  Unified School District, pursuant to the voluntary Participation Agreement, to perform work along that

4  line and hence may have relevant information. Dec JR ¶2, 6, 39-41, 49.

5  **INTERROGATORY NO. 6:**

6       Please IDENTIFY and set forth all facts describing YOUR COMMUNICATIONS with the

7  RWQCB since the LAKE was created with regard to the ENVIRONMENTAL CONDITIONS at any

8  BODY OF WATER in the watershed leading to and including the LAKE, including but not limited to

9  all aspects of the IO and RI/FS.

10  **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

11      Objection. This request is so vague, ambiguous, and overbroad as to scope and time that it

12  amounts to harassment, intimidation, and oppression, and it is a blatant abuse of the discovery process.

13  This interrogatory is vague and ambiguous as to the phrase "all facts", and as to the term

14  "communications". This interrogatory seeks information which is neither relevant to the asserted

15  claims or defenses of any party in the litigation, nor is it reasonably calculated to lead to the discovery

16  of admissible evidence. This interrogatory calls for information protected by the attorney client

17  privilege and/or attorney work product doctrine. This interrogatory calls for information which is

18  protected by the joint defense privilege/common interest doctrine. This interrogatory calls for

19  premature disclosure of facts known or opinions held by nonwitness experts and/or nontestifying

20  consultants. This interrogatory calls for information protected by mediation and settlement privileges,

21  including but not limited to FRE 408. This interrogatory calls for information that is equally available

22  to Requesting Party. This interrogatory calls for information which is outside the scope of FRCP

23  26(b)(1) (including the "proportionality" factors listed therein). Subject to and without waiving these

24  objections, Responding Party responds as follows:  The majority of communications between the

25  RWQCB and Responding Party regarding the lake, the IO, and RI/FS are publically available on the

26  Regional   Board's   geotracker   website   for   the   lake   and   creek   located   at

27  http://geotracker.waterboards.ca.gov/profile_report.asp?global_id=T10000003261.   All   other

28  information responsive to this interrogatory is included within documents Responding Party has

produced or which it will produce in response to Propounding Party's Request for Production No. 5. Compiling and/or summarizing the information contained within these documents would be unduly burdensome and since the burden of compiling and summarizing this information is substantially the same for either party, Responding Party elects its option under FRCP 33(d) to require Propounding Party to search those records in order to obtain the information sought in this interrogatory.

**HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

Hollandia incorporates the reasons stated in response to Interrogatory No. 5. During meet and confer, VWD agreed communications by its consultants with the RWQCB are not privileged. The tiny supplementation, however, reflects a few e-mails and agendas produced by VWD that show all parties' consultants had meetings and discussions with the Regional Board staff, and took notes, on a monthly basis to go over technical aspects of the investigation and remedial analysis, yet no related documents or communications have been provided or described by this Responding Party. Dec JR ¶9, 11, 17-18, 26, 29, 40, 44, 46.

**INTERROGATORY NO. 7:**

Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of any BODY OF WATER and watershed that YOU or other PARTIES have conducted to respond to the IO, including but not limited to search for PRPs, INVESTIGATION of HOLLANDIA, stream restoration, LAKE flushing, and level of nutrient interaction between the sediment and LAKE water column.

**RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

Objection.  This interrogatory is vague, ambiguous, and overbroad as to scope and time, as to the phrase "all facts", and as to investigations.  This interrogatory assumes facts that Responding Party has an obligation to respond to the IO.  This interrogatory seeks information which is neither relevant to the asserted claims or defenses of any party in the litigation, nor is it reasonably calculated to lead to the discovery of admissible evidence.  This interrogatory calls for information protected by the attorney client privilege and/or attorney work product doctrine.  This interrogatory calls for information which is protected by the joint defense privilege/common interest doctrine.  This interrogatory calls for premature disclosure of facts known or opinions held by nonwitness experts and/or nontestifying consultants.  This interrogatory calls for information protected by mediation and

1  settlement privileges, including but not limited to FRE 408.  This interrogatory calls for information

2  that is equally available to Requesting Party.   Subject to and without waiving these objections,

3  Responding Party responds as follows:

4      All non-privileged/non-protected documents concerning investigations Responding party has

5  participated in related to the IO have or will be produced by Responding Party or have already been

6  made  publically  available  on  the  Regional  board's  geotracker  website  located  at

7  http://geotracker.waterboards.ca.gov/profile_report.asp?global_id=T10000003261.   Compiling and/or

8  summarizing the information contained within the documents located on this website would be unduly

9  burdensome and since the burden of compiling and summarizing this information is substantially the

10 same for either party, Responding Party elects its option under FRCP 3(d) to require Propounding

11 Party to search those records in order to obtain the information sought in this interrogatory.

12 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

13     Hollandia incorporates the reasons stated in response to Interrogatory No. 5. The time frame is

14 limited. IO was issued in 2011, the same year VWD signed the Participation Agreement, which

15 compelled it to perform the work that was encompassed by the IO as well as broader watershed

16 nutrient limitation and remediation.

17 **INTERROGATORY NO.  10.**

18     Please IDENTIFY and set forth all facts describing YOUR claim that the other PARTIES in the

19 instant litigation are responsible in any manner for damages YOU claim in the instant litigation.

20 **RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

21     Objection.  This interrogatory is vague, ambiguous, and overbroad as to scope and time and as

22 to the phrase "all facts."  This interrogatory seeks information which is neither relevant to the asserted

23 claims or defenses of any party in the litigation, nor is it reasonably calculated to lead to the discovery

24 of admissible evidence.   This interrogatory calls for information protected by the attorney client

25 privilege and/or attorney work product doctrine.  This interrogatory calls for information which is

26 protected by the joint defense privilege/common interest doctrine.   This interrogatory calls for

27 premature disclosure of facts known or opinions held by nonwitness experts and/or nontestifying

28 consultants.  This interrogatory calls for information protected by mediation and settlement privileges,

136

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

1   including but not limited to FRE 408.  This interrogatory calls for information that is equally available

2   to Requesting Party.  Subject to and without waiving these objections, Responding Party responds as

3   follows:

4        At this point, the only other parties against which Responding Party is asserting claims for

5   damages in the instant litigation are Citizens Development Corporation, and Hollandia Dairy, Inc.

6        Regarding Hollandia Dairy, according to the according to SDRWQCB Order No. 94-138,

7   Hollandia's milk barn, corrals, wastewater collection, processing facilities and containment facilities

8   were and are located adjacent to San Marcos Creek in the Richland Hydrologic Subarea of the San

9   Marcos Hydrologic Area of the Carlsbad Hydrologic Unit. Lake San Marcos is located at the southern

10  boundary of the Richland Hydrologic Subarea within the San Marcos Hydrologic Area of the Carlsbad

11  Hydrologic Unit. RWQCB Resolution no. 70-R23 states "[s]urplus waste water [from the Hollandia

12  property] can enter San Marcos Creek directly or through a tributary branch." HOL 001561. Public

13  records obtained from the SDRWQCB and Encina Wastewater Authority (EWA) indicate numerous

14  surface discharges occurred from the Hollandia property at least between 1971 and 1998 and likely at

15  other times as well. See Sept. 30 2016 RI/FS Appendix X, Y & Z and documents obtained from

16  SDRWQCB and EWA. SCS Engineers reported that the Hollandia property "most probably

17  contributed potentially significant quantities of nutrients to the Watershed over the course of [its]

18  historical large agricultural production facility operations. . ." DRAFT Work plan for 2015 San Marcos

19  Creek water quality investigation, San Marcos Creek, San Marcos, California. April 20, 2015

20  (accepted as final). Further, evidence of substantial discharges is reported by Orville Ball & Associates

21  in Lake San Marcos Investigative reports. Since Hollandia's property is hydrologically upstream of the

22  Lake, all discharges from Hollandia's property would have eventually flowed downstream into the

23  Lake.  Discovery and investigation into Hollandia's responsibility for the impaired condition of the

24  creek and lake is continuing. Additional evidence of Hollandia's discharges into the creek or

25  groundwater will be obtained from witness  testimony,  including  individuals  identified  in

26  Responding  Party's  initial disclosures and former District Collections System Employee, Orval

27  Salisbury, who can be contacted as follows:  Cell Phone: 760-450-8252; Address: 2585 Jefferson St.

28  No. 1 Carlsbad 92008.

HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE ALL ISSUES AGAINST ALL FIVE PARTIES
IN RESPONSE TO HOLLANDIA DAIRY'S DISCOVERY, SET ONE

Citizens Development Corporation is responsible for the damages claimed by Responding Party as a result of its misuse of its water rights including, without limitation, its creation, ownership, use, and mismanagement of the dam impounding San Marcos Creek, the lake, and surrounding properties. CDC has not limited its use of the water rights it holds to the use authorized under the permit and license (namely irrigation on designated land), has not limited its impoundment of San Marcos Creek to the period of April to November, has not limited its withdrawal of waters to those lawfully impounded, and has not preserved water quality in the impoundment in a manner meeting the requirements of the San Diego Basin Plan, among other things. Since acquiring appropriative water rights in San Marcos Creek and since acquiring the property surrounding the impoundment, CDC began and continues to systematically develop the once smaller and pastoral pond used to irrigate agricultural lands into the key recreational amenity of an urban resort. The dam was raised to enlarge the pond into a lake, numerous shallow finger-like lagoons were constructed along the length of the lake to enhance opportunities for "lake side" community development (now consisting of approximately 2600 homes), and resort and community amenities, such as hotel, tennis court, restaurant, picnic, and swimming pool facilities, were constructed adjacent to the lake. In addition, two golf courses (one executive and one championship course) were constructed near the lake, numerous boat docks were installed in the lake to support a fleet of boats (which for many years employed two-stroke engines which polluted the Lake environment), CDC encourages and permitted flying boats to land and take off from the Lake, and flocks of nutrient producing waterfowl were encouraged and possible intentionally placed to make the lake their home. As a result, the lake became a private "urban lake," created for the economic benefit of CDC and the integrity of the lake's water quality was quickly overwhelmed by the pressures of a large surrounding community, heavy recreational use, year round impoundment, and lake and water right mismanagement. Irrigation runoff and storm water discharges from the private country club golf course, which was or is owned and operated by CDC. CDC's development of and use of the dam, the finger inlets in the lake, the community, and the resort facilities all entail hydromodification of the watershed resulting in adverse effects on the water quality of the lake.

CDC is both a producer of waste and discharger of pollutants and CERCLA hazardous

substances by collecting and concentrating the same within the water column and by the release of the same from the lake sediments to the water column. The dam serves as sediment trap, which has led to long term biogeochemical recycling of nutrients from the sediments to the water column. (See SDRWQCB's 9/14/11 Investigative Order to CDC at footnote 5; See Anderson, Michael. 2/3/2010 Water Quality Management in Lake San Marcos: Analysis of Available Data FINAL REPORT).

The authors of the RI/FS concluded that CDC's limited lake management practices have been insufficient to address the lake's impaired water quality conditions. (9/30/16 RI/FS p. 188.) Examples of CDC's lake mismanagement include, without limitation, the following:

• CDC has not been regularly applying alum to the lake. In 1975, CDC conducted one very successful alum application. Another application was conducted in 1979. (Great Ecology. April 2016. Technical Memorandum: Current and Historical Lake And Golf Course Management Efforts.) In 1974, Orville Ball & Associates made recommendations regarding management which CDC failed to apply and/or ceased long-term recommended application. (CDC 40716)  In 1979, Orville Ball & Associates made the recommendation for CDC to periodically apply alum to the lake. (1979. Ball & Associates. Lake San Marcos Study.) However, aside from those recently conducted for abatement remedy pilot studies, as described in the RI/FS, no additional alum applications were made.

• CDC did not operate the dam release valve in a way that would effectively mitigate lake water quality impairment. According to CDC's 2016 lake management report, CDC only used the valve in the winter when it would not have been effective to abate water quality impairment. If the dam release valve had been opened in the summer in accordance with an abatement plan, when the stratified deep zone waters contained low dissolved oxygen and hydrogen sulfide, the toxic deeper waters of the lake may have seen some improvement in water quality.  Such a release from the valve would have likely required a WDR/NPDES permit from the RWQCB.

• Although CDC has historically pumped well water to the lake and pumped water from the lake to the golf courses, CDC could have significantly improved lake water quality if it had pulled the irrigation water from the lake from the deep zone, which is one of the methods that has been proposed in the RI/FS.

• CDC has kept the lake full to support a heavy recreational use;

1 • CDC's development and use of the lake and surrounding properties has exacerbated the

2 hydromodification effects of the dam; Discovery and investigation into CDC's responsibility for the

3 conditions of the lake and creek are continuing.

4 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

5      Hollandia incorporates the reasons stated in response to Interrogatory No. 5.

6 **INTERROGATORY NO. 13:**

7      Please IDENTIFY and set forth all facts describing all INVESTIGATIONS of HOLLANDIA

8 YOU have conducted or obtained, including but not limited to its property, practices, and people.

9 **RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

10      This interrogatory is vague, ambiguous, and overbroad as to scope and time, as to the phrase

11 "all facts", and as to the term "investigations." This interrogatory seeks information which is neither

12 relevant to the asserted claims or defenses of any party in the litigation, nor is it reasonably calculated

13 to lead to the discovery of admissible evidence. This interrogatory calls for information protected by

14 the attorney client privilege and/or attorney work product doctrine. This interrogatory calls for

15 information which is protected by the joint defense privilege/common interest doctrine. This

16 interrogatory calls for premature disclosure of facts known or opinions held by nonwitness experts

17 and/or nontestifying consultants. This interrogatory calls for information protected by mediation and

18 settlement privileges, including but not limited to FRE 408. This interrogatory calls for information

19 that is equally available to Requesting Party. Subject to and without waiving these objections,

20 Responding Party responds as follows:  The only non-privileged or non-work product investigations

21 that Responding Party has conducted relating to Hollandia are those investigations that have been

22 conducted cooperatively with other parties as part of responding to the IO, as a result of Responding

23 Party's participation in the Participation Agreement, and which investigations have been made

24 publically available on the RWQCB site:

25 http://geotracker.waterboards.ca.gov/profile_report.asp?global_id=T10000003261.  Responding Party

26 has also obtained documents from the Regional Water Quality Control Board and from Encina

27 Wastewater Authority regarding Hollandia's unlawful discharges, which documents will be produced

28 by Responding Party. Responding Party has also obtained copies of investigation reports of Ball and

1  Associates which document Hollandia nutrient discharges. Compiling and/or summarizing the

2  information contained within these documents would be unduly burdensome and since the burden of

3  compiling and summarizing this information is substantially the same for either party, Responding

4  Party elects its option under FRCP 33(d) to require Propounding Party to search those records in order

5  to obtain the information sought in this interrogatory. Discovery is continuing.

6  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

7  Hollandia incorporates the reasons stated in response to Interrogatory No. 5.

8  **INTERROGATORY NO. 14:**

9  Please IDENTIFY and set forth all facts describing the proposed remedial actions, including

10 associated costs, identified in the RI/FS that do not remediate something YOU contend was caused by

11 HOLLANDIA.

12 **RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

13 This interrogatory is vague, ambiguous, and overbroad as to scope and time, as to the phrase

14 "all facts." This interrogatory seeks information which is neither relevant to the asserted claims or

15 defenses of any party in the litigation, nor is it reasonably calculated to lead to the discovery of

16 admissible evidence. This interrogatory calls for information protected by the attorney client privilege

17 and/or attorney work product doctrine. This interrogatory calls for information which is protected by

18 the joint defense privilege/common interest doctrine. This interrogatory calls for premature disclosure

19 of facts known or opinions held by nonwitness experts and/or nontestifying consultants. This

20 interrogatory calls for information protected by mediation and settlement privileges, including but not

21 limited to FRE 408. This interrogatory calls for information that is equally available to Requesting

22 Party. Subject to and without waiving these objections, Responding Party responds as follows:

23 All of the remedial alternatives identified in the RI/FS are intended to address the impaired

24 conditions of the Creek and Lake which were caused, at least in part, by Hollandia's unlawful

25 discharges. To the extent the remedial alternatives identified in the RI/FS are ultimately implemented

26 upstream of the Hollandia property, even those alternatives are intended to remediate the overall

27 impairments downstream of the Hollandia property and in the Lake.

28 **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

1    Hollandia incorporates the reasons stated in response to Interrogatory No. 5.

2    **INTERROGATORY NO. 15:**

3    Please IDENTIFY each and every "hazardous substance" under CERCLA that YOU contend

4    has caused YOU to incur "response costs."

5    **RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

6    This interrogatory is vague, ambiguous, and overbroad as to scope and time, as to the phrase

7    "all facts." The questions is also argumentative and assumes facts. This interrogatory seeks

8    information which is neither relevant to the asserted claims or defenses of any party in the litigation,

9    nor is it reasonably calculated to lead to the discovery of admissible evidence. This interrogatory calls

10   for information protected by the attorney client privilege and/or attorney work product doctrine. This

11   interrogatory calls for information which is protected by the joint defense privilege/common interest

12   doctrine. This interrogatory calls for premature disclosure of facts known or opinions held by

13   nonwitness experts and/or nontestifying consultants. This interrogatory calls for information protected

14   by mediation and settlement privileges, including but not limited to FRE 408. This interrogatory calls

15   for information that is equally available to Requesting Party. This interrogatory calls for a legal

16   conclusion or is a question or pure law. Subject to and without waiving these objections, Responding

17   Party responds as follows:

18   Based upon the spill volume data compiled (and described above), Responding Party's

19   contribution of any nutrients into the Lake environment is de minimis. Responding party has incurred

20   costs only because Lake San Marcos and the San Marcos Creek are listed as impaired water bodies and

21   appear on the RWQCB Clean Water Act (CWA) Section 305(b) Surface Water Quality Assessment

22   and Section 303(d) list. The Lake is listed due to concentrations of ammonia as nitrogen and nutrients

23   exceeding water quality standards. The Creek is listed due to concentrations of phosphorus,

24   dichlorodiphenyldichloro ethylene (DDE), sediment toxicity, and selenium exceeding water quality

25   standards. Other not yet identified contaminants/pollutants may exist but are unknown at this time.

26   Whether any of these pollutants/contaminants is a CERCLA "hazardous substance"; whether the costs

27   Responding Party has been required to incur are CERCLA "Response Costs", and whether responding

28   party is responsible for any of those costs (which Responding Party contends it is not) are questions of

1  pure law which Responding Party is not required to answer in an interrogatory.  O'Brien International

2  Brotherhood of Elec. Workers, 443 F.Supp. 1182, 1187, (ND GA 1977); FRCP 33(c).).

3  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

4      Hollandia incorporates the reasons stated in response to Interrogatory No. 5 and its response to

5  Interrogatory No. 18 **to CDC**.

6  **INTERROGATORY NO. 18:**

7      Please IDENTIFY and set forth all facts describing any other claim that YOU have ever made

8  against any PARTY for damage caused by NUTRIENTS going into a BODY OF WATER, including

9  but not limited to whether such claim was made under CERCLA and whether or not the claim was

10  made in the watershed at issue.

11  **RESPONSE TO SPECIAL INTERROGATORY NO 18:**

12      Objection. This interrogatory is compound and unintelligible. This interrogatory is vague,

13  ambiguous, and overbroad as to scope and time, as to the phrase "all facts," and as to the term "claim."

14  This interrogatory seeks information which is neither relevant to the asserted claims or defenses of any

15  party in the litigation, nor is it reasonably calculated to lead to the discovery of admissible evidence.

16  This interrogatory calls for information protected by the attorney client privilege and/or attorney work

17  product doctrine. This interrogatory calls for information which is protected by the joint defense

18  privilege/common interest doctrine. This interrogatory calls for premature disclosure of facts known or

19  opinions held by nonwitness experts and/or nontestifying consultants. This interrogatory calls for

20  information protected by mediation and settlement privileges, including but not limited to FRE 408.

21  This interrogatory calls for information that is equally available to Requesting Party. This interrogatory

22  calls for information which is outside the scope of FRCP 26(b)(1) (including the "proportionality"

23  factors listed therein). Subject to and without waiving these objections, Responding Party responds as

24  follows:

25      Other than the instant lawsuit, Responding Party has not filed any lawsuits under CERCLA or

26  otherwise made any claim that any party is responsible for compensating Responding Party for

27  damages caused by nutrients going into a body of water.

28  **HOLLANDIA'S REASON WHY FURTHER RESPONSE IS NECESSARY:**

1    Hollandia incorporates the reasons stated in response to Interrogatory No. 8.

2                     **SANCTIONS AGAINST VWD ARE APPROPRIATE**

3           FRCP 37(a)(5)(B) permits the Court to order payment of reasonable expenses that Hollandia

4    incurred in making this motion if any of the other party's conduct necessitated the motion, unless

5    Hollandia did not first attempt in good faith to obtain the discovery without court intervention, the

6    opposing party's nondisclosure was substantially justified, or other circumstances would make an

7    award unjust VWD was nonnegotiable on all of the privilege, mediation, and work product issues

8    raised in this motion. VWD agreed to produce communications between its consultant and the

9    Regional Board after M&C, but only produced a small number of those and none of its consultant's

10   notes related to meetings with the Regional Board. Hollandia has complied with the meet and confer

11   (M&C) requirements of the above rule and Chamber Rules as described in Dec JR ¶2-9 and believes

12   sanctions are warranted in this case for at least $5,000 as further supported by Dec JR ¶52 .

13

14
     DATED: May 17, 2018                          By:    /s/ John H. Reaves
15                                                       John H. Reaves, Esq.,
                                                         Attorney for Hollandia Dairy, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28