Neal S. Meyers, Esq. (SBN 109625)
Athena B. Troy, Esq. (SBN 260092)
Meyers Fozi & Dwork, LLP
1808 Aston Avenue, Suite 100
Carlsbad, CA  92008
Tel:  (760) 444-0039; Fax:  (760) 444-0130
Email:  nmeyers@meyersfozi.com
            atroy@meyersfozi.com

Attorneys for Defendant,
Vallecitos Water District

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS DEVELOPMENT CORPORATION, INC., a California Corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>COUNTY OF SAN DIEGO, a California municipal corporation; CITY OF SAN MARCOS, a California municipal corporation; CITY OF ESCONDIDO, a California municipal corporation; VALLECITOS WATER DISTRICT, a California municipal corporation; HOLLANDIA DAIRY, a California corporation; and DOES 1 through 100, inclusive,<br><br>*Defendant(s).*<br><br>AND RELATED ACTIONS | Case No.: 3:12-cv-00334-GPC (KSC)<br><br>Judge: Hon. Gonzalo P. Curiel<br><br>**VALLECITOS WATER DISTRICT'S SEPARATE RESPONSE IN OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |

1

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| 1. | INTRODUCTION………………………………………………….. | 4 |
| 2. | RESPONSE TO "ISSUES WITH PRIVILEGE LOG" ………………. | 4 |
| 3. | REQUEST FOR PRODUCTION…………………………..………. | 6 |
| 4. | INTERROGATORIES……………………….………………..…… | 15 |
| 5. | SANCTIONS AGAINST THE VWD ARE NOT APPROPRIATE…. | 18 |

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                 **Page**

*Hernandez v. Best Buy Co.*,
No. 13CV2587, 2014 WL 5454505, at *10
(S.D. Cal. Oct. 27, 2014)……………………………………..……………….   6, 12

*O'Brien v. International Brotherhood of Elec. Workers*
(ND GA 1977) 443 F.Supp. 1182……………………………………...…….   16

*Regan-Touhy v. Walgreen Co.*,
526 d 641, 650 (10th Cir. 2008)………………………………………….   12,13

*Soto v. City of Concord*,
162 F.R.D. 603, 610 (N.D. Cal. 1995)…………………………………..….   5

*U.S. v. Bouchard Transp.*,
2010 WL 1529248, at *2 (E.D.N.Y.2010)…………………………………...   6, 12

**STATUTES**

FRCP 26(b) ……………………………………………………………………   5

FRCP 33(c), 2nd para., Adv. Comm. Notes (1970)…………………………   16

Defendant, Counter-Claimant, and Cross-Claimant Vallecitos Water District ("VWD"") hereby submits this separate response in opposition to Hollandia Dairy, Inc.'s ("Hollandia") Motion for Determination of Discovery Disputes, filed on May 17, 2018. Doc. 236, Motion for Determination of Discovery Disputes and Request for Sanctions (hereinafter "Discovery Mtn."). The VWD incorporates fully as though set forth herein, the entirety of the Joint Opposition To Hollandia Dairy Inc's Motion for Determination of Discovery Disputes (herein "Joint Opposition), filed concurrently with this Separate Response.

## 1. INTRODUCTION

In its Discovery Mtn. Hollandia seeks an order compelling the VWD:

1) To prepare a document-by document privilege log with respect to categories 2, 3, and 5 of the VWD's amended privilege log. [1]

2) To submit further responses to Hollandia's Request for Production of Documents, Set 1, Requests numbers 2, 3, 5, 6, 7, 8, 1012, 12, and 13[2].; and

3) To submit further responses to Hollandia's First Set of Interrogatories, Interrogatory numbers 5, 6, 7, 10, 13, 14, 15, and 18[3]; and

4) For an order imposing monetary sanctions against the VWD[4].

For the reasons set forth in the Jt. Opposition and, as argued under the individual headings below, the Discovery Mtn. should be denied in its entirety.

## 2. RESPONSE TO "ISSUES WITH PRIVILEGE LOG"

Hollandia argues that the VWD has "failed to provide sufficient description of categories or documents to meet its burden with regard to its amended privilege log boxes 2, 3, and 5." Discovery Mtn., p. 132: 13. For the reasons set forth below, no further revisions to the VWD's privilege log are necessary or appropriate.

**Box 2:** As shown on the VWD's amended privilege log which is attached as

---

[1] Discovery Mtn., p. 132:10-16; Exhibit 20 to Reaves Decl.
[2] Discovery Mtn., pp. 122-132.
[3] Discovery Mtn., pp. 132:-143.
[4] Discovery Mtn, p. 144.

Exhibit 20 to the declaration of Mr. Reaves, this category number has already been removed from the VWD's privilege log and so no response to Hollandia's objection to this category is warranted.

**<u>Box 3</u>:** This category includes pre-litigation communications between the parties to this litigation and other third parties concerning funding for voluntary clean-up efforts at the Lake.

First, the VWD should not be required to identify the documents included within this category document-by document on a privilege log because none of Hollandia's Requests for Production requested these documents with reasonable particularity. Hollandia's document requests are so overbroad in scope and time that the VWD has not been provided with sufficient guidance to determine what it needs to look for within these records. Due to the extremely broad nature of Hollandia's requests, it was more than appropriate for the VWD to include similarly broad categories of documents on its privilege log so as to avoid an inadvertent privilege waiver.

Second, it was Hollandia's burden of establishing that its requests satisfy the relevancy requirements of Federal Rule 26(b)(1). (*Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).) In its motion Hollandia has not shown, nor has it made any effort to show that the documents described in this category are relevant to any of its claims or defenses.

Third, as discussed in the Joint Opposition, filed herewith, many, if not all of these communications are all protected by the common interest doctrine.

**<u>Box 5</u>:** Upon review of Hollandia's motion, counsel for the VWD has become aware for the first time that the VWD does not actually have a "Box 5" on its amended privilege log. Instead, the VWD has labeled two separate categories with the number 4. It is presumed that Hollandia's objection to "Box 5" of the VWD's privilege log was actually intended to refer to the second box number 4. This category included "Documents consisting of technical memorandums, analysis, and opinions (both draft and final versions) prepared by Responding Party's retained

1  litigation consultants, including but not limited to PACE Advance Water
2  Engineering." Those documents are identified as being dated between 2013-present.
3  First, the VWD should not be required to identify the documents included within
4  this category document-by document on a privilege log because none of Hollandia's
5  document requests specifically ask for production of these documents. Hollandia's
6  requests for production are so overbroad in scope and time that the VWD has not
7  been provided with sufficient guidance to determine what it needs to look for in
8  these records. Due to the extremely broad nature of Hollandia's requests, it was
9  more than appropriate for the VWD to include similarly broad categories of
10 documents on its privilege log so as to avoid a potential inadvertent privilege
11 waiver.
12 Second, the documents identified in this category are records related to expert
13 discovery which is barred at this time pursuant to the Court's scheduling order. Doc.
14 214 at p. 2 states, "No Expert discovery will be permitted at this time."
15 Third, privilege logs are commonly limited to documents created before the date
16 litigation was initiated." *Hernandez v. Best Buy Co.*, No. 13CV2587, 2014 WL
17 5454505, at *10 (S.D. Cal. Oct. 27, 2014) (citing *U.S. v. Bouchard Transp.*, 2010
18 WL 1529248, at *2 (E.D.N.Y.2010). As stated on the privilege log, all of the
19 documents in this category were created during the pendency of the instant
20 litigation.

21 **3. REQUESTS FOR PRODUCTION**
22 **3.1. REQUEST FOR PRODUCTION NO. 2**
23 Request for Production No. 2, as worded, is so overbroad, vague, and ambiguous
24 that it is objectionable on its face. It applies to all documents "since the Lake was
25 created." Because the Lake was originally constructed in 1946, this request
26 necessarily includes all documents generated within the last *seventy-two years*.
27 Because the request uses the omnibus term "referring or related to" and because the
28 defined terms are so broad and all-inclusive, this request could theoretically apply to

an extremely broad range of documents, including obviously privileged documents generated by the VWD's attorneys and retained litigation consultants. The VWD has been unable to fully understand the scope of the request let alone determine exactly what additional records Hollandia is seeking to obtain with this motion.

Nonetheless, VWD has responded to the extent it understands the request. The VWD conducted a thorough investigation and, as stated in its written response, the VWD located and produced documents responsive to this request. The December 6, 2013 technical memorandum referred to in the VWD's written response was produced by the VWD and can be found at VWD0076081- VWD0076112. Two additional potentially responsive documents were also produced at VWD0076069- VWD0076080 (1992 Camp Dresser Work Plan) and VWD0076113- VWD0076144 (2014 Memo re meadowlark nutrient removal.) As the VWD does not, as a matter of course, sample and test the sewage within its sewer system for nutrients, including nitrogen and phosphorous, these three documents are the only records in its own operational records which are responsive to this request that the VWD has been able to locate. Declaration of Athena B. Troy ("Troy Decl.") ¶ 16.

### 3.2. REQUEST FOR PRODUCTION NO. 3

Request for Production No. 3, as worded, is so overbroad, vague, and ambiguous that it is objectionable on its face. It applies to all documents "since the Lake was created." Because the Lake was constructed in 1946, this includes all documents generated within the last seventy-two years. Because the request uses the omnibus term "referring or related to" and because the defined terms are so broad and all-inclusive, this request could theoretically apply to an extremely broad range of documents, including obviously privileged documents generated by the VWD's attorneys and retained litigation consultants. The VWD has been unable to fully understand the scope of the request let alone determine exactly what additional records it is that Hollandia is seeking to obtain with this motion.

Nonetheless, VWD has agreed to produce and has produced all non-

7

3:12-cv-00334-GPC (KSC)

privileged/protected documents responsive to this request to the extent it understands the request. The VWD has produced all historical records in its possession concerning sanitary sewer overflows (SSO's) from its sewer system, smoke/FOG/Grease/CCTV testing records for the portions of its sewer system within the Lake San Marcos Watershed, records of site inspections conducted by the RWQCB, its communications with the RWQCB, written communications with third parties regarding odor complaints, spreadsheet logs from its internal database for all work order call-outs that would have been generated from any complaint of a sewage release since 2007, and has made available for inspection and copying all historical operational records relating to its sewer system in the Lake San Marcos Watershed that pre-dated the District's current electronic work order call-out database. Troy Decl. ¶ 17 & Exhibit B to Troy Decl.

Despite months of meet and confer efforts with Hollandia's counsel, Hollandia has not articulated in its motion what additional information it wants the VWD to provide. In any event, the VWD does not have any other responsive documents outside of the documents identified by category on its privilege log.

### 3.3. REQUEST FOR PRODUCTION NO. 5.

Request for Production No. 5, as worded, is so overbroad, vague, and ambiguous that it is objectionable on its face. There are absolutely no limitations in time, thus it potentially applies to any RWQCB communications since the VWD was formed in 1955. Because the request uses the omnibus term "referring or related to" and because the defined terms are so broad and all-inclusive, this request could theoretically apply to an extremely broad range of documents, including obviously privileged documents generated by the VWD's attorneys and retained litigation consultants. The VWD has been unable to fully understand the scope of the request let alone determine exactly what additional records it is that Hollandia is seeking to obtain with this motion.

Nonetheless, VWD has agreed to produce and has produced all non-

privileged/protected business records in its possession relating to communications with the RWQCB concerning the Lake, the I/O and the RI/FS. In its initial disclosures, the VWD had previously produced all of its historical SSO and other RWQCB regulatory reports and records relating to such SSO's in possession.

On December 22, 2017 and January 25, 2018[5] the VWD produced all documents it had previously obtained from a public records act request to the RWQCB regarding historical VWD SSO's. The VWD also located and produced additional communications between the RWQCB and VWD employees Dennis Lamb and James Gumpel, between the RWQCB and Greg Smith one of the VWD's consultants at PACE, and between the RWQCB and the VWD's prior general counsel. The Greg Smith emails reviewed and produced were dated through 12/12/17. Troy Decl. ¶ 19.

On February 22, 2018, the VWD supplemented its document production. As to these documents, the VWD's counsel had previously communicated to the parties back on December 22, 2017, when it originally produced documents responsive to Hollandia's Request for Production that these additional documents, including additional RWQCB communications, were being processed and would be produced later. This production set included additional RWQCB communications between the RWQCB and VWD employee Eric Garcia, between the RWQCB and the VWD's counsel, and between the RWQCB and the VWD's litigation consultant, Andy Komor, of PACE. The Andy Komor emails reviewed and produced were dated through 12/22/17. Troy Decl. ¶ 19.

Then, on March 29, 2018, as a result of the meet and confer efforts between counsel for the VWD and counsel for Hollandia, the VWD produced an additional set of documents which included 1) all RWQCB Monthly Call Agendas in VWD's counsel's possession for calls occurring between Feb. 2014-Feb. 2018, and 2)

---

[5] The documents in these production sets were originally intended to all be produced on December 22, 2017, but due to technical problems some documents were inadvertently omitted from the December 22, 2017 production, and so they were subsequently produced on January 25, 2018.

additional emails between RWQCB and *consultants for other parties* that VWD counsel was able to locate from its review of emails it had obtained from its consultants. As to the emails between the RWQCB and consultants for other parties, the VWD had not originally produced these records because Hollandia's Requests for Production No. 5 had only asked for communications between the RWQCB and the VWD, not communications between the RWQCB and other parties. Nonetheless, the VWD agreed to produce these additional records as a concession to Hollandia in good faith as part of the meet and confer process. Troy Decl. ¶ 19.

Despite the thorough and exhaustive search and production of RWQCB communications VWD has conducted, Hollandia now, has stated that "VWD agreed to produce communications between its consultant and the Regional Board after M&C, but only produced a small number of those and none of its consultants' notes related to meeting with the Regional Board." Discovery Mtn p.144:8-10. The VWD vehemently disputes these factual representations.

For one, this statement in Hollandia's Discovery Mtn. is not even supported by any corresponding paragraph in Mr. Reaves' declaration. Also, in the VWD's written response to Hollandia's request for production, the VWD actually did agree to produce RWQCB communications. Then, prior to the meet and confer with Hollandia, the VWD produced voluminous amounts of RWQCB communications and had agreed to produce more. In in a good faith effort to meet and confer with Hollandia, the VWD went a step further and produced more RWQCB communications that the VWD did not even believe were responsive to request for production No. 5.

In his Declaration, Mr. Reaves appears to imply that the VWD has not been thorough in its production of RWQCB emails because it did not produce a single email that he has attached to his declaration as Exhibit 17. Exhibit 17 contains two emails dated March 1, 2018 and February 28, 2018. Reaves Decl. ¶ 6, p.6:23-26. This is extremely disingenuous, as it is obvious from the records produced that the

VWD's search and production of PACE emails pre-dated the dates that these emails came into existence. The VWD cannot possibly be expected to supplement its document productions on a month-by-month basis.

Significantly, it is important to note that Mr. Reaves actually relies on several documents that were produced by the VWD that were apparently not produced by other parties in order to attempt to establish that those parties' productions of RWQCB communications were not comprehensive and complete. Exhibits 2, 3, 4, 8, 9, 11, & 13 to Mr. Reaves' declaration all contained RWQCB communications and agendas that were in fact produced by the VWD. It is entirely inconsistent for Hollandia's counsel to rely in its motion upon the numerous RWQCB communications that were actually produced by the VWD for evidentiary purposes and then simultaneously represent to this court that the VWD's production of RWQCB communication production was inadequate.

Suffice to say, Hollandia has not and cannot show that the VWD's production of its communications with the RWQCB was inadequate. Since the VWD agreed to and did produce its RWQCB communications, no order compelling further production of such records is necessary.

### 3.4. REQUEST FOR PRODUCTION NO. 6

Hollandia's Request for Production No. 6 was addressed at length in Section III of the Joint Opposition and the VWD incorporates the reasonable particularity, relevancy, and proportionality arguments stated there in this response. Hollandia's Request for Production No. 6 is patently objectionable on its face. The scope is so broad that it potentially captures any communication between the VWD, including its consultants, and its attorneys, and anyone else in the entire world ever having to do with anything whatsoever (note the extremely all-inclusive definition of "PARTY ARRANGEMENTS"). As stated in the VWD's objections, this request is a blatant abuse of the discovery process.

Although VWD cannot possibly be expected to respond to Hollandia's Request

11
3:12-cv-00334-GPC (KSC)

for Production No. 6, it did identify and produce a number of responsive documents. Hollandia has failed to provide sufficient guidance to the VWD that would enable it to provide any further response to this request.

### 3.5. REQUEST FOR PRODUCTION NO. 7

Hollandia's Request for Production No. 7 is yet another request that is blatantly overbroad and objectionable on its face. It essentially asks for all documents that evidence the VWD's claims and damages against Hollandia. "In overseeing document production, the court should ... prevent indiscriminate, overly broad, or unduly burdensome demands ... such as those for 'all documents relating or referring to' a ... claim....". See *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 650 (10th Cir. 2008), quoting Manual for Complex Litigation § 11.443, at 75.

Although the VWD cannot possibly be expected to respond to this request, the VWD has identified and produced numerous responsive documents in its written response. Hollandia has failed to provide sufficient guidance to the VWD that would enable it to provide any further response to this request.

### 3.6. REQUEST FOR PRODUCTION NO. 8

Hollandia's Request for Production no. 8 asks for documents "that EVIDENCE INVESTIGATIONS" of Hollandia. The request is vague, ambiguous, and overbroad. It has no limitations in time. The term "Evidence" is so all-encompassing that it is difficult to understand the precise scope of what Hollandia is seeking.

In its response, the VWD has indicated it would produce a number of documents responsive to this request. The only documents the VWD has not produced in response to this request are the protected attorney work product identified by category on the VWD's amended privilege. As discussed above, the VWD is not required to amend to provide a document-by-document response to this request because all investigations into Hollandia conducted by the VWD's attorneys and consultants occurred during this litigation. *Hernandez v. Best Buy Co.*, No. 13CV2587, 2014 WL 5454505, at *10 (S.D. Cal. Oct. 27, 2014) (citing *U.S. v.*

*Bouchard Transp.*, 2010 WL 1529248, at *2 (E.D.N.Y.2010) (noting that "privilege logs are commonly limited to documents created before the date litigation was initiated.").

### 3.7. REQUEST FOR PRODUCTION NO. 10

Hollandia's Request for Production No. 10 is again blatantly overbroad and objectionable on its face. It essentially asks for all documents that evidence the VWD's claims and damages against any of the parties. "In overseeing document production, the court should ... prevent indiscriminate, overly broad, or unduly burdensome demands ... such as those for 'all documents relating or referring to' a ... claim....". See *Regan-Touhy v. Walgreen Co., 526 F.3d 641, 650 (10th Cir. 2008)*, quoting Manual for Complex Litigation § 11.443, at 75.

Although the VWD cannot possibly be expected to respond to this request, the VWD has identified and produced numerous responsive documents in its written response. Hollandia has failed to provide sufficient guidance to the VWD that would enable it to provide any further response to this request.

### 3.8. REQUEST FOR PRODUCTION NO. 12

Hollandia's Request for Production No. 12 was addressed at length in Section III of the Joint Opposition and the VWD incorporates the reasonable particularity, relevancy, and proportionality arguments stated there in this response. Hollandia's Request for Production No. 12 is patently objectionable on its face. The defined terms and scope are so broad that this request potentially captures any communication between the VWD, including its consultants, and its attorneys, and anyone else in the entire world ever having to do with anything whatsoever (note the extremely all-inclusive definition of "PARTY ARRANGEMENTS"). As stated in the VWD's objections, this request is a blatant abuse of the discovery process.

Although VWD cannot possibly be expected to respond to Hollandia's Request for Production No. 12, it did produce a number of responsive documents, including those identified in its written response. Hollandia has failed to provide any guidance

to the VWD that would enable it to provide any further response to this request.

### 3.9. REQUEST FOR PRODUCTION NO. 13

Hollandia's Request for Production No. 13 is entirely duplicative of its request No. 12. This request was also addressed at length in Section III of the Joint Opposition and the VWD incorporates the reasonable particularity, relevancy, and proportionality arguments stated there in this response. This request is patently objectionable on its face. The defined terms and the scope are so broad that it potentially captures any communication between the VWD, including its consultants, and its attorneys, and anyone else in the entire world ever having to do with anything whatsoever (note the extremely all-inclusive definition of "PARTY ARRANGEMENTS"). As stated in the VWD's objections, this request is a blatant abuse of the discovery process.

Although VWD cannot possibly be expected to respond to Hollandia's Request for Production No. 13, it did produce a number of responsive documents, including those identified in its written response. Hollandia has failed to provide any guidance to the VWD that would enable it to provide any further response to this request.

## 4. INTERROGATORIES

### 4.1. INTERROGATORY NO. 5

Hollandia has not explained what information it is that it believes the VWD has failed to provide in its response to this interrogatory. The VWD has fully responded to this interrogatory to the extent it is able to understand the question.

To the extent Hollandia is seeking information regarding communications between the parties' to this litigation and/or their attorneys and consultants concerning their joint efforts to respond to the IO/PA, those communications are so voluminous that it would be extremely burdensome to produce them. They also lack any relevance to any issue Hollandia would need to raise at trial. Such communications are also privileged/protected. These issues have been addressed in the Joint Opposition filed herewith.

As to the information actually provided in the VWD's response, for the sake of brevity, the VWD has referred back and incorporated its response to Hollandia's Interrogatory No. 4, which stated follows:

> . . .
> Responding Party is not the owner or operator of a municipal separate storm sewer system (MS4) and is not an MS4 permittee. Responding Party does, however, enroll as a permittee under California's General Permit for Storm Water Discharges Associated with Construction and Land Disturbance Activities (ORDER NO. 2009-0009-DWQ, NPDES NO. CAS000002), for applicable projects. Responding Party has received no "Notices of Violation" or other complaints concerning its compliance with the stormwater requirements to which it is subject.

In its response to Hollandia's interrogatory No.5, the VWD identified additional regulatory requirements to which it is subject and referred to the VWD's SSO and other regulatory records it produced in its response to Hollandia's Requests for Production, which are extremely voluminous and appropriately referred to in this interrogatory response. The VWD does not believe it has any further information that could be provided in response to this request, as it understands the request, and Hollandia has not explained what additional information it wants the VWD to provide.

### 4.2. INTERROGATORY NO. 6

Hollandia has not explained what information it is that it believes the VWD has failed to provide in its response to this interrogatory. The VWD responded to this question fully as it understood it.

In its response, the VWD refers to and incorporates its response above to Hollandia's objection to its response to Request for Production No. 5. The VWD has produced all of its records of RWQCB communications, has provided spreadsheets indexing those records, and Hollandia has access to a sophisticated search engine that allows it to locate records containing information responsive to this request within the VWD's document production. The VWD has no further information to provide outside of information contained in the records it has produced.

### 4.3. INTERROGATORY NO. 7

Hollandia has not explained what information it is that it believes the VWD has failed to provide in its response to this interrogatory. Aside from information that is clearly privileged/protected attorney work product and privileged, the VWD has fully and completely responded to this interrogatory and has no further information responsive to this request which it can provide. The results of all investigations that have been conducted in connection with the RWQCB regulatory process are available to Hollandia on the RWQCB's public website.

### 4.4. INTERROGATORY NO. 10

Hollandia has not explained what information it is that it believes the VWD has failed to provide in its response to this interrogatory. The VWD has provided a thorough and complete response.

### 4.5. INTERROGATORY NO. 13

Hollandia has not explained what information it is that it believes the VWD has failed to provide in its response to this interrogatory. The VWD has fully and completely responded to this interrogatory.

Interrogatory No. 13 essentially mirrors Hollandia's Request for Production No. 8. As stated in its response, "the only non-privileged or non-work product investigations that [the VWD] has conducted relating to Hollandia are those investigations that have been conducted cooperatively with the other parties as part of responding to the IO, as a result of [the VWD's] participation in the Participation Agreement, and which investigations have been made publicly available."

### 4.6. INTERROGATORY NO. 14

Hollandia has not explained what information it is that it believes the VWD has failed to provide in its response to this interrogatory. The VWD has responded to Interrogatory No. 14 fully and completely. The VWD is unable at this time to separate out line item by line item which costs in the RI/FS relate to Hollandia vs. other responsible parties, but may at some point rely on the opinions of its experts to

do so. The VWD is not required to disclose opinions of its experts at this time. No further response to this interrogatory is necessary or appropriate at this time.

### 4.7. INTERROGATORY NO. 15

Rule 33 does not permit interrogatories directed to issues of "pure law". *O'Brien v. International Brotherhood of Elec. Worker*s (ND GA 1977) 443 F.Supp. 1182, 1187; FRCP 33(c), 2nd para., Adv. Comm. Notes (1970). This is exactly what Hollandia is asking the VWD to do.

The VWD has already provided Hollandia with all factual information in its possession responsive to this request. It has identified the specific contaminants that caused the Lake and Creek to become listed as impaired water bodies and which are the subject of the damages sought by VWD and the other parties in this lawsuit. Hollandia objects to the VWD's response because it wants the VWD to do more than simply state the facts known to it. Instead, Hollandia wants the VWD to take one step further and conduct the complex technical and legal analysis and specifically tie each of the contaminants VWD has identified in its response to one of the CERCLA listed hazardous substances. This purely technical and legal issue was the entire subject of Hollandia's Motion for Judgment on the Pleadings (Doc. 190) and will undoubtedly be subject to a Motion for Summary Judgement by Hollandia later in this litigation. The VWD cannot possibly be required to perform such an exercise in an interrogatory response, particularly in advance of expert discovery.

The information Hollandia is requesting is equally available to Hollandia. All Hollandia is seeking in this motion is information regarding the VWD's legal strategies and expert opinion. The work and opinions of its attorneys and experts are protected work product and are barred by the court's scheduling order. The VWD does not have and cannot provide any further factual information to Hollandia in response to this request.

///

### 4.8. INTERROGATORY NO. 18

Hollandia has not explained what additional information it wants the VWD to provide in response to this interrogatory. The VWD has provided a thorough and complete response to this interrogatory.

### 5. SANCTIONS AGAINST THE VWD ARE NOT APPROPRIATE

Hollandia's sanctions motion against the VWD appears to be based on unsubstantiated allegations that the VWD has failed to produce all RWQCB communications. As discussed above in the section responding to Hollandia's objections to the VWD's response to its Request for Production No. 5, the VWD did in fact produce voluminous RWQCB records and the statements in the Discovery Motion concerning the VWD's production of the same are misleading, unsubstantiated, and inaccurate. Hollandia's sanctions request is also addressed in the Joint Opposition, which the VWD incorporates fully herein.

Dated: June 22, 2018                    Meyers Fozi & Dwork, LLP


By: _____/S/   Athena Tory_____
         Neal S. Meyers
         Athena Troy
         Attorneys for Defendant,
         Vallecitos Water District