The List of Parties Opposing this Motion is Set Forth on the signature page hereto

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS DEVELOPMENT CORPORATION, INC., a California corporation,<br><br>              Plaintiff,<br><br>     vs.<br><br>COUNTY OF SAN DIEGO, a California municipal corporation, CITY OF SAN MARCOS, a California municipal corporation, CITY OF ESCONDIDO, a California municipal corporation, VALLECITOS WATER DISTRICT, a California municipal corporation, HOLLANDIA DAIRY, INC., a California corporation, and DOES 1 through 100, inclusive,<br><br>              Defendants. | CASE NO. 12-CV-0334-GPC(KSC)<br><br>Judge: Gonzalo P. Curiel<br><br>**JOINT OPPOSITION TO HOLLANDIA DAIRY INC.'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES**<br><br>Action Filed:  February 8, 2012<br>Trial Date:     None Set |
| AND RELATED COUNTER-ACTIONS AND CROSS-ACTIONS. | |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 2

    A.    Nature Of The Case .................................................................................... 2

    B.    Procedural History ....................................................................................... 3

        1.    CDC and Hollandia First Discussed the Nature of the Claims and Hollandia's Liability Nearly Six Years Ago During Settlement Negotiations Before Magistrate Judge Crawford ........................... 3

        2.    CDC and the PADs Have Diligently Pursued Settlement Through Mediation Since 2013 ............................................................................. 3

        3.    Hollandia's Motion for Judgment on the Pleadings ............................. 7

        4.    August 23, 2017 Early Neutral Evaluation Conference ....................... 8

III.  HOLLANDIA CANNOT SATISFY THE FUNDAMENTAL REQUIREMENTS FOR DISCOVERY IN FEDERAL COURT – REASONABLE PARTICULARITY, RELEVANCE, AND PROPORTIONALITY ................................ 9

    A.    Hollandia's Hopelessly Overbroad Document Requests Did Not Even Ask For The Documents Being Sought In this Motion (No Reasonable Particularity) ............................................................................................... 9

    B.    Hollandia Has Not Shown that the Documents Sought Are Relevant to its Claims or Defenses (No Relevance) ......................................................... 13

    C.    The Burden To Produce the Documents Requested is Outweighed by Any Benefit Hollandia Might Achieve (No Proportionality) .......................... 15

IV.   HOLLANDIA'S DISCOVERY REQUESTS VIOLATE THE EXPRESS DISCOVERY LIMITATIONS ORDERED BY THIS COURT ............................... 17

V.    HOLLANDIA IS NOT ENTITLED TO DISCOVERY OF MEDIATION-RELATED COMMUNICATIONS ..................................................................... 18

    A.    The Information Sought Is Privileged ..................................................... 20

    B.    The Information Sought Is Confidential ................................................. 23

    C.    The Information Sought Is Inadmissible And Thus Irrelevant Under Rule 408 ........................................................................................................... 24

VI.   THE ATTORNEY-CLIENT PRIVILEGE, WORK PRODUCT DOCTRINE, AND JOINT DEFENSE PRIVILEGE/COMMON INTEREST DOCTRINE PROTECT DISCOVERY OF THE DOCUMENTS SOUGHT BY HOLLANDIA ............................ 25

    A.    The Documents Withheld Are Protected by the Work Product Doctrine ............... 26

     B.     The Work Product Documents Sought Are Protected Under the Common Interest Doctrine ..................................................................................... 30

          1.     The PADs and CDC Share a Common Interest In Responding to the RWQCB and In Prosecuting and Defending The Instant Case ................... 31

          2.     Common Interest is Not Limited to Co-Parties ............................................ 33

          3.     The Participation Agreement Does Not Remove the Threat of Litigation ...................................................................................................... 34

          4.     Sharing of Information Between the PADs and CDC Does Not Constitute Waiver .......................................................................................... 35

          5.     Hollandia's Argument that Efforts to Comply with the Investigative Order and Participation Agreement is not "Legal Advice" Subject to Protections is a Red Herring ....................................................................... 35

VII.     IF SANCTIONS ARE AWARDED, THEY SHOULD BE AWARDED AGAINST HOLLANDIA ................................................................................................. 36

     A.     Sanctions Requested by Hollandia are Not Warranted ............................................ 36

     B.     Sanctions Against Hollandia May Be Proper ............................................................ 37

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                    ii                    12-CV-0334-GPC(KSC)

JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Cases</u>

*Avocent Redmond Corp. v. Rose Electronics, Inc.*
(W.D. Wash. 2007) 516 F. Supp. 2d 1199 ...................................................... 30

*Chaplaincy of Full Gospel Churches v. Johnson*
(D.D.C. 2003) 217 FRD 250 ...................................................... 37

*Coleman v. Dydula*
(W.D.N.Y. 1997) 175 FRD 177 ...................................................... 37

*Continental Oil Co. v. United States*
(9th Cir. 1964) 330 F.2d 347 ...................................................... 31

*Folb v. Motion Picture Industry Pension & Health Plans*
(CD CA 1998) 16 F.Supp.2d 1164 ...................................................... 20, 21, 22

*Griffith v. Davis*
(C.D. Cal. 1995) 161 F.R.D 687 ...................................................... 30, 31, 34

*Hunydee v. United States*
(9th Cir. 1965) 355 F.2d 183 ...................................................... 30, 31, 34

*In re Northrop Grumman Corp. ERISA Litigation*
(C.D. Cal. 2010) 2010 WL 11468584 ...................................................... 27, 30

*In re RDM Sports Group, Inc.*
(BC ND GA 2002) 277 BR 415 ...................................................... 20

*Josendis v. Wall-to-Wall Residence Repairs, Inc.*
(11th Cir. 2011) 662 F.3d 1292 ...................................................... 36

*Loustalet v. Refco, Inc.*
(C.D. Cal. 1993) 154 F.R.D 243 ...................................................... 26

*Microsoft Corp. v. Suncrest Enterprise*
(N.D. Cal. Jan. 6, 2006) 2006 WL 929257 ...................................................... 21

*Molina v. Lexmark Intern. Inc.*
(CD CA 2008) 2008 WL 4447678 ...................................................... 21, 22

*Morvil Technology, LLC v. Ablation Frontiers, Inc.*
(S.D. Cal. 2012) 2012 WL 760603 ...................................................... 31

*Murphy v. Kmart Corporation*
(D.S.D. 2009) 259 FRD 421 ...................................................... 36

*Olen Properties Corp. v. Sheldahl, Inc.*
(C.D. Cal. 1994) 1994 WL 212135 ...................................................... 31

*Perez v. Clearwater Paper Corp.*
(D. Idaho 2015) 2015 WL 695331 ...................................................... 31

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Phillips v. C.R. Bard, Inc.*
(D. Nev. 2013) 290 F.R.D. 615 ............................................................................ 27

*Quaker Chair Corporation v. Litton Business Systems, Inc.*
(S.D.N.Y. 1976) 71 FRD 527 .......................................................................... 36, 37

*Selcak v. Morgan Whitney Trading Group, Inc.*
(C.D. Cal. 1992) 795 F.Supp. 329 ...................................................................... 33

*Sheldone v. Pennsylvania Turnpike Commission*
(WD PA 2000) 104 F.Supp.2d 511 ...................................................................... 20

*United States EEOC v. Caesars Entertainment, Inc.*
(D. Nev. 2006) 237 FRD 428 ................................................................................ 36

*United States ex rel. Burroughs v. DeNardi Corp.*
(S.D. Cal. 1996) 167 F.R.D 680 ............................................................................ 31

*United States v. American Tel. & Tel. Co.*
(D.C. Cir. 1980) 642 F.2d 1285 ...................................................................... 33, 35

*United States v. Bergonzi,*
(N.D. Ca. 2003) 216 F.R.D 487 ............................................................................ 33

*United States v. Gallo*
(WD NY 1987) 672 F. Supp. 99 ...................................................................... 20, 21

*United States v. Gonzalez,*
(9th Cir. 2012) 669 F.3d 974 .................................................................. 30, 32, 34, 35

*United States v. Henke*
(9th Cir. 2000) 222 F.3d 633 ................................................................................ 30

*United States v. Nobles*
(1975) 422 U.S. 225 .................................................................................. 26, 27, 30

*United States v. Salyer*
(E.D. Cal. 2012) 853 F. Supp. 2d 1014 ................................................................ 27

*Waller v. Financial Corp. of America*
(9th Cir. 1987) 828 F.2d 579 .......................................................................... 30, 31

Statutory Authorities

Evid. Code, § 1119 ................................................................................................ 21

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                          iv                          12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

## I.    **INTRODUCTION**

Citizen's Development Corporation, Inc. ("CDC"), and the Public Agency Defendants, County of San Diego, City of San Marcos, City of Escondido, and Vallecitos Water District (collectively "PADs") collectively submit the following Joint Opposition to Hollandia's Dairy Inc.'s Motion for Determination of Discovery Disputes and Request for Sanctions (hereinafter "Opposition" and "Discovery Mtn."). This Opposition is intended to address issues in Hollandia's Discovery Mtn. that are common to CDC and the PADs. To the extent the Discovery Mtn. addresses issues that are directed at fewer than all of these parties, CDC and the PADs each will submit their individual oppositions as well. By submitting this Opposition, CDC and the PADs in no way intend to waive their right or ability to submit and have considered a separate opposition to Hollandia's Discovery Mtn.

Hollandia's Discovery Mtn. which seeks, among other things, to compel CDC and the PADs to produce privileged documents – some of which are privileged on multiple grounds – is ill-conceived and meritless. First, Hollandia has failed to satisfy even the fundamental requirements for discovery by showing that the documents sought are identified with reasonable particularity and are relevant. In addition, the parties have already produced more than 400,000 pages of documents to Hollandia and the burden to produce the additional documents requested is outweighed by any benefit Hollandia might achieve.

Moreover, Hollandia's discovery requests also violate the express discovery limitations ordered by this court. Hollandia was permitted to propound discovery solely for the purpose of enabling Hollandia to assess a possible settlement. The court expressly prohibited Hollandia from pursuing expert discovery at this time. Hollandia's discovery requests and this motion flout the court's order by seeking information that has nothing to do with settlement, or even the merits, and by seeking documents and information that are plainly in conflict the court's prohibition against expert discovery at this time. Hollandia does not complain that it lacks or has been denied reports and data regarding the conditions in the Lake and the Watershed, the nature and extent of the contamination, and the remedies proposed for remediation – all of which are set forth in the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Remedial Investigation/Feasibility Study ("RI/FS"). What Hollandia seeks by way of its

2  Discovery Mtn. – and which has nothing to do with liability or damages – are details of the

3  parties' litigation tactics and strategy which are both privileged and outside the discovery

4  limitations imposed by the court.

5      None of the parties dispute that Hollandia is entitled to communications with the Regional

6  Water Quality Control Board ("RWQCB") and these communications, subject to a few limitations

7  in time and scope, either have been produced or in the process of being produced to Hollandia.

8  What is at issue are communications between the parties' counsel and consultants and between the

9  consultants themselves as to compliance with the RWQCB's orders and as to this litigation and the

10  mediation being pursued by the parties to resolve the litigation. The information and documents

11  being sought are protected from disclosure by the attorney-client privilege, the attorney work

12  product doctrine, the joint defense privilege/common interest privilege, and the mediation

13  privilege. In some cases, all of these privileges apply.

14      The motion should be denied in its entirety, and, in the event that the court considers

15  sanctions appropriate, they should be awarded against Hollandia, not CDC and the PADs.

16  **II.    FACTUAL BACKGROUND**

17      **A.    Nature Of The Case**

18      This is an action for response costs under the Comprehensive Environmental Response,

19  Compensation, and Liability Act ("CERCLA"), among other claims, arising from the alleged

20  release and discharge of hazardous substances which allegedly caused Lake San Marcos to

21  become contaminated. The resulting contamination has allegedly caused harm, including, but not

22  limited to, fish kills, algae blooms and nuisance odors, in addition to the degradation of beneficial

23  uses of lake waters.

24      Originally created in 1946, the lake is a privately-owned impoundment located in the

25  Upper San Marcos Creek Watershed ("watershed") in northern San Diego County, California. On

26  September 20, 2011 the RWQCB issued Investigative Order No. R9-2011-0033 ("IO") to CDC to

27  investigate the underlying contamination. In approximately June 2011, the Public Entities, other

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                    2                    12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

than Escondido, entered into a Voluntary Participation Agreement with the RWQCB to similarly address contamination at the lake and creek and Escondido entered into a Cooperation Agreement regarding the same subject matter. Both CDC and the PADs were subject to regulatory agency directives, either by order or agreement, to investigate and to prepare a plan to address the subject contamination. Thus, CDC and the PADs have shared a common interest in responding to the RWQCB since at least 2011.

**B.   Procedural History**

**1.   CDC and Hollandia First Discussed the Nature of the Claims and Hollandia's Liability Nearly Six Years Ago During Settlement Negotiations Before Magistrate Judge Crawford**

On June 26, 2012, the parties attended the Early Neutral Evaluation Conference before the Honorable Karen S. Crawford for the purpose of discussing possible settlement.  At that conference, Hollandia began its mantra that it needed more information to understand the nature of the claims against Hollandia.  After the case did not settle, the Court issued an order on June 29, 2012 (Dkt. No. 51) directing CDC and Hollandia to continue discussing settlement options.  As part of that process, CDC provided Hollandia and this Court with additional information related to Hollandia. After reviewing the information provided by CDC, this Court did not request that any further information be provided to Hollandia.

**2.   CDC and the PADs Have Diligently Pursued Settlement Through Mediation Since 2013**

Since approximately March 2013, CDC and the PADs have been working closely in private mediation to move the case towards settlement. CDC and the PADs have undertaken numerous joint tasks aimed at advancing the case forward in a cooperative manner, not only to avoid costly and protracted litigation, but also to potentially resolve all claims by having the mediator allocate liability for purposes of settlement. The confidential setting of the mediation also allowed the parties to cooperatively work together to provide a joint response to the RWQCB in the form of the RI/FS to satisfy CDC's and the PADs' respective obligations under the IO, the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                                    3                           12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1  Participation Agreement, and the Cooperation Agreement and to provide estimated remediation
2  costs.

3       On January 8, 2014 (Dkt. No. 94), the Court ordered the lawsuit stayed to allow the parties
4  to pursue settlement through mediation, which included conducting the mediation allocation
5  proceeding. (See 1/8/14 Order Granting Joint Motion to Stay Action Pending Mediation (Dkt. No.
6  94); see also 12/20/13 Joint Motion to Stay Action Pending Mediation (Dkt. No. 92)). CDC and
7  the PADs engaged in extensive efforts to encourage Hollandia's participation in mediation at that
8  time, but Hollandia consistently refused. (See 7/25/14 Joint Status Report (Dkt. No. 99)).

9       When Hollandia was originally invited to participate in the joint mediation efforts, CDC
10 and the PADs required that Hollandia agree to split the costs of data collection and other joint
11 efforts equally between all parties. (See, e.g., 12/13/13 Status Report of CDC (Dkt. No. 91) at 2;
12 Declaration of Timothy Gallagher, filed 12/13/13 (Dkt. No. 91-4) at ¶¶ 6, 8-14; 3/27/15 Joint
13 Status Report (Dkt. No. 116) at 4). Later, CDC and the PADs agreed to remove the alleged
14 financial barriers to Hollandia's participation by asking that Hollandia pay only a one-sixth share
15 of the mediator's fees going forward, yet Hollandia still refused to participate. (See 3/27/15 Joint
16 Status Report (Dkt. No. 116) at 2-4, Exs. 1-2).

17      Beginning in mid-May 2015, Hollandia agreed to participate in mediation on a limited
18 basis. Specifically, Hollandia agreed to participate in the mediated allocation process, but declined
19 to participate in or fund the environmental investigation and data collection, technical committee
20 meetings, or the RI/FS process. In advising the Court of its participation in mediation, Hollandia
21 expressly acknowledged a key limitation in its access to expert materials as a result of its decision
22 not to share in joint costs, stating:

23           Because Hollandia would not agree to pay for ongoing consultant fees,
             however, the other parties indicated they would *exclude* Hollandia
24           from any meetings, discussions, data, documents, et cetera, generated
             by the consultants until such information became public. **Hollandia**
25           **accepted that limitation**.
26

27 (9/4/15 Joint Status Report (Dkt. No. 134), Ex. 1 at 2:25-28 (Emphasis added in part)). Hollandia
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                              4                        12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

also acknowledged that it understood the mediated allocation process to include the preparation of

a common interest report by CDC and the PADs in response to RWQCB directives.

> The other parties have incurred costs, and will continue to incur larger additional costs, **to comply with the Regional Water Quality Control Board's Investigative Order dated September 10, 2011** ("IO"), regarding San Marcos Creek and Lake San Marcos, to address nutrients. The costs also are being incurred to develop Best Management Practices so that the Public Agency parties can better control current nutrient loading from the watershed. **That is necessary for the agencies to comply with the IO** as well as their stormwater pipe permit requirements now and in [sic] future. Their current actions will also allow the agencies to avoid being more strictly regulated by the U.S. E.P.A. regarding nutrients passing through the stormwater pipes in 2019.

*Id.* at 2:3-12 (Emphasis added).

Mediation efforts have included the following:

### a.      *Modified FRCP 26 Document Exchange Process*

In 2014, CDC and the PADs agreed to a "modified" Federal Rule of Civil Procedure, Rule 26 Initial Disclosure document exchange process to allow them to collect evidence necessary to address the questions of liability and allocation. (See 9/28/16 Joint Status Report (Dkt. No. 178) at 4). Upon agreeing to participate in mediation, Hollandia also participated in this modified Rule 26 exchange. Hollandia had the opportunity to review over 1,100 boxes of documents, ledgers and other items made available by the other parties. In addition, Hollandia already had access to the publicly-available testing records, reports, communications and other documents on file with the RWQCB related to the investigation at the lake and creek.

Between June and August 2016, the parties participated in another round by exchanging supplemental document productions.

### b.      *Diagnostic Efforts to Evaluate Environmental Conditions in and around Lake San Marcos and San Marcos Creek*

CDC and the PADs agreed to jointly fund the collection of monitoring and sampling data as part of ongoing diagnostic work and investigation in and around Lake San Marcos and San

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                                    5                              12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1  Marcos Creek. Hollandia declined to participate in this diagnostic work. (Troy Decl. ¶ 12 & 13;

2  9/28/16 Joint Status Report at 4-5.)

3                **c.**     **Technical Consultant Working Group**

4       As part of the joint diagnostic work at Lake San Marcos, CDC and the PADs formed a

5  technical consultant working group consisting of their respective environmental consultants and

6  experts.  This technical committee attends weekly teleconferences and communicates frequently to

7  address data collection needs, the RI/FS, and other technical issues as they arise. The technical

8  group also interfaces with the jointly-retained consultants and RWQCB staff. CDC and the PADs

9  told Hollandia that if it agreed to participate in the funding of these efforts, Hollandia's

10  consultants would be permitted to participate in the technical committee teleconferences and other

11  communications. Hollandia declined. (Troy Decl. ¶ 12 & 13; 9/28/16 Joint Status Report at 5.)

12                **d.**     **Computer Modeling Efforts**

13       CDC and the PADs, through a jointly-retained computer modeling consultant, developed

14  two independent computer models to assist the parties in evaluating potential remediation

15  strategies for the lake and surrounding watershed, among other goals. (9/28/16 Joint Status Report

16  at 5). Although Hollandia declined to participate in the development of either of the two computer

17  models, the other parties provided the modeling data to Hollandia.

18                **e.**     **RI/FS Process**

19       CDC and the PADs jointly funded the preparation of the RI/FS as part of mediation. *Id.* at

20  5-6. The goal of the RI/FS process, as it relates specifically to the lake, creek, and watershed, is to

21  allow the parties to gather sufficient information to make informed decisions on potential remedial

22  actions, and to develop a comprehensive and reliable restoration strategy that satisfies RWQCB

23  and USEPA requirements, and incorporates community input. The RI/FS also allows the parties to

24  determine the estimated remediation costs for purposes of settlement.

25       On June 5, 2017, the RWQCB approved the final RI/FS report. (Declaration of Jeffery L.

26  Caufield ("Caufield Decl.") ¶ 11, Ex. 3.) Hollandia declined to participate in the preparation of the

27  RI/FS report. (9/28/16 Joint Status Report at 6). Nevertheless, Hollandia was allowed to

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    participate during the public comment period and submitted comments to the Regional Board

2    outlining various objections and concerns.  Hollandia has had access to the publically-available

3    RI/FS and supporting documents, as mentioned above.

4                    *f.*      ***Determining Allocation of Liability for Settlement Purposes***

5           In March and October 2016, the parties gave their formal presentations to the mediator as

6    part of the mediated allocation proceeding. (*Id.* at 6-7; see also 2/9/17 Joint Status Report (Dkt.

7    No. 189) at 2.) The purpose of this proceeding was to allow the mediator to recommend an

8    equitable allocation of liability for all parties based on the expert arguments and evidence

9    presented, which the parties and their respective insurance carriers could use as a basis for

10   settlement negotiations.

11          Although the mediator had expressed confidence that the case was likely to settle given the

12   parties involved, the amount at issue and the various insurance carriers participating, settlement

13   negotiations were hampered due to the failure of Hollandia's insurance carriers to participate in a

14   key mediation session, followed by Hollandia's withdrawal from mediation at a critical time. On

15   November 3, 2016, Hollandia formally withdrew from mediation, claiming "[i]t is apparent the

16   case cannot settle at this time for various reasons, including the need for this Court to rule on the

17   threshold issue of whether nutrients are 'hazardous substances' under CERCLA as part of the

18   Motion for Judgment on the Pleadings to be heard on April 21, 2017." (Notice of Hollandia Dairy,

19   Inc.'s Withdrawal from Mediation, filed November 3, 2016 (Dkt. No. 182) at 1:27-2:2).

20          **3.      Hollandia's Motion for Judgment on the Pleadings**

21          Since the inception of this case, Hollandia has repeatedly argued CDC's lawsuit has no

22   merit because, according to Hollandia, animal manure and other dairy wastes are not "hazardous

23   substances" under CERCLA. In November 2016, Hollandia formally withdrew from mediation in

24   order to test its theory by way of a motion for judgment on the pleadings. (See Notice of Hollandia

25   Dairy, Inc.'s Withdrawal from Mediation, filed November 3, 2016 (Dkt. No. 182)).

26          By order dated March 24, 2017 (Dkt. No. 207), the Court denied Hollandia's motion in its

27   entirety, noting that CDC had adequately pled the existence of hazardous substances.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                                    7                        12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

### 4.     August 23, 2017 Early Neutral Evaluation Conference

On August 23, 2017, the parties and their respective carriers attended an Early Neutral Evaluation conference before Magistrate Crawford. Same as before, Hollandia repeated its mantra that it was unable to participate in meaningful settlement negotiations due to a lack of discovery.

Following the ENE, Magistrate Judge Crawford indicated that she desired to proceed forward with a mandatory settlement conference in February 2018 after Hollandia had been allowed to conduct "limited" discovery for purposes of settlement. CDC and the PADs were concerned, however, that Hollandia's proclaimed need to conduct discovery for settlement purposes was a ploy to discover expert communications associated with the mediation which would almost certainly result in lengthy discovery battles. In discussing the proposed discovery plan with the parties during the October 13, 2017 Case Management Conference (see 8/29/17 Order (Dkt. No. 213)), Judge Crawford verbally admonished Hollandia's counsel that no party, including Hollandia, would be allowed to conduct expert discovery as part of the initial, limited discovery phase. The Court's Order of October 17, 2017 expressly prohibits expert discovery at this time. (See 10/17/17 Order (Dkt. No. 214) at 2:1-2 ("No Expert discovery will be permitted at this time.").)

Despite Judge Crawford's verbal admonishment and the Court's discovery order making clear that no expert discovery would be allowed, Hollandia did the exact opposite by serving overbroad discovery that necessarily includes expert communications during the course of mediation. To go one step further, Hollandia now demands by way of this voluminous discovery motion that CDC and the PADs produce the very same expert discovery the Court instructed at least two separate times would not be permitted. Hollandia's continued tactics to delay and disrupt settlement negotiations are unacceptable, and mark a clear violation of the Court's October 17, 2017 discovery order.

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

III.     **HOLLANDIA CANNOT SATISFY THE FUNDAMENTAL REQUIREMENTS FOR DISCOVERY IN FEDERAL COURT – REASONABLE PARTICULARITY, RELEVANCE, AND PROPORTIONALITY**

Hollandia is unable to overcome the most basic requirements for discovery in federal courts: reasonable particularity, relevance, and proportionality. This section addresses each of these three requirements.

A.     **Hollandia's Hopelessly Overbroad Document Requests Did Not Even Ask For The Documents Being Sought In this Motion (No Reasonable Particularity)**

Discovery requests must be stated with "reasonable particularity" FRCP 34(b)(1)(A). This Court has recognized:

> Generally, a discovery request without any temporal or other reasonable limitation is objectionable on its face as overly broad. See, e.g., *Ehrlich v. Union Pacific R.R. Co.*, 302 F.R.D. 620, 625 (D. Kan. 2014); *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 541-542 (D. Kan. 2006). A document request or interrogatory is also overly broad or unduly burdensome on its face if it: "(1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information." *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006). "Despite the overly broad nature of [a discovery request], a party typically has a duty to respond to it to the extent the [discovery request] is not objectionable and can be narrowed to an appropriate scope." *Id.* "This rule does not apply, however, and the Court will not compel further response, when inadequate guidance exists to determine the proper scope of the [discovery request]."

*Sanchez Ritchie v. Energy* (S.D. Cal., Mar. 30, 2015, No. 10CV1513-CAB(KSC) 2015 WL 12914435, at *2. Neither Hollandia's requests, nor the somewhat more narrowly crafted requests Hollandia has just identified in this motion, meet the particularity test.

Section I of Hollandia's discovery motion identifies five categories of documents it seeks to obtain through this motion. (Discovery Mtn. at 2-3). These categories are: 1) Communications Between: a. Counsel and non-client parties; b. Counsel and . . . consultants regarding technical matters relating to compliance with the IO/PA where the dominant purpose was not legal advice; c. Consultants and non-client parties; d. Communications and documents prepared or compiled by

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                    9                    12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

consultants as part of their work to comply with the IO/PA; 2. Communications outside of formal mediation, including communications between: a. Counsel and non-client parties and/or the non-client consultants; 3. Communications with the Regional Board, including: a. Consultants' communications and meetings with the Regional Board; and b. Counsel's communications/notes with the Regional Board. (Some, but not all, of the RI/FS Parties have produced e-mails for 3.a and b); 4. Technical work reflected in communications and documents prepared and compiled by consultants as part of their work to comply with the IO/PA; and 5. Communications between the RI/FS Parties' counsel or consultants with a separate group of consultants hired specifically to do lake and watershed modeling and to prepare the certified RI/FS for submission to the Regional Board.

At the outset, it should be noted that none of the PADs or CDC are arguing that communications with the RWQCB are privileged. The PADs and CDC agree these documents are not protected and, subject to reasonable limitations in time and scope, have been or will be produced.  (Declaration of Athena Troy ("Troy Decl.") ¶ 16; Declaration of Rudy Perrino ("Perrino Decl.) ¶ 15 **;** Caufield Decl. ¶ 6; Declaration of Ernest Slome ("Slome Decl.") ¶ 6; Declaration of Josh Levine ("Levine Decl). ¶ 7.) Hollandia's third category is therefore a non-issue and will not be addressed in this briefing.

As to the other four categories, Hollandia has not identified which of its requests for production, if any, correlate to any of these categories. As best we can tell, these four categories appear to be subsumed within a few much more broadly worded production requests that were made to the parties. These requests asked for documents "referring or related to"

1) "YOUR COMMUNICATIONS with any PARTY other than the RWQCB relating in any manner to the IO, including the RI/FS and PARTY ARRANGEMENTS[1]:

/ / /

---

[1]   See RFP No. 6 to the Vallecitos Water District; RFP No. 9 to CDC; and RFP No. 9 to County of San Diego and the City of San Marcos; no request with this language was submitted to the City of Escondido.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    2) As to the PADs - "ARRANGEMENTS YOU have ever had with any other

2    PARTY relating in any manner to the instant litigation" and as to CDC

3    "ARRANGEMENTS that YOU have ever had with any other PARTY that relates

4    in any way to the ENVIRONMENTAL CONDITIONS at the LAKE since it was

5    created."[2] and,

6    3) YOUR COMMUNICATIONS with any PARTY. . . . relating in any manner to

7    the IO, including but not limited to the RI/FS and Party Arrangements[3]." Each of

8    these requests is blatantly overly broad on their face.

9    These requests for production are vague and ambiguous, contain absolutely no limitations

10  in time, and provide little to no guidance as to scope. Hollandia's use of the omnibus phrase

11  "referring or related to" makes it impossible for the parties to understand what exactly is being

12  requested. These requests, as worded, could potentially capture every single communication

13  concerning Lake and Creek that CDC and the PADs (which is defined to include not only

14  employees but also attorneys and its consultants) have ever sent to or received from anyone in the

15  entire world since the Lake was constructed in 1946. CDC and the PADs cannot possibly be

16  expected to respond to such ridiculously overbroad demands.

17    Presumably because Hollandia has now realized that it has a serious problem with

18  reasonable particularity, it has now attempted in this motion to narrow and rewrite its discovery

19  requests and limit them to the five categories set forth in Section I of its motion. Still, yet again,

20  none of these new categories contain any limitations in time, nor do they provide sufficient

21  guidance so as to allow the parties to determine the scope of what is being requested.

22    The first category contains four separate subcategories and is unnecessarily verbose,

23  confusing, and is barely comprehensible. As with the original document requests referenced

24

25  [2]  See RFP No. 12 to the Vallecitos Water District ; RFP No. 13 to CDC; and RFP No. 18 to County of San Diego

26  and the City of San Marcos; and RFP No. 16 to the City of Escondido.

27  [3]  See RFP No. 13 to the Vallecitos Water District; RFP No. 16 to CDC; and RFP No. 19 to the County of San Diego and the City of San Marcos; and RFP No. 9 to the City of Escondido.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  above, this category appears to include every single communication concerning Lake and Creek

2  that the other parties have ever sent to or received from anyone in the entire world ever.

3  　　　The second category asks for "communications outside the formal mediation." There is no

4  limitation whatsoever as to scope. Is Hollandia asking for any communication ever by any of the

5  other parties, their attorneys, or their consultants about anything not part of a "formal mediation"?

6  It also became quite clear during the parties' meet and confer efforts that the parties do not agree

7  upon what is considered "inside" or "outside" the mediation. The term "formal" is also not

8  defined. Does Hollandia contend that some aspects of the mediation were "formal" and some were

9  "informal"?

10  　　　As argued in other sections, the mediation privilege is broad. It does not make a distinction

11  between "formal" and "informal," for clear policy reasons. Even if such a distinction existed, what

12  criteria are CDC and the PADs supposed to use in order to distinguish between the two?

13  　　　Category four uses the phrase "technical work," which is also unclear and not defined. This

14  category also refers to "work to comply with the IO/PA," but the truth is that there is simply no

15  logical or practical way for CDC and the PADs to separate their consultants' work related to the

16  RWQCB regulatory process from privileged and protected work performed as part of the

17  mediation and the instant litigation.  The work serves both purposes and is essential to both. Thus,

18  as set forth more fully in Section VI-A below, these documents and communications are all

19  privileged. This request provides no guidance as to how the parties are supposed to make this

20  distinction as it appears to encompass any work ever done by any of the parties' individually and

21  jointly retained consultants.

22  　　　Finally, category five refers to "a separate group of consultants hired specifically to do lake

23  and watershed modeling and to prepare the certified RI/FS for submission to the Regional Board."

24  This request has all of the same issues as category four, discussed above. The request also does not

25  explain what specific persons or entities are intended to be included within this "separate group of

26  consultants." Hollandia is fully aware of the names of all of the consultants that were jointly

27  retained by the other parties in connection with the remediation efforts because this information is

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                          12                          12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1  publically available in reports that can be downloaded on the RWQCB's geotracker website.

2  Despite this, Hollandia has failed to identify any single consultant by name.

3  Because Hollandia has not made a reasonable attempt to narrow its overly broad requests,

4  this Court should not accept Hollandia's invitation to rewrite its document requests to conform to

5  the categories that Hollandia has newly-identified in this motion. "Particularly when a party stands

6  on an overly broad request and *does not make a reasonable attempt to narrow it or to explain the*

7  *need for such a broad range of documents and/or information*, the Court will not 'rewrite a party's

8  discovery request to obtain the optimum result for that party. That is counsel's job.' [Citation

9  omitted.]" *Sanchez Ritchie v. Energy*, No. 10cv1513-CAB(KSC), 2015 WL 12914435, at p. 3

10  (S.D. Cal., March 30, 2015), quoting *Bartolome v. City and County of Honolulu*, No. CIV. 06-

11  00176SOMLEK, 2008 WL 2736016, at *14 (D. Hawaii, July 14, 2008), emphasis added.

12  Because Hollandia's document requests as well as the newly defined categories stated in

13  this motion lack reasonable particularity, this motion should be denied on its face without any

14  need to consider any of the numerous privilege and other issues raised by Hollandia in its motion.

15  **B.    Hollandia Has Not Shown that the Documents Sought Are Relevant to its**

16  **Claims or Defenses (No Relevance)**

17  The 2015 amendments to Rule 26 "eliminated the 'reasonably calculated' phrase as a

18  definition for the scope of permissible discovery." *In re Bard IVC Filters Products Liability*

19  *Litigation*, 317 F.R.D. 562, 564 (D. Ariz. 2016). "The test going forward is whether evidence is

20  'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to

21  admissible evidence.'" *Id.* at 564. The party seeking to compel discovery has the burden of

22  establishing that its requests satisfy the relevancy requirements of Federal Rule 26(b)(1). *Soto v.*

23  *City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Hollandia has not met this burden.

24  Hollandia's only argument is that it needs these documents in order to show how the

25  "RI/FS Parties chose to comply with the IO/PA, reconcile differences, and how the RI/FS Parties

26  colluded to engineer a bias in the direction and nature of testing and modeling to Hollandia's

27  detriment and to conceal exculpatory information." (Discovery Mtn., p. 3.) Hollandia further

28

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1  argues that "[t]he discovery sought goes to the heart of the RI/FS Parties perceived attempt to

2  stigmatize Hollandia and unfairly shift liability to Hollandia by directing their consultants to

3  perform investigations with predetermined outcomes and failing to acknowledge and disclose

4  exculpatory evidence." (Declaration of John Reaves, dated May 17, 2018, ¶ 49.)  This fallacious

5  "strawman" argument, which is the entire predicate of Hollandia's Discovery Mtn., is completely

6  absurd and hardly merits a response.

7          To wit, Hollandia makes no evidentiary showing of any collusion or bias outside of

8  Hollandia's counsels' personal opinions.  The fact that Mr. Reaves disagrees with the opinions'

9  and recommendations found in the RI/FS is not evidence of bias. Hollandia completely overlooks

10  the fact that the purpose of the RI/FS was not to allocate liability. Its purpose was to evaluate risks

11  and potential remedial options, and it did not make any findings or conclusions as to liability of

12  any particular party.[4]

13          Further, Hollandia does not argue that it does not have ALL of the data, documents and

14  actual computer models it needs to present its claims and defenses. The results of the parties'

15  regulatory efforts have already been made publically available on the RWQCB's website. These

16  documents go into great detail as to the consultants' methodologies, recommendations, and

17  opinions as to how to clean up the contamination. CDC and the PADs have already produced all

18  additional documents which are material to the factual and legal questions at issue between the

19  parties. Counsel for the VWD has estimated that the total volume of CDC and the PADs

20  production contains approximately 402,614 pages of documents. (Troy Decl., Exh. A[5].)

21          Even if "bias" against Hollandia somehow existed, the entire RI/FS process and the

22  science behind it was reviewed by an unbiased regulatory agency.  Hollandia was allowed to and

23  did participate fully in this process. It submitted a number of arguments and opinions to the

24  _____

25  [4] "The remedial investigation and feasibility study (RI/FS) process as outlined in this guidance represents the methodology that the Superfund program has established for characterizing the nature and extent of risks posed by uncontrolled hazardous waste sites and for evaluating potential remedial options." U.S. Environmental Protection

26  Agency, EPA/540/G-89/004, *Guidance for Conducting Remedial Investigations and Feasibility Studies Under CERCLA* at 1-3 (1988).

27  [5] These documents are summarized in Exhibits A and B to the Troy Decl.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                                    14                        12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1   Regional Water Board in opposition to the draft RI/FS and the Final RI/FS was approved over

2   Hollandia's objections. Hollandia failed to file any administrative action challenging the Regional

3   Board's approval of the RI/FS, and it is now time barred from doing so.[6]

4         Plainly, the entire purpose of Hollandia's motion is to gain access to the other parties'

5   litigation strategies and expert opinions in order to provide Hollandia with discovery of no

6   relevance. Hollandia is not entitled to this this discovery and it should not be permitted.

7       **C.**   **The Burden To Produce the Documents Requested is Outweighed by Any**

8          **Benefit Hollandia Might Achieve (No Proportionality)**

9         Hollandia has also failed to establish that the documents it seeks are "proportional to the

10  needs of the case." FRCP 26(b)(1). "[A] court may limit discovery of relevant material if it

11  determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from

12  some other source that is more convenient, less burdensome, or less expensive, or the burden or

13  expense of the proposed discovery outweighs the likely benefit." *Hernandez v. Best Buy Co*., No.

14  13CV2587, 2014 WL 5454505, at *1 (S.D. Cal. Oct. 27, 2014). All parties are required to

15  consider the proportionality factors when serving or responding to discovery requests and the

16  court must do so in ruling on discovery matters. FRCP 26(b)(1) & (g); Adv. Comm. Notes to 2015

17  Amendments to FRCP 26 ["The parties and the court have a collective responsibility to consider

18  the proportionality of all discovery and consider it in resolving discovery disputes."]

19        Hollandia is asking for the parties to produce all of their attorney-attorney, consultant-

20  consultant, or consultant-attorney communications related to their RWQCB regulatory process.

21  These efforts date back to at least 2005. Counsel for CDC and the PADs estimate that potentially

22

---

23  [6] Hollandia failed to exhaust its administrative remedies by not timely challenging the RWQCB's approval of the

24  RI/FS. The RWQCB is the agency authorized by statute to perform the quasi-adjudicative and quasi-legislative
actions of requiring reports of actual or proposed waste discharge into state waterways (CAL. WATER CODE §

25  13260) and the RWQCB has the power under section 13273, subdivisions (a) through (e), to obtain and evaluate and
accept reports (including RI/FS reports) and then to order remedial action to be taken, under section 13300. Decisions
and orders of a RWQCB are reviewable by administrative appeal to the State Water Board and only then by petition

26  for administrative mandamus in the superior court. *Monterey Coastkeeper v. Monterey County Water Resources
Agency*, 18 Cal.App.5th 1, 14 (Cal.Ct.App. 2017); CAL. CODE CIV. PROC. § 1094.5; CAL. WATER CODE, §§

27  13320, 13330. Further, challenges to the State Water Board made after the time frame allotted by the Water Code are
time barred. *Phelps. v. State Water Resources Control Board*, 157 Cal.App.4th 89, 105 (Cal.Ct.App. 2017).)

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   responsive documents collectively between them measure into hundreds of thousands. The effort

2   involved to locate, review, and prepare a privilege log as each of these documents would take a

3   minimum of 3,750 hours of attorney time. This is equivalent to at least two years' worth of work if

4   it were to be done full time by a single attorney. (Troy Decl. ¶ 5.)

5          Given the tremendous amount of effort that would be required, Hollandia would need to

6   establish that obtaining these communications is of critical importance to Hollandia's needs in this

7   case. As discussed above, Hollandia cannot show that the documents requested are even relevant,

8   let alone show that the great burden of production of these records is outweighed by any possible

9   benefit that Hollandia might obtain.

10         Hollandia has addressed the proportionality requirement by arguing that "any burden

11  would be due to the RI/FS Parties asserting improper privileges and failing to segregate true

12  privileged material from discoverable material." (Discovery Mtn., p. 23.) This argument makes no

13  sense whatsoever. There is no obligation under the Federal Rules for litigants to 1) anticipate what

14  documents will be requested by another litigation, or to 2) determine in advance of any discovery

15  request what communications are and are not privileged. Further this argument simply does not

16  respond to the fact that what Hollandia is asking CDC and the PADs to do is unduly burdensome

17  and is extremely disproportionate to Hollandia's needs.

18         Hollandia also insists that the parties must provide adequate privilege logs (Discovery

19  Mtn., pp. 23-24), yet it overlooks the fact that the vast majority of the documents that it is seeking

20  are communications that have occurred since this lawsuit was filed in the instant action in

21  February 2012. This Court has previously recognized that privilege logs "are commonly limited to

22  documents created before the date litigation was initiated." *Hernandez v. Best Buy Co*., No.

23  13CV2587, 2014 WL 5454505, at *10 (S.D. Cal. Oct. 27, 2014) (citing *U.S. v. Bouchard Transp*.,

24  2010 WL 1529248, at *2 (E.D.N.Y.2010) (noting that "privilege logs are commonly limited to

25  documents created before the date litigation was initiated"). It would be unduly burdensome and

26  oppressive to require CDC and the PADs prepare detailed privilege logs encompassing

27  communications dating back since the litigation started ***over six years ago***.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                          16                          12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1    Hollandia has failed to prove that its need to obtain the documents sought in this motion

2    outweighs the massive amount of effort that would be required for the other parties to locate,

3    produce, and prepare a privilege log. For this reason alone, Hollandia's motion should be denied.

4    **IV.    HOLLANDIA'S DISCOVERY REQUESTS VIOLATE THE EXPRESS**

5    **DISCOVERY LIMITATIONS ORDERED BY THIS COURT**

6    The Court clarified at the outset that it was only lifting the discovery stay in this case for

7    the purpose of forwarding settlement negotiations. This was largely based on Hollandia's

8    insistence that it needed to conduct discovery for purposes of assessing possible settlement.

9    Specifically, Hollandia represented to the Court that the discovery it sought as part of this initial

10   limited discovery phase would be specifically tailored to particular issues and information

11   necessary to assess settlement. (See Hollandia's Part of Joint Rule 26(f) Report and Discovery

12   Plan, lodged September 29, 2017, at 2:9-11) ("To assess settlement possibilities, Hollandia seeks

13   to perform a *limited and focused amount of discovery on core issues* . . . .") (Emphasis added).

14   Subsequently, the Court ordered "limited discovery," with certain restriction on what could be

15   propounded. (See 10/17/17 Scheduling Order Regulating Discovery (Dkt. No. 214)). However,

16   despite Hollandia's representations that it would pursue only "limited and focused" discovery,

17   Hollandia's discovery requests are broadly stated to seek all facts, documents, and witnesses

18   concerning general subject matter over the course of many decades, with little to no bearing on the

19   parties' claims and defenses, and do nothing to help advance the case towards settlement.

20   Importantly, at no point in the Discovery Mtn. does Hollandia explain how any of the information

21   requested will enable Hollandia and its carriers to participate in meaningful settlement

22   negotiations. Hollandia's demand for production of documents and information far beyond that

23   contemplated by the Court in lifting the discovery stay is inappropriate and should not be

24   permitted.

25   Further, the PADs and CDC expressed to the Court a specific concern that Hollandia

26   would use this limited discovery process to attempt to gain privileged *expert* communications

27   made during CDC and the PADs' creation of the RI/FS, the creation of which was agreed upon as

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                                  17                           12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1   a part of the mediation process. The court made clear that expert discovery was inappropriate and

2   not within the limited scope of discovery the Court was allowing. The court directed that, "*No*

3   *Expert discovery will be permitted at this time.*" (10/17/17 Order at ¶ 4) (Emphasis added).

4   Despite the Court's specific instructions *not* to use this limited discovery period to delve into

5   expert discovery, this is exactly what Hollandia is attempting to do. The bulk of Hollandia's

6   requests seek just that: expert communications that happened as a part of the PADs' and CDC's

7   drafting of the RI/FS during the mediation process. Moreover, Hollandia devotes the first twenty-

8   five (25) pages of its Discovery Motion to explaining why it believes it is entitled to these expert

9   communications. Hollandia's requests for these expert communications, along with Hollandia's

10  ardent insistence that it is entitled to such expert discovery in its Discovery Motion, are in direct

11  violation of the Court's Discovery Order and should be denied on that basis alone.

12  ## V.   HOLLANDIA IS NOT ENTITLED TO DISCOVERY OF MEDIATION-RELATED

13  ## COMMUNICATIONS

14       CDC and the PADs have attempted to direct their energies away from traditional

15  adversarial litigation and towards mediation. The mediation has been an ongoing process and has

16  included bringing the parties together so that they could cooperatively fund the collection of

17  monitoring data and investigation of the areas in and around Lake San Marcos and San Marcos

18  Creek, the preparation of computer modeling to assist in evaluating remedial alternatives, and the

19  presentation of an RI/FS report to the Regional Board.

20       CDC and the PADs attempted to convince Hollandia to join the mediation and Hollandia

21  ultimately participated in the mediation for a limited time. In the correspondence leading up to

22  Hollandia's participation, Hollandia and the parties confirmed their mutual understanding that

23  mediation discussions would be considered privileged and confidential. On May 1, 2015, VWD

24  informed Hollandia that "CDC and the PADs have a mutual understanding and agreement that the

25  content and discussions in mediation are considered confidential and privileged, and are intended

26  to remain confidential and privileged even after the mediation has concluded and even if the

27  litigation stay is eventually lifted." (Exh. C to Troy Decl.  May 1, 2015 letter from Reaves to

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                                    18                        12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1  Troy.) Hollandia responded by stating that "Hollandia agrees that the discussions during, and

2  materials prepared solely for, mediation remain privileged." (Exh. E to Troy Decl. May 12, 2015

3  letter from Reaves to Troy.[7]) VWD subsequently confirmed Hollandia's agreement by stating "We

4  appreciate your acknowledgement that discussions during and materials prepared solely for the

5  mediation will remain mediation privileged." (Exh. F to Troy Decl. May 19, 2015 letter from Troy

6  to Reaves.)

7        Hollandia participated in the mediation, but then later withdrew. It now argues that it

8  should have access to documents and discussions exchanged as part of the mediation. It argues,

9  contrary to its prior acknowledgment of privilege, that no privilege is recognized for mediation.

10  Rather, it claims that "discovery can insert itself into settlement discussions and mediation with

11  regards to statement of fact." (Discovery. Mtn., p.6:16-17.)  It seeks, among other items,

12  "information and consultant observations and opinions with respect to what the parties learned and

13  how the parties complied with the [investigative order]" that were discussed as part of the

14  mediation. (Discovery Mtn., p.7 at footnote 1.)

15        CDC and the PADs do not dispute that underlying factual information which is otherwise

16  discoverable, such as investigatory data, does not become privileged merely because it was

17  presented in mediation. However, Hollandia seeks more than the underlying factual information,

18  which has been produced; rather, it seeks discussions of facts and opinions that occurred between

19  the parties and the mediator in the context of the mediation.

20        Hollandia's arguments would allow those who do not participate in a mediation to use it as

21  a discovery device, effectively awarding non-participants and penalizing those who candidly share

22  information. The Court should not allow discovery into such information as (1) it is privileged; (2)

23  it is confidential; and (3) it is inadmissible and thus irrelevant under Rule 408.

24  / / /

25  / / /

26  _____

27  [7]    The only exception to this protection was for "underlying public documents and information." *See* May 12, 2015 letter from Reaves to Troy.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

A.    <u>The Information Sought Is Privileged</u>

While Circuit Courts have yet to recognize a federal mediation privilege, many district courts have done so. *Folb v. Motion Picture Industry Pension & Health Plans* (CD CA 1998) 16 F.Supp.2d 1164, 1180; *Sheldone v. Pennsylvania Turnpike Comm'n* (WD PA 2000) 104 F.Supp.2d 511, 512-517—privilege protects all written or oral communications made during mediation "for any purpose (including impeachment)" (emphasis omitted); *In re RDM Sports Group, Inc.* (BC ND GA 2002) 277 BR 415, 430-431 (recognizing mediation privilege); *United States v. Gallo* (WD NY 1987) 672 F. Supp. 99, 103.

The *Folb* court performed a thorough analysis of whether a federal mediation privilege should be recognized. In that case, the plaintiff in an employment discrimination case filed a motion to compel the production of mediation documents from a prior mediation involving the defendant employer, but in which he did not participate. The *Folb* court held that a mediation privilege precluded production of the documents. In recognizing the privilege, the court first reviewed case law and academic work on the subject of mediation. After carefully reviewing this authority, the court "concluded that the proposed blanket mediation privilege is rooted in the imperative need for confidence and trust among participants." *Id*. at 1176. The Court then reviewed the public policy implications of such a privilege and concluded that "a mediation privilege would serve important public ends by promoting consolatory relationships among parties to a dispute, by reducing litigation costs and by decreasing the size of state and federal court dockets, thereby increasing the quality of justice in those cases that do not settle voluntarily." *Id*. at 1177. The Court then concluded that there would be little "evidentiary detriment" to the mediation privilege as "anyone who attends a mediation, or decides not to use mediation to attempt to resolve a dispute, will consider the effect of disclosures on the pending or potential litigation." *Id*. at 1178. The Court then noted that 49 states had adopted a mediation privilege and that denial of the privilege would "frustrate the purposes of the state legislation." *Id*. at 1179. For these reasons, the Court found it appropriate to adopt a federal mediation privilege applicable to

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                    20                12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1  all communications made in conjunction with a formal mediation. *Id.* at 1180; *see Microsoft Corp.*

2  *v. Suncrest Enter.* (N.D. Cal. Jan. 6, 2006) 2006 WL 929257, at *1 (applying *Folb*).

3      The concerns supporting the application of the privilege in *Folb* are equally applicable

4  here. As in *Folb*, the parties participated in a mediation in which an "imperative need for

5  confidence and trust" was required in order to make the mediation effective as parties needed to be

6  able to candidly discuss the strengths and weaknesses of their cases without fear that a party

7  would later comb through these communications looking for admissions. The mediation promoted

8  "consolatory relationships among parties to a dispute" and in fact paved the way for cooperation

9  amongst otherwise-adverse parties which resulted in monies that might otherwise have been used

10  up in litigation being redirected to the technical investigation of the site and the development of a

11  potential remedy. There is no "evidence detriment" to Hollandia if the mediation documents are

12  not disclosed as Hollandia has never been deprived of underlying data or other substantive

13  information relating to the Lake and Watershed investigation. The privilege sought is also

14  consistent with the laws of most states, including California. *See* California Evidence Code, §

15  1119. For these reasons, this Court should recognize the mediation privilege that was recognized

16  in *Folb*.

17      Hollandia argues that, under *Molina v. Lexmark Intern. Inc.* (CD CA 2008) 2008 WL

18  4447678, this Court should address this discovery dispute only in reference to Rule 408. *Molina,*

19  however, concerned a case where a party was attempting to introduce evidence of a settlement

20  demand that it had made during mediation for the purposes of arguing that the deadline to file a

21  notice of removal under 28 USC 1332(d) [which requires a party to file a notice of removal of a

22  class action within 30 days of a defendant learning certain facts] had passed. The *Molina* Court

23  held that in that context, the appropriate analysis was confidentiality rather than privilege, as the

24  question was not whether discovery of documents could be compelled, but whether a party could

25  voluntarily disclose to the court information about what it had disclosed during mediation. *Id.* at

26  11.

27  / / /

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Unlike *Molina*, the present case involves a discovery issue. Hollandia is not attempting to

2   introduce evidence of what occurred at mediation; it is attempting to learn what was said during

3   mediation discussions that it was not party to. This situation parallels the attempt to compel

4   discovery communications that was disallowed in *Folb*.

5   Hollandia argues that mediation privilege should not extend to communications regarding

6   the investigative order. However, as the investigative order, and CDC's and the PAD's response to

7   it, is a key component of this litigation, it is hard to imagine an effective mediation that did not

8   squarely address the investigative order. Hollandia's counsel himself admitted this in a March 9,

9   2015 e-mail stating that "Given that the PADs and CDC must comply with the [investigative

10  order], and the mediation offers a good forum to conduct that business and raise funds from the

11  insurers, we undoubtedly would do the same in your shoes." (Troy Decl., Exh. D March 9, 2015

12  letter from Reaves to Troy.)

13  Hollandia also explicitly acknowledged its and the other parties understanding that

14  information discussed in the mediation would be privileged.  (Troy Decl., Exh. E , March 12, 2015

15  letter from Reaves to Troy ["Hollandia agrees that the discussions during, and materials prepared

16  solely for, mediation remain privileged."].) Having gained entrance to the mediation by agreeing

17  to treat the mediation as privileged, Hollandia is judicially estopped from now arguing that the

18  mediation is not privileged. *Rissetto v. Plumbers & Steamfitters Local* 343, 94 F.3d 597, 605 (9th

19  Cir. 1996) [Judicial estoppel precludes parties from taking inconsistent positions in the same

20  litigation].

21  Parties routinely use mediation to attempt settle cases. Hollandia's position, if adopted,

22  would significantly disrupt mediation as parties would constantly have to consider whether their

23  statements could later be discovered. A blanket mediation privilege "serves important public ends

24  by encouraging open communications in mediation which ultimately leads to better relationships

25  between the parties . . . ." *Folb, supra*, at 1177. As the present case involves a direct attempt to

26  compel disclosure of mediation communications, this Court should apply the mediation privilege.

27  / / /

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                    22                    12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

B.       **The Information Sought Is Confidential**

Prior to participating in the mediation, the parties, including Hollandia, agreed that mediation discussions would be treated as privileged and confidential. )Troy Decl., Exh. C  May 1, 2015 letter from Reaves to Troy ["CDC and the PAD have a mutual understanding and agreement that the content and discussions in mediation are considered confidential and [acknowledging privilege].) Even if no mediation privilege applies, Hollandia still agreed that the mediation discussions could be maintained in confidence. Hollandia now seeks to violate that agreement.

The Ninth Circuit has upheld the enforceability of agreements to keep mediations confidential. *Facebook, Inc. v. Pacific Northwest Software, Inc.* 640 F.3d 1034 1041. Other Circuits have similarly recognized the importance of confidentiality in mediation. For example, the Second Circuit has stated that "If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions, then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, noncommittal manner more suitable to poker players in a high-stakes game than adversaries attempting to arrive at a joint solution to a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements. . . ." *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979).

The Second Circuit has set forth a high standard that must be met before a party is entitled to mediation related material. Noting that confidentiality in mediation proceedings "promotes the free flow of information that may result in the settlement of a dispute" and protects "the integrity of alternative dispute resolution generally," the Second Circuit rejected an attempt to lift a protective order to allow discovery of mediation proceedings. *In re Teligent, Inc.*, 640 F.3d 53, 57–58 (2d Cir. 2011) (citations omitted). The Second Circuit further held that "A party seeking disclosure of confidential mediation communications must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                                   23                            12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1   the evidence outweighs the interest in maintaining confidentiality." *In re Teligent, Inc.*, 640 F.3d

2   53, 58 (2d Cir. 2011) (citations omitted).)

3        Hollandia cannot meet any part of this test. It can show no special need for the material as

4   it is freely able to develop its defenses through reference to the underlying factual data, reports,

5   and information, all of which is available to it. It can show no unfairness due to not being able to

6   access mediation materials; in fact, it would be unfair to allow Hollandia access to these materials

7   as it would penalize CDC and the PADs for attempting to settle this case and would result in a

8   chilling effect upon the ongoing mediation efforts. Finally, it cannot show that its non-existent

9   need for this discovery outweighs the important policy concerns favoring confidentiality in

10  mediation.

11      **C.**     **The Information Sought Is Inadmissible And Thus Irrelevant Under Rule 408**

12       Rule 408 prohibits admission of settlement communications "to prove or disprove the

13  validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a

14  contradiction." Federal Rules of Evidence, Rule 408 (a). Hollandia, however, argues that this

15  prohibition does not extend to "statements of fact made during settlement negotiations."

16  (Hollandia Motion, p. 6:11-12.) Hollandia bases this surprising argument on a citation to the

17  House Committee Notes for the rule. *Id*.

18       Hollandia has misread the legislative history. While the House Committee supported

19  amending Rule 408 to allow admission of unqualified statements of fact, the Senate Committee

20  rejected this amendment, and the rule ultimately adopted prohibited the admission of all statement

21  of facts, qualified or not. *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir. 1981)

22  [discussion of legislative history of portion of Rule 408 prohibiting introduction of statements of

23  fact made as part of settlement discussions]; *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d

24  521, 529 (3d Cir. 1995) ["Rule 408 was specifically designed to cover admissions of fact . . ."].

25  Hollandia's claim that statement of facts made in mediation proceedings are admissible is simply

26  wrong.

27  / / /

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Any mediation discussions, whether of fact or opinion, would not be admissible in this

2    action. As Hollandia could not directly use this information even if discovered, it is irrelevant and

3    thus should not be compelled.

4    **VI.    THE ATTORNEY-CLIENT PRIVILEGE, WORK PRODUCT DOCTRINE, AND**

5    **JOINT DEFENSE PRIVILEGE/COMMON INTEREST DOCTRINE PROTECT**

6    **DISCOVERY OF THE DOCUMENTS SOUGHT BY HOLLANDIA**

7    Hollandia claims that no privileges apply to the communications set forth in Sec. IIA

8    above because, among other things, (c) compliance with the IO/PA is inherently a technical, not

9    legal, endeavor; * * * (e) there is no common interest/joint defense agreement among the PADs

10   for technical compliance with the PA or due to adverse legal interests; (f) there is no common

11   interest/joint defense agreement amongst plaintiff and the defendants in the same litigation; (g)

12   and, any attorney-client or work product protections have been waived by the RI/FS Parties to the

13   extent they have voluntarily disclosed information to the other parties to this litigation, or

14   Regional Board, and to the extent they reflect assumptions, facts, and direction provided by

15   counsel to their consultants. According to Hollandia, it is only seeking factual information as to

16   how the RI/FS Parties chose to comply with the IO/PA, reconcile differences, and how the RI/FS

17   Parties colluded to engineer a bias in the direction and nature of testing and modeling to

18   Hollandia's detriment and to conceal exculpatory information. Discovery Mtn., pp. 4-19.

19   What Hollandia wants the court to ignore is that it had ample opportunity to participate in

20   the process of developing the RI/FS and, had it agreed like all the other parties to conditional

21   funding of a portion of the RI/FS activities, it would have had access to all of the information it

22   now claims shows evidence the PADs and CDC "colluded to engineer a bias in the direction and

23   nature of testing and modeling to Hollandia's detriment and to conceal exculpatory information."

24   (Troy Decl. ¶ 12 & 13; Perrino Decl., ¶ 3.[8]) Indeed, Hollandia was invited into and, did,

25   _____

26   [8]    Hollandia may argue that inclusion of these "mediation discussions" here waives mediation privilege as it applies
to all communications in the mediation context. That argument would ignore the numerous examples in the court's

27   record where Mr. Reaves, on behalf of Hollandia, waived mediation privilege as to the fact of its involvement in the
mediation, its refusal to fund the RI/FS and its grounds for refusal, and ultimately Hollandia's withdrawal from the

28   (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                        25                   12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1   participate in mediation activities for the better part of two years. (Troy Decl. ¶ 11; Perrino Decl.,

2   ¶ 4.) Throughout its time as a mediating party, Hollandia was repeatedly invited to participate

3   financially in the RI/FS activities and was informed that, in exchange for its financial

4   participation, it would have equal say in the process and access to all of the work product as a

5   result.  *Id.* Every time the issue was raised, though, Hollandia's counsel, John Reaves, was very

6   vocal in his refusal to participate, arguing that Hollandia was not liable for the nutrients in the lake

7   and the watershed, and should not have to pay for the RI/FS but, instead, should be given constant

8   access to the privileged discussions between the PADs and CDC, without contributing financially.

9   *Id.*

10          The documents being sought, other than communications with the RWQCB,[9] are all on

11   their face subject to work product protections through the Common Interest Doctrine, among other

12   protections. As discussed below, Hollandia misreads or misinterprets the law, misstates the facts

13   and advances an unfounded conspiracy theory all in an effort to gain access to communications it

14   was invited to participate in long ago but refused to pay the price. Hollandia's verbal gymnastics

15   and misrepresentations of law and fact should not justify piercing this sacred veil the PADs and

16   CDC have worked so hard, and spent so much time and money, to protect. The Court should reject

17   Hollandia's Motion and find that the documents described in Hollandia's Motion at pp. 4-19, with

18   the exception of communications with the RWQCB are subject to protections under the Common

19   Interest Doctrine.

20          **A.      The Documents Withheld Are Protected by the Work Product Doctrine**

21          The documents Hollandia seeks are, quite clearly, protected by the work product doctrine.

22   By definition, the work product doctrine protects documents and things prepared in anticipation of

23   litigation or trial by a party, or for a party through his or her counsel, consultants, and his or her

24   counsel's support staff. *Loustalet v. Refco, Inc.* (C.D. Cal. 1993) 154 F.R.D 243, 246 ). Further,

25   ───────────────────

26   mediation. (Perrino Decl., ¶ 4.)

27   [9]     As discussed, *supra*, the PADs and CDC all agree that communications with the RWQCB are not privileged and,
     if not already, will be producing same shortly.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                          26                          12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1    the Supreme Court has long held that the work product doctrine applies to documents created by

2    investigators and consultants retained by, and working for, attorneys, so long as the documents

3    were created in anticipation for litigation. *U.S. v. Nobles* (1975) 422 U.S. 225, 239.

4         Whether documents are made "in anticipation for litigation" is determined by application

5    of the "because of" standard in the Ninth Circuit. *See, e.g.*, *In re Grand Jury Subpoena*

6    *MarkTorf/Torf Environmental Mgmt.("Torf"*) (9th Cir. 2004) 357 F.3d 900, 908). The "because

7    of" standard does not consider whether litigation is a primary or secondary motive behind creation

8    of a document, but rather considers "the totality of the circumstances and affords protection where

9    the document would not have been created in substantially similar form without the threat of

10   litigation." *Id.*; *In re Northrop Grumman Corp. ERISA Litigation* (C.D. Cal. 2010) 2010 WL

11   11468584 at *5 [applying the "because of" rule to hold that an expert/consultant's remediation

12   investigation work and corresponding work product to be privileged "because of" the prospect of

13   litigation], *declined to extend on other grounds in Phillips v. C.R. Bard, Inc.* (D. Nev. 2013) 290

14   F.R.D. 615; *U.S. v. Salyer* (E.D. Cal. 2012) 853 F. Supp. 2d 1014.  The "because of" standard asks

15   whether "if, in light of the nature of the document and the factual situation in the particular case,

16   the document can be fairly said to have been prepared or obtained because of the prospect of

17   litigation." *Id.* at 907 (internal citations omitted). If it has, work product privileges will apply to

18   the document.

19        On their face, the documents Hollandia says should be produced are work product under

20   the "because of" standard." While Hollandia describes the documents it seeks broadly, and it

21   would take too much time for each of the PADs and CDC to search and identify the

22   communications it has, each of the documents Hollandia seeks can be broadly described thus:

23   communications among counsel and among consultants for the PADs and CDC related to their

24   efforts to characterize contamination in San Marcos Creek and Lake San Marcos, remediate that

25   contamination, and to identify others responsible for that contamination. These communications

26   have multiple purposes. At a minimum, they assist counsel for each of the PADs and CDC in

27   further efforts to prepare for and address issues presented by the instant litigation; they help

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                          27                    12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1  counsel for the PADs and CDC prepare for and respond to potential litigation by the RWQCB to

2  enforce the IO and PA, which is always threatened should they fail to comply; and they assist

3  counsel in responding to and complying with the IO and PA.

4      Each of the parties, by and through their consultants who have been retained by counsel,

5  has contributed to the development of a remedial investigation and feasibility study and

6  subsequent remedial measures, which are being used not only to comply with the IO and PA, but

7  also to develop information needed to either help resolve the instant litigation or to prosecute the

8  claims involved in it. (Troy Decl., ¶ 12; Perrino Decl., ¶ 2; Caufield Decl.,¶ 10; Slome Decl., ¶ 8.)

9  That RI/FS and the subsequent remedial measures would also be used in any ensuing litigation,

10  should compliance with the IO and PA become at issue. As discussed below, these multiple

11  purposes do not defeat the protected nature of these documents. Nor does sharing of this work

12  product among cooperating parties, like the PADs and CDC.

13      The instant case is similar to the facts of *Torf*, where documents prepared by an

14  environmental consultant to assist an attorney in preparation for litigation were held to be

15  privileged under the "because of" standard." *Torf, supra*, 357 F.3d at 910. In *Torf*, a company

16  retained an attorney, who in turn retained an environmental consultant, to assist the company with

17  complying with Information Requests by the EPA for statutory violations, both civil and criminal,

18  under CERCLA. The environmental consultant, in assisting with compliance with the Information

19  Requests, conducted interviews, sampled and tested the hazardous products at issue, and

20  investigated potentially hazardous properties, compiling the information for the attorney and

21  company to use. *Id.*

22      The Ninth Circuit Court of Appeals held that the consultant's reports were protected,

23  despite the fact that they had a dual purpose of assisting in complying with the Information

24  Request, stating that the documents, though containing some factual assertions, were entitled to

25  work product protections because "their litigation purpose so permeates any non-litigation purpose

26  that the two purposes cannot be discretely separated from the factual nexus as a whole." *Id.* at 910.

27  / / /

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Here, the documents Hollandia seeks are also protected because "their litigation purpose so

2    permeates any non-litigation purpose that the two purposes cannot be discretely separated from the

3    factual nexus as a whole." *Id.* Each of the documents will likely contain the consultant's mental

4    impressions, opinions on potential liability and exposure, apportionment of fault, and

5    recommendations to the attorney who retained them for their work on the issues involved in Lake

6    and the Creek

7    All consulting experts were retained at the behest and advice of counsel on behalf of their

8    respective clients. They were retained by attorneys, to assist attorneys, in tasks that could not have

9    been performed by such an attorney. The consultants that were jointly retained to help prepare the

10   RI/FS and related remedial designs have similarly been retained by counsel for each of the PADs

11   and CDC to prepare these studies for use in defending and prosecuting the instant lawsuit,

12   responding to and complying with the IO and PA, and in anticipation of potential litigation by the

13   RWQCB. Such "dual purposes" are so interwoven, and the volume of communications so

14   extensive, that it would be impossible for the PADs and CDC to separate them out. Accordingly,

15   the court should treat them all as work product. *Id.* at 909.

16   Hollandia contends that *Torf* does not control in this instance, since no party is facing

17   criminal charges. (Discovery Mtn., p. 18.) Further, Hollandia contends that the consultants would

18   have had to do this work regardless of the threat of litigation to comply with the IO/PA and PADs

19   MS4 Permits. (*Id.*) As such, Hollandia states no party needed to consult an attorney "to decide

20   how to respond to the technical mandate of the IO/PA or to direct their consultants." Discovery

21   Mtn, p. 16.

22   Hollandia's arguments that *Torf* does not control were each addressed by the Court there

23   and rejected. First, in *Torf*, the Ninth Circuit found unconvincing the argument that the

24   environmental consultant in that case could have been retained directly by the company to assist

25   with the Information Requests, thus destroying the work product arguments, holding that the work

26   product protections still would have applied even if the company had retained him directly to act

27   as environmental consultant on the cleanup, so long as the documents being sought "were *also*

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                    29                    12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1    produced 'because of' litigation." *Torf*, 357 F.3d at 909. In other words, the fact that the PADs and

2    CDC could have retained the consultants directly to respond to the IO and PA is irrelevant. So

3    long as the communications have a dual purpose, and they all do, they are protected. *Id.*

4      The Court also found in *Torf* that it does not matter whether the anticipated litigation is

5    civil, criminal, actual, or potential, so long as the documents at issue are created in anticipation of

6    litigation. *Id.* Hollandia's reading of *Torf*, apparently through the wrong prescription glasses, is

7    disingenuous at best. The Court should reject that reading.

8      **B.**  **The Work Product Documents Sought Are Protected Under the Common**

9        **Interest Doctrine**

10     The common interest doctrine, sometimes referred to as the joint defense privilege, allows

11   a party or their counsel to share privileged information with other parties facing a common

12   opponent pursuant to an agreement or understanding that the shared information is to remain

13   privileged. *Waller v. Financial Corp. of America* (9th Cir. 1987) 828 F.2d 579, 583, fn. 7. It is an

14   exception to the rule that disclosure of privileged material to an unrelated third party generally acts

15   as a waiver. *Hunydee v. U.S.* (9th Cir. 1965) 355 F.2d 183. The common interest doctrine allows

16   clients without a common attorney to communicate among themselves, and with attorneys

17   representing other clients, for the purpose of preparing a joint strategy, and protects these

18   communications to the same extent it would protect communications between a client and their

19   own attorney. *Id.* It also applies to protect communications among investigators and consultants

20   retained by those parties. *Nobles*, *supra*, 422 U.S. at 238-39; *In re Northrop*, *supra*, at *5.

21     The common interest doctrine  "applies where parties are represented by separate counsel

22   but engage in a common legal enterprise." *Griffith v. Davis* (C.D. Cal. 1995) 161 F.R.D 687, 692.

23   It protects  "confidentiality of communications passing from one party to the attorney of another

24   party when made to further a joint effort." *Avocent Redmond Corp. v. Rose Electronics, Inc.* (W.D.

25   Wash. 2007) 516 F. Supp. 2d 1199, 1203. The purpose of this rule allows persons who have

26   common interests to coordinate their positions without destroying the privileged status of their

27   communications with their lawyers. *U.S. v. Henke* (9th Cir. 2000) 222 F.3d 633, 636 [(A joint

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   defense agreement establishes an implied attorney-client relationship with the co-defendant].The

2   Ninth Circuit has "long recognized that the joint defense privilege is an extension of the attorney-

3   client privilege." *U.S. v. Gonzalez*, (9th Cir. 2012) 669 F.3d 974, 978; *see also e.g.*, *Waller*, *supra*,

4   828 F.2d at 583, fn. 7. The issue was first discussed in *Continental Oil Co. v. U.S.* (9th Cir. 1964)

5   330 F.2d 347, where the Court held that discussions and memoranda shared between counsel for

6   two parties were protected by the joint defense privilege.  *Id.* at 350  ("the privilege asserted here

7   is a valuable and an important right for the protection of any client *at any stage of his dealings*

8   *with counsel*.")  Since *Continental Oil*, courts in the Ninth Circuit have consistently upheld

9   application of the joint defense privilege and the common interest doctrine in the context of both

10  criminal and civil litigation, even when litigation is only pending or threatened. *Waller v.*

11  *Financial Corp. of America* (9th Cir. 1987) 828 F.2d 579; *Hunydee v. U.S.* (9th Cir. 1965) 355

12  F.2d 183, 185; *Griffith v. Davis*, 161. F.R.D. at 693; *Olen Properties Corp. v. Sheldahl, Inc.* (C.D.

13  Cal. 1994) 1994 WL 212135, *1; *Morvil Technology, LLC v. Ablation Frontiers, Inc.* (S.D. Cal.

14  2012) 2012 WL 760603, *3; *Synopsy, Inc. v. Ricoh Co., Ltd.*(N.D. Cal. 2006) 2006 WL 2479109,

15  *1; *Perez v. Clearwater Paper Corp.* (D. Idaho 2015) 2015 WL 695331, *2; *U.S. ex rel.*

16  *Burroughs v. DeNardi Corp.* (S.D. Cal. 1996) 167 F.R.D 680, 686.

17          1.      **The PADs and CDC Share a Common Interest In Responding to the**

18                  **RWQCB and In Prosecuting and Defending The Instant Case**

19          The PADs and CDC share a common interest in responding to the IO and PA. A common

20  interest is found where, as here, two or more parties, subject to possible litigation in connection

21  with the same transactions, make confidential statements to their attorneys that are subsequently

22  shared, to the extent that they involve common issues and are intended to facilitate representation

23  in possible subsequent proceedings. *Hunydee, supra*, 355 F.2d at 185, emphasis added.

24          Here, the PADs and CDC share a common interest related to addressing the RWQCB's IO

25  and PA. The RWQCB, through its regulatory authority as embodied in the IO and the PA, has

26  required certain remedial investigation efforts and actions to be undertaken. The PADs and CDC

27  have each retained their counsel to represent their respective interests in responding to the

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                                    31                          12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

RWQCB, and those counsel have retained consultants to do that work. Those consultants and counsel must communicate in order to strategize about how best to represent the interests of their respective clients. Any communications, as well as any work product created by counsel or their consultants, to the extent not disclosed to the RWQCB, is protected work product being shared pursuant to the mutual interest doctrine and should be protected.

As discussed above, this work has multiple purposes. First, it is being employed not only to respond to the RWQCB, but also in anticipation of potential litigation with the RWQCB, should compliance with the IO and PA become an issue. Second, the work is also being used to prosecute and defend in the instant litigation. Each of the PADs and CDC share common interests in these endeavors, even though they may have adverse positions in other respects. As such, the communications related to compliance with the IO and PA are, quite clearly, protected under the Common Interest Doctrine.

The common interest doctrine does not require the existence of a written agreement to apply. *Gonzalez*, *supra*, 669 F.3d at 979. While express agreements can be the foundation for asserting a common interest, a writing is not required for a court to find that the parties were acting in accordance with one another. *Id.*

Here, attorneys and consultants for the PADs and for CDC have been exchanging privileged and confidential information in furtherance of the common interest agreement in order to address the multiple needs for information: the RI/FS process under the IO and the PA; the threat of litigation should compliance with the IO and PA become an issue; and the instant litigation which focuses on many of the issues being investigated and addressed through the RI/FS process.

Even though a writing is not required for the common interest doctrine to apply, the PADs memorialized the existence of a common interest agreement when they executed the Participation Agreement, the Cooperation Agreement, and subsequent addenda. (Participation Agreement Among the Lake San Marcos Work Group ("Participation Agreement"), Reaves Decl., Exh. 14.) This agreement, and the corresponding Common Interest Agreement, made it explicitly clear that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the PADs were sharing information that was intended to be kept confidential. (Participation

Agreement, p. 9. ["the Members agree that information discussed pursuant to this Agreement ...

shall be kept confidential and shall not be disclosed to any person or public agency not a member

without consent of the Members holding a majority of the Voting Power."]) Furthermore, all

Parties that entered into the Participation Agreement made it clear in the agreement that there was

no waiver of any privilege in the sharing of information, and that all information shared was

confidential in nature. (Participation Agreement, p. 20.) While CDC is not a party to the

Participation Agreement, it has agreed through the mediation process to maintain all of the work

product and communications of the group in confidence.   Escondido has similarly agreed, through

its participation in the mediation process and its execution of the Cooperation Agreement and

Common Interest Agreement.  The parties have operated under this arrangement since the process

began. Thus, notwithstanding Hollandia's assertions to the contrary, the communications

Hollandia is seeking are especially intended by the PADs and CDC to be privileged and

confidential and protected by the common interest doctrine.

### 2.      Common Interest is Not Limited to Co-Parties

The protections afforded under the common interest doctrine, despite also being referred to

as the "joint defense" privilege at times, are not limited to only defendants, or even to parties on

the same side of litigation. Courts have routinely extended its application both to parties on

seemingly opposite sides of disputes and to communications made well prior to or after litigation.

*Selcak v. Morgan Whitney Trading Group, Inc.* (C.D. Cal. 1992) 795 F.Supp. 329, 331

[recognizing that the privilege is not limited to co-parties]. Moreover, the privilege applies to

cooperating defendants *and* cooperating plaintiffs. *Id.* at 331.) In fact, the doctrine has been found

to apply even when the interests of the parties are adverse in some respects. *U.S. v. Bergonzi*,

(N.D. Ca. 2003) 216 F.R.D 487, 495-496. As long as the attorney-client privilege exists in the first

instance, disclosing the information to another party who shares a common interest will not result

in a waiver of privilege. *U.S. v. American Tel. & Tel. Co.* (D.C. Cir. 1980) 642 F.2d 1285, 1299.

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Here, while the PADs and CDC do not share a "complete unity of interests", they do share

2  a common interest in several issues: compliance with the IO and PA; preparation for anticipated

3  litigation by the RWQCB, should compliance with the IO and PA become an issue; and

4  preparation of joint materials in an effort to resolve or litigate the prosecute the instant matter. So

5  long as the communications remain confidential—and Hollandia has not presented any evidence

6  that they have not—they are subject to protections under the common interest doctrine. The

7  assertion that the doctrine doesn't apply because the PADs and CDC are on opposite sides of the

8  litigation is disingenuous, at best.

9           **3.     The Participation Agreement Does Not Remove the Threat of**

10                  **Litigation**

11   The common interest doctrine applies at any stage of legal representation, so long as the

12  parties to the agreement are faced with a common threat of liability. Since *Hunydee*, courts in the

13  Ninth Circuit have consistently applied the protections of the joint-defense privilege and/or

14  common interest doctrine where represented parties share "common issues and are intended to

15  facilitate representation in possible subsequent proceedings." *Gonzalez*, *supra*, 669 F.3d at 980

16  ["there is no requirement that actual litigation even be in progress."]; *Griffith v. Davis*, 161. F.R.D.

17  at 693 ("Where a 'joint defense effort or strategy has been decided upon and undertaken by the

18  parties and their respective counsel,' communications may be deemed privileged whether

19  litigation has been commenced against both parties or not.").

20   Here, while the Participation Agreement protected the parties against regulatory

21  enforcement and the threat of litigation by the RWQCB, its protections could only be enjoyed by

22  compliance with its terms. As such, the  "threat of litigation" remains, since the IO/PA Parties, and

23  certain PRPs including CDC, can only avoid regulatory enforcement and/or litigation through

24  compliance with its terms. *Id*.

25   In any event, CDC and the PADs have, since the RI/FS process began, been engaged in

26  litigation. As discussed above, any communications among counsel or their consultants directed at

27  the joint effort to prepare the RI/FS and follow through with remedial actions would be subject to

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1                                34                        12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1  the same protections as "dual purpose" work product. Hollandia's assertions to the contrary are,

2  once again, disingenuous.

3  **4.   Sharing of Information Between the PADs and CDC Does Not**

4  **Constitute Waiver**

5  Hollandia's circular logic ignores the fundamental principle inherent in the common

6  interest doctrine: that it protects the sharing information with additional third parties that would

7  normally result in a waiver. *American Tel. & Tel*,. 642 F.2d at 1299 [disclosure to a third party

8  does not waive work product protection where the third party shares a common interest with the

9  disclosing party which is adverse to that of the party seeking discovery]. Moreover, one party

10 cannot unilaterally waive the privilege for any other party who also asserts the privilege. *Gonzalez*,

11 *supra*, 699 F.3d at 982.

12 Here, Hollandia presents no evidence that any of the PADs or CDC intended to waive the

13 protections of the common interest doctrine. Instead, it continues to employ empty logic to argue

14 that simply sharing privileged information among the parties constitutes a waiver of work product

15 and attorney client protections. But it is clear from the recitations above that the common interests

16 protections apply to communications and information shared among the attorneys and consultants

17 for the PADs and for CDC in addressing the regulatory concerns of the RWQCB and in

18 prosecuting claims against Hollandia.

19 **5.   Hollandia's Argument that Efforts to Comply with the Investigative**

20 **Order and Participation Agreement is not "Legal Advice" Subject to**

21 **Protections is a Red Herring**

22 Hollandia makes the odd argument that work by consultants for the PADs and CDC to

23 comply with the Investigative Order and the Participation Agreement simply "involves consultants

24 collecting data, reaching opinions, and recommending solutions," and therefore not subject to

25 work product or attorney-client protections. (Discovery Mtn., p. 15.) Further, Hollandia opines

26 that the only way legal advice could apply would be advising each's client "about the legal

27 necessity to comply and the ramifications for failing to comply." (*Id.*). The assumption here is that

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  the consultants for the PADs and for CDC could and should engage in their compliance activities

2  without direction from the attorneys for those parties.

3        Hollandia's argument, however, requires that the Court ignore the fact that the

4  communications at issue are directed at developing work product for use in resolving or

5  prosecuting the instant litigation. It also ignores the very real threat of regulatory action and

6  litigation that could ensue should the PADs or CDC fail to comply fully with the IO and the PA.

7  The PADs and CDC should not be penalized for using lawyers to protect them from these very

8  real litigation risks. The Court should reject Hollandia's efforts to deprive them of their counsel.

9  **VII.**    <u>**IF SANCTIONS ARE AWARDED, THEY SHOULD BE AWARDED AGAINST**</u>

10       <u>**HOLLANDIA**</u>

11      **A.**    <u>**Sanctions Requested by Hollandia are Not Warranted**</u>

12        Hollandia's request for sanctions should be denied on several grounds. First, sanctions

13  should be denied because Hollandia's motion should be denied in its entirety. Hollandia's

14  discovery requests are demonstrably overbroad and largely irrelevant, at least with respect to the

15  purposes for which this discovery has been permitted. *Josendis v. Wall-to-Wall Residence Repairs,*

16  *Inc.* (11th Cir. 2011) 662 F.3d 1292 [sanctions denied where discovery requests were overbroad or

17  irrelevant because such discovery requests are not substantially justified]. Moreover, even if the

18  court concludes that the privileges asserted by CDC and the PADs are either not applicable or only

19  partially applicable, sanctions should be denied. Sanctions are not appropriate where a losing party

20  on a motion to compel is substantially justified in opposing the motion. *Quaker Chair Corporation*

21  *v. Litton Business Systems, Inc.* (S.D.N.Y. 1976) 71 FRD 527. Here, in asserting that the extent of

22  the mediation privilege has not yet been fully developed in the Ninth Circuit, Hollandia essentially

23  concedes that CDC and the PADs had substantial justification in opposing the motion. In *Murphy*

24  *v. Kmart Corporation* (D.S.D. 2009) 259 FRD 421, the court held that attorneys' fees in

25  connection with a successful motion to compel production should be denied given the lack of

26  controlling precedent on the issue and the split in authority in the circuits with respect to

27  applicability of the privilege asserted. Thus, where, as here, there is some federal court support for

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7479-6907.1         36         12-CV-0334-GPC(KSC)
JOINT OPPOSITION TO HOLLANDIA'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES

1  a position taken by a party, sanctions are not appropriate. *United States EEOC v. Caesars*

2  *Entertainment, Inc.* (D. Nev. 2006) 237 FRD 428. Therefore, the presence of a genuine dispute

3  over a legal issue indicates that the losing party on the motion is substantially justified in his

4  opposition and an award of costs to the prevailing party in those circumstances is unwarranted.

5  *Quaker Chair Corporation v. Litton Business Systems, Inc. supra.*

6  Substantial justification does not require justification to a high degree; rather, the

7  substantial justification standard is satisfied where there is a genuine dispute over a legal issue.

8  *Coleman v. Dydula* (W.D.N.Y. 1997) 175 FRD 177; *Chaplaincy of Full Gospel Churches v.*

9  *Johnson* (D.D.C. 2003) 217 FRD 250.

10  Plainly, the opposition to Hollandia's motion satisfies the "substantial justification"

11  standard given that the parties are disputing the legal extent and nature of the privileges in dispute.

12  Accordingly, monetary sanctions against CDC and the PADs would be unwarranted.

13  **B.   <u>Sanctions Against Hollandia May Be Proper</u>**

14  If the court concludes that Hollandia has abused the discovery process as asserted in this

15  opposition by skirting the court's order with regard to the extent to which discovery is permitted

16  and the order prohibiting expert discovery at this time, sanctions should be awarded against

17  Hollandia. Similarly, if the court concludes that Hollandia's discovery requests fail to satisfy the

18  fundamental requirements for discovery, namely, reasonable particularity, relevance and

19  proportionality, or that they are improper and seek information that is plainly privileged, sanctions

20  should be awarded against Hollandia. In that event, CDC and the PADs respectfully request the

21  opportunity to provide this court with further briefing as to the amount of sanctions that should be

22  awarded against Hollandia.

23

24  DATED: June 22, 2018          LEWIS BRISBOIS BISGAARD & SMITH, LLP

25

26  By____/s/ Ernest Slome_____
Ernest Slome

27  Attorneys for Defendant/Counter-Claimant/Cross-Defendant
CITY OF SAN MARCOS

28

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1    DATED: June 22, 2018              BOOTH LLP

2                                      ____/s/ Josh Levine_____
3                                      Josh Levine, Esq.
                                       Attorneys for the City of Escondido

4    DATED: June 22, 2018              CAUFIELD & JAMES, LLP

5                                      ____/s/ Jeffrey Caulfield_____
6                                      Jeffrey Caulfield, Esq.
                                       Attorneys for Citizens Development Corporation, Inc.

7

8    DATED: June 22, 2018              MEYERS FOZI & DWORK, LLP

9                                      ___/s/ Athena Troy_____
                                       Athena Troy, Esq.
10                                     Attorneys for Vallecitos Water District

11   DATED: June 22, 2018              WALSWORTH FRANKLIN BEVINS & McCALL, LLP

12                                     ___/s/ Rudy R. Perrino_____
13                                     Rudy R. Perrino, Esq.
                                       Attorneys for the County of San Diego

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## FEDERAL COURT PROOF OF SERVICE

2

*Citizens Development Corporation, Inc.  v. City of San Marcos –*
Case No. 3:12-cv-00334-GPC-KSC

3

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

4

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 701 B Street, Suite 1900, San Diego, CA 92101.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

5

6

On June 22, 2018, I served the following document(s):

7

**JOINT OPPOSITION TO HOLLANDIA DAIRY INC.'S MOTION FOR DETERMINATION OF DISCOVERY DISPUTES**

8

9

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

10

**SEE ATTACHED SERVICE LIST**

11

The documents were served by the following means:

12

☒    (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

13

14

15

☒    (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

16

17

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

18

19

Executed on June 22, 2018, at San Diego, California.

20

21

*/s/ Loreen von Stockhausen*
Loreen von Stockhausen

22

23

24

25

26

27

28

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ATTORNEYS AT LAW

**SERVICE LIST**
**Citizens Development Corporation, Inc.  v. City of San Marcos**
**3:12-cv-00334-GPC-KSC**

| | |
|---|---|
| David F. Wood<br>WOOD, SMITH, HENNING & BERMAN, LLP<br>10960 Wilshire Blvd., 18th Fl.<br>Los Angeles, CA 90024<br>Tel: (310) 481-7600 / Fax: (310) 481-7650<br>Email: dwood@wshblaw.com<br>**Attorney for Plaintiff and Counter-Defendant CITIZENS DEVELOPMENT CORPORATION, INC.** | Neal S. Meyers<br>Athena Brooke Troy<br>MEYERS FOZI, LLP<br>1808 Aston Avenue, Ste. 100<br>Carlsbad, CA 92008<br>Tel: (760) 444-0039 / Fax: (760) 444-0010<br>Email: nmeyers@meyersfozi.com<br>atroy@meyersfozi.com<br>**Attorneys for Defendant, Cross-Defendant, Counter Claimant and Cross-Claimant VALLECITOS WATER DISTRICT** |
| Jeffrey Caufield<br>Ken James<br>Matthew D. McMillan<br>CAUFIELD & JAMES LLP<br>2851 Camino Del Rio So., Ste. 410<br>San Diego, CA 92108<br>Tel: (619) 325-0441 / Fax: (619) 325-0231<br>Email: jeff@caufieldjames.com<br>ken@caufieldjames.com<br>mattm@caufieldjames.com<br>**Attorney for Plaintiff and Counter-Defendant, CITIZENS DEVELOPMENT CORPORATION, INC.** | Joshua Nicholas Levine<br>BOOTH LLP<br>1849 Sawtelle Blvd., Ste. 500<br>Los Angeles, CA 90025<br>Tel: (310) 641-1800 / Fax: (310) 641-1818<br>Email: jlevine@boothllp.com<br>**Attorney for Defendant, Cross-Defendant, Counter-Claimant and Counter-Defendant CITY OF ESCONDIDO** |
| Jade Tran<br>WOOD, SMITH, HENNING & BERMAN LLP<br>5000 Birch St., Ste. 8500<br>Newport Beach, CA 92660<br>Tel: (949) 757-4500 / Fax: (949) 757-4550<br>**Attorneys for Counter-Defendant CITIZENS DEVELOPMENT CORPORATION, INC.** | A Kerry Stack<br>THOMAS/LUCAS<br>9191 Towne Centre Dr., Ste. 190<br>San Diego, CA 92122<br>Tel: (858) 535-0700 / Fax: (858) 535-0701<br>Email: tlucas@thomaslucaslegal.com<br>**Attorneys for Defendant and Counter-Claimant HOLLANDIA DAIRY** |
| Jan A. Greben<br>Christine M. Monroe<br>GREBEN & ASSOCIATES<br>125 East De La Guerra, Ste. 203<br>Santa Barbara, CA 93101<br>Tel: (805) 963-9090 / Fax: (805) 963-9098<br>Email: jan@grebenlaw.com<br>christine@grebenlaw.com<br>**Attorneys for Counter-Defendant CITIZENS DEVELOPMENT CORPORATION, INC.** | John Hamlin Reaves<br>LAW OFFICE OF JOHN H. REAVES<br>2488 Historic Decatur Rd., Ste. 200<br>San Diego, CA 92106-6134<br>Tel: (619) 525-0035 / Fax: (619) 525-0077<br>Email: john@lawreaves.com<br>**Attorney for Defendant, Counter-Claimant, Cross-Claimant, Cross-Defendant and Counter Defendant HOLLANDIA DAIRY** |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

Douglas A. Simpson
THE SIMPSON LAW FIRM
3111 Camino Del Rio North, Ste. 400

2

San Diego, CA  92108
Tel: (619) 437-6900 ext. 701 / Fax

3

(912)388-7078
Email: dsimpson@simpsonlawfirm.com

4

**Attorney for Counter-defendant,**

5

**CITIZENS DEVELOPMENT**
**CORPORATION, INC**.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW