UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS DEVELOPMENT CORPORATION, INC., a California corporation,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, a California municipal corporation, CITY OF SAN MARCOS, a California municipal corporation, CITY OF ESCONDIDO, a California municipal corporation, VALLECITOS WATER DISTRICT, a California municipal corporation, HOLLANDIA DAIRY, INC., a California corporation, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: 12-CV-334-GPC-KSC<br><br>**ORDER GRANTING MOTIONS FOR GOOD FAITH SETTLEMENT DETERMINATION AND ESTABLISHMENT OF SAN MARCOS LSM SETTLEMENT TRUST**<br><br>**[ECF Nos. 471, 523, 528]** |
| AND RELATED COUNTER-ACTIONS AND CROSS-ACTIONS. | |

    Before the Court are the Joint Motions for Good Faith Settlement Determination ("Motion") filed by Plaintiff and Counter-Defendant Citizens Development Corporation, Inc. ("CDC") and Defendants and Counter-Claimants City of San Marcos ("San Marcos"), City of Escondido ("Escondido"), and the County of San Diego ("County").

1

ECF Nos. 471, 523, 528. The motions are fully briefed. San Marcos filed its Motion on December 10, 2021. ECF No. 471. Escondido ("Escondido") filed a Response conditionally opposing San Marcos's Motion (ECF No. 484), which Defendant County of San Diego ("County") joined, (ECF No. 485). CDC and San Marcos each filed a Reply. ECF Nos. 486, 487.

On August 11, 2022, Escondido filed its Motion. ECF No. 523. The County filed a Response conditionally opposing Escondido's Motion. ECF No. 525. Escondido filed a Reply. ECF No. 526. On September 8, 2022, Escondido filed a statement of conditional withdrawal of its Opposition to San Marco's Motion, (ECF No. 471), should the Court grant its Motion for Good Faith Settlement Determination. ECF No. 527.

On September 9, 2022, San Diego filed its Motion. ECF No. 528. The Court provided a briefing schedule with Oppositions due on or before September 19, 2022. ECF No. 529. No Oppositions were filed.

Because of the similarity between these Motions, the Court rules on them simultaneously. The Court finds these Motions suitable for disposition without oral argument and **VACATES** the hearings on this matter originally set for September 23, 2022 (San Marcos and Escondido) and December 9, 2022 (the County) pursuant to Civil Local Rule 7.1(d)(1). After considering the moving papers; declarations of counsel; the Settlement Agreements and Mutual Release ("Settlement Agreement") reached by CDC and San Marcos, Escondido, and the County; the opposition thereto and supporting declarations; and the record as a whole, the Court hereby finds that the Settlement Agreements were entered into in good faith pursuant to California Code of Civil Procedure ("CCP") §§ 877 and 877.6, and are fair, reasonable, and consistent with the intent of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*.

I.  **Background**

As the Parties in this case know well, this civil action arises out of the alleged contamination of the surface water and groundwater in and around Lake San Marcos

("the Lake") and San Marcos Creek ("Creek") located in San Marcos, California. *See* ECF No. 286, Second Amended Complaint ("SAC") ¶¶ 1, 3. On approximately September 20, 2011, the California Regional Water Quality Control Board, San Diego Region ("the RWQCB") issued an Investigative Order ("the IO") alleging that Plaintiff CDC had released pollutants into the Lake. *See id.* ¶ 4. In response, Plaintiff filed this action against Defendants County, San Marcos, Escondido, Vallecitos, and Hollandia Dairy ("Hollandia"), alleging that each of them was responsible for the discharges that contaminated the Lake and its surrounding waters. ECF No. 86, SAC ¶ 9; *see generally* ECF No. 1, Complaint.

### A. CDC's Allegations

CDC alleges that a variety of sources discharged contaminants into the Lake, including urban and suburban runoff, private golf courses, agricultural land uses, improper waste disposal, poor and/or unmanaged landscaping practices from commercial, recreational and residential sites, sanitary sewer overflows, septic system failures, groundwater infiltration, the presence and operation of the dam, and other non-point source discharges during storm events and dry weather conditions. ECF No. 86, SAC ¶¶ 5-7. These discharges, CDC alleges, were generated by the real property that is located upgradient of the Lake within the San Marcos Creek Watershed ("the Watershed"), which includes property owned or operated by Defendants. *Id.* ¶¶ 8, 22-26.

Based on these and other allegations, the SAC asserts seven causes of action against Defendants, including: (1) private recovery under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"); (2) declaratory relief under federal law; (3) continuing nuisance; (4) continuing trespass; (5) equitable indemnity; (6) declaratory relief under California state law; and (7) injunctive relief under the Resource Conservation and Recovery Act ("RCRA"). *See id*. The SAC's CERCLA theory of liability is predicated on the assertion that Defendants contaminated the Lake by releasing known "hazardous substances" into its watershed. *Id.* ¶ 50. CDC identifies those "hazardous substances," as "nitrogen, phosphorus, and nutrients found in fertilizers,

pesticides and sewage." *Id.* ¶ 43.

### B. Counterclaims by City of San Marcos

San Marcos filed counterclaims against CDC for its contamination of the Lake, asserting claims for: (1) response costs under CERCLA; (2) declaratory relief under CERCLA; (3) state-law unjust enrichment; (4) state-law negligence; (5) negligence per se; (6) state-law declaratory relief; and (7) equitable indemnity. ECF No. 297.

### C. Counterclaims by Escondido

Escondido filed counterclaims against CDC for its contamination of the Lake, asserting claims for: (1) response costs under CERCLA; (2) declaratory relief under CERCLA; (3) response costs under California Superfund Act; (4) declaratory relief under California Superfund Act; (5) contribution under state law; (6) negligence; (7) negligence per se; (8) equitable indemnity; and (9) unjust enrichment. ECF No. 298.

### D. Counterclaims by the County

The County filed counterclaims against CDC for its contamination of the Lake, asserting claims for (1) response costs under CERCLA; (2) declaratory relief under federal law; (3) continuing nuisance; (4) continuing trespass; (5) equitable indemnity; (6) declaratory relief under state law; and (7) injunctive relief pursuant to RCRA. ECF No. 292.

### E. Procedural History

This action was initially filed on February 8, 2012. ECF No. 1. On January 8, 2014, the Court ordered a stay in the lawsuit to permit the parties to pursue mediation of their claims. ECF No. 94. By 2017, the mediation had not resulted in settlement, and the parties continued with discovery through September 2019, at which point Magistrate Judge Crawford stayed discovery pending settlement discussions. *See* ECF No. 348. By February 24, 2020, the parties had reached a settlement regarding claims by and against Hollandia, and Judge Crawford lifted the stay of discovery with respect to the remaining claims between CDC and the remaining Defendants. ECF No. 362.

On May 5, 2020, the Court granted the Joint Motion for Good Faith Settlement

Determination and Establishment of Hollandia LSM Settlement Trust, which all Parties joined. ECF No. 384. As a result, Hollandia was to pay $1.5 million to the designated trust for the implementation of investigative and remedial actions, and all claims filed by and against Hollandia in this matter were dismissed with prejudice. *Id.*; ECF No. 363-4 at 266–87.[1] Claims against Hollandia for contribution or indemnity were also barred, except for claims expressly excluded in the settlement agreement. ECF No. 384.

On February 11, 2021, the Court granted the Motion for Good Faith Settlement Determination and Establishment of Vallecitos LSM Settlement Trust. ECF No. 402. Vallecitos was to pay $1 million to the designated trust for remedial costs as well as $83,035.88 towards additional investigative and regulatory oversight costs. All claims filed by and against Vallecitos in this matter were dismissed with prejudice and claims against Vallecitos for contribution or indemnity were also barred. ECF No. 402 at 13.

On December 10, 2021, CDC and San Marcos filed a Joint Motion for Good Faith Settlement Determination. ECF No. 471. Escondido filed a conditional opposition (ECF No. 484), in which County joined stating it would oppose the Motion if the Court does not apply the "proportionate share" approach to account for the Settlement reached by CDC and San Marcos in determining the scope of Escondido and County's potential liability. ECF No. 485. Escondido filed a statement of conditional withdrawal of this Opposition on September 8, 2022. ECF No. 527. San Diego has not filed a statement of conditional withdrawal, but the issue of accounting method is moot, for the reasons discussed below.

On August 11, 2022, CDC and Escondido filed a Joint Motion for Good Faith Settlement Determination. ECF No. 523. The County filed a conditional opposition stating it would oppose the Motion if the Court does not apply the "proportionate share" approach discussed above. ECF No. 525. However, the County stated that "if the

---

[1] All citations to particular pages of electronically filed documents, including exhibits, refer to the page numbers provided by the CM/ECF system.

County's Good Faith Settlement Motion is granted before the Court rules on [Escondido's] Motion [], the method of allocation should have no impact to the County and, therefore, the County would not be opposed to this Motion." *Id.* at 2. Thus, ruling on all three Motions for Good Faith Settlement at once disposes of the conditional opposition as well.

On September 9, 2022, the County filed its Motion for Good Faith Settlement Determination. ECF No. 528. The Court provided a briefing schedule, and no Oppositions were filed.

## II.   Legal Standard

To approve of a consent decree under CERCLA, "a district court must conclude that the agreement is procedurally and substantively 'fair, reasonable, and consistent with CERCLA's objectives.'" *United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 876 (9th Cir. 2014) (quoting *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 748 (9th Cir. 1995)). Courts have applied the same standard to the review of settlement agreements. *See San Diego Unified Port Dist. v. Gen. Dynamics Corp.*, No. 07-CV-01955-BAS-WVG, 2017 WL 2655285, at *6 (S.D. Cal. June 20, 2017).

Under California law, in a case with multiple tortfeasors a court must make a determination that any settlement was entered into in "good faith" before the other alleged joint tortfeasors will be barred from seeking contribution or indemnity from the settling party.  Cal. Code Civ. P. §§ 877, 877.6; *see also Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1061 (9th Cir. 2011) (courts sitting in diversity apply Sections 877 and 877.6, as substantive California law, to good faith settlement determinations).

In determining whether a settlement was reached in good faith under Section 877 and 877.6, a court must consider the factors laid out in *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488 (1985), including: (1) "a rough approximation of the plaintiffs' total recovery and a settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "a recognition that a settlor should pay less in settlement than if found

liable after a trial"; (4) "the allocation of settlement proceeds among plaintiffs"; (5) "the financial conditions and insurance policy limits of settling defendants"; and (6) whether there is evidence of "collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." *Tech-Bilt*, 38 Cal. 3d at 499. An opposing party must "demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the [joint tortfeasor] statute." *Id.* at 499–500. An evaluation of the factors is to be made based on the information available at the time of settlement. *Id.* at 499.

Although courts have taken different approaches to determine whether the settlement of CERCLA claims is fair and reasonable, a number of courts in the Ninth Circuit have "borrowed" from California law the legal framework for determining whether a settlement has been entered into in good faith within the meaning of California Code of Civil Procedure Sections 877 and 877.6 and as explained in *Tech-Bilt*. *See Heim*, 2014 WL 1340063, at *3; *Santa Clarita Valley Water Agency v. Whittaker Corp.*, No. 2:18-CV-06825-SB (RAOx), 2020 WL 8125638, at *2 (C.D. Cal. Nov. 16, 2020); *see also Lewis v. Russell*, No. 2:03-CV-02646 WBS AC, 2019 WL 5260731, at *3 (E.D. Cal. Oct. 17, 2019) ("The factors used to evaluate whether a CERCLA settlement is fair, reasonable, and adequate parallel those used to determine whether a settlement is in good faith under California law."). Other courts have applied the *Tech-Bilt* factors in combination with settlement factors drawn from federal common law in cases involving both CERCLA and California state law claims. *E.g.*, *San Diego Unified Port Dist.*, 2017 WL 2655285, at *6–10; *Cooper Drum Cooperating Parties Grp. v. Am. Polymers Corp.*, No. CV 19-03007-AB (FFMx), 2020 WL 2504331, at *5–8 (C.D. Cal. May 13, 2020).

### III. Discussion

Because of the similarity between CDC's and San Marcos's, Escondido's, and the County's Settlement Agreements, the Court analyzes them simultaneously.

### A. Good Faith Settlement Determination Under *Tech-Bilt*

*i. Settlement Terms*

Under the terms of San Marcos's settlement, San Marcos has agreed to pay $3.4 million towards remediation costs. ECF No. 471-3 at 5. Additionally, San Marcos has agreed to pay over $40,000 towards additional investigative and regulatory oversight costs. *Id.* at 4. The settlement funds are to be paid into a remediation trust. *Id.* In exchange, the Settlement Agreement provides for dismissal with prejudice of claims by and against San Marcos in this action and is conditioned on the Court entering an order barring claims for contribution and indemnity relating to the Site.[2] *Id.* at 6–8.

Under the terms of Escondido's settlement, Escondido has agreed to pay $1.3 million towards remediation costs. ECF No. 523-3 at 4. Escondido also has agreed to pay approximately $20,000 towards additional investigative and regulatory oversight costs. *Id.* at 3. The settlement funds are to be paid into the remediation trust. *Id.* at 4. Further, the Escondido Settlement Agreement states that Plaintiff CDC will make a one-time payment of $2.8 million into the trust. *Id.* In exchange, the Settlement Agreement provides for dismissal with prejudice of claims by and against Escondido as well as other terms similar to those in the San Marcos Agreement. *Id.* at 6.

Under the terms of the County's settlement, the County has agreed to pay $2.6 million towards remediation costs. ECF No. 528-3 at 4. Additionally, the County has agreed to pay $12,445.65 toward additional investigative and regulatory oversight costs. *Id.* The funds are to be paid into the remediation trust. *Id.* In exchange, the County's agreement looks similar to the other two agreements addressed in this Order and provides for dismissal with prejudice of all claims by and against the County. *Id.* at 5-6.

*ii. Approximation of potential recovery and proportionate liability and recognition that settling defendant should pay less than should it proceed to trial*

To meet the standard of "good faith," the amount of a settlement must be "within the reasonable range of the settling tortfeasor's proportional share of comparative liability

---

[2] In this order, the term "Site" has the same meaning as used in the Settlement Agreements.

for the plaintiff's injuries." *Tech-Bilt*, 38 Cal. 3d at 499; *see also Torres v. Union Pac. R. Co.*, 157 Cal. App. 3d 499, 509 (1984) (holding that "a co-defendant's settlement price cannot be grossly disproportionate to his fair share of the damages"). The Court must therefore determine the approximate potential total recovery, and San Marcos's, Escondido's, and the County's share of the potential liability.

### 1. Approximation of potential total recovery

In determining the total potential recovery for the purposes of evaluating a settlement under *Tech-Bilt*, the court makes a "rough approximation of what plaintiff would actually recover." *West v. Superior Court*, 27 Cal. App. 4th 1625, 1636 (1994). Plaintiff's claim for damages is not determinative. *Id.*

Under CERCLA, "a private party may 'recover expenses associated with cleaning up contaminated sites.'" *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1002 (9th Cir. 2010) (quoting *United States v. Atl. Research Corp.*, 551 U.S. 128, 131 (2007)). The estimated remediation costs under the RI/FS totaled roughly $11.3 million in 2015 dollars, which according to CDC is equivalent to $13.2 million in 2021 dollars, taking inflation into account. ECF No. 471-1 at 20. Opposing Parties to San Marcos's Motion state that CDC has claimed $19,909,044 in the underlying litigation as the present value of past and future remedial costs, plus interest. ECF No. 484 at 4. Opposing Parties do not indicate that they actually expect CDC to recover the entire amount of claimed damages, and have not otherwise identified what they regard as CDC's approximate potential recovery. For the purposes of this Motion, the Court accepts the remediation costs figure provided by Movants based on the RI/FS as a "rough approximation of what plaintiff would actually recover" for response costs. *West*, 27 Cal. App. 4th at 1636.

### 2. San Marcos' estimated proportionate liability

The Court turns to the Parties' contentions regarding San Marcos's approximate proportionate liability. Movants argue that the apportionment of liability between all parties would likely be determined based upon the "Gore Factors," and that consideration

of those factors would militate in favor of approving the Settlement Agreement because "San Marcos' settlement payment representing between 23% and 55% of estimated remedial costs is reasonably within the range offered by the parties' various experts." ECF No. 471-1 at 21. Pursuant to the RI/FS, CDC and the Defendants jointly retained environmental expert LimnoTech to perform Lake modeling. Escondido (and San Diego by their Joinder) argues in the Opposition that "San Marcos's proposed settlement of $3.4 million represents from approximately 17.08 percent to 25.76 percent of the monetary claim in this matter, far less than its proportional share of the USMC Watershed or its proportional share of loading." ECF No. 484 at 4-5.[3] To support this contention, the Opposition points to the RI/FS model which estimates that 58.3 percent of the USCM Watershed is within San Marcos's boundaries, and 51.55 percent of nutrient loading originates from the San Marcos portion of the USMC Watershed, while the Opposing Parties' share of the Watershed and nutrient loading is much smaller (9.3 percent and 8.4 percent for Escondido). *Id.* at 3.

Under CERCLA, "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Some courts consider the Gore Factors, named after a proposed amendment to CERCLA that was rejected by Congress. *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1187 (9th Cir. 2000). "The Gore Factors are: '(1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation,

---

[3] Escondido has filed a statement of conditional withdrawal of their Opposition to San Marcos's Motion to be effective once the Court grants their Motion for Good Faith Settlement. ECF No. 527. Because the Court is granting Escondido's Motion in this Order, the Court assumes that Escondido no longer opposes San Marcos's Motion. However, the County has not yet filed a statement of withdrawal of the Opposition to San Marcos's Motion, so the Court will discuss the Opposition as if it is still in effect.

transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.'" *TDY Holdings, LLC v. United States*, 885 F.3d 1142, 1146 n.1 (9th Cir. 2018) (quoting *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 326 n.4 (7th Cir. 1994)). However, district courts are not limited to consideration of these factors and can allocate response costs using other equitable factors as they deem appropriate. *Boeing*, 207 F.3d at 1187.

      CDC contends that San Marcos bears significant liability based on its historic and ongoing discharges of nutrients, nutrient-laden sediment, and sewer waste mixed with groundwater and storm water to the Creek and Lake. ECF No. 471-1 at 20. San Marcos disputes liability and contends that other parties (including CDC) bear responsibility for the alleged harm. *Id.* However, according to CDC's experts, updated future remediation costs in the RI/FS total approximately $17.3 million. According to San Marcos's expert, out of the $11.3 million estimated in the RI/FS, approximately $8.7 million will be required to remediate the Site. Because the Hollandia Dairy and Vallecitos settlements already paid $2.5 million, the remaining cost to be distributed among the remaining Defendants, would be between $6.2 million and $14.8 million. *Id.* "Thus, the San Marcos settlement payment of $3.4 million represents between 23% and 55% of the total estimated remedial costs." *Id.* at 20-21. Somewhat unhelpfully, San Marcos's expert and Escondido's expert offered widely disparate opinions on the allocation of liability.[4] San Marcos's expert allocated 4.5% liability to San Marcos based on his analysis, while Escondido's expert opined that San Marcos contributed more than 50% of the phosphorus and nitrogen to the Lake. ECF No. 471-1 at 21. Based on those estimates, the Settlement

---

[4] County of San Diego offered no expert opinions in which nutrient contributions were calculated on as percentages among the Defendants.

payment of $3.4 million would cover between 23% and 55% of remedial costs. San Marcos argues this is "reasonably within the range offered by the parties' various experts." *Id.* Opposing Parties take a different view. Using the $19.9 million figure (based on CDC's claims from underlying litigation) as the denominator, the Opposition states that San Marcos's proposed settlement of $3.4 million represents between 17.08 percent and 25.76 percent of the monetary claim in the case, which is less than San Marcos' share of the USMC Watershed (58.3%) and of the nutrient loading (which is up to 51.6%). ECF No. 484 at 4-5.

The Court notes that the parties' differing views on the proportional share of San Marcos's liability, as well as the differing views on what proportion of the remedial costs the San Marcos settlement will actual cover are indeed widely divergent. The estimates and figures that the Movants and the Opposition use to describe proportional liability are based on extremely different baselines—on the one hand, the Movants use the RI/FS estimate, which is much lower, to support their contention that the proposed settlement covers a larger percent of the potential liability, while the Opposition, on the other hand, uses CDC's $19 million damages claim to suggest that the proposed settlement does not cover enough.

As *Tech-Bilt* suggested, the Court will not adopt an interpretation of "good faith" that "would tend to convert the pretrial settlement approval procedure into a full-scale mini-trial." *Tech-Bilt*, 38 Cal. 3d at 499. The Court therefore need not definitively determine which side's expert determination of the remedial costs would carry the day at trial, so long as evidence supports Movants' assertion that the settlement amount is within the range of San Marcos's potential liability. Of course, the widely divergent estimates of San Marcos's liability (because of the widely divergent estimates of the total liability) make it difficult to determine whether the Movants' proposed settlement does indeed require San Marcos to pay a proportional share.

Based on the information available at the time of the Settlement Agreement, the proposed $3.4 million settlement payment, which represents between 23% and 55% of

the RI/FS remedial costs, plus investigatory costs, is "within the reasonable range of [San Marcos's] proportional share of comparative liability for" remediation costs. *Tech-Bilt*, 38 Cal. 3d at 499. That the 23%-55% range of remedial costs is on the lower range of San Marcos's proportional share of the San Marcos Watershed, and possible share of the nutrient load, this is not inconsistent with the *Tech-Bilt* factors. *Tech-Bilt*, 38 Cal. 3d at 499 (courts determining good faith should recognize "that a settlor should pay less in settlement than he would if he were found liable after a trial"). As the Movants state, "San Marcos is settling before trial and before the parties are required to engage in further costly and lengthy trial preparations, including preparation of expert testimony and rebuttal testimony." ECF No. 471-1 at 24. *Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 874 (1987) ("[A] 'good faith' settlement does not call for perfect or even nearly perfect apportionment of liability.").

The Court therefore finds that the Opposition has not met its burden of showing that the approximately $3.4 million provided for in the Settlement Agreement would be "so far 'out of the ballpark'" of San Marcos's potential share of liability that the settlement would be inequitable. *Tech-Bilt*, 38 Cal. 3d at 499–500. The Opposition seems less concerned about the actual amount of San Marcos's $3.4 million payment, and more concerned about what it might mean for their own possible liability at trial.

Further, because this Order approves the Motions for Good Faith Settlement Determination for all remaining Defendants in this action, any opposition by any of the parties to the terms of the other Defendants' Settlement Agreements should be moot. All of the parties have settled.

### 3. Escondido's estimated proportionate liability

The Court does not recount the law and considerations already laid out above. Instead, the Court simply turns to the Parties' contentions regarding Escondido's approximate proportionate liability to determine if the amount of the settlement is "within the reasonable range of [Escondido's] proportional share of comparative liability for the plaintiff's injuries." *Tech-Bilt*, 38 Cal. 3d at 499. It is.

Escondido retained an expert to provide a report estimating Escondido's liability. Specifically, the expert noted that although Escondido's current contribution is 8.4%, the historical contribution of Escondido must be less because it has "historically had less watershed acreage than what is reflected in the model, and other jurisdictions had intense agricultural operations (such as poultry farms), while Escondido did not." ECF No. 523-1 at 12. The expert concluded Escondido's contribution into the San Marcos Lake was "at most, approximately 4 percent." *Id.* In contrast, CDC's expert, in response to Escondido's expert, felt Escondido was responsible for 10.2% of the loading. *Id.* at 13. Thus, Escondido's proportionate liability ranges anywhere from 4% to 10.2%. Escondido also argues that its ultimate share of liability should be further reduced by CDC's share of liability for its role in operating the Lake. *Id.* at 14.

Assuming that the future remediation costs will range between $5 million and $17.3 million, as stated in Escondido's Motion, Escondido's range of potential liability is from $200,000 to $1,760,000. *Id.* at 19. Escondido has agreed to pay $1.3 million. This is clearly on the higher end of the potential liability range, and as such, this settlement is not "so far 'out of the ballpark'" of Escondido's potential share of liability that the settlement is inequitable. *Tech-Bilt*, 38 Cal. 3d at 499–500. No Parties, including the County, argue that this is an unfair or unreasonable settlement amount.

### 4. The County's estimated proportionate liability

The Court now turns to the Parties' contentions regarding the County's approximate proportionate liability to determine if the amount of the settlement is "within the reasonable range of [the County's] proportional share of comparative liability for the plaintiff's injuries." *Tech-Bilt*, 38 Cal. 3d at 499. It also is.

The County has agreed to pay $2.6 million. The County states that CDC's expert allocated 40.1% of liability to the County. ECF No. 528-1 at 10. CDC's rebuttal expert assigned 27.6% of liability to the County. *Id.* at 11. Assuming that the future remediation costs will range between $5 million and $17.3 million, as stated above, the County's range of potential liability is from $1.38 million to $6.94 million. Although the County's

agreement to pay $2.6 million is on the lower end of this range, there is no opposition arguing this amount is unreasonable, so the Court similarly finds that the settlement amount is not so far out of the ballpark as to render this settlement disproportionate.

### iii. Other Tech-Bilt factors

No Opposition argues that the other *Tech-Bilt* factors, such as the allocation of the settlement proceeds, the financial condition and insurance policy limits of the three remaining Defendants, or the possibility of collusion, fraud, or tortious conduct weigh against good faith settlement determinations. Additionally, upon independent review, the Court finds that Movants have demonstrated that these factors support a finding that the settlements were entered into in good faith. There is no issue regarding allocation because the settlements are mainly to be allocated to remedial actions at the Site, while the remaining will be put towards investigative and regulatory oversight costs. Lastly, the Court is satisfied that the Settlement Agreements are the result of arm's-length negotiations over the course of one decade of litigation, and that there is no evidence that Movants engaged in any collusion, fraud, or other tortious conduct in coming to this agreement.

Accordingly, the Court finds that upon review of the *Tech-Bilt* factors, the settlement agreements were arrived at in good faith.

## B. Determination of Whether Settlement is Fair, Reasonable, and Consistent with Purposes of CERCLA

Courts have often approved of settlements and bar orders upon determination that "the proposed settlement is fair, reasonable, and consistent with the purposes that CERCLA is intended to serve," drawing from the standard courts apply in evaluating proposed consent decrees under CERCLA. *Cooper Drum*, 2020 WL 2504331, at *4 (quoting *Rev 973, LLC v. Mouren-Laurens*, No. CV 98–10690 DSF (Ex), 2016 WL 9185139, at *1 (C.D. Cal. July 1, 2016)); *see also United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 746 (9th Cir. 1995); *Coppola*, 2017 WL 4574091, at *2. Here, for the reasons set forth more fully above, the settlements are substantively and procedurally

1  fair. *See San Diego Unified Port Dist.*, 2017 WL 2655285, at *6–7 (citing *Arizona v.
2  City of Tucson*, 761 F.3d 1005, 1012 (9th Cir. 2014)). The settlements were arrived at
3  after years of litigation and mediation, and sufficient formal discovery and independent
4  investigation had occurred at the time of settlements to provide Movants with a basis
5  from which they could approximate the Defendants' proportionate share of liability. *Cf.
6  id.* ("[B]ecause all of the parties had ample opportunity to investigate the contamination
7  and because they negotiated the settlement at arm's length, the Court concludes the
8  settlement is procedurally fair.").
9       Additionally, the settlements further the purposes of CERCLA. "[O]ne of the core
10 purposes of CERCLA is to foster settlement through its system of incentives and without
11 unnecessarily further complicating already complicated litigation." *Chubb Custom Ins.
12 Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 971 (9th Cir. 2013) (quoting *California Dep't
13 of Toxic Substances Control v. City of Chico, Cal.*, 297 F. Supp. 2d 1227, 1235 (E.D. Cal.
14 2004)); *see also San Diego Unified Port Dist.*, 2017 WL 2655285, at *5 ("[O]ne of
15 CERCLA's purposes is to encourage settlement through providing contribution
16 protection—that is, preventing settling parties from being later sued for contribution by
17 other joint tortfeasors."). After approximately ten years of litigation, mediation, and
18 settlement discussions, this purpose of CERCLA is certainly served by settlement at this
19 stage of proceedings.
20      The Court therefore finds that the settlements are fair, reasonable, and adequate,
21 and are consistent with the purposes of CERCLA.

### C. Method of Accounting for Settlements

"[A] district court has discretion under § 9613(f)(1) to determine the most equitable method of accounting for settlements between private parties in a contribution action." *AmeriPride*, 782 F.3d at 487. Courts typically choose between the pro tanto approach and the proportionate share approach, "competing methods of accounting for a settling party's share when determining the amount of a nonsettling defendant's liability." *Id.* at 484. *AmeriPride* gives district courts discretion to use either the pro tanto or

proportionate share approaches: "[T]he court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." *Id.* at 486. While the decision is within the district court's discretion, electing to use a method that would "produce plainly inequitable results could constitute abuse of discretion." *Id.* at 488.

San Marcos and Escondido both provide for a pro tanto method of accounting, "such that the total amount of damages for which liability, if any, may be allocated at trial, shall be reduced by the dollar value of the [] settlement payment." *See e.g.*, ECF No. 471-1, ECF No. 471-3 (San Marcos Settlement Agreement) at 8-9. The County opposes this on the ground that "if a pro-tanto settlement is applied, it would shift the risk of an underfunded settlement to the final settling party in this action, potentially unfairly prejudicing the County in the process." ECF No. 525 at 2; *see also* ECF No. 484 (the County's Opposition to San Marcos's Motion). However, the County's opposition only stands "so long as the Court does not rule on the County's Good Faith Settlement Motion first." *See* ECF No. 525 at 10. Given that the Court is ruling on the County's Motion simultaneously with all of the remaining party Motions, the opposition no longer stands.

Here, the Court has found that all of the Settlement Agreements presented by the remaining parties are fair and reasonable and an accounting of liability has been made. There will be no trial as to a remaining nonsettling party and there will be no further accounting of liability. Because San Marcos's, Escondido's, and the County's Motions are approved concurrently, the issue of accounting method is moot.

## IV. Conclusion

The Court hereby **ORDERS** as follows:

1. The Motions are **GRANTED**;
2. The Settlement Agreement and Mutual Release ("Settlement Agreement") reached by the Parties with respect to The City of San Marcos, The City of Escondido, and The County of San Diego, which is the subject of the Motion, is in good faith, fair, reasonable, and consistent with the intent of

the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* and California Code of Civil Procedure ("CCP") §§ 877 and 877.6;

3. Pursuant to the Settlement Agreement, CERCLA, and CCP § 877, *et seq.,* all persons and parties are barred from pursuing any claims against San Marcos, Escondido, or the County for implied and/or equitable indemnity, implied and/or equitable comparative contribution, indemnity or cost recovery under CERCLA § 107, indemnity or contribution under CERCLA § 113, indemnity or contribution under the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA") (Cal. Health and Safety Code § 25300, et seq.), or for any other cause of action based upon comparative fault, indemnity or otherwise arising from any alleged past negligence, act, omission, or misconduct of San Marcos, Escondido, or the County in connection with the Site and subject matter of this litigation. This Order shall apply whether such claims are pending or could be asserted in the future pursuant to federal or state law.[5]

4. All claims, asserted in the action by CDC against San Marcos, Escondido, and the County, and all claims San Marcos, Escondido, and the County asserted against CDC in this litigation, are hereby dismissed with prejudice, with the Parties each bearing their own attorneys' fees and costs.

5. The San Marcos LSM Settlement Trust shall be established as either a "Designated Settlement Fund" or a "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code, 26 U.S.C. § 468B, and the regulations promulgated pursuant thereto and codified at 26 C.F.R. §

---

[5] *See* ECF No. 471-3 at 5-6 (San Marcos); ECF No. 523-3 at 6-7 (Escondido); ECF No. 528 at 6-7 (the County) for the full terms of the express exclusions from the Parties' Mutual Releases.

1.468B, and in accordance with the terms and conditions of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated:  September 21, 2022

Hon. Gonzalo P. Curiel
United States District Judge